# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER;                          Case No. 1:17-cv-
JANE A. DOE by next friend JANE B. DOE;
JANE C. DOE; JANE D. DOE;                       HON.
JANE E. DOE; JANE F. DOE;
JANE G. DOE; JANE H. DOE;
JANE J. DOE; JANE K. DOE by next friend
JANE L. DOE; JANE M. DOE; JANE N. DOE;
JANE O. DOE; JANE P. DOE by next friend
JANE Q. DOE; JANE R. DOE; JANE S. DOE
by next friend JANE T. DOE; JANE U. DOE;
JANE X. DOE

| |
|---|
| **COMPLAINT AND JURY DEMAND** |

     Plaintiffs,

v.

MICHIGAN STATE UNIVERSITY; THE BOARD
OF TRUSTEES OF MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR (individual and
official capacity); USA GYMNASTICS, INC.;
TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA

     Defendants.

_____/

Stephen R. Drew (P24323)                 John C. Manly (CA 149080)
Adam C. Sturdivant (P72285)              Vince W. Finaldi (CA 238279)
DREW, COOPER & ANDING                    Alex E. Cunny (CA 291567)
Attorneys for Plaintiffs                 MANLY, STEWART & FINALDI
80 Ottawa Avenue NW, Suite 200           Attorneys for Plaintiffs
Grand Rapids, Michigan 49503             19100 Von Karman Avenue, Suite 800
Phone: (616) 454-8300                    Irvine, California 92612
E-mail: sdrew@dca-lawyers.com            Phone: (949) 252-9990
E-mail: asturdivant@dca-lawyers.com      E-mail: jmanly@manlystewart.com
                                         E-mail: vfinaldi@manlystewart.com
                                         E-mail: acunny@manlystewart.com
                                         *W.D. Michigan Admission Pending*

_____/

**TABLE OF CONTENTS**

COMPLAINT AND JURY DEMAND ...................................................................1 – 95

I.         PRELIMINARY STATEMENT AND INTRODUCTION ....................................1 – 6

II.       JURISDICTION AND VENUE ........................................................................6 – 8

III.     PARTIES AND KEY INDIVIDUALS .............................................................8 – 12

IV.    COMMON FACTUAL ALLEGATIONS ........................................................12 – 20

V.     SPECIFIC FACTUAL ALLEGATIONS .........................................................20 – 40

        A.      Rachael Denhollander .......................................................................20 – 21

        B.      Jane A. Doe by Next Friend Jane B. Doe ..............................................21 – 22

        C.      Jane C. Doe ......................................................................................22 – 23

        D.      Jane D. Doe .....................................................................................24 – 25

        E.      Jane E. Doe ......................................................................................25

        F.      Jane F. Doe ......................................................................................26 – 27

        G.      Jane G. Doe .....................................................................................27 – 28

        H.      Jane H. Doe .....................................................................................28 – 29

        I.      Jane J. Doe ......................................................................................29 – 30

        J.      Jane K. Doe by Next Friend Jane L. Doe ..............................................30 – 31

        K.      Jane M. Doe .....................................................................................31 – 32

        L.      Jane N. Doe .....................................................................................32 – 33

        M.     Jane O. Doe .....................................................................................33 – 34

        N.      Jane P. Doe by Next Friend Jane Q. Doe ..............................................34 – 35

        O.      Jane R. Doe .....................................................................................35 – 36

        P.      Jane S. Doe by Next Friend Jane T. Doe ..............................................36 – 37

Q. Jane U. Doe ...................................................................................37 – 38

R. Jane X. Doe ...................................................................................39 – 40

VI. CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS ....40 – 63

A. COUNT ONE – Violations of Title IX .................................................40 – 44

B. COUNT TWO – Violation of Civil Rights, 42 U.S.C. §1983 ................44 – 48

C. COUNT THREE – Failure to Train and Supervise, 42 U.S.C. §1983 ....48 – 49

D. COUNT FOUR – Gross Negligence v. MSU, Nassar ...........................49 – 51

E. COUNT FIVE– Negligence v. MSU, Nassar ........................................51 – 52

F. COUNT SIX– Vicarious Liability .........................................................52 – 53

G. COUNT SEVEN – Express/Implied Agency ........................................54 – 55

H. COUNT EIGHT – Negligent Supervision .............................................55 – 56

I. COUNT NINE – Negligent Failure to Warn or Protect ........................56 – 58

J. COUNT TEN– Negligent Failure to Train or Educate ..................................58

K. COUNT ELEVEN– Negligent Retention .............................................59 – 60

L. COUNT TWELVE - Intentional Infliction of Emotional Distress ..........60 – 61

M. COUNT THIRTEEN – Fraud and Misrepresentation ............................61 – 63

VII. CLAIMS AGAINST USA GYMNASTICS ........................................63 – 79

A. COUNT FOURTEEN – Gross Negligence v. USAG, Nassar ...............63 – 65

B. COUNT FIFTEEN – Negligence v. USAG, Nassar ...............................66 – 68

C. COUNT SIXTEEN – Vicarious Liability .............................................68 – 69

D. COUNT SEVENTEEN – Express/Implied Agency ...............................69 – 70

E. COUNT EIGHTEEN – Negligent Supervision ......................................70 – 71

F. COUNT NINETEEN – Negligent Failure to Warn or Protect ...............72 – 74

G.      COUNT TWENTY – Negligent Failure to Train or Educate .................74 – 75

H.      COUNT TWENTY-ONE – Negligent Retention ...................................... 75 - 76

I.      COUNT TWENTY-TWO – Intentional Infliction of

Emotional Distress .......................................................................76 – 77

J.      COUNT TWENTY-THREE- Fraud and Misrepresentation ..................77 – 79

VIII.      CLAIMS AGAINST TWISTARS ....................................................................79 – 89

A.      COUNT TWENTY-FOUR – Gross Negligence v. Twistars, Nassar .....79 – 80

B.      COUNT TWENTY-FIVE – Negligence v. Twistars, Nassar .................81 – 82

C.      COUNT TWENTY-SIX  – Express/Implied Agency ............................82 – 83

D.      COUNT TWENTY-SEVEN – Negligent Supervision ...........................83 – 85

E.      COUNT TWENTY-EIGHT – Negligent Failure to Warn or Protect ......85 – 87

F.      COUNT TWENTY-NINE - Intentional Infliction of

Emotional Distress .......................................................................87 – 88

G.      COUNT THIRTY– Fraud and Misrepresentation ..................................88 – 89

IX.      CLAIMS AGAINST NASSAR ......................................................................89 – 92

A.      COUNT THIRTY-ONE – Assault and Battery .......................................89 – 90

B.      COUNT THIRTY-TWO– Intentional Infliction of

Emotional Distress .......................................................................91 – 92

X.      DAMAGES .....................................................................................................92 – 94

XI.      JURY DEMAND ...........................................................................................95

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys DREW, COOPER & ANDING, and MANLY, STEWART & FINALDI, and hereby allege and state as follows:

## I.      PRELIMINARY STATEMENT AND INTRODUCTION

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University ("MSU"), USA Gymnastics ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs, all female, many of whom were minors when the sexual assaults took place.

2.      Plaintiffs are or were young athletes participating in a variety of sports including gymnastics, swimming, figure skating, track and field, field hockey, basketball, and soccer.

3.      Defendant Nassar came highly recommended to Plaintiffs as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.      Plaintiffs and their parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.      From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.      From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.     For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8.     To gain Plaintiffs' trust, at appointments, Defendant Nassar would give some Plaintiffs gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without.

9.     From 1996 to 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs Jane H. Doe, Jane M. Doe, Jane N. Doe, Jane O. Doe, and Jane X. Doe, some of whom were minors, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant. In some situations, he also touched and groped their breasts.

10.    Plaintiffs Jane H. Doe, Jane M. Doe, Jane N. Doe, Jane O. Doe, and Jane X. Doe were seeking treatment for athletic injuries to their lower backs, hamstrings, hip, tailbone, and elbow.

11.    While most of the assaults were carried out at MSU, others were carried out at Twistars.

12.    The ages of the Plaintiffs assaulted during 1996 to 1999 ranged from 11 to 22 years old.

13.    In 1999, Jane X. Doe, a MSU student athlete, reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

14.    In 2000, Jane T.T. Doe, another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

15.    Many Plaintiffs were seen alone with only the individual Plaintiff and Defendant Nassar in

the room, without chaperones.

16. At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

17. Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiffs Denhollander, Jane A. Doe, Jane C. Doe, Jane D. Doe, Jane E. Doe, Jane F. Doe, Jane G. Doe, Jane J. Doe, Jane K. Doe, Jane L. Doe, Jane M. Doe, Jane N. Doe, Jane O. Doe, Jane P. Doe, Jane R. Doe, Jane S. Doe, Jane U. Doe, and Jane X. Doe, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts.

18. While most victims were assaulted at MSU, other victims were assaulted at Twistars.

19. The ages of the Plaintiffs assaulted from 2000 to 2016 ranged from 9 to 29 years old.

20. Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[1]

21. Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to

---

[1] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. (Last accessed January 5, 2017.)

the following:

A.     Defendant Nassar was sexually aroused while touching her;

B.     The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

22.    Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[2]

23.    Following the investigation, upon information and belief Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[3]

24.    Defendant Nassar continued to treat patients alone.

25.    Following the investigation, between approximately 2014 and 2016, Plaintiffs Jane A. Doe, Jane K. Doe, and Jane S. Doe were sexually assaulted by Defendant Nassar.

26.    Through his position with MSU, his notoriety, and support by USAG and Twistars, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiffs without any reasonable supervision by MSU or USAG.

27.    Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiffs or their parents.

28.    All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University or at Twistars.

---

[2] *Id.*
[3] *Id.*

4

29. The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs or their parents robbed them of the opportunity to reject the "treatment."

30. Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

31. In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Plaintiff Denhollander's allegations against Defendant Nassar.

32. Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

33. Plaintiffs have been forced to relive the trauma of the sexual assaults.

34. In summer 2015, USA Gymnastics relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG failed to inform Michigan State University of the circumstances regarding his dismissal.

35. As early as 1999, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiffs through approximately 2016.

36. Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiffs was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, 42 U.S.C. §1983, as well as other Federal and State laws.

37. MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

38. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[4]

39. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

40. The acts, conduct, and omissions of Defendants Michigan State University, USA Gymnastics, and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Defendant Nassar, which has been devastating for Plaintiffs and their families.

41. This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## II. JURISDICTION AND VENUE

42. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*., as more fully set forth herein.

43. This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

44. Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts

---

[4] State of Michigan, Ingham County Circuit Court Case No. 1603031.

jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

45.     Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

46.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

47.     The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et seq*., and under Michigan Law.

48.     The events giving rise to this lawsuit occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

49.     Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

50.     Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice

of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. §600.6431 Plaintiffs filed Notices of Intent to File Claim with the Michigan Court of Claims on November 29, 2016 (Exhibit 1), December 21, 2016 (Exhibit 2), and January 9, 2017 (Exhibit 3).

### III.     PARTIES AND KEY INDIVIDUALS

51.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

52.     With the exception of Plaintiff Rachael Denhollander, the names of the Plaintiffs have been withheld from this Complaint to protect their identities as some are currently minor children, or were minor children at the time the sexual abuse occurred.[5]

53.     Plaintiff Rachael Denhollander is a female and is a resident of Kentucky, but resided in Michigan at all relevant times as indicated below. Plaintiff Denhollander was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

54.     Plaintiff Jane A. Doe is a minor female and is a resident of Michigan.

55.     Plaintiff Jane B. Doe is an adult female, the mother of Plaintiff Jane A. Doe, and is a resident of Michigan.

56.     Plaintiff Jane C. Doe is an adult female and is a resident of Michigan.

57.     Plaintiff Jane D. Doe is an adult female and is a resident of Illinois, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane D. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

58.     Plaintiff Jane E. Doe is an adult female and is a resident of Michigan. Plaintiff Jane E. Doe

---

[5] Plaintiffs will seek an Order of the Court regarding disclosure of Plaintiffs' identities and all conditions for disclosure.

was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

59.	Plaintiff Jane F. Doe is an adult female and is a resident of Washington, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane F. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

60.	Plaintiff Jane G. Doe is an adult female and is a resident of California, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane G. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

61.	Plaintiff Jane H. Doe is an adult female and is a resident of Arizona, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane H. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

62.	Plaintiff Jane J. Doe is an adult female and is a resident of Michigan. Plaintiff Jane J. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

63.	Plaintiff Jane K. Doe is a minor female and is a resident of Michigan.

64.	Plaintiff Jane L. Doe is an adult female, the mother of Plaintiff Jane K. Doe, and is a resident of Michigan.

65.	Plaintiff Jane M. Doe is an adult female and is a resident of Illinois, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane M. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

66.	Plaintiff Jane N. Doe is an adult female and is a resident of California, but resided in Michigan at all relevant times as indicated below.

67.	Plaintiff Jane O. Doe is an adult female and is a resident of Michigan. Plaintiff Jane O. Doe

was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

68. Plaintiff Jane P. Doe is a minor female and is a resident of Michigan.

69. Plaintiff Jane Q. Doe is an adult female, the mother of Plaintiff Jane P. Doe, and a resident of Michigan.

70. Plaintiff Jane R. Doe is an adult female and is a resident of Michigan. Plaintiff Jane R. Doe was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

71. Plaintiff Jane S. Doe is a minor female and is a resident of Michigan.

72. Plaintiff Jane T. Doe is an adult female, the mother of Plaintiff Jane S. Doe, and a resident of Michigan.

73. Plaintiff Jane U. Doe is an adult female and is a resident of Michigan. Plaintiff Jane U. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

74. Plaintiff Jane X. Doe is an adult female and is a resident of North Carolina but resided in Michigan at all relevant times as indicated below.

75. Defendant Lawrence "Larry" Nassar, is a Doctor of Osteopathic Medicine, and is a resident of Michigan.

76. Defendant Michigan State University (hereinafter, "Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

77. Defendant Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

78. Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University.

79. Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

80. Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Defendant Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

81. M. Peter McPherson is the immediate Past President of Defendant MSU, and served as President from approximately 1993 – 2004.

82. William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Michigan State University serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

83. Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Michigan State University.

84. Defendant United States of America Gymnastics (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

85. Steve Penny is the current president of Defendant USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of Defendant USAG.

86. Robert Colarossi is the past president of Defendant USAG and held the position from

approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

87. Defendant Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA (hereinafter, "Defendant Twistars") was and continues to be an organization incorporated in Michigan.

88. John Geddert is the owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA.

## IV. COMMON FACTUAL ALLEGATIONS

89. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

90. At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

91. At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

92. At all relevant times, including the years of 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

93. At all relevant times, including the years of 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

94. At all relevant times, including the years of 1996 to 2016, Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

95. Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

96. Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

   A.     Certified Athletic Trainer;

   B.     Osteopathic Physician;

   C.     National Medical Director;

   D.     National Team Physician, USA Gymnastics;

   E.     National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

97. Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

   A.     Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

   B.     Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

   C.     Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

   D.     Team Physician, Defendant MSU's Men's and Women's Crew Team;

   E.     Team Physician, Defendant MSU's Intercollegiate Athletics;

   F.     Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

   G.     Advisor, Student Osteopathic Association of Sports Medicine.

98. Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

99. John Geddert, owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

100. Mr. Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

101. For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its facility.

102. As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

103. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

104. Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

105. While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

106. During his employment, agency, and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

107. The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[6]

108. In 1997, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert

---

[6] *See*, Michigan Administrative Code, R. 325.70001, et seq., Available at http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

regarding Dr. Nassar's conduct, yet the concerns and allegations went unaddressed.

109. In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by Jane X. Doe, an MSU student athlete, after she complained to MSU employees, including trainers and her head coach, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

110. Despite her complaints to MSU representatives, Jane X. Doe's concerns and allegations went unaddressed.

111. In approximately 2000, a female student athlete (hereinafter Jane T.T. Doe),[7] a member of Defendant MSU's Women's Softball Team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

112. Jane T.T. Doe's allegations regarding the sexual assault include the following statements:

Plaintiff is informed and believes, and on that basis alleges, that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/ or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff. Specifically, the Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

a. The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment. The Plaintiff continued with the purported treatment;

b. As the purported treatments continued, NASSAR became more bold,

---

[7] Referenced as Jane T.T. Doe in Exhibit 2.

having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The Plaintiff, again, reported to Defendant MSU training staff, this time a higher ranking trainer. This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c.     When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment;

d.     Finally, in or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive. The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.[8]

113.    Despite her complaints to MSU employees, agents, and representatives, Jane T.T. Doe's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

114.    Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiffs Denhollander, Jane A. Doe, Jane C. Doe, Jane D. Doe, Jane E. Doe, Jane F. Doe, Jane G. Doe, Jane J. Doe, Jane K. Doe, Jane L. Doe, Jane M. Doe, Jane N. Doe, Jane O. Doe, Jane P. Doe, Jane R. Doe, Jane S. Doe, Jane U. Doe, and Jane X. Doe, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant and by touching and groping their

---

[8] *See*, Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles, December 21, 2016, ¶26.

breasts.

115. In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[9]

116. The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[10]

117. While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[11]

118. Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

---

[9] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

[10] *See*, Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf. Last accessed January 5, 2017.

[11] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. Last accessed January 5, 2017.

119. However, the victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following

    A.    Defendant Nassar was sexually aroused while touching her;

    B.    The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

120. Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[12]

121. Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[13]

122. After receiving allegations of "athlete concerns," in approximately summer 2015, Defendant USAG relieved Defendant Nassar of his duties.[14]

123. At no time did Defendant USAG inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

124. From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

---

[12] *Id.*

[13] *Id.*

[14] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

125.    Plaintiffs were made aware of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or shortly thereafter through related media coverage.[15]

126.    Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

    A.    Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[16] and,

    B.    A former patient of Defendant Nassar, Plaintiff Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Plaintiff Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

        A.    Massaging her genitals;

        B.    Penetrating her vagina and anus with his finger and thumb; and,

        C.    Unhooking her bra and massaging her breasts.[17]

127.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on $1 million bond.[18]

128.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal

---

[15] *Id.*

[16] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/      documents/3106054-JANE-JD-COMPLAINT-Signed.html. Last accessed, January 5, 2017.

[17] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

[18] State of Michigan, Ingham County Circuit Court Case No. 1603031.

Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

129. According to the federal indictment,[19] Defendant Nassar:

A. Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

B. Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

130. To the best of Plaintiffs' knowledge, Defendant Nassar is in federal custody pending the child pornography criminal charges.

## V. SPECIFIC FACTUAL ALLEGATIONS

### A. RACHAEL DENHOLLANDER

131. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

132. Plaintiff Rachael Denhollander[20] treated with Dr. Nassar at his office at MSU in 2000.

133. In 2000, Plaintiff Denhollander was a minor, 15 years old.

134. Plaintiff Denhollander presented to Dr. Nassar with complaints of injuries to her wrists and back suffered through gymnastics.

135. On approximately five separate occasions, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Denhollander's vagina and anus with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing

---

[19] 1:16-cr-00242 PageID.1-4.
[20] Referred to as Jane D.R. Doe in Exhibit 2.

"treatment."

136. Defendant Nassar also massaged Plaintiff Denhollander's genitals.

137. Defendant Nassar also touched Plaintiff Denhollander's breasts without permission by unhooking her bra and massaging one of her breasts.

138. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Denhollander.

139. Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Denhollander's vagina, anus, or breasts.

140. Plaintiff Denhollander did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

141. Plaintiff Denhollander believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

142. After reviewing a media report regarding Defendant USAG's failure to report sexual abuse,[21] in or around late August 2016 or early September 2016, Plaintiff Denhollander made a complaint with Defendant MSU's Police Department.

**B.      JANE A. DOE BY NEXT FRIEND JANE B. DOE**

143. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

144. Plaintiff Jane A. Doe treated with Defendant Nassar at his office at MSU from approximately 2011 to 2014.

---

[21] A blind eye to sex abuse: How USA Gymnastics failed to report cases, Marisa Kwiatkowski, Mark Alesia, Tim Evans, August 4, 2016. Available at http://www.indystar.com/story/news/investigations/2016/08/04/usa-gymnastics-sex-abuse-protected-coaches/85829732/. Last accessed January 5, 2017.

145. From 2011 to 2014, Plaintiff Jane A. Doe was a minor, approximately 12 to 15 years old.

146. Plaintiff Jane A. Doe presented to Defendant Nassar with complaints of back pain as a result of gymnastics.

147. In 2014 at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A. Doe's vagina multiple times without prior notice and without gloves or lubricant.

148. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A. Doe or Jane B. Doe.

149. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A. Doe, Jane B. Doe, or Jane A. Doe's father.

150. Plaintiff's medical records regarding her visits with Dr. Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

151. Plaintiff Jane A. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

152. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane A. Doe made a complaint to MSU's Office of Institutional Equity.

153. Plaintiffs Jane A. Doe and Jane B. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**C.    JANE C. DOE**

154. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

155. Plaintiff Jane C. Doe was a student athlete at the University of Michigan from

approximately 1998 to 2001.

156. Plaintiff treated with Dr. Nassar in 2001, 2011, and 2012 at his office at MSU.

157. Plaintiff Jane C. Doe presented to Dr. Nassar with complaints of back pain suffered through her participation in field hockey.

158. On approximately four separate occasions, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane C. Doe's vagina without prior notice and without gloves or lubricant and put an excessive amount of pressure on her labia and vaginal area without gloves or lubricant.

159. Defendant Nassar would put his hands under Plaintiff Jane C. Doe's underwear and push her underwear to the side to digitally penetrate Plaintiff Jane C. Doe's vagina.

160. Defendant Nassar also touched her breasts without permission.

161. Defendant Nassar would put his hands under Plaintiff Jane C. Doe's sports bra to touch her breasts.

162. In 2011, another medical professional was in the room and asked Dr. Nassar where his hand was while he was digitally penetrating Plaintiff Jane C. Doe. Dr. Nassar allegedly said something the Plaintiff did not understand, dismissed the medical professional from the room and continued to digitally penetrate Plaintiff Jane C. Doe.

163. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane C. Doe.

164. Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane C. Doe's vagina or breasts.

165. Plaintiff Jane C. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

166. Plaintiff Jane C. Doe believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

**D.     JANE D. DOE**

167.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

168.   Plaintiff Jane D. Doe treated with Dr. Nassar between approximately 2004 and 2007 at his office at MSU.

169.   From 2004 to 2007, Plaintiff Jane D. Doe was a minor, approximately 12 to 15 years old.

170.   Plaintiff Jane D. Doe presented to Defendant Nassar with complaints of lower back pain as a result of old and new fractures suffered as a result of gymnastics.

171.   On approximately eight separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane D. Doe's vagina and anus without prior notice and without gloves or lubricant for several minutes at a time. The assaults would sometimes last up to 30 minutes.

172.   Defendant Nassar would put his hands under Plaintiff Jane D. Doe's spandex shorts to digitally penetrate Plaintiff Jane D. Doe's vagina and anus.

173.   Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane D. Doe.

174.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane D. Doe or from Jane D. Doe's parents even though she was a minor at the time.

175.   Plaintiff Jane D. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

176.   Plaintiff Jane D. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

177.   As a result of the sexual assault, abuse, and molestation Plaintiff Jane D. Doe suffered

severe urinary tract infections, vaginal bleeding, and bleeding while urinating.

**E.     JANE E. DOE**

178.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

179.    Plaintiff Jane E. Doe treated with Dr. Nassar between approximately 2006 and 2007 at his office at MSU.

180.    From 2006 to 2007, Plaintiff Jane E. Doe was a minor, approximately 14 years old.

181.    Plaintiff Jane E. Doe presented to Defendant Nassar with complaints of back pain caused by fractures suffered as a result of gymnastics.

182.    On approximately six separate occasions at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane E. Doe's vagina without prior notice and without gloves for several minutes at a time.

183.    Defendant Nassar required Plaintiff Jane E. Doe to change into breakaway shorts with Velcro on the side, began massaging her back, and then put his hand under the shorts to digitally penetrate her vagina.

184.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane E. Doe.

185.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane E. Doe or from Jane E. Doe's parents even though she was a minor at the time.

186.    Plaintiff Jane E. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

187.    Plaintiff Jane E. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## F.    JANE F. DOE

188.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

189.    Plaintiff Jane F. Doe treated with Defendant Nassar between in approximately 2004 at his office at MSU.

190.    In 2004, Defendant Jane F. Doe was a minor, approximately 16 and 17 years old.

191.    Plaintiff Jane F. Doe presented to Defendant Nassar with complaints of back pain caused by her participation on basketball and soccer teams.

192.    On one occasion at a medical appointment at his office at MSU, Defendant Nassar touched Plaintiff Jane F. Doe's vagina and/or vaginal area without prior notice and without gloves or lubricant for several minutes at a time.

193.    Defendant Nassar also requested and required Plaintiff to re-dress while he was in the room.

194.    Defendant Nassar also grabbed Plaintiff Jane F. Doe's breast with his bare hand for several minutes at a time.

195.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane F. Doe.

196.    Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane F. Doe's vagina, vaginal area, or breasts from Jane F. Doe or Jane F. Doe's parents even though she was a minor at the time.

197.    Plaintiff Jane F. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

198.    Plaintiff Jane F. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

199. Plaintiff Jane F. Doe reported Defendant Nassar's conduct to her parents and to local law enforcement, Meridian Township Police in 2004.

200. Plaintiff did not return for additional treatment following her complaints.

### G. JANE G. DOE

201. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

202. Plaintiff Jane G. Doe treated with Defendant Nassar from approximately 1999 to 2003 at his office at MSU.

203. From 1999 to 2003, Plaintiff Jane G. Doe was a minor, approximately 14 to 17 years old.

204. Plaintiff Jane G. Doe presented to Defendant Nassar with complaints of low back pain caused by gymnastics.

205. On several occasions between 1999 and 2003, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane G. Doe's vagina and anus without prior notice and without gloves or lubricant.

206. On at least one occasion at a USAG sanctioned event which took place at Defendant Twistars USA Inc.'s facility, Defendant Nassar digitally penetrated Plaintiff Jane G. Doe's vagina without gloves or lubricant.

207. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane G. Doe.

208. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane G. Doe or from Jane G. Doe's parents even though she was a minor at the time.

209. Plaintiff Jane G. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

210. Plaintiff Jane G. Doe believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

**H.     JANE H. DOE**

211.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

212.    Plaintiff Jane H. Doe treated with Defendant Nassar in 1998.

213.    In 1998, Plaintiff Jane H. Doe was a minor, 16 years old.

214.    Plaintiff Jane H. Doe presented to Defendant with complaints of pain from a torn hamstring and fractured ischium caused by gymnastics.

215.    On one occasion at a medical appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane H. Doe's anus without prior notice and without gloves or lubricant for several minutes.

216.    At the appointment, Plaintiff was not permitted to sign in at the front desk and was brought to an examination by Defendant Nassar.

217.    During the sexual assault, at 16 years old, only Plaintiff Jane H. Doe and Defendant Nassar were in the examination room. There was no chaperone.

218.    Defendant Nassar explained his conduct as a "new procedure" which involved vaginal penetration to Plaintiff Jane H. Doe.

219.    Defendant Nassar did not discuss anal penetration with Plaintiff Jane H. Doe.

220.    Defendant Nassar did not give prior notice or obtain consent for anal penetration from Plaintiff Jane H. Doe or for vaginal or anal digital penetration from Plaintiff Jane H. Doe's parents even though she was a minor at the time.

221.    Plaintiff Jane H. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

222.    Following the September 12, 2016 publication of a story regarding a complaint filed with

Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane H. Doe made a complaint to Defendant MSU's Police Department.

223. Plaintiff Jane H. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## I.      JANE J. DOE

224. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

225. Plaintiff Jane J. Doe treated with Defendant Nassar in 2005 and 2006 at his office at MSU and at Defendant Twistars' facility.

226. In 2005 and 2006 Plaintiff Jane J. Doe was a minor, approximately 16 years old to 17 years old.

227. Plaintiff Jane J. Doe presented to Defendant Nassar with complaints of back pain caused by gymnastics.

228. On at least two separate occasions during appointments at his office at MSU and on at least one occasion at Defendant Twistars' facility at a USAG sanctioned event, Defendant Nassar digitally penetrated Plaintiff Jane J. Doe's vagina and anus without prior notice and without gloves or lubricant.

229. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane J. Doe.

230. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane J. Doe or from Jane J. Doe's parents even though she was a minor at the time.

231. Plaintiff Jane J. Doe requested her medical records, however Defendant MSU could not

locate a paper chart documenting all of her appointments with Defendant Nassar. The records Defendant MSU did produce were completely devoid of any reference to any type of intra-vaginal procedure.

232. Plaintiff Jane J. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

233. Plaintiff Jane J. Doe was also sexually assaulted by Defendant Nassar in the same manner described above at Twistars Gymnastics Club.

234. As a result of Defendant Nassar's sexual assault, abuse, and molestation, Plaintiff Jane J. Doe developed a bacterial infection.

235. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2, and 3) Plaintiff Jane J. Doe made a complaint to Defendant MSU's Police Department.

236. Plaintiff Jane J. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**J.     JANE K. DOE BY NEXT FRIEND JANE L. DOE**

237. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

238. Plaintiff Jane K. Doe treated with Defendant Nassar at his office at MSU in approximately 2014 and 2016.

239. In 2014 and 2016, Plaintiff Jane K. Doe was a minor, approximately 13 years old and 14 years old.

240. Plaintiff presented to Defendant Nassar with complaints of hamstring pain as a result of gymnastics.

241. On more than one occasion, approximately two or three times at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane K. Doe's vagina without prior notice and without gloves or lubricant, from 10 to 15 minutes at a time.

242. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane K. Doe, Jane L. Doe, or Jane K. Doe's father.

243. Plaintiff Jane K. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

244. At an appointment in approximately April 2016, during an examination he pulled Jane K. Doe's shorts to the side and viewed her vagina and vaginal area.

245. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane K. Doe or Jane L. Doe.

246. It is believed some of the aforementioned sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Dr. Nassar during "treatments" with athletes.

247. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane K. Doe made a complaint with Defendant MSU's Police Department.

248. Plaintiffs Jane K. Doe and Jane L. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**K.     JANE M. DOE**

249. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

250. Plaintiff Jane M. Doe treated with Defendant Nassar from approximately 1999 to 2002.

251. From 1999 to 2000, Plaintiff Jane M. Doe was a minor, approximately 14 to 16 years old.

252. Plaintiff Jane M. Doe presented to Defendant with complaints of low back pain caused by gymnastics.

253. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane M. Doe's vagina without prior notice and without gloves or lubricant.

254. Defendant Nassar would also touch Plaintiff Jane M. Doe's vaginal area through her clothes.

255. Defendant Nassar would ask Plaintiff Jane M. Doe to wear baggy shorts and put his hands under Plaintiff Jane M. Doe's shorts to digitally penetrate her vagina or touch her vaginal area.

256. Defendant Nassar would also put his hand under Plaintiff Jane M. Doe's shirt under the guise of "checking her sternum" and would touch her breasts.

257. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane M. Doe.

258. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane M. Doe or from Jane M. Doe's parents even though she was a minor at the time.

259. Plaintiff Jane M. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

260. Plaintiff Jane M. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**L.** **JANE N. DOE**

261. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

262. Plaintiff Jane N. Doe treated with Defendant Nassar in approximately 2002.

263. Plaintiff Jane N. Doe presented to Defendant Nassar with complaints of back pain caused by gymnastics.

264. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane N. Doe's vagina without prior notice and without gloves or lubricant for several minutes at a time.

265. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane N. Doe.

266. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane N. Doe.

267. Plaintiff Jane N. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

268. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane N. Doe made a complaint to Defendant MSU's Police Department.

269. Plaintiff Jane N. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## M.    JANE O. DOE

270. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

271. Plaintiff Jane O. Doe treated with Defendant Nassar from approximately 1999 to 2002.

272. From 1999 to 2002, Plaintiff Jane O. Doe was a minor, approximately 11 to 13.

273. Plaintiff Jane H. Doe presented to Defendant with complaints of injury to her hip, back,

knees, ankles, wrists and ribs caused by figure skating.

274. On more than one occasion at appointments at his office at MSU, Defendant Nassar moved his hands under Plaintiff Jane O. Doe's underwear and digitally penetrated Plaintiff Jane O. Doe's vagina without prior notice and without gloves or lubricant for up to 15 minutes at a time.

275. Defendant Nassar also touched Plaintiff's breast without permission on more than one occasion with his bare hand, once asking her if she had ever had a breast exam.

276. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane O. Doe.

277. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane O. Doe or from Jane O. Doe's parents even though she was a minor at the time.

278. Plaintiff Jane O. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

279. Plaintiff Jane O. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**N.      JANE P. DOE BY NEXT FRIEND JANE Q. DOE**

280. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

281. Plaintiff Jane P. Doe treated with Defendant Nassar at his office at MSU in 2011.

282. In 2011, Plaintiff Jane P. Doe was a minor, 11 years old.

283. Plaintiff Jane P. Doe presented to Defendant Nassar with complaints of injuries to her back as a result of gymnastics.

284. On approximately five to six separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane P. Doe's vagina and anus without prior

notice and without gloves or lubricant.

285. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane P. Doe or Jane Q. Doe.

286. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane P. Doe, Jane Q. Doe, or Jane P. Doe's father.

287. Plaintiff Jane P. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

288. Plaintiffs Jane P. Doe and Jane Q. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

289. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane Q. Doe made a complaint to Defendant MSU's Police Department.

**O.     JANE R. DOE**

290. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

291. Plaintiff Jane R. Doe treated with Defendant Nassar from approximately 2007 to 2008.

292. From 2007 to 2008, Plaintiff Jane R. Doe was a minor, approximately 14 to 15 years old.

293. Plaintiff Jane R. Doe presented to Defendant with complaints of back pain caused by swimming.

294. On several occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane R. Doe's vagina without prior notice and without gloves and other than one occasion, without lubricant, for several minutes at a time.

295. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical

procedure to Plaintiff Jane R. Doe.

296. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane R. Doe or from Jane R. Doe's parents even though she was a minor at the time.

297. Plaintiff Jane R. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

298. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," (included as part of Exhibits 1, 2 and 3) Plaintiff Jane R. Doe made a complaint to Defendant MSU's Police Department.

299. Plaintiff Jane R. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

P.      **JANE S. DOE BY NEXT FRIEND JANE T. DOE**

300. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

301. Plaintiff Jane S. Doe treated with Defendant Nassar at his office at MSU from approximately 2009 to 2014.

302. From 2009 to 2014, Plaintiff Jane S. Doe was a minor, approximately 9 to 14 years old.

303. Plaintiff Jane S. Doe presented to Defendant Nassar with complaints of back pain and heel pain as a result of gymnastics.

304. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane S. Doe's vagina without prior notice and without gloves or lubricant.

305. Plaintiff Jane S. Doe was also sexually assaulted by Defendant Nassar in the same manner described above at Twistars USA, Inc. in or around 2009.

306. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane S. Doe or Jane T. Doe.

307. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane S. Doe, Jane T. Doe, or Jane S. Doe's father.

308. Plaintiff Jane S. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

309. It is believed some of the aforementioned sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Dr. Nassar during "treatments" with athletes.

310. Plaintiffs Jane S. Doe and Jane T. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**Q. JANE U. DOE**

311. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

312. Plaintiff Jane U. Doe treated with Defendant Nassar from approximately 2002 to 2011.

313. From 2002 to 2011, Plaintiff Jane U. Doe was a minor, approximately 9 to 17 years old.

314. Plaintiff Jane U. Doe presented to Defendant with complaints of hip, tailbone, elbow pain caused by gymnastics.

315. On several occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane U. Doe's vagina without prior notice and without gloves or lubricant.

316. Plaintiff Jane U. Doe would undress to her underwear with a towel and Defendant Nassar would put his hand in her underwear and digitally penetrate Plaintiff Jane U. Doe's vagina.

317. Plaintiff Jane U. Doe believes she had approximately 50 appointments with Dr. Nassar

between 2002 to 2011.

318. Defendant Nassar told Plaintiff Jane U. Doe he performed the same "treatment" on Olympic athletes.

319. Defendant Nassar also touched Plaintiff Jane U. Doe's breasts without permission, on some occasions touching her over her sports bra, at other times under her sports bra, and at other times telling her to take her sports bra off.

320. On one occasion, Defendant Nassar made inappropriate comments regarding his former girlfriends while digitally penetrating Plaintiff Jane U. Doe.

321. On one occasion Plaintiff Jane U. Doe was assaulted at Defendant Nassar's home in his basement.

322. Defendant Nassar also touched Plaintiff Jane U. Doe's breasts indicating he was attempting to manipulate Plaintiff Jane U. Doe's ribs, although she had no pain or injury to her rib area.

323. During some sexual assaults at MSU, only Plaintiff Jane U. Doe and Defendant Nassar were in the examination room. There was no chaperone.

324. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane U. Doe.

325. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane U. Doe or from Jane U. Doe's parents even though she was a minor at the time.

326. Plaintiff Jane U. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

327. Plaintiff Jane U. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## R.    JANE X. DOE

328.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

329.    Plaintiff Jane X. Doe treated with Defendant Nassar in 1999 as a student athlete at Michigan State University.

330.    Plaintiff Jane X. Doe presented to Defendant with complaints of pain in her hamstring caused by track and field and cross-country.

331.    Plaintiff Jane X. Doe was referred to Dr. Nassar by MSU trainers and training staff.

332.    On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane X. Doe's vagina without prior notice and without gloves or lubricant.

333.    Defendant Nassar used his hand to stimulate Plaintiff Jane X. Doe's vagina before digitally penetrating her vagina.

334.    In approximately 1999, Plaintiff Jane X. Doe complained to MSU trainers and an MSU Coach who were employees, representatives, and agents of MSU and who had a duty to report allegations of sexual assault and abuse about Defendant Nassar's conduct and was told that he was an "Olympic doctor" and that Defendant Nassar "knew what he was doing."

335.    It is believed no investigation was initiated given Jane X. Doe's complaints to MSU representatives nor was any corrective action taken, exposing Jane X. Doe and others to continued assaults.

336.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane X. Doe.

337. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane X. Doe.

338. Plaintiff Jane X. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

339. Plaintiff Jane X. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## VI. CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A. COUNT ONE

#### VIOLATIONS OF TITLE IX
#### 20 U.S.C. §1681(a), *et seq.*
#### DEFENDANTS MSU, MSU TRUSTEES

340. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

341. Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"[22]

342. Plaintiffs are "persons" under the Title IX statutory language.

343. Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

344. Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

---

[22] U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. Last accessed, January 5, 2017.

345. The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.[23]

346. Defendant Nassar's actions and conduct were carried out under one of Defendant MSU programs, which provides medical treatment to students, athletes, and the public.

347. Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

348. As early as 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

349. Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by Jane X. Doe in or around 1999 and by Jane T.T. Doe in 2000 on more than one occasion.

350. The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following Jane X. Doe and Jane T.T. Doe's complaints of sexual assault, abuse, and molestation in or around 1999 and/or 2000.

351. The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[24]

---

[23] Cite OCR guidance that says this.

[24] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. Last accessed January 5, 2017.

352. The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

A. Defendant Nassar was sexually aroused while touching her;

B. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

353. Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[25]

354. Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[26]

355. The MSU Defendants failed to adequately supervise or otherwise or ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females to whom he had unfettered access.

356. After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals, including but not limited to Plaintiff Jane A. Doe and Plaintiff Jane K. Doe.

357. The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

---

[25] *Id.*
[26] *Id.*

A.    failing to investigate and address Jane X. Doe and Jane T.T. Doe's allegations as required by Title IX;

B.    failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

C.    failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

358.    The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

359.    The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

A.    A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

B.    That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[27]

360.    The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the

---

[27] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

University in 2016.

361. Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiffs on and off school premises.

362. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to further harassment and a sexually hostile environment, effectively denying them all access to educational opportunities at MSU, including medical care.

363. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.    COUNT TWO**

**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, DEFENDANT NASSAR**

364. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

365. Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

366. Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

367. At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

368. The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

369. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

370. As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

371. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

372. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred

at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event. .. "

373. Defendant MSU's aforementioned internal policies were violated in or around 1999 when Jane X. Doe reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

374. Defendant MSU's aforementioned internal policies were violated in 2000 when Jane T.T. Doe reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

375. The MSU Defendants' failure to address Jane X. Doe and Jane T.T. Doe's complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

376. Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

377. Ultimately, Defendants failed to adequately and properly investigate the complaints of Plaintiffs or other similarly-situated individuals including but not limited to failing to:

A. perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1999 and 2000;

B. thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

C.      recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

D.      ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

378.    As indicated in the U.S. Department of Education Office of Civil Rights report,[28] the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

379.    Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

380.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

381.    The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

382.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or

---

[28] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

383. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C. **COUNT THREE**

**FAILURE TO TRAIN AND SUPERVISE**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

384. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

385. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

386. The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

A.      Perceive, report, and stop inappropriate sexual conduct on campus;

B.      Provide diligent supervision over student-athletes and other individuals;

C.      Report suspected incidents of sexual abuse or sexual assault;

D.      Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's

campuses premises;

E.     Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

F.     Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

387.   The above list of duties is not exhaustive.

388.   The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiffs rights.

389.   As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

390.   As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

D.     **COUNT FOUR**

**GROSS NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

391.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

392.   The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom

from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

393. Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

394. By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

395. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

396. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

397. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

398. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

399. The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and

with a substantial lack of concern as to whether an injury would result.

400. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**E.    COUNT FIVE**

**NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

401. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

402. The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

403. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

404. Defendant Nassar owed Plaintiffs a duty of ordinary care.

405. The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

406. The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

407. The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

408. The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

409. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

410. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

F.     **COUNT SIX**

**VICARIOUS LIABILITY**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

411. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

412. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do

so.

413. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

414. The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

415. Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[29]

416. The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

417. As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

---

[29] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

418.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

419.    An agent is a person who is authorized by another to act on its behalf.

420.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

421.    On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

422.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

423.    Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

424.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to

sustain loss of earnings and earning capacity.

**H.     COUNT EIGHT**

**NEGLIGENT SUPERVISION**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

425.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

426.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

427.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

428.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

429.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

430.    The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

431. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

432. As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## I.     COUNT NINE

### NEGLIGENT FAILURE TO WARN OR PROTECT
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS

433. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

434. The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

435. As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

436. The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

437. The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs'

situation against the risk of injury by Defendant Nassar.

438.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

439.    The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

440.    The MSU Defendants breached its duties to protect Plaintiffs by failing to:

   A.    respond to allegations of sexual assault, abuse, and molestation;

   B.    detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

   C.    investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

441.    The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

442.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

443.    As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J.** **COUNT TEN**

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE
ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

444.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

445.    The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiffs and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

446.    The MSU Defendants failed to implement reasonable safeguards to:

A.      Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

B.      Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

447.    As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### K.     COUNT ELEVEN

### NEGLIGENT RETENTION
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS

448.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

449.    The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

450.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

451.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

452.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

453.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

454.    As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of

emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

**L.**      **COUNT TWELVE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

455.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

456.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

457.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

458.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

459.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

460.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

461.    The MSU Defendants' conduct as described above was intentional and/or reckless.

462. As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## M.   COUNT THIRTEEN

### FRAUD AND MISREPRESENTATION
### ALL PLAINTIFFS AGAINST MSU DEFENDANTS

463. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

464. From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

465. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

466. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

467. As of 1999 and 2000, the MSU Defendants knew their representations of Defendant Nassar were false as Jane X. Doe and Jane T.T. Doe had complained of Defendant Nassar's conduct

to MSU representatives.

468.    Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address Jane X. Doe or Jane T.T. Doe's complaints.

469.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

470.    Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.[30]

471.    Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

472.    Plaintiffs relied on the assertions of the MSU Defendants and several Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

473.    Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

474.    As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and

---

[30] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## VII. CLAIMS AGAINST USA GYMNASTICS

### A. COUNT FOURTEEN

**GROSS NEGLIGENCE**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE; JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE; JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

475. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

476. Defendant USAG owed Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

477. The above-named Plaintiffs are or were members of USAG, participated in USAG sanctioned events, and were knowledgeable of and in some cases referred to Defendant Nassar through USAG affiliations.

478. Defendant Nassar owed Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe a duty to use due care in his capacity as

an employee, representative, and/or agent of Defendant USAG.

479. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

480. Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe.

481. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe.

482. Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe's safety.

483. Defendant USAG's conduct as described above, demonstrated a willful disregard for

substantial risks to Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe.

484. Defendant USAG breached duties owed to Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

485. As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## B.    COUNT FIFTEEN

### NEGLIGENCE
### PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE; JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE; JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR

486.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

487.    Defendant USAG owed Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

488.    Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe as members of the USAG had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

489.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe

by Jane T. Doe, and Jane U. Doe a duty to use ordinary care.

490. Defendant Nassar owed Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe a duty of ordinary care in carrying out medical treatment.

491. Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

492. Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

493. Defendant USAG's failure to inform Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe, and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

494. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe was a breach of the duty to use ordinary care.

495. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented

from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## C.     <u>COUNT SIXTEEN</u>

<u>VICARIOUS LIABILITY</u>
<u>PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE;</u>
<u>JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE;</u>
<u>JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE</u>
<u>AGAINST DEFENDANT USAG</u>

496.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

497.     Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

498.     Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

499.     Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.[31]

500.     Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

501.     Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

502.     As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the

---

[31] For example, *see*, https://usagym.org/pages/post.html?PostID=14677&prog=h.

course of his employment, agency, and/or representation with Defendant USAG Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D.**     **COUNT SEVENTEEN**

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE; JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE; JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE AGAINST DEFENDANT USAG**

503.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

504.    An agent is a person who is authorized by another to act on its behalf.

505.    Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

506.    On the basis of those representations, Plaintiffs reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

507.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

508.    Plaintiffs were injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

509. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E. **COUNT EIGHTEEN**

**NEGLIGENT SUPERVISION**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE;**
**JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE;**
**JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE**
**AGAINST DEFENDANT USAG**

510. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

511. Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiffs.

512. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

513. Defendant USAG by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant

Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

514. Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

515. The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

516. Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe with impunity.

517. As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE;**
**JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE;**
**JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE**
**AGAINST DEFENDANT USAG**

518. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

519. Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

520. Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

521. Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

522. Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

523. Defendant USAG had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

524. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe.

525. Defendant USAG breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe from Defendant Nassar.

526. Defendant USAG breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

527. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe's rights.

528. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

529. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G.     <u>COUNT TWENTY</u>

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**<u>PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE;</u>**
**<u>JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE;</u>**
**<u>JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE</u>**
**<u>AGAINST DEFENDANT USAG</u>**

530.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

531.     Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe and other individuals from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

532.     Defendant USAG failed to implement reasonable safeguards to:

A.     Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

B.     Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

533.     As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue

to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### H.     COUNT TWENTY-ONE

**NEGLIGENT RETENTION**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE; JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE; JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE AGAINST DEFENDANT USAG**

534.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

535.    Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

536.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

537.    Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

538.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe as well as an unknown  number of other individuals.

539. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe as well as other minors and young adults.

540. As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## I.     COUNT TWENTY-TWO

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE; JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE; JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE AGAINST DEFENDANT USAG

541. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

542. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

543. A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

544. Defendants USAG held Defendant Nassar in high esteem and acclaim which in turn

encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

545. Defendants USAG protected Defendant Nassar in part to bolster his national and international reputation in the gymnastics community.

546. A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

547. Defendant USAG's conduct as described above was intentional and/or reckless.

548. As a direct and/or proximate result of Defendant USAG's conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J.      COUNT TWENTY-THREE**

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS DENHOLLANDER; JANE A. DOE BY JANE B. DOE; JANE D. DOE;**
**JANE E. DOE; JANE G. DOE; JANE H. DOE; JANE J. DOE; JANE N. DOE;**
**JANE P. DOE BY JANE Q. DOE; JANE S. DOE BY JANE T. DOE; JANE U. DOE**
**AGAINST DEFENDANT USAG**

549. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

550. From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was a competent, ethical, and safe physician.

551. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

552. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

553. Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiffs Denhollander, Jane A. Doe by Jane B. Doe, Jane D. Doe, Jane E. Doe, Jane G. Doe, Jane H. Doe, Jane J. Doe, Jane N. Doe, Jane P. Doe by Jane Q. Doe, Jane S. Doe by Jane T. Doe, and Jane U. Doe, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs and others.

554. Plaintiffs relied on the assertions of Defendant USAG and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

555. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

556. As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented

from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## VIII.    CLAIMS AGAINST TWISTARS

### A.    COUNT TWENTY-FOUR

#### GROSS NEGLIGENCE
#### PLAINTIFFS JANE G. DOE; JANE J. DOE; JANE S. DOE BY JANE T. DOE AGAINST DEFENDANT TWISTARS AND DEFENDANT NASSAR

557.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

558.    Defendant Twistars owed Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

559.    Defendant Nassar owed Plaintiffs a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

560.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

561.    Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendant Twistars' action were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe.

562. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe.

563. Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe's safety.

564. Defendant Twistars' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe.

565. Defendant Twistars breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

566. As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## B.    COUNT TWENTY-FIVE

## NEGLIGENCE
## PLAINTIFFS JANE G. DOE; JANE J. DOE; JANE S. DOE BY JANE T. DOE
## DEFENDANT TWISTARS AND DEFENDANT NASSAR

567. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

568. In or around 1997, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

569. Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

570. Mr. Geddert owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation.

571. In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiffs and the public.

572. Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public in failing to investigate the 1997 allegations which were made to Mr. Geddert.

573. Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public by failing to report the 1997 allegations, which were made to Mr. Geddert, to law enforcement.

574. Plaintiffs Jane G. Doe, Jane J. Doe and Jane S. Doe by Jane T. Doe, as members of the Twistars USA, Inc. and in taking the recommendation of Mr. Geddert to seek medical treatment from Defendant Nassar had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse, or molestation.

575. By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary

relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

576. Defendant Nassar owed Plaintiffs a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

577. Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

578. Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiffs in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

579. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C. **COUNT TWENTY-SIX**

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS JANE G. DOE; JANE J. DOE; AND JANE S. DOE BY JANE T. DOE**
**AGAINST DEFENDANT TWISTARS**

580. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

581. An agent is a person who is authorized by another to act on its behalf.

582. Defendant Twistars intentionally or negligently made representations that Defendant Nassar

was their employee, agent, and/or representative.

583.    On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

584.    Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

585.    Plaintiffs were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

586.    As a proximate cause of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### D.    COUNT TWENTY-SEVEN

**NEGLIGENT SUPERVISION**
**PLAINTIFFS JANE G. DOE; JANE J. DOE; AND JANE S. DOE BY JANE T. DOE**
**AGAINST DEFENDANT TWISTARS**

587.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

588.    Defendant Twistars each had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female

athletes including Plaintiffs.

589. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe, unless properly supervised.

590. Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1997 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

591. Defendant Twistars breached its duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe.

592. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

593. Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe with impunity.

594. As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to

suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### E. COUNT TWENTY-EIGHT

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS JANE G. DOE; JANE J. DOE; AND JANE S. DOE BY JANE T. DOE**
**AGAINST DEFENDANT TWISTARS**

595. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

596. Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

597. As early as 1997, Defendant Twistars, by a complaint made to its owner/employee/agent/representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

598. Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

599. Defendant Twistars had a duty to warn or protect Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

600. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of

Defendant Twistars and Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe.

601. Defendant Twistars breached said duty by failing to warn Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe and/or by failing to take reasonable steps to protect Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe from Defendant Nassar.

602. Defendant Twistars breached its duties to protect Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

603. Defendant Twistars breached its duties to protect Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe by failing to investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

604. Defendant Twistars failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe's rights.

605. Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe from Defendant Nassar's conduct.

606. As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue

to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### F. COUNT TWENTY-NINE

#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
PLAINTIFFS JANE G. DOE; JANE J. DOE; AND JANE S. DOE BY JANE T. DOE
AGAINST DEFENDANT TWISTARS

607. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

608. Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

609. A reasonable person would not expect Defendant Twistars to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

610. Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar, seek his services, and to not question his methods or motives.

611. Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars' reputation in the gymnastics community.

612. A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on their premises and at their facility.

613. Defendant Twistars' conduct as described above was intentional and/or reckless.

614. As a result of Defendant Twistars' conduct, Plaintiffs suffered discomfort, bleeding, urinary

tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

G.     **COUNT THIRTY**

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS JANE G. DOE; JANE J. DOE; AND JANE S. DOE BY JANE T. DOE**
**AGAINST DEFENDANT TWISTARS**

615.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

616.    From approximately 1996 to September 2016, Defendant Twistars represented to Plaintiffs Jane G. Doe, Jane J. Doe, Jane S. Doe by Jane T. Doe, and the public that Defendant Nassar was a competent, ethical, and safe physician.

617.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented to Plaintiffs Jane G. Doe, Jane J. Doe, Jane S. Doe by Jane T. Doe, and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Jane G. Doe, Jane J. Doe, Jane S. Doe by Jane T. Doe, and the public need not worry about being harmed by Defendant Nassar.

618.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe and an unknown number of individuals, at times at Defendant Twistars'

facility.

619. As early as 1997, Defendant Twistars knew their representations of Defendant Nassar were false as Defendant Twistars received a complaint of Defendant Nassar's conduct.

620. Between the time of the 1997 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician.

621. Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe relied on the assertions of Defendants Twistars and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

622. Plaintiffs Jane G. Doe, Jane J. Doe, and Jane S. Doe by Jane T. Doe were subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent misrepresentations regarding Defendant Nassar.

623. As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## IX. CLAIMS AGAINST NASSAR

### A. COUNT THIRTY-ONE

**ASSAULT & BATTERY**
**ALL PLAINTIFFS AGAINST**
**DEFENDANT LAWRENCE NASSAR**

624. Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

625.	The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

626.	Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

627.	Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

628.	Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching some of Plaintiffs' breasts without notice or explanation of the "treatment."

629.	Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

630.	As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## B. COUNT THIRTY-TWO

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR

631. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

632. Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiffs, and an unknown number of other individuals, minors, and young adults.

633. Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

634. A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

635. Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs over several years, from approximately 1996 to 2016.

636. Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

637. As a direct and/or proximate result of Defendant Nassar's outrageous conduct Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing

Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## X.     **DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION**

638.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

639.     As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

640.     The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

641.     In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

642.     The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an

amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a) Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c) Reasonable attorney fees, interest, and costs; and,

d) Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Dated: January 10, 2017          By:     /s/ Stephen R. Drew
                                          Stephen R. Drew (P24323)
                                          Adam C. Sturdivant (P72285)
                                          DREW, COOPER & ANDING
                                          Attorneys for Plaintiffs
                                          80 Ottawa Avenue NW, Suite 200
                                          Grand Rapids, Michigan 49503
                                          Phone: (616) 454-8300
                                          E-mail: sdrew@dca-lawyers.com
                                          E-mail: asturdivant@dca-lawyers.com

Dated: January 10, 2017          By:     /s/ John C. Manly (with permission)
                                          John C. Manly (CA 149080)
                                          Vince W. Finaldi (CA 238279)
                                          Alex E. Cunny (CA 291567)
                                          MANLY, STEWART & FINALDI
                                          Attorneys for Plaintiffs
                                          19100 Von Karman Avenue, Suite 800

Irvine, California 92612
Phone: (949) 252-9990
E-mail: jmanly@manlystewart.com
E-mail: vfinaldi@manlystewart.com
E-mail: acunny@manlystewart.com
*W.D. Michigan Admission Pending*

## JURY DEMAND

Plaintiffs, DREW, COOPER & ANDING, and MANLY, STEWART & FINALDI, hereby

demand a trial by jury on all claims set forth above.

Dated: January 10, 2017      By:    /s/ Stephen R. Drew
                                                 Stephen R. Drew (P24323)
                                                 Adam C. Sturdivant (P72285)
                                                 DREW, COOPER & ANDING
                                                 Attorneys for Plaintiffs
                                                 80 Ottawa Avenue NW, Suite 200
                                                 Grand Rapids, Michigan 49503
                                                 Phone: (616) 454-8300
                                                 E-mail: sdrew@dca-lawyers.com
                                                 E-mail: asturdivant@dca-lawyers.com

Dated: January 10, 2017      By:    /s/ John C. Manly (with permission)
                                                   John C. Manly (CA 149080)
                                                 Vince W. Finaldi (CA 238279)
                                                 Alex E. Cunny (CA 291567)
                                                 MANLY, STEWART & FINALDI
                                                 Attorneys for Plaintiffs
                                                 19100 Von Karman Avenue, Suite 800
                                                 Irvine, California 92612
                                                 Phone: (949) 252-9990
                                                 E-mail: jmanly@manlystewart.com
                                                 E-mail: vfinaldi@manlystewart.com
                                                 E-mail: acunny@manlystewart.com
                                                 *W.D. Michigan Admission Pending*