# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER;  JANE
A. DOE by next friend JANE B. DOE;
JANE C. DOE; JANE D. DOE;  JANE
E. DOE; JANE F. DOE;  JANE G.
DOE; JANE H. DOE;  JANE J. DOE;
JANE K. DOE by next friend JANE L.
DOE; JANE M. DOE; JANE N. DOE;
JANE O. DOE; JANE P. DOE by next
friend JANE Q. DOE; JANE R. DOE;
JANE S. DOE by next friend JANE T.
DOE; JANE U. DOE; JANE X. DOE,

             Plaintiff,

**&**

**JANE Y. DOE,**

             Intervener-Plaintiff,

**V**

**MICHIGAN STATE UNIVERSITY;
THE BOARD  OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR
(individual and official capacity); USA
GYMNASTICS, INC.; TWISTARS USA,
INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA**

             **Defendants.**

Case No.: 1:17-cv-00029-GJQ-ESC

Hon. Gordon J. Quist

Complaint and Jury Demand of
Intervener-Plaintiff Jane Y. Doe

---

**Stephen R. Drew (P24323)**
**Adam C. Sturdivant (P72285)**
Drew, Cooper & Anding
Attorneys for Plaintiffs
80 Ottawa Avenue NW, Suite 200
Grand Rapids, MI 49503
Ph.: (616) 454-8300
E: sdrew@dca-lawyers.com
E: asturdivant@dca-lawyers.com

**John C. Manly (CA 149080)**
**Vince W. Finaldi (CA 238279)**
**Alex E. Cunny (CA 291567)**
Manly, Stewart & Finaldi
Attorneys for Plaintiffs
19100 Von Karman Avenue, Suite 800
Irvine, CA 92612
Ph.: (949) 252-9990
E: jmanly@manlystewart.com
E: vfinaldi@manlystewart.com
E: acunny@manlystewart.com

**James White (P56946)**
**John W. Fraser (P79908)**
**Alexander S. Rusek (P77581)**
White Law PLLC
Attorneys for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com
E: johnfraser@whitelawpllc.com
E: alexrusek@whitelawpllc.com

---

### INTERVENER-PLAINTIFF JANE Y. DOE'S COMPLAINT

---

**NOW COMES** Intervener-Plaintiff Jane Y. Doe ("Plaintiff"), by and through her attorneys, White Law PLLC, and for her Complaint states and alleges:

### I.        PRELIMINARY STATEMENT

1.  This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff Jane Y. Doe as a result of the acts and omissions of Lawrence Nassar, D.O. ("Nassar"), Michigan State University ("MSU"), the Board of Trustees of Michigan State University, USA Gymnastics ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiff, who was a minor when the sexual assaults took place.

### II.        JURISDICTION AND VENUE

2.  Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

3.  This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, as more fully set forth herein.

2

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which grants subject matter jurisdiction to district courts over all civil actions arising under the Constitution, laws, and treaties of the United States.

6. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants subject matter jurisdiction to district courts over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1332 as it relates to Plaintiff's claims against Defendant USAG for the reason that 28 U.S.C. § 1332 grants subject matter jurisdiction to district court over all civil actions where the amount in controversy is greater than $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.

8. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide all claims arising under Michigan state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9. Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. §1681 *et seq.*, and under Michigan law.

10. The events giving rise to Plaintiff's complaint occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

11. Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

12. Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. § 600.6431, Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on January 18, 2017. (Exhibit 1).

### III.    PARTIES

13. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

14. Plaintiff Jane Y. Doe is an adult female and is a resident of Michigan.

15. Plaintiff's name has been withheld from this Complaint to protect her identity as she was a minor child at the time the sexual abuse occurred.[1]

16. Defendant Lawrence Nassar (hereinafter "Nassar"), is a Doctor of Osteopathic Medicine, and is a resident of Michigan.

17. From approximately 1996 to 2016, Nassar worked for Defendant Michigan State University in various positions and capacities.

18. From 1986 to approximately 2015, Nassar also worked for Defendant USA Gymnastics in various positions and capacities.

19. Defendant Michigan State University (hereinafter "MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the State of

---

[1] Plaintiff will seek an Order of the Court regarding disclosure of Plaintiff's identity and the conditions for disclosure.

Michigan.

20. MSU receives federal financial assistance and is therefore  subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

21. Defendant The Board of Trustees of Michigan State University (hereinafter "MSU Trustees") is the governing body for Michigan State University.

22. Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

23. Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Defendant Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

24. M. Peter McPherson is the immediate Past President of Defendant MSU and served as President from approximately 1993 – 2004.

25. William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at MSU, serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

26. Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at MSU.

27. Defendant United States of America Gymnastics (hereinafter "USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including the State of Michigan.

28. Steve Penny is the current president of USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of USAG.

29. Robert Colarossi is the past president of USAG and held the position from approximately 1998

to 2005 and during that time was responsible for overall management and strategic planning of USAG.

30. Defendant Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA (hereinafter "Twistars") was and continues to be an organization incorporated in Michigan.

31. John Geddert was at all relevant times and still is the owner and operator of Twistars.

## IV.   FACTUAL ALLEGATIONS

32. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

33. At all relevant times, Nassar maintained an office at MSU in East Lansing, Michigan.

34. At all relevant times, MSU, MSU Trustees, and Nassar were acting under color of law, specifically under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan or MSU.

35. At all relevant times, Nassar was acting in the scope of his employment or agency with MSU.

36. At all relevant times, Nassar was acting in the scope of his employment or agency with USAG.

37. At all relevant times, Nassar was acting in the scope of his employment or agency with Twistars.

38. Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

39. From approximately 1998 to 2015, Nassar was employed by USAG in various positions, including the following positions: (a) Certified Athletic Trainer; (b) Osteopathic Physician; (c) National Medical Director; (d) National Team Physician, USA Gymnastics; and (e) National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

40. From approximately 1996 to 2016, Nassar was employed by MSU in various positions, including the following positions: (a) Associate Professor, MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; (b) Team Physician, MSU's Men's and Women's Gymnastics Teams; (c) Team Physician, MSU's Men's and Women's Track Field

Teams; (d) Team Physician, MSU's Men's and Women's Crew Teams; (e) Team Physician, MSU's Intercollegiate Athletics; (f) Medical Consultant, MSU's Wharton Center for the Performing Arts; and (g) Advisor, Student Osteopathic Association of Sports Medicine.

41. Twistars is a gymnastics facility with which Nassar was affiliated since approximately 1996.

42. John Geddert ("Geddert") served as the USA World and Olympic Women's Gymnastics Team Head Coach.

43. Geddert regularly recommended Nassar as a reputable physician to athletes who trained at Twistars.

44. Twistars displayed at least one photograph of Nassar at its facility for an extended period of time.

45. Nassar acted as an agent of Twistars and regularly provided services or treatment to Twistars' members and to USAG members that trained at Twistars' facility.

46. Nassar is a doctor of osteopathic medicine and has never been a doctor of obstetrics or gynecology.

47. While employed by MSU and USAG, Nassar practiced medicine at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

48. During Nassar's employment, agency, and representation with the MSU Defendants, USAG, and Twistars, Nassar sexually assaulted, battered, abused, and molested Plaintiff by touching her genital area and digitally penetrating her vagina without Plaintiff's consent and without the consent of Plaintiff's parents.

49. Plaintiff started training at Twistars in approximately 2004.

50. After suffering a back injury in approximately 2008, Twistars instructed Plaintiff to seek treatment with Nassar.

51. During her initial visits with Nassar, Plaintiff would visit Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

52. For later treatments, Plaintiff would have her appointments with Nassar at his office at Twistars and at Nassar's house.

53. Plaintiff treated with Nassar from approximately 2008 until 2016, which is approximately the time that she heard of the allegations of abuse and impropriety against Nassar.

54. From approximately 2008 to 2012, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves or lubricant and without Plaintiff's consent or the consent of Plaintiff's parents.

55. Plaintiff was a minor when the sexual abuse happened, as she did not reach the age of majority until 2013.

56. Nassar would usually begin treatments by looking at the alignment of Plaintiff's back. Then, Nassar would massage Plaintiff's back and move downwards toward her buttocks. Nassar would then put his hands on Plaintiff's genital area, push on the sides of her vagina, and rub her vagina over the top of her clothes. From there, Nassar would reach is hand into Plaintiff's underwear and rub Plaintiff's bare skin on and around her vagina. Finally, Nassar would digitally penetrate Plaintiff's vagina.

57. Nassar also performed acupuncture on Plaintiff's buttocks and under her underwear near her groin area.

58. Nassar would not wear gloves during these "treatments."

59. These "treatments" would occur approximately three times per week and would take place in a back room at Twistars, in the basement of Nassar's home, or at Nassar's office at MSU.

60. During this four-year period, Nassar sexually assaulted, battered, abused, and molested Plaintiff

by rubbing and digitally penetrating her vagina without gloves on approximately six hundred different occasions.

61. Plaintiff suffered several bladder infections during this time, which may have been the result of Nassar's treatment.

62. The State of Michigan Department of Licensing and Regulatory Affairs has promulgated rules related to Occupational Health Standards to prevent the spread of bloodborne infectious diseases, including rules mandating the use of gloves when there is a possible exposure to vaginal secretions. Michigan Administrative Code, R. 325.70001 *et seq.*

63. Nassar's decision to willfully violate these rules by not wearing gloves is indicative of his motive for self-gratification in his sexual abuse of Plaintiff.

64. Plaintiff did not treat and never intended to treat with Nassar for OB/GYN issues.

65. Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff or Plaintiff's parents even though she was a minor at the time.

66. Neither Plaintiff nor Plaintiff's parents consented to any touching, rubbing, or digital penetration of Plaintiff's vagina.

67. Nassar's conduct and actions taken against Plaintiff constituted sexual assault, abuse, and molestation and was undertaken for Nassar's pleasure and self-gratification.

68. Nassar used his position of trust and confidence in an abusive manner causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

69. Plaintiff and her parents had no reason to suspect Nassar was anything other than a competent and ethical physician.

70. Nassar would give Plaintiff gifts on occasion, such as a pin from his participation in the Olympic

games with USAG.

71. In addition, Nassar would also give Plaintiff gifts for her birthday, and he also gave Plaintiff a gift upon her matriculation to college.

72. Moreover, Nassar lived in the same neighborhood as Plaintiff and her parents, and Nassar had established a relationship of trust with both Plaintiff and her parents.

73. Nassar's actions of giving gifts further ingratiated himself into a position of trust with both Plaintiff and Plaintiff's parents.

74. In the fall of 2015, Plaintiff began attending MSU on an athletic scholarship.

75. Plaintiff is currently an NCAA student athlete attending MSU on athletic scholarship.

76. From approximately December of 2015 to September of 2016, Plaintiff continued treatments with Nassar at MSU.

77. During this period, Nassar again performed acupuncture on Plaintiff's pubic area.

78. In approximately September of 2016, a representative from MSU revealed to Plaintiff and the rest of Plaintiff's teammates that allegations of sexual abuse had been brought forward against Nassar.

79. This MSU representative also told Plaintiff and her teammates to respond, "No comment," to any questions from media or police and to forward any calls to the legal department.

80. Shortly after, a member of MSU's coaching staff told Plaintiff's mother that Nassar's digital penetrations of Plaintiff's vagina was a proven medical treatment.

81. When Plaintiff's mother talked to the member of MSU's coaching staff about the child pornography found on Nassar's property, the coaching staff member suggested that someone may have planted the child pornography on Nassar's property to frame Nassar

82. Plaintiff was also informed by a member of the MSU athletic department that her personal cellular telephone could be subject to "checks."

83. Plaintiff understood this statement to mean that MSU intended to randomly check her personal cellular telephone to ensure that she was not speaking with police or media regarding the allegations against Nassar.

84. For over 20 years, Nassar had unrestricted and unmonitored access to young female athletes through the Sports Medicine Clinic at MSU, USAG, and Twistars, who all regularly and routinely referred young female athletes to his care.

85. In 1999, an MSU student athlete reported to trainers and her coach, who were both employees of MSU, concerns about Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

86. In 2000, another MSU student athlete reported to trainers concerns about Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

87. Additional complaints regarding Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Nassar to address hip pain and was sexually abused and molested by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[2]

88. Upon information and belief, MSU investigated the 2014 complaints through their Office of Institutional Equity, and some critical facts were omitted from the investigative report including the fact that Nassar was sexually aroused while touching her and that the complainant's appointment with Nassar did not end until she physically removed his hands from her body.

89. Three months after initiating the investigation, the victim's complaints were dismissed and MSU determined the complainant did not understand the "nuanced difference" between sexual

---

[2] *See* Matt Mencarini, *At MSU: Assault, Harassment and Secrecy*, LANSING STATE JOURNAL (Dec. 15, 2016), http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/.

assault and an appropriate medical procedure and deemed Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."[3]

90. Following the investigation, upon information and belief, Nassar became subject to new institutional guidelines at MSU, one of which was that Defendant Nassar was not to examine or treat patients alone.

91. Nassar ignored or otherwise refused to comply with these guidelines and continued to treat patients alone, and MSU did not take appropriate measures to ensure that these institutional guidelines were enforced and adhered to.

92. As early as 1999, representatives of MSU were made aware of Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiff and other young athletes through approximately 2016.

93. MSU's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, 42 U.S. C. § 1983, as well as other Federal and State laws.

94. MSU's failure to properly supervise Nassar and their negligence in retaining Nassar was in violation of Michigan common law.

95. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[4]

96. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

---

[3] *Id.*
[4] State of Michigan, Ingham County Circuit Court Case No. 1603031.

97. The acts, conduct, and omissions of Defendants Michigan State University and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiff by Nassar, which has been devastating for Plaintiff and her family.

98. This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student/physician-on-athlete sexual assault, battery, abuse, and molestation.

## V.    CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A.  COUNT ONE – VIOLATIONS OF TITLE IX, 20 U.S.C. § 1681(a) *et seq.*, AS TO DEFENDANTS MSU AND MSU TRUSTEES

99. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

100. "No *person* in the United States shall on the basis of sex, be . . . subject to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a) (emphasis added).

101. "Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities." U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, Apr. 4, 2011, at 4 n11, https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html (last visited Jan. 25, 2017).

102. Plaintiff is a "person" within the meaning of 20 U.S.C. § 1681(a).

103. MSU receives federal financial assistance for its education program and is therefore subject to

the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 *et seq.*

104. MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment, including, specifically, allegations that sexual abuse, sexual assault, or sexual harassment has been committed by an employee. U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

105. Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the general public.

106. Nassar's actions and conduct toward Plaintiff of nonconsensual sexual assault, battery, and molestation, which includes unconsented touching and rubbing of Plaintiff's genitalia and unconsented digital penetration of Plaintiff's vagina, constitute sex discrimination under Title IX.

107. As early as 1999 and 2000, an appropriate person at MSU had knowledge of acts committed by Nassar that constituted sex discrimination under Title IX.

108. MSU failed to carry out their duties to investigate and take corrective action under Title IX in 1999 and 2000.

109. The MSU Defendants were notified again in 2014 that Nassar had committed acts that constituted sex discrimination under Title IX when a victim reported that she had an appointment with Nassar to address hip pain and was sexually assaulted by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.

110. MSU's investigative report regarding the 2014 acts omitted certain key facts that were reported by the victim, such as the fact that Nassar was sexually aroused while touching her and that the victim had to physically remove Nassar's hands from her body to end the appointment.

111. After the investigation, MSU Defendants determined that the victim had only experienced

appropriate medical treatment and not sexual assault and dismissed her complaint.[5]

112.  The MSU Defendants failed to adequately supervise Defendant Nassar even though MSU had actual knowledge that Nassar posed a substantial risk of additional sexual abuse of females to whom he had unfettered access.

113.  After the 1999, 2000, and 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals.

114.  The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

    a.  failing to investigate and address complaints against Defendant Nassar of sexual assault in 1999 and 2000 as required by Title IX;

    b.  failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

    c.  failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

115.  The MSU Defendants acted with deliberate indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Defendant Nassar's conduct toward female athletes, and his access to young girls and young women.

116.  The MSU Defendants' deliberate indifference is further confirmed by the Department of Education's investigation into MSU's handling of sexual assault and relationship violence allegations, which revealed:

---

5 *See* Matt Mencarini, *At MSU: Assault, Harassment and Secrecy* (Dec. 15, 2016), http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual- assault-harassment-larry-nassar/94993582/.

a. That the MSU Defendants' failure to adequately respond to allegations of sexual assault created a sexually hostile environment and affected numerous students and staff on MSU's campus;

b. That the MSU Defendants' failure to address complaints of sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[6]

117. The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

118. The MSU Defendants' failure to promptly and appropriately investigate and remedy the 1999, 2000, and 2014 complaints of sexual assault resulted in Plaintiff being subject to further harassment and a sexually hostile environment, effectively denying her access to educational opportunities at MSU, including medical care.

119. As a direct and/or proximate result of the MSU Defendants' actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

---

[6] *See* Letter from U.S. Department of Education, Office for Civil Rights to Michigan State University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015), https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

B.  COUNT TWO – VIOLATIONS OF CIVIL RIGHTS, 42 U.S.C. § 1983, AS TO
DEFENDANTS MSU AND MSU TRUSTEES AND DEFENDANT NASSAR

120.  Plaintiff realleges and incorporates by reference the allegations contained in the preceding

paragraphs.

121.  Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of

the Fourteenth Amendment to the United States.

122.  Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion

of bodily integrity through sexual assault, abuse, or molestation.

123.  At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of

law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the

State of Michigan and/or Defendant Michigan State University.

124.  The acts as alleged above amount to a violation of these clearly established constitutionally

protected rights, of which reasonable persons in the MSU Defendants' positions should have

been aware.

125.  The MSU Defendants have the ultimate responsibility and authority to train and supervise its

employees, agents, and representatives, in the appropriate manner of detecting, reporting, and

preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or

practice failed to do so with deliberate indifference.

126.  As a matter of custom, policy, and and/or practice, the MSU Defendants have the ultimate

responsibility and authority to investigate complaints against their employees, agents, and

representatives from all individuals including, but not limited to, students, visitors, faculty, staff,

or other employees, agents, and representatives, and failed to do so with deliberate indifference.

127.  The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their

campus and premises, that duty arising under the above-referenced constitutional rights, as well

as established rights pursuant to Title IX.

128.  Defendant MSU's internal policies provide that "[a]ll University employees . . . are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further that "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event."[7]

129.  This policy was violated in or around 1999 when a victim reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

130.  Defendant MSU's internal policies were again violated in 2000 when another victim reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

131.  The MSU Defendants' failure to address the 1999 and 2000 complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

132.  Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

133.  Ultimately, Defendants failed to adequately and properly investigate complaints, including but not limited to failing to:

---

[7] Michigan State University, *University Policy on Relationship Violence & Sexual Misconduct* 19-20, https://www.hr.msu.edu/documents/uwidepolproc/RVSMPolicy.pdf.

      a.   perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints in 1999 and 2000;

      b.   thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

      c.   recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and

      d.   ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

134. As indicated in the U.S. Department of Education Office of Civil Rights report,[8] the MSU Defendants allowed a sexually hostile environment to exist, affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

135. As also discussed in the report, Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

136. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

137. The MSU Defendants are also liable to Plaintiff under 42 U.S.C. § 1983 for maintaining

---

[8] *See* Letter from U.S. Department of Education, Office for Civil Rights to Michigan State University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015), https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

customs, policies, practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution.

138. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar continued to violate the rights of persons such as Plaintiff with impunity.

139. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## C.  COUNT THREE – FAILURE TO TRAIN AND SUPERVISE, IN VIOLATION OF 42 U.S.C. § 1983, AS TO DEFENDANTS MSU AND MSU TRUSTEES

140. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

141. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

142. The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

    a.  Perceive, report, and stop inappropriate sexual conduct on campus;

    b.  Provide diligent supervision over student-athletes and other individuals;

    c.  Report suspected incidents of sexual abuse or sexual assault;

    d.  Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

    e.  Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

    f.  Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

143. The above list of duties is not exhaustive.

144. The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

145. As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

146. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## D.  COUNT FOUR – GROSS NEGLIGENCE AS TO THE DEFENDANTS MSU AND MSU BOARD OF TRUSTEES AND DEFENDANT NASSAR

147. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

148. The MSU Defendants owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

149. Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

150. By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

151. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

152. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

153. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

154. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

155. The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with

reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

156. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## E.  COUNT FIVE – NEGLIGENCE AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES AND DEFENDANT NASSAR

156. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

157. The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

158. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

159. The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached their duty of ordinary care.

160. The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

23

161.  The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

162.  The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

163.  Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of his duty to use ordinary care.

164.  As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

F.  COUNT SIX – VICARIOUS LIABLITY AGAINST DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

165.  Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

166.  Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so. *See generally Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009).

167.  Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

168.  The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or  representative from approximately 1996 to 2016.

169.    Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[9]

170.    The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

171.    As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

G.  COUNT SEVEN - EXPRESS/IMPLIED AGENCY AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

172.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

173.    An agent is a person who is authorized by another to act on its behalf.

174.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

---

[9] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

175.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

176.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

177.    Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and/or representatives who would exercise reasonable skill and care.

178.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

H.  COUNT EIGHT - NEGLIGENT SUPERVISION AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

179.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

180.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiff.

181.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in

particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

182.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

183.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

184.    The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

185.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

186.    As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

27

## I.  COUNT NINE - NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

187.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

188.    The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

189.    As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

190.    The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

191.    The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

192.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and/or  representative of the MSU Defendants and Plaintiff.

193.    The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

194.    The MSU Defendants breached its duties to protect Plaintiff by failing to:

      A.  respond to allegations of sexual assault, abuse, and molestation;

      B.  detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

      C.  investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

195.    The MSU Defendants failed to adequately screen, counsel and/or discipline

Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

196.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

197.    As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## J.  COUNT TEN - NEGLIGENT FAILURE TO TRAIN OR EDUCATE AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

198.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

199.    The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

200.    The MSU Defendants failed to implement reasonable safeguards to:

     A.  Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

     B.  Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiff and other young athletes.

201.    As a direct and/or proximate result of the MSU Defendants' negligent failure to train or

educate, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## K.  COUNT ELEVEN - NEGLIGENT RETENTION AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

202.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

203.    The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

204.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

205.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

206.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff and an unknown number of other individuals.

207.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

208.    As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

L.  COUNT TWELVE - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

209.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

210.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

211.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

212.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

213.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

214.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

31

215.    The MSU Defendants' conduct as described above was intentional and/or reckless.

216.    As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## M.  COUNT THIRTEEN - FRAUD AND MISREPRESENTATION  AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

217.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

218.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent and safe physician.

219.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

220.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

221.    After the complaints brought to MSU representatives in 1999 and 2000 regarding Defendant Nassar's conduct, the MSU Defendants knew their representations of Defendant Nassar were false.

222.    Although MSU was informed of Defendant Nassar's conduct, they failed to investigate, remedy, or in any way address the complaints in 1999 and 2000.

223.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

224.    Additional complaints against Defendant Nassar surfaced in 2014; however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiff and an unknown number of other individuals.[10]

225.    Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

226.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade Plaintiff and other potential victims of Defendant Nassar from speaking with police or the media by advising Plaintiff and her teammates to respond "No comment" to any requests by media or police and by suggesting that Plaintiff's personal cellular phone could be checked for police or media contact.

227.    These actions of the MSU Defendants were purportedly done as an attempt to hide the known instances of sexual abuse committed by Defendant Nassar.

228.    Plaintiff relied on the assertions of the MSU Defendants and continued to seek treatment from

---

[10] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

Defendant Nassar while the MSU Defendant knew of the concerns and dangers.

229.     Plaintiff was subjected to sexual assault, abuse, and molestation as a result of the MSU

Defendants' fraudulent misrepresentations regarding Defendant Nassar.

230.     As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations,

Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be

prevented from performing daily activities and obtaining the full enjoyment of life, and has

sustained and continues to sustain loss of earnings and earning capacity.

## VI.     CLAIMS AGAINST USA GYMNASTICS

### A.  COUNT FOURTEEN - GROSS NEGLIGENCE AS TO DEFENDANT USAG AND DEFENDANT NASSAR

231.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding

paragraphs.

232.    Defendant USA Gymnastics ("USAG") owed Plaintiff a duty to use due care to ensure their

safety and freedom from sexual assault, abuse, and molestation while interacting with their

employees, representatives, and/or agents.

233.     Plaintiff was a member of USAG, participated in USAG sanctioned events, and was

knowledgeable of and in some cases was referred to Defendant Nassar for medical treatment

through USAG affiliations.

234.     Defendant Nassar owed Plaintiff a duty to use due care in his capacity as an employee,

representative, and/or agent of Defendant USAG.

235.     By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent,

and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship

between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

236.   Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

237.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

238.   Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiff's safety.

239.   Defendant USAG's conduct as described above, demonstrated a willful disregard for the substantial risks to Plaintiff.

240.   Defendant USAG breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements.

241.   Said acts were committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

242.   As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B. COUNT FIFTEEN – NEGLIENCE AS TO DEFENDANT USAG AND DEFENDANT NASSAR

243.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

244.    Defendant USAG owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

245.    Plaintiff, as a member of the USAG, had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

246.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

247.    Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment.

248.    Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

249.    Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

250.    Defendant USAG's failure to inform Plaintiff and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

251.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff was a breach of the duty to use ordinary care.

252. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

C. COUNT SIXTEEN – VICARIOUS LIABILITY AS TO DEFENDANT USAG

253. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

254. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

255. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

256. Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

257. Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

258. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues

to sustain loss of earnings and earning capacity.

## D. COUNT SEVENTEEN – EXPRESS/IMPLIED AGENCY AS TO DEFENDANT USAG

259.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

260.    An agent is a person who is authorized by another to act on its behalf.

261.    Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

262.    On the basis of those representations, Plaintiff reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

263.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation carried out through his employment, agency, and/or representation with Defendant USAG.

264.    Plaintiff was injured because she relied on Defendant USAG to provide employees or  agents who would exercise reasonable skill and care.

265.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG P Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## E. COUNT EIGHTEEN – NEGLIGENT SUPERVISION AS TO DEFENDANT USAG

266.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

267.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or

representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiff.

268.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar, who had prior allegations, against him would sexually abuse children, including Plaintiff, unless properly supervised.

269.    Defendant USAG by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

270.    Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to sexually abuse Plaintiff.

271.    The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

272.    Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of Plaintiff and other young girls with impunity.

273.    As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues

to sustain loss of earnings and earning capacity.

## F.  COUNT NINETEEN – NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANT USAG

274.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

275.    Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were put in place by Defendant USAG.

276.    Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's position.

277.    Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

278.    Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

279.    Defendant USAG had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

280.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiff.

281.    Defendant USAG breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

282.    Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

283.    Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for

physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiff's rights.

284.    Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

285.    As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## G.  COUNT TWENTY – NEGLIGENT FAILURE TO TRAIN OR EDUCATE AS TO DEFENDANT USAG

286.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

287.    Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiff and other young girls from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals, including minors, about how to avoid such a risk.

288.    Defendant USAG failed to implement reasonable safeguards to:

    A.  Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    B.  Avoid placing Defendant Nassar in positions where he would be in unsupervised  contact and interaction with Plaintiff and other young athletes.

289.    As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate,

41

Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## H.  COUNT TWENTY-ONE – NEGLIGENT RETENTION AS TO DEFENDANT USAG

290.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

291.    Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

292.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

293.    Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

294.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff as well as an unknown number of other minors and young women.

295.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young women.

296.    As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiff

suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## I.  COUNT TWENTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT USAG

297.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

298.    Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

299.    A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

300.    Defendants USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

301.    Defendants USAG protected Defendant Nassar in part to bolster his national and international reputation in the gymnastics community.

302.    A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

303.    Defendant USAG's conduct as described above was intentional and/or reckless.

304.    As a direct and/or proximate result of Defendant USAG's conduct, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## J.  COUNT TWENTY-THREE – FRAUD AND MISREPRESENTATION AS TO DEFENDANT USAG

305.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

306.    From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was a competent, ethical, and safe physician.

307.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

308.    The representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

309.    Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiff, the MSU Defendants, or any other clubs or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

310.    Plaintiff relied on the assertions of Defendant USAG and continued to seek treatment of Defendant Nassar while Defendant USAG knew of the concerns and dangers.

311.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

312.    As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## VII.    CLAIMS AGAINST TWISTARS

### A. COUNT TWENTY-FOUR – GROSS NEGLIGENCE AS TO DEFENDANT TWISTARS AND DEFENDANT NASSAR

313.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

314.    Defendant Twistars owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

315.    Defendant Nassar owed Plaintiff a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

316.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

317.    Despite the known sexual abuse which has taken place in youth sports, particularly gymnastics, and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars failed to adequately supervise Defendant Nassar.

318.    Defendant Twistars' actions were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and other young athletes training at Twistars.

319.     Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

320.     Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

321.     Defendant Twistars' conduct, as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

322.     Defendant Twistars breached duties owed to Plaintiff and was grossly negligent, as demonstrated by the actions and inactions described above.

323.     Defendant Twistars acted with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

324.     As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

B. COUNT TWENTY-FIVE – NEGLIGENCE AS TO DEFENDANT TWISTARS AND DEFENDANT NASSAR

325.     Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

326.     In or around 1997, a parent of a gymnast at Defendant Twistars' facility complained to Mr.

Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

327.    Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

328.    Mr. Geddert owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation.

329.    In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiff and the public.

330.    Defendant Twistars breached the duty of ordinary care to Plaintiff and the public by failing to investigate the 1997 allegations of sexual abuse made to Mr. Geddert.

331.    Defendant Twistars breached the duty of ordinary care to Plaintiff and the public by failing to report the 1997 allegations, which were made to Mr. Geddert, to law enforcement.

332.    Plaintiff, as a member of Twistars, and in taking the recommendation of Mr. Geddert to seek medical treatment from Defendant Nassar, had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting her to sexual assault, abuse, or molestation.

333.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

334.    Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

335.    Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

336.    Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiff in the course of and under the guise of rendering medical

"treatment" breached of the duty to use ordinary care.

337.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

C. COUNT TWENTY-SIX – EXPRESS/IMPLIED AGENCY AS TO DEFENDANT TWISTARS

338.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

339.    An agent is a person who is authorized by another to act on its behalf.

340.    Defendant Twistars intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

341.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

342.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

343.    Plaintiff was injured because she relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

344.    As a proximate cause of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of

life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## D. COUNT TWENTY-SEVEN – NEGLIGENT SUPERVISION AS TO DEFENDANT TWISTARS

345.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

346.    Defendant Twistars each had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including Plaintiff.

347.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar, who had prior allegations of sexual abuse levied against him, would sexually abuse children, including Plaintiff unless properly supervised.

348.    Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and the 1997 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

349.    Defendant Twistars breached its duty to provide reasonable supervision of Defendant Nassar and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

350.    The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

351.     Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of Plaintiff and other young athletes with impunity.

352.     As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

E.  COUNT TWENTY-EIGHT – NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANT TWISTARS

353.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

354.     Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

355.     As early as 1997, Defendant Twistars, by a complaint made to its owner, employee, agent, and/or representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

356.     Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

357.     Defendant Twistars had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

358.     The duty to disclose this information arose by the special, trusting, confidential, and fiduciary

relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiff.

359.   Defendant Twistars breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

360.   Defendant Twistars breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

361.   Defendant Twistars breached its duty to protect Plaintiff by failing to investigate Defendant Nassar and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

362.   Defendant Twistars failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiff's rights.

363.   Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff and other young athletes from Defendant Nassar's conduct.

364.   As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

F.  COUNT TWENTY-NINE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
AGAINST AS TO TWISTARS

365.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding
paragraphs.

366.   Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually
assault, abuse, and molest minors and young adults at its facility and other places.

367.   A reasonable person would not expect Defendant Twistars to tolerate or permit their
employee, agent, or representative to carry out sexual assault, abuse, or molestation.

368.   Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn
encouraged Plaintiff and others to respect and trust Defendant Nassar, seek his services, and not
question his methods or motives.

369.   Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and
international reputation in the gymnastics community, and Twistars' reputation in the gymnastics
community.

370.   A reasonable person would not expect Defendant Twistars to be incapable of supervising
Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault,
abuse, and molestation on their premises and at their facility.

371.   Defendant Twistars' conduct as described above was intentional and/or reckless.

372.   As a result of Defendant Twistars' conduct, Plaintiff suffered discomfort and continues to
suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional
distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of
life, was prevented and will continue to be prevented from performing daily activities and
obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings
and earning capacity.

## G.  COUNT THIRTY – FRAUD AND MISREPRESENTATION AS TO DEFENDANT TWISTARS

373.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

374.    From approximately 2004 to 2012, Defendant Twistars represented to Plaintiff that Defendant Nassar was a competent, ethical, and safe physician.

375.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented to Plaintiff and the public that they need not worry about being harmed by Defendant Nassar.

376.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of individuals at Defendant Twistars' facility.

377.    As early as 1997, Defendant Twistars knew their representations of Defendant Nassar were  false because Defendant Twistars received a complaint of Defendant Nassar's conduct.

378.    Between the time of the 1997 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician to the public.

379.    Plaintiff relied on the assertions of Defendants Twistars and continued to seek treatment of Defendant Nassar while Defendant Twistars knew of the concerns and dangers.

380.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent   misrepresentations regarding Defendant Nassar.

381.    As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## VIII.    CLAIMS AGAINST LAWRENCE NASSAR

### A.  COUNT THIRTY-ONE – ASSAULT AND BATTERY AS TO DEFENDANT LAWRENCE NASSAR

382.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

383.    The acts committed by Defendant Nassar against Plaintiff described herein constitute  assault and battery, actionable under the laws of Michigan.

384.    Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the body of Plaintiff.

385.    Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant Nassar had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

386.    Defendant Nassar assaulted and battered Plaintiff by nonconsensual and unwanted digital vaginal penetration and acupuncture of her pubic area without notice or explanation of the "treatment."

387.    Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

388.    As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from

performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B. COUNT THIRTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST AS TO DEFENDANT NASSAR

389.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

390.   Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiff, and an unknown number of other minors and young adults.

391.   Defendant Nassar, in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment," exhibited conduct that is extreme, outrageous and/or reckless in nature.

392.   A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation and without giving the patient the opportunity to refuse "treatment" of that nature.

393.   Defendant Nassar's conduct was intentional or reckless as he sexually assaulted, abused, and molested Plaintiff on approximately six hundred different occasions from approximately 2008 to 2016.

394.   Defendant Nassar's conduct has caused and continues to cause Plaintiff to suffer emotional and psychological distress.

395.   As a direct and/or proximate result of Defendant Nassar's outrageous conduct Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues

to sustain loss of earnings and earning capacity.

### IX.   DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

396.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding

paragraphs.

397.    As a direct and/or proximate result of Defendants' actions and/or inactions stated above,

Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be

prevented from performing daily activities and obtaining the full enjoyment of life, and has

sustained and continues to sustain loss of earnings and earning capacity.

398.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts

and causes of action constitute violations of Plaintiff's Constitutional and Federal rights as well as

the common and/or statutory laws of the State of Michigan, and the United States District Court

has jurisdiction to hear and adjudicate said claims.

399.    In whole or in part, as a result of some or all of the above actions and/or inactions of

Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

400.    The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in

Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount

consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out

of law, equity, and fact for each or all of the above counts where applicable and hereby requests that

the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to

compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiff is

entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

    a)  Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

    b)  Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

    c)  Reasonable attorney fees, interest, and costs; and

    d)  Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

**Respectfully Submitted,**

Dated: January 27, 2017

/s/ James White
**James White (P56946)**
White Law PLLC
Attorney for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com


Dated: January 27, 2017

/s/ John W. Fraser
**John W. Fraser (P79908)**
White Law PLLC
Attorney for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: johnfraser@whitelawpllc.com

Dated: January 27, 2017                     /s/ Alexander S. Rusek
                                            **Alexander S. Rusek (P77581)**
                                            White Law PLLC
                                            Attorney for Plaintiff Jane Y. Doe
                                            2549 Jolly Road, Suite 340
                                            Okemos, Michigan 48864
                                            Ph.: (517) 316-1195
                                            Fax: (517) 316-1197
                                            W: www.whitelawpllc.com
                                            E: alexrusek@whitelawpllc.com

## JURY DEMAND

Plaintiff JANE Y. DOE, by and through her attorneys, WHITE LAW PLLC, hereby demands a trial by jury on all claims set forth above.


Dated: January 27, 2017                    /s/ James White_____

**James White (P56946)**
White Law PLLC
Attorney for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com


Dated: January 27, 2017                    /s/ John W. Fraser_____

**John W. Fraser (P79908)**
White Law PLLC
Attorney for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: johnfraser@whitelawpllc.com


Dated: January 27, 2017                    /s/ Alexander S. Rusek_____

**Alexander S. Rusek (P77581)**
White Law PLLC
Attorney for Plaintiff Jane Y. Doe
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: alexrusek@whitelawpllc.com