## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER;
JESSICA HOWARD; STERLING RIETHMAN;
LINDSEY SCHUETT;  JANE A1 DOE;
JANE A2 DOE; JANE A3 DOE; JANE A4 DOE;
JANE A5 DOE; JANE A6 DOE; JANE A7 DOE
JANE A8 DOE; JANE A9 DOE by Next Friend
 JANE A10 DOE; JANE A11 DOE; JANE A12 DOE;
JANE A13 DOE; JANE A14 DOE; JANE A15 DOE;
JANE A16 DOE by Next Friend JANE A17 DOE;
JANE A18 DOE; JANE A19 DOE; JANE A20 DOE
by Next Friend JANE A21 DOE;  JANE A22 DOE;
JANE A23 DOE; JANE A24 DOE;  JANE A25 DOE;
JANE A26 DOE; JANE A27 DOE; JANE A28 DOE;
JANE A29 DOE; JANE A30 DOE; JANE A31 DOE;
JANE A32 DOE; JANE A33 DOE; JANE A34 DOE;
JANE A35 DOE; JANE A36 DOE; JANE A37 DOE;
JANE A38 DOE; JANE A39 DOE; JANE A40 DOE;
JANE A41 DOE; JANE A42 DOE; JANE A43 DOE;
JANE A44 DOE; JANE A45 DOE; JANE A46 DOE;
JANE A47 DOE by Next Friend JANE A48 DOE;
JANE A49 DOE; JANE A50 DOE; JANE A51 DOE;
JANE A52 DOE BY Next Friend JANE A53 DOE;
JANE A54 DOE; JANE A55 DOE; JANE A56 DOE;
JANE A57 DOE; JANE A58 DOE; JANE A59 DOE;
JANE A60 DOE; JANE A61 DOE; JANE A62 DOE;
JANE A63 DOE; JANE A64 DOE; JANE A65 DOE;
JANE A66 DOE; JANE A67 DOE; JANE A68 DOE;
JANE A69 DOE;  JANE A70 DOE; JANE A71 DOE;
JANE A72 DOE by Next Friend JANE A73 DOE;
JANE A74 DOE;

      Plaintiffs,

v.

MICHIGAN STATE UNIVERSITY; THE BOARD
OF TRUSTEES OF MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR (individual and
official capacity); USA GYMNASTICS, INC.;
TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA,

      Defendants.

Case No. 1:17-cv-00029-GJQ-ESC


HON. GORDON J. QUIST


> **FOURTH AMENDED
> COMPLAINT AND RELIANCE
> ON JURY DEMAND**

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Plaintiffs
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

John C. Manly (CA 149080)
Vince W. Finaldi (CA 238279)
Alex E. Cunny (CA 291567)
MANLY, STEWART & FINALDI
Attorneys for Plaintiffs
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
E-mail: jmanly@manlystewart.com
E-mail: vfinaldi@manlystewart.com
E-mail: acunny@manlystewart.com

Scott R. Eldridge (P66452)
Megan P. Norris (P39318)
Brian M. Schwartz (P69018)
MILLER CANFIELD PADDOCK AND
STONE
Attorneys for Defendants Michigan State
University and the Michigan State
University Board of Trustees
One Michigan Ave, Suite 900
Lansing, Michigan 48933-1370
Phone: (517) 483-4918
E-mail: eldridge@millercanfield.com
E-mail: norris@millercanfield.com
E-mail: schwartz@millercanfield.com

Patrick Fitzgerald (admission pending)
Amy Van Gelder (admission pending)
Albert L. Hogan III (admission pending)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Attorneys for Defendants Michigan State
University and the Michigan State
University Board of Trustees
155 N. Wacker Drive
Chicago, Illinois 60606
Phone: (312) 407-0700
E-mail: Patrick.Fitzgerald@skadden.com
E-mail: Amy.VanGelder@skadden.com
E-mail: Al.Hogan@skadden.com

D. Andrew Portinga (P55804)
David J. Gass (P34582)
Rebecca L. Strauss (P64796)
MILLER JOHNSON PLC
Attorneys for USA Gymnastics Inc.
45 Ottawa, SW, Ste. 1100
P.O. Box 306
Grand Rapids, Michigan 49501-0306
Phone: (616) 831-1700
E-mail: portingaa@millerjohnson.com
E-mail: gassd@millerjohnson.com
E-mail: straussr@millerjohnson.com

Cameron R. Getto (P57300)
ZAUSMER AUGUST & CALDWELL, P.C.
Attorneys for Twistars USA Inc. d/b/a
Gedderts' Twistars Gymnastics Club USA
31700 Middlebelt Rd., Ste. 150
Farmington Hills, Michigan 48334
Phone: (248) 851-4111
E-mail: cgetto@zacfirm.com

Lawrence Gerard Nasssar
In Pro Per

**FOURTH AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND**

# TABLE OF CONTENTS

COMPLAINT AND JURY DEMAND ...................................................................1 –223

I.       PRELIMINARY STATEMENT AND INTRODUCTION ...................................1 – 8

II.      JURISDICTION AND VENUE .......................................................................8 – 9

III.    PARTIES AND KEY INDIVIDUALS ........................................................ 9 – 20

IV.    COMMON FACTUAL ALLEGATIONS .......................................................20 – 34

V.     SPECIFIC FACTUAL ALLEGATIONS ...................................................34 – 124

        A.    Rachael Denhollander .................................................34 – 36

        B.    Jessica Howard ..........................................................36 – 37

        C.    Lindsey Schuett ........................................................37 – 39

        D.    Sterling Riethman .....................................................39 – 41

        E.    JANE A1 DOE .........................................................41 – 42

        F.    JANE A2 DOE .........................................................42 – 43

        G.    JANE A3 DOE .........................................................43 – 44

        H.    JANE A4 DOE .........................................................44 – 45

        I.    JANE A5 DOE .........................................................45 – 47

        J.    JANE A6 DOE .........................................................47 – 48

        K.    JANE A7 DOE .........................................................48 – 49

        L.    JANE A8 DOE .........................................................49 – 50

        M.    JANE A9 DOE by Next Friend JANE A10 DOE .........................50 – 52

        N.    JANE A11 DOE .......................................................52 – 53

        O.    JANE A12 DOE .......................................................53 – 54

        P.    JANE A13 DOE .......................................................54 – 55

TOC

Q.      JANE A14 DOE ................................................................55 – 56

R.      JANE A15 DOE ................................................................56 – 57

S.      JANE A16 Doe by Next Friend JANE A17 DOE........................57 – 58

T.      JANE A18 DOE ................................................................58 – 60

U.      JANE A19 DOE ................................................................60 – 61

V.      JANE A20 DOE  by Next Friend JANE A21 DOE ...................... 61 - 62

W.      JANE A22 DOE ................................................................62 – 64

X.      JANE A23 DOE ................................................................64 – 65

Y.      JANE A24 DOE ................................................................65 – 66

Z.      JANE A25 DOE ................................................................66 – 67

AA.     JANE A26 DOE ................................................................67 – 68

BB.     JANE A27 DOE ................................................................68 – 70

CC.     JANE A28 DOE ................................................................70 – 71

DD.     JANE A29 DOE ................................................................71 – 72

EE.     JANE A30 DOE ................................................................73 – 74

FF.     JANE A31 DOE ................................................................74 – 75

GG.     JANE A32 DOE ................................................................75 – 76

HH.     JANE A33 DOE ................................................................76 – 77

II.     JANE A34 DOE ................................................................77 – 79

JJ.     JANE A35 DOE ................................................................79 – 80

KK.     JANE A36 DOE ................................................................80 – 82

LL.     JANE A37 DOE ................................................................82 – 83

MM.     JANE A38 DOE ................................................................83 – 84

NN.    JANE A39 DOE ...............................................................84 – 86

OO.    JANE A40 DOE ...............................................................86 – 87

PP.    JANE A41 DOE .......................................................................87

QQ.    JANE A42 DOE ...............................................................87 – 88

RR.    JANE A43 DOE ...............................................................88 – 89

SS.    JANE A44 DOE ...............................................................89 – 90

TT.    JANE A45 DOE ...............................................................90 – 91

UU.    JANE A46 DOE ...............................................................91 – 92

VV.    JANE A47 DOE by Next Friend JANE A48 DOE ......................... 93 - 94

WW.    JANE A49 DOE .......................................................................94

XX.    JANE A50 DOE ...............................................................94 – 95

YY.    JANE A51 DOE ...............................................................95 – 96

ZZ.    JANE A52 DOE by Next Friend JANE A53 DOE .........................96 – 97

AAA.    JANE A54 DOE ...............................................................97 – 98

BBB.    JANE A55 DOE ...............................................................98 – 99

CCC.    JANE A56 DOE ...............................................................99 – 100

DDD.    JANE A57 DOE ...............................................................100 – 102

EEE.    JANE A58 DOE ...............................................................102 – 103

FFF.    JANE A59 DOE .......................................................................104

GGG.    JANE A60 DOE ............................................................... 105 - 106

HHH.    JANE A61 DOE ...............................................................106 – 107

III.    JANE A62 DOE ...............................................................107 – 109

JJJ.    JANE A63 DOE ...............................................................109 – 110

LLL. JANE A64 DOE ..........................................................................110 – 111

MMM. JANE A65 DOE .......................................................................111 – 112

NNN. JANE A66 DOE ........................................................................113 – 114

OOO. JANE A67 DOE ........................................................................114 – 115

PPP. JANE A68 DOE .........................................................................115 – 117

QQQ. JANE A69 DOE ........................................................................117 – 119

RRR. JANE A70 DOE ..............................................................................119

SSS. JANE A71 DOE .........................................................................120 – 121

TTT. JANE A72 DOE by Next Friend JANE A73 DOE .....................121 – 122

UUU. JANE A74 DOE ........................................................................123 – 124

VI. FRAUDULENT CONCEALMENT ...............................................124 – 156

    A. DEFENDANT NASSAR ....................................................124 – 132

    B. THE MSU DEFENDANTS .................................................132 – 146

    C. DEFENDANT USA GYMNASTICS .................................146 – 151

    D. DEFENDANT TWISTARS ................................................. 151 - 156

VII. CLAIMS AGAINST MICHIGAN STATE UNIV. DEFENDANTS .............156 – 179

    A. COUNT ONE – Violations of Title IX ..............................156 – 160

    B. COUNT TWO – Violation of Civil Rights, 42 U.S.C. §1983 .............161 – 164

    C. COUNT THREE – Failure to Train and Supervise, 42 U.S.C. §1983 164 – 166

    D. COUNT FOUR – Gross Negligence v. MSU, Nassar .........................166 – 167

    E. COUNT FIVE– Negligence v. MSU, Nassar ....................167 – 169

    F. COUNT SIX– Vicarious Liability ......................................169 – 170

    G. COUNT SEVEN – Express/Implied Agency .....................170 – 171

H.      COUNT EIGHT – Negligent Supervision ............................................171 – 172

I.      COUNT NINE – Negligent Failure to Warn or Protect ......................172 – 174

J.      COUNT TEN– Negligent Failure to Train or Educate ........................174 – 175

K.      COUNT ELEVEN– Negligent Retention ............................................ 175 - 176

L.      COUNT TWELVE - Intentional Infliction of Emotional Distress ......176 – 177

M.      COUNT THIRTEEN – Fraud and Misrepresentation ........................177 – 179

VIII.      CLAIMS AGAINST USA GYMNASTICS ......................................................179 – 200

A.      COUNT FOURTEEN – Gross Negligence v. USAG, Nassar ...........179 – 183

B.      COUNT FIFTEEN – Negligence v. USAG, Nassar...........................183 – 187

C.      COUNT SIXTEEN – Vicarious Liability.............................................187 – 188

D.      COUNT SEVENTEEN – Express/Implied Agency ..........................188 – 189

E.      COUNT EIGHTEEN – Negligent Supervision ..................................189 – 191

F.      COUNT NINETEEN – Negligent Failure to Warn or Protect ............191 – 194

G.      COUNT TWENTY – Negligent Failure to Train or Educate..............194 – 195

H.      COUNT TWENTY-ONE – Negligent Retention ................................195 – 197

I.      COUNT TWENTY-TWO – Intentional Infliction of

Emotional Distress ...............................................................................197 – 198

J.      COUNT TWENTY-THREE- Fraud and Misrepresentation ...............199 – 200

IX.      CLAIMS AGAINST TWISTARS ..................................................................200 – 213

A.      COUNT TWENTY-FOUR – Gross Negligence v. Twistars, Nassar..200 – 202

B.      COUNT TWENTY-FIVE – Negligence v. Twistars, Nassar..............203 – 205

C.      COUNT TWENTY-SIX  – Express/Implied Agency .........................205 – 206

D.      COUNT TWENTY-SEVEN – Negligent Supervision.......................206 – 207

E.     COUNT TWENTY-EIGHT – Negligent Failure to Warn or Protect..208 – 210

F.     COUNT TWENTY-NINE - Intentional Infliction of

Emotional Distress ..................................................................210 – 211

G.     COUNT THIRTY– Fraud and Misrepresentation ...............211 – 213

X.     CLAIMS AGAINST NASSAR .......................................................213 – 218

A.     COUNT THIRTY-ONE – Assault and Battery ...................213 – 214

B.     COUNT THIRTY-TWO– Intentional Infliction of

Emotional Distress ..................................................................214 – 215

C.     COUNT THIRTY-THREE - Fraud and Misrepresentation ................215 – 218

XI.     DAMAGES .....................................................................................219 – 221

RELIANCE ON JURY DEMAND ................................................................222

<u>**COMPLAINT AND JURY DEMAND**</u>

NOW COME Plaintiffs, by and through their attorneys DREW, COOPER & ANDING, and MANLY, STEWART & FINALDI, and pursuant to the Stipulated Preliminary Scheduling Order[1] and hereby allege and state as follows:

**I.**      <u>**PRELIMINARY STATEMENT AND INTRODUCTION**</u>

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University ("MSU"), USA Gymnastics ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs, all female, many of whom were minors when the sexual assaults took place.

2.      Plaintiffs are or were young athletes participating in a variety of sports including gymnastics, swimming, figure skating, track and field, field hockey, basketball, and soccer.

3.      Defendant Nassar came highly recommended to Plaintiffs as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.      Plaintiffs and their parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

---

[1] PageID.5231. As the referenced Order was Stipulated by all parties, Plaintiffs submits this Amended Complaint without a Certificate of Concurrence pursuant to Local Rule 7.2 or Motion to Amend pursuant to Fed. R. Civ. P. 15. If the Court so requires submission of these documents Plaintiffs will promptly refile accordingly.

5.     From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.     From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.     For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8.     To gain Plaintiffs' trust, at appointments, Defendant Nassar would give some Plaintiffs gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without.

9.     From 1996 to 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs Jane A6 Doe, Jane A7 Doe, Jane A11 Doe, Jane A13 Doe, Jane A19 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A33 Doe, Jane A36 Doe, Jane A40 Doe, Jane A44 Doe, Jane A69 Doe, Jane A71 Doe, Lindsey Schuett, and Jessica Howard, some of whom were minors, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant. In some situations, he also touched and groped their breasts.

10.    Plaintiffs Jane A6 Doe, Jane A7 Doe, Jane A11 Doe, Jane A13 Doe, Jane A19 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A33 Doe, Jane A36 Doe, Jane A40 Doe, Jane A44 Doe, Jane A69 Doe, Jane A71 Doe, Schuett and Howard were seeking treatment for athletic injuries to their lower backs, shins, hamstrings, hip, tailbone, elbow, groin, foot, and knees.

11.    While most of the assaults were carried out at MSU, others were carried out at USAG

sponsored events, and Twistars.

12.  The ages of the Plaintiffs assaulted during 1996 to 1999 ranged from 9 to 22 years old.

13.  In 1999, Jane A19 Doe, a MSU student athlete, reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

14.  In 2000, Jane T.T. Doe, another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

15.  Many Plaintiffs were seen alone with only the individual Plaintiff and Defendant Nassar in the room, without chaperones.

16.  At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

17.  Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiffs Denhollander, Schuett, Riethman, Jane A1 Doe, Jane A2 Doe, Jane A3 Doe, Jane A4 Doe, Jane A5 Doe, Jane A6 Doe, Jane A8 Doe, Jane A9 Doe, Jane A11 Doe, Jane A12 Doe, Jane A13 Doe, Jane A14 Doe, Jane A15 Doe, Jane A16 Doe, Jane A18 Doe, Jane A20 Doe, Jane A19 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A25 Doe, Jane A26 Doe, Jane A27 Doe, Jane A28 Doe, Jane A29 Doe, Jane A30 Doe, Jane A31 Doe, Jane A32 Doe, Jane A34 Doe, Jane A35 Doe, Jane A36 Doe, Jane A37 Doe, Jane A38 Doe, Jane A39 Doe, Jane A40 Doe, Jane A41 Doe, Jane A42 Doe, Jane A43 Doe, Jane A44 Doe, Jane A45 Doe, Jane A46 Doe, Jane A47 Doe, Jane A49 Doe, Jane A50 Doe, Jane A51 Doe, Jane A54 Doe, Jane A55 Doe, Jane A56 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A61 Doe,

Jane A62 Doe, Jane A64 Doe Jane A66 Doe, Jane A67 Doe, Jane A68 Doe, Jane A69 Doe, Jane A70 Doe, Jane A71 Doe, Jane A72 Doe, and Jane A74 Doe, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts.

18.    While most victims were assaulted at MSU, other victims were assaulted at USAG sanctioned events, Twistars, and Defendant Nassar's residence.

19.    The ages of the Plaintiffs assaulted from 2000 to 2016 ranged from 9 to 29 years old.

20.    Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[2]

21.    Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

a.    Defendant Nassar was sexually aroused while touching her;

b.    The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

22.    Three months after initiating the investigation, in July 2014, the victim's complaints were

---

[2] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. (Last accessed January 5, 2017.)

dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[3]

23. Following the investigation, upon information and belief Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[4]

24. Defendant Nassar continued to treat patients alone.

25. Following the investigation, between approximately 2014 and 2016, Plaintiffs Jane A1 Doe, Jane A9 Doe, Jane A16 Doe, Jane A20 Doe, Jane A32 Doe, Jane A34 Doe, Jane A38 Doe, Jane A47 Doe, Jane A50 Doe, Jane A52 Doe, Jane A57 Doe, Jane A68 Doe, Jane A72 Doe, and Jane A74 Doe were sexually assaulted by Defendant Nassar.

26. Through his position with MSU, his notoriety, and support by USAG and Twistars, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiffs without any reasonable supervision by MSU or USAG.

27. Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiffs or their parents.

28. All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University or at Twistars.

29. The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs or their parents robbed them of the opportunity to reject the "treatment."

30. Defendant Nassar used his position of trust and confidence in an abusive manner causing

---

[3] *Id.*
[4] *Id.*

Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

31.  In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Plaintiff Denhollander's allegations against Defendant Nassar.

32.  Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

33.  Plaintiffs have been forced to relive the trauma of the sexual assaults.

34.  In summer 2015, USAG relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG failed to inform Michigan State University of the circumstances regarding his dismissal.

35.  As early as 1999, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiffs through approximately 2016.

36.  Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiffs was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, 42 U.S. C. §1983, as well as other Federal and State laws.

37.  MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

38.  In late November 2016, Defendant Nassar was arrested and charged in Ingham County,

Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[5]

39.     In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

40.     On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[6] and Eaton County, Michigan.[7] Plaintiff Denhollander is among the victims identified in the most recent state criminal charges.[8]

41.     The acts, conduct, and omissions of Defendants Michigan State University, USA Gymnastics, and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Defendant Nassar, which has been devastating for Plaintiffs and their families.

42.     This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights,

---

[5] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[6]*State v. Nassar*, Ingham County District Court Case No. 17-00425, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf
[7]*State v. Nassar*, Eaton County District Court Case No. 17-0318, *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf
[8] Although the sexual assault victims are not identified by name in the affidavits hyperlinked above, Plaintiff Denhollander has publicly identified herself as one of the victims. *See*, "Victim C" in Michigan State Dr. Larry Nassar case glad to see criminal charges, available at http://www.mlive.com/news/index.ssf/2017/02/victim_c_in_michigan_state_dr.html, last accessed March 1, 2017.

and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## II.     **JURISDICTION AND VENUE**

43. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.*, as more fully set forth herein.

44. This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

45. Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

46. Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

47. Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

48. The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20

U.S.C. §1681 *et seq.*, and under Michigan Law.

49.    The events giving rise to this lawsuit occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

50.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

51.    Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. §600.6431 Plaintiffs filed Notices of Intent to File Claim with the Michigan Court of Claims on November 29, 2016, December 21, 2016, January 9, 2017, January 24, 2017, March 10, 2017,  March 20, 2017, April 28, 2017, June 1, 2017, July 10, 2017, July 13, 2017, and August 16, 2017.[9]

## III.    <u>PARTIES AND KEY INDIVIDUALS</u>

52.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

53.    With the exception of Plaintiffs Rachael Denhollander, Jessica Howard, Lindsey Schuett, and Sterling Riethman, the names of the Plaintiffs have been withheld from this Complaint to protect their identities as some are currently minor children, or were minor children at the time the sexual abuse occurred.[10]

54.    Plaintiff Rachael Denhollander is a female and is a resident of Kentucky, but resided in

---

[9] Copies of Notices can be provided upon the Court's request.
[10] Plaintiffs will seek an Order of the Court regarding disclosure of Plaintiffs' identities and all conditions for disclosure.

Michigan at all relevant times as indicated below. Plaintiff Denhollander was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

55.     Plaintiff Jessica Howard[11] is an adult female and is a resident of New York. Plaintiff Howard was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

56.     Plaintiff Lindsey Schuett[12] is an adult female and is a resident of the Republic of Korea (South Korea) but resided in Michigan at all relevant times indicated below. Plaintiff Schuett was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

57.     Plaintiff Sterling Riethman[13] is an adult female and is a resident of Michigan.

58.     Plaintiff Jane A1 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A1 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

59.     Plaintiff Jane A2 Doe is an adult female and is a resident of Michigan.

60.     Plaintiff Jane A3 Doe is an adult female and is a resident of Illinois, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane A3 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

61.     Plaintiff Jane A4 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A4 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

62.     Plaintiff Jane A5 Doe is an adult female and is a resident of Washington, but resided in

---

[11] Previously identified as Jane J.H. Doe in the December 21, 2016 Notice of Intent.
[12] Previously identified as Jane B.H. Doe in the March 10, 2017 Notice of Intent.
[13] Previously identified as Jane B.O. Doe in the March 20, 2017 Notice of Intent.

Michigan at all relevant times as indicated below. Plaintiff Jane A5 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

63.     Plaintiff Jane A6 Doe is an adult female and is a resident of South Carolina, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane A6 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

64.     Plaintiff Jane A7 Doe is an adult female and is a resident of Arizona, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane A7 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

65.     Plaintiff Jane A8 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A8 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

66.     Plaintiff Jane A9 Doe is a minor female and is a resident of Michigan.

67.     Plaintiff Jane A10 Doe is an adult female, the mother of Plaintiff Jane A9 Doe, and is a resident of Michigan.

68.     Plaintiff Jane A11 Doe is an adult female and is a resident of Illinois, but resided in Michigan at all relevant times as indicated below. Plaintiff Jane A11 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

69.     Plaintiff Jane A12 Doe is an adult female and is a resident of California, but resided in Michigan at all relevant times as indicated below.

70.     Plaintiff Jane A13 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A13 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

71.     Plaintiff Jane A14 Doe is a minor female and is a resident of Michigan.

72. Plaintiff Jane Q. Doe is an adult female, the mother of Plaintiff Jane A14 Doe, and a resident of Michigan.

73. Plaintiff Jane A15 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A15 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

74. Plaintiff Jane A16 Doe is a minor female and is a resident of Michigan.

75. Plaintiff Jane A17 Doe is an adult female, the mother of Plaintiff Jane A16 Doe, and a resident of Michigan.

76. Plaintiff Jane A18 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A18 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

77. Plaintiff Jane A20 Doe is a minor female and is a resident of Michigan.

78. Plaintiff Jane A21 Doe is an adult female, the mother of Plaintiff Jane A20 Doe, and a resident of Michigan.

79. Plaintiff Jane A19 Doe is an adult female and is a resident of North Carolina but resided in Michigan at all relevant times as indicated below.

80. Plaintiff Jane A22 Doe is an adult female[14] and is a resident of Michigan.

81. Plaintiff Jane Z. Doe is an adult female, the mother of Plaintiff Jane A22 Doe and a resident of Michigan.

82. Plaintiff Jane A23 Doe is an adult[15] female and is a resident of Michigan.

---

[14] Plaintiff Jane A22 Doe originally sought to proceed by Next Friend Jane Z. Doe due to her age, but recently reached the age of majority.

[15] Plaintiff Jane A23 Doe originally sought to proceed by Next Friend Jane A.B. Doe due to her age, but recently reached the age of majority.

83. Jane A.B. Doe is an adult female, the mother of Plaintiff Jane A23 Doe, and a resident of Michigan.

84. Plaintiff Jane A24 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A24 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

85. Plaintiff Jane A25 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A25 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

86. Plaintiff Jane A26 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A26 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

87. Plaintiff Jane A27 Doe is an adult female and is a resident of Tennessee but resided in Michigan at all relevant times indicated below. Plaintiff Jane A27 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

88. Plaintiff Jane A28 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A28 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

89. Plaintiff Jane A29 Doe is an adult female and is a resident of Texas but resided in Michigan at all relevant times indicated below. Plaintiff Jane A29 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

90. Plaintiff Jane A30 Doe is an adult female and is a resident of Michigan.

91. Plaintiff Jane A31 Doe is an adult female and is a resident of Florida but resided in Michigan at all relevant times indicated below.

92.     Plaintiff Jane A32 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A32 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

93.     Plaintiff Jane A33 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A33 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

94.     Plaintiff Jane A34 Doe is an adult female and is a resident of Tennessee but resided in Michigan at all relevant times indicated below. Plaintiff Jane A34 Doe was a minor during a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

95.     Plaintiff Jane A35 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A35 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

96.     Plaintiff Jane A36 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A36 Doe was a minor during a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

97.     Plaintiff Jane A37 Doe is an adult female and is a resident of Illinois but resided in Michigan at all relevant times indicated below. Plaintiff Jane A37 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

98.     Plaintiff Jane A38 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A38 Doe was a minor during a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

99.     Plaintiff Jane A39 Doe is an adult female and is a resident of Illinois but resided in

Michigan at all relevant times as indicated below.

100.   Plaintiff Jane A40 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A40 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

101.   Plaintiff Jane A41 Doe is an adult female and is a resident of Michigan.

102.   Plaintiff Jane A42 Doe is an adult female and is a resident of Ohio but resided in Michigan at all relevant times indicated below. Plaintiff Jane A42 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

103.   Plaintiff Jane A43 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A43 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

104.   Plaintiff Jane A44 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A44 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

105.   Plaintiff Jane A45 Doe is an adult female and is a resident of California but resided in Michigan at all relevant times indicated below.

106.   Plaintiff Jane A46 Doe is an adult female and is a resident of California but resided in Michigan at all relevant times indicated below. Plaintiff Jane A46 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

107.   Plaintiff Jane A47 Doe is a minor female and is a resident of Michigan.

108.   Plaintiff Jane A48 Doe is an adult female, the mother of Plaintiff Jane A47 Doe, and a resident of Michigan.

109.   Plaintiff Jane A49 Doe is an adult female and is a resident of British Columbia, Canada but

resided in Michigan at all relevant times indicated below.

110.    Plaintiff Jane A50 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A50 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

111.    Plaintiff Jane A51 Doe is an adult female and is a resident of Colorado but resided in Michigan at all relevant times indicated below.

112.    Plaintiff Jane A52 Doe is a minor female and is a resident of Michigan.

113.    Plaintiff Jane A53 Doe is an adult female, the mother of Plaintiff Jane A52 Doe, and a resident of Michigan.

114.    Plaintiff Jane A54 Doe is an adult female and is a resident of British Columbia, Canada but resided in Michigan at all relevant times indicated below.

115.    Plaintiff Jane A55 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A55 Doe was a minor during some of the times she was sexually assaulted, abused, and molested by Defendant Nassar.

116.    Plaintiff Jane A56 Doe is an adult female and is a resident of Delaware but resided in Michigan at all relevant times indicated below.

117.    Plaintiff Jane A57 Doe[16] is an adult female and is a resident of Michigan. Plaintiff Jane A57 Doe was a minor during some of the times she was sexually assaulted, abused, and molested by Defendant Nassar.

118.    Plaintiff Jane A58 Doe is an adult female and is a resident of France but resided in Florida at all relevant times indicated below.

---

[16] Plaintiff Jane A57 Doe was initially referenced as Jane B.M. Doe. A different pseudonym is being used to distinguish this Plaintiff from Plaintiff Jane B.M. Doe identified in W.D. Mich. Case No. 1:17-cv-00257.

119.   Plaintiff Jane A59 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A59 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

120.   Plaintiff Jane A60 Doe is an adult female and is a resident of Michigan. Plaintiff Jane A60 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

121.   Plaintiff Jane A61 Doe is an adult female and is a resident of Michigan.

122.   Plaintiff Jane A62 Doe is an adult female and is a resident of Wisconsin but resided in Michigan at all relevant times below. Plaintiff Jane A62 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

123.   Plaintiff Jane A63 Doe is an adult female and is a resident of Michigan.

124.   Plaintiff Jane A64 Doe is an adult female and is a resident of New Jersey. Plaintiff Jane A64 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

125.   Plaintiff Jane A65 Doe is an adult female and is a resident of Texas. Plaintiff Jane A65 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

126.   Plaintiff Jane A66 Doe is an adult female and is a resident of Arizona. Plaintiff Jane A66 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

127.   Plaintiff Jane A67 Doe is an adult female and is a resident of New York. Plaintiff Jane A67 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

128. Plaintiff Jane A68 Doe is an adult female and is a resident of Minnesota. Plaintiff Jane A68 was a minor at the time she was sexually assaulted, abused, and molested by Defendant Nassar.

129. Plaintiff Jane A69 Doe is an adult female and is a resident of Illinois. Plaintiff A69 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

130. Plaintiff Jane A70 Doe is an adult female and is a resident of Michigan.

131. Plaintiff Jane A71 Doe is an adult female and is a resident of Michigan. Plaintiff A71 Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

132. Jane A72 Doe is a minor female and is a resident of Michigan.

133. Plaintiff Jane A73 Doe is an adult female, the mother of Plaintiff Jane A72 Doe, and a resident of Michigan.

134. Plaintiff Jane A74 Doe is an adult female and is a resident of Oregon.

135. Defendant Lawrence "Larry" Nassar, is a Doctor of Osteopathic Medicine, and is a resident of Michigan.

136. Defendant Michigan State University (hereinafter, "Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

137. Defendant Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

138. Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University.

139. Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

140. Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Ms. Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

141. M. Peter McPherson is the immediate Past President of Defendant MSU, and served as President from approximately 1993 – 2004.

142. William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Michigan State University serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

143. Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Michigan State University.

144. Brooke Lemmen, D.O. is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

145. Defendant United States of America Gymnastics (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

146. Steve Penny is the immediate past president and Chief Executive Officer of Defendant USAG (named in approximately April 2005), who was responsible for the overall management and strategic planning of Defendant USAG.

147. Robert Colarossi is the past president of Defendant USAG and held the position from

approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

148. Bela Karolyi is a former Romanian gymnastics coach who defected to the United States in the early 1980's, previously served as National Team Coordinator for Defendant USAG, and trained elite level USAG member gymnasts at a facility operated in the State of Texas.

149. Martha Karolyi, the wife of Bela Karolyi who also defected to the United States in the early 1980's, assisted in the operation, management, control, and supervision of the facility operated in the State of Texas where she and her husband trained elite level USAG member gymnasts.

150. Martha Karolyi is the immediate past National Team Coordinator for Defendant USAG.

151. The Karolyi Ranch as referenced herein refers to the facility located in Huntsville, Texas also known as the USAG National Team Training Center and/or any of the following business entities, believed to be incorporated in the state of Texas: Karolyi Training Camps, LLC, Karolyi World Gymnastics, Inc., and/or Karolyi's Elite.

152. Defendant Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA (hereinafter, "Defendant Twistars") was and continues to be an organization incorporated in Michigan.

153. John Geddert is the owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA.

## IV.  **COMMON FACTUAL ALLEGATIONS**

154. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

155. At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing,

Michigan.

156. At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

157. At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

158. At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

159. At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

160. Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

161. Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

    a.      Certified Athletic Trainer;

    b.      Osteopathic Physician;

    c.      National Medical Director;

    d.      National Team Physician, USA Gymnastics;

    e.      National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

162. Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

    a.      Associate Professor, Defendant MSU's Division of Sports Medicine, Department

of Radiology, College of Osteopathic Medicine;

b.     Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

c.     Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

d.     Team Physician, Defendant MSU's Men's and Women's Crew Team;

e.     Team Physician, Defendant MSU's Intercollegiate Athletics;

f.     Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

g.     Advisor, Student Osteopathic Association of Sports Medicine.

163.   As part of Defendant Nassar's employment and contractual duties with Defendant MSU, Defendant Nassar was responsible for spending between 50 to 70% of his time engaged in "Outreach" and/or "Public Services."

164.   A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendants USAG and Twistars as well as other organizations such as Holt High School,

165.   Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

166.   John Geddert, owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

167.   Mr. Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

168.   For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its facility.

169.   As an agent of Defendant Twistars, Defendant Nassar regularly provided services and

treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

170. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

171. Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

172. While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

173. During his employment, agency, and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

174. The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[17]

175. In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert regarding Defendant Nassar's conduct, yet the concerns and allegations went unaddressed.

176. Also in or around 1998, Jane A71 Doe complained to a coach at Defendant Twistars' facility regarding Defendant Nassar's conduct, yet the concerns and allegations went unaddressed.

---

[17] *See*, Michigan Administrative Code, R. 325.70001, et seq., Available at http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

177. In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by Jane A19 Doe, a MSU student athlete, after she complained to MSU employees, including trainers and her head coach, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

178. Despite her complaints to MSU representatives, Jane A19 Doe's concerns and allegations went unaddressed.

179. In approximately 2000, a female student athlete (hereinafter Jane T.T. Doe),[18] a member of Defendant MSU's Women's Softball Team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

180. Jane T.T. Doe's allegations regarding the sexual assault include the following statements:

Plaintiff is informed and believes, and on that basis alleges, that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff. Specifically, the Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

a.   The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment. The Plaintiff continued with the purported treatment;

b.   As the purported treatments continued, NASSAR became more bold, having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The Plaintiff, again, reported to

_____

[18] Referenced as Jane T.T. Doe in the December 21, 2016 and March 10, 2017 Notices of Intent.

Defendant MSU training staff, this time a higher ranking trainer. This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c.     When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment;

d.     Finally, in or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive. The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.[19]

181.    Despite her complaints to MSU employees, agents, and representatives, Jane T.T. Doe's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

182.    Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiffs Denhollander, Schuett, Riethman, Jane A1 Doe, Jane A2 Doe, Jane A3 Doe, Jane A4 Doe, Jane A5 Doe, Jane A6 Doe, Jane A8 Doe, Jane A9 Doe, Jane A11 Doe, Jane A12 Doe, Jane A13 Doe, Jane A14 Doe, Jane A15 Doe, Jane A16 Doe, Jane A18 Doe, Jane A20 Doe, Jane A19 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A25 Doe, Jane A26 Doe, Jane A27 Doe, Jane A28 Doe, Jane A29 Doe, Jane A30 Doe, Jane A31 Doe, Jane A32 Doe, Jane A34 Doe, Jane A35 Doe, Jane A36 Doe, Jane A37 Doe, Jane A38 Doe, Jane A39 Doe, Jane A40 Doe,

---

[19] *See*, Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles, December 21, 2016, ¶26.

Jane A41 Doe, Jane A42 Doe, Jane A43 Doe, Jane A44 Doe, Jane A45 Doe, Jane A46 Doe, Jane A47 Doe, Jane A49 Doe, Jane A50 Doe, Jane A51 Doe, Jane A54 Doe, Jane A55 Doe, Jane A56 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A61 Doe, Jane A62 Doe, Jane A64 Doe Jane A66 Doe, Jane A67 Doe, Jane A68 Doe, Jane A69 Doe, Jane A70 Doe, Jane A71 Doe, Jane A72 Doe, Jane A74 Doe, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

183. In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

184. In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' "because of the many cultural stigmas in touching this area."

185. Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

186. There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

187. As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiffs as:

   a.    he did not explain any intravaginal or intra-rectal techniques to Plaintiffs or their parents; and,

   b.    he did not warn Plaintiffs he was going to engage in vaginal or anal digital

penetration before doing so.

188. Also in 2004, Plaintiff Jane A5 Doe reported Defendant Nassar's conduct to her parents and to local law enforcement, Meridian Township Police in 2004.

189. Also in or around 2004, a minor female who was not a patient of Defendant Nassar reported inappropriate touching of a sexual nature to a counselor employed by Defendant MSU.

190. In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[20]

191. The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[21]

192. While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and

---

[20] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

[21] *See*, Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at, https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf. Last accessed January 5, 2017.

he became sexually aroused.[22]

193.    Upon information and belief, Defendant MSU investigated the 2014 complaints through
        their Office of Institutional Equity.

194.    However, the victim reported facts to Defendant MSU which were omitted or withheld
        from the investigative report including but not limited to the following :

        a.      Defendant Nassar was sexually aroused while touching her; and,

        b.      The appointment with Defendant Nassar did not end until she physically removed
                his hands from her body.

195.    Three months after initiating the investigation, in July 2014, the victim's complaints were
        dismissed and Defendant MSU determined she didn't understand the "nuanced difference"
        between sexual assault and an appropriate medical procedure and deemed Defendant
        Nassar's conduct "medically appropriate" and "Not of a sexual nature."[23]

196.    One of the medical experts consulted by the Office of Institutional Equity in investigating
        the victim's allegations was Brooke Lemmen, D.O.

197.    Following the investigation, upon information and belief, Defendant Nassar became
        subject to new institutional guidelines including:

        a.      Defendant Nassar was not to examine or treat patients alone but was to be
                accompanied by a chaperone such as a resident or nurse; [24]

        b.      The alleged "procedure" was to altered to ensure there would be little to no skin to
                skin contact when in certain "regions" and if skin to skin contact was "absolutely

---

[22] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016.
Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-
sexual-assault- harassment-larry-nassar/94993582/. Last accessed January 5, 2017.
[23] *Id*.
[24] *Id*.

necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

c.   New people in the practice were to be "oriented" to ensure understanding with the guidelines

198.   After receiving allegations of "athlete concerns," in approximately summer 2015 Defendant USAG relieved Defendant Nassar of his duties.[25]

199.   Defendant Nassar represented publicly that he "retired" from his duties with Defendant USAG.

200.   At no time did Defendant USAG inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

201.   From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

202.   Several Plaintiffs were made aware of the allegations of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or sometime thereafter through related media coverage.[26]

203.   Others have been made aware of the allegations of Defendant Nassar's conduct more recently through related media coverage.

204.   Defendant Nassar's employment ended with Defendant MSU on approximately September

---

[25] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.
[26] *Id*.

20, 2016 only after the MSU Defendants became aware that:

    a.    Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[27] and,

    b.    A former patient of Defendant Nassar, Plaintiff Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Plaintiff Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

        i.    Massaging her genitals;

        ii.    Penetrating her vagina and anus with his finger and thumb; and,

        iii.    Unhooking her bra and massaging her breasts.[28]

205.    Reasons given to Defendant Nassar for his termination included but were not limited to:

    a.    Deviation from "required best practices put in place following the internal sexual harassment investigation conducted … in 2014;"

    b.    Failure to disclose a 2004 complaint to Meridian Township Police; and,

    c.    Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

206.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13,

---

[27] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/documents/3106054-Jane-JD-COMPLAINT-Signed.html. Last accessed, January 5, 2017.

[28] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

and was later released on $1 million bond.[29]

207.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal
        Court in Grand Rapids, Michigan on charges of possession of child pornography and
        receipt/attempted receipt of child pornography.

208.    According to the federal indictment,[30] Defendant Nassar:

        a.      Knowingly received and attempted to receive child pornography between
                approximately September 18, 2004 and December 1, 2004;

        b.      Knowingly possessed thousands of images of child pornography between
                approximately February 6, 2003 and September 20, 2016 including images
                involving a minor who had not attained 12 years of age.

209.    Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among
        other allegations, that Defendant Nassar used a GoPro camera to record video images of
        children in a swimming pool and that:

        a.      Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into
                the vaginal area of another girl; and,[31]

        b.      Defendant Nassar's thumb can be seen pressing into a child's vagina/vaginal area.[32]

210.    In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Mr.
        Strampel amid allegations that she:

        a.      Removed several boxes of confidential treatment patient records from Defendant
                MSU's Sports Medicine clinic at Defendant Nassar's request;

---

[29] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[30] 1:16-cr-00242, PageID.1-4.
[31] *Id*. at PageID.49-50.
[32] *Id*. at PageID.50.

b. Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and,

c. Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

211. On February 7, 2017, a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."[33]

212. Amid allegations that Kathie Klages received concerns regarding Defendant Nassar's conduct and "treatment" in 1997 and/or 1998, yet dissuaded the complainant from formally complaining,[34] and for her passionate defense of Defendant Nassar when allegations against him surfaced in fall 2016, on February 13, 2017, Defendant MSU suspended Ms. Klages from her duties as Head Coach of MSU's Women's Gymnastics team.

213. On February 17, 2017, at a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony which included, among others, allegations of digital vaginal penetration at Defendant Nassar's residence.

214. On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County,

---

[33] *Id.* at PageID.88.
[34] *See*, 1:17-cv-222, PageID.7 and 1:17-cv-257, PageID.4238-4239 (First Amended Complaint).

Michigan[35] and Eaton County, Michigan.[36]

215.    Plaintiff Denhollander is among the victims identified in the most recent state criminal charges.[37]

216.    In mid-March 2017, Steve Penny resigned as president of Defendant USAG amid allegations Defendant USAG failed to promptly notify authorities of allegations raised against Defendant Nassar.

217.    To date, to the best of Plaintiffs' knowledge and belief, Defendant USAG has no current President or Chief Executive Officer.

218.    Over several days in May and June 2017, victims testified regarding Defendant Nassar's conduct during appointments held at MSU, Twistars, and Defendant Nassar's residence for medical treatment.[38]

219.    Plaintiff Denhollander testified Defendant Nassar engaged in vaginal and anal penetration without notice, gloves, lubricant or consent from her parents.

220.    Plaintiff Denhollander also testified Defendant Nassar groped her breast and appeared to have an erection while doing so.

221.    Other victims also testified Defendant Nassar engaged in vaginal and anal digital

---

[35]*People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf

[36]*People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

[37] Although the sexual assault victims are not identified by name in the affidavits hyperlinked above, Plaintiff Denhollander has publicly identified herself as one of the victims. *See*, "Victim C" in Michigan State Dr. Larry Nassar case glad to see criminal charges, available at http://www.mlive.com/news/index.ssf/2017/02/victim_c_in_michigan_state_dr.html, last accessed March 1, 2017.

[38] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY.

penetration without notice, gloves, lubricant, or consent from their parents.

222.    On June 23, 2017, Defendant Nassar was ordered to stand trial on twelve charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following conclusion of the preliminary examination hearing which included, among others, allegations of digital vaginal and anal penetration at MSU and Defendant Nassar's residence.

223.    On July 10, 2017, Defendant Nassar pleaded guilty to the federal charges of child pornography, receipt/attempted receipt of child pornography, and destruction and concealment of records and tangible objects.[39]

224.    Defendant Nassar is scheduled to be sentenced for his federal crimes in late November 2017.

225.    To the best of Plaintiffs' knowledge, Defendant Nassar is in federal custody pending the state and federal criminal charges.

V.    **SPECIFIC FACTUAL ALLEGATIONS**

A.    **RACHAEL DENHOLLANDER**

226.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

227.    Plaintiff Rachael Denhollander[40] treated with Defendant Nassar at his office at MSU in 2000.

228.    In 2000, Plaintiff Denhollander was a minor, 15 years old.

229.    Plaintiff Denhollander presented to Defendant Nassar with complaints of injuries to her

---

[39] 1:16-cr-00242, Page ID.114, 119.
[40] Referred to as Jane D.R. Doe in the December 21, 2016 and March 10, 2017 Notices of Intent.

wrists and back suffered through gymnastics.

230. On approximately five separate occasions, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Denhollander's vagina and anus with his finger and thumb without prior notice and without gloves or lubricant (on some occasions) under the guise of performing "treatment."

231. On at least one occasion Defendant Nassar removed Plaintiff Denhollander's clothing from the waist down and draped Plaintiff with a towel without any warning and without asking permission.

232. Defendant Nassar also massaged Plaintiff Denhollander's genitals.

233. Defendant Nassar also touched Plaintiff Denhollander's breasts without permission by unhooking her bra and massaging one of her breasts. On at least one occasion when he finished massaging Plaintiff Denhollander's breast he rehooked her bra himself.

234. On at least one occasion at an appointment, Plaintiff Denhollander witnessed Defendant Nassar sexually aroused.

235. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Denhollander.

236. Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Denhollander's vagina, anus, or breasts.

237. Plaintiff Denhollander did not treat or intend to treat with Defendant Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

238. Plaintiff Denhollander believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

239. After reviewing a media report regarding Defendant USAG's failure to report sexual

abuse,[41] in or around late August 2016 or early September 2016, Plaintiff Denhollander made a complaint with Defendant MSU's Police Department.

B.     <u>JESSICA HOWARD</u>

240.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

241.     From the age of 3, Plaintiff Jessica Howard[42] trained and competed as a gymnast.

242.     At the age of 9, Plaintiff Howard began training and competing as a rhythmic gymnastics.

243.     Plaintiff Howard was a member of the USAG National team from 1997 – 2002.

244.     In 1999, at the age of 15, Plaintiff Howard competed and earned the title of Rhythmic Senior National Champion, a position she held for three years.

245.     In 1999, prior the World Championships, Plaintiff Howard was suffering from severe hip pain.

246.     Defendant USAG suggested she go to the Karolyi Ranch in Texas following the World Championship competition to received medical treatment from Defendant Nassar.

247.     At this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities" which included but was not limited to his involvement with Defendant USAG.

248.     At her first appointment, Defendant Nassar requested Plaintiff Howard wear loose shorts and no underwear.

---

[41] A blind eye to sex abuse: How USA Gymnastics failed to report cases, Marisa Kwiatkowski, Mark Alesia, Tim Evans, August 4, 2016. Available at http://www.indystar.com/story/news/investigations/2016/08/04/usa-gymnastics-sex-abuse-protected-coaches/85829732/. Last accessed January 5, 2017.

[42] Referred to as Jane J.H. Doe in the December 21, 2016 and March 10, 2017 Notices of Intent.

249. At the first appointment, Defendant Nassar digitally penetrated Plaintiff Howard's vagina without prior notice, gloves, or lubricant.

250. This conduct continued for most of the rest of the week Plaintiff Howard spent at the Karolyi Ranch.

251. Plaintiff Howard and other gymnasts at the Karolyi Ranch talked about Defendant Nassar and other gymnasts made comments to Plaintiff Howard stating that Defendant Nassar "touches you funny."

252. At no time was there a chaperone present for any of Plaintiff Howard's appointments with Defendant Nassar.

253. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Howard or Plaintiff Howard's parents.

254. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Howard or Plaintiff Howard's parents as she was a minor at the time.

255. Plaintiff Howard did not treat or intend to treat with Defendant. Nassar for OB/GYN issues.

256. Plaintiff Howard believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

C. **LINDSEY SCHUETT**

729. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

730. Plaintiff Lindsey Schuett[43] treated with Defendant Nassar in approximately 1999 and/or 2000.

731. In 1999 and 2000 Plaintiff Schuett was a minor, 15 and 16 years old.

---

[43] Referred to as Jane B.H. Doe in the March 10, 2017 Notice of Intent.

732. Plaintiff Schuett presented to Defendant Nassar with complaints of hip pain as a result of swimming and previous injuries from gymnastics.

733. Plaintiff first saw Dr. Dietzel at MSU Sports medicine for her hip pain. He in turn referred her to a non-MSU physician. This physician opined that he did not believe her issues were of an osteopathic nature, and recommended that she see a rheumatologist.

734. It is believed this information was not provided to Defendant Nassar.

735. Instead, Dr. Dietzel and Defendant Nassar, both MSU physicians, met with Plaintiff Schuett and gave her a cortisone injection.

736. Defendant Nassar then took over her medical treatment without regard to the recommendation of the specialist.

737. On approximately three to four occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Schuett's vagina without prior notice, gloves, or lubricant.

738. After visiting Defendant Nassar, her high school trainer laughed at Plaintiff Schuett and asked her if she'd been to see Defendant Nassar.

739. Plaintiff Schuett had not disclosed to anyone that she'd had an appointment with Defendant Nassar. The trainer told Plaintiff Schuett that Defendant Nassar was his good friend.

740. After the first instances of vaginal penetration, Plaintiff Schuett spoke with her high school counselor about Defendant Nassar's "treatment."

741. Plaintiff Schuett's high school counselor advised her to tell Defendant Nassar she didn't want the procedure at the next appointment.

742. At the next appointment, Plaintiff Schuett told Defendant Nassar she didn't want the procedure performed and asked if there was an alternative method of treatment. Defendant

Nassar told her "no," and that was the only thing he could do for her.

743.   Defendant Nassar digitally penetrated Plaintiff Schuett's vagina again after she requested that he not perform the procedure.

744.   Finally, at one appointment, Plaintiff Schuett feigned pain to stop Defendant Nassar from digitally penetrating her vagina, and after that appointment did not return to treat with Defendant Nassar.

745.   The digital penetration did not help or relieve Plaintiff Schuett's hip pain.

746.   Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Schuett or Plaintiff Schuett's parents.

747.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Schuett or her parents as Plaintiff Schuett was a minor at the time.

748.   Plaintiff Schuett has treated with other medical providers for her hip pain and none of the treatments have involved digital penetration.

749.   Plaintiff Schuett did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

750.   Plaintiff Schuett believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### D.      STERLING RIETHMAN

257.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

258.   Plaintiff Sterling Riethman[44] treated with Defendant Nassar in 2013.

259.   From 2011 to 2015, Plaintiff Riethman was a scholarship student athlete at a university in Ohio.

---

[44] Referred to as Plaintiff Jane B.O. Doe in the March 10, 2017 Notice of Intent.

260. In 2013, Plaintiff Riethman presented to Defendant Nassar with complaints of back and rib pain as a result of diving.

261. On approximately 7 occasions in 2013, at appointments at his office at MSU Defendant Nassar digitally penetrated Plaintiff Riethman's vagina without prior notice, gloves, or lubricant for between 10 to 30 minutes at a time.

262. On one occasion when Plaintiff Riethman's mother was present, Defendant Nassar explained his conduct as "tailbone manipulation" to Plaintiff Riethman and her mother.

263. Defendant Nassar did not explain that "tailbone manipulation" would involve digital vaginal penetration.

264. When Plaintiff Riethman returned for appointments without her mother Defendant Nassar digitally penetrated her vagina, without gloves or lubricant, and without any other chaperone in the room.

265. Defendant Nassar never asked Plaintiff Riethman to remove her clothing, but instead would remove Plaintiff Riethman's clothing himself, including her underwear, before digitally penetrating her vagina.

266. Defendant Nassar did not obtain consent from Plaintiff Riethman to touch Plaintiff Riethman's vaginal area or vagina.

267. Plaintiff Riethman's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

268. Plaintiff Riethman did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

269. Plaintiff Riethman believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

270. In March 2017, Plaintiff Riethman made a complaint regarding Defendant Nassar to MSU's Police Department.

### E.  JANE A1 DOE[45]

271. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

272. Plaintiff Jane A1 Doe treated with Defendant Nassar at his office at MSU from approximately 2011 to 2014.

273. From 2011 to 2014, Plaintiff Jane A1 Doe was a minor, approximately 12 to 15 years old.

274. Plaintiff Jane A1 Doe presented to Defendant Nassar with complaints of back pain as a result of gymnastics.

275. In 2014 at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A1 Doe's vagina multiple times without prior notice and without gloves or lubricant.

276. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A1 Doe or Jane B. Doe.

277. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A1 Doe, Jane B. Doe, or Jane A1 Doe's father.

278. Plaintiff Jane A1 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

---

[45] Plaintiff Jane A1 Doe, previously Jane A. Doe, originally sought to proceed by Next Friend Jane B. Doe due to her age, but recently reached the age of majority.

279. Plaintiff Jane A1 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

280. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A1 Doe made a complaint to MSU's Office of Institutional Equity.

281. Plaintiffs Jane A1 Doe and Jane B. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### F.     JANE A2 DOE

282. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

283. Plaintiff Jane A2 Doe was a student athlete at the University of Michigan from approximately 1998 to 2001.

284. Plaintiff treated with Defendant Nassar in 2001, 2011, and 2012 at his office at MSU.

285. Plaintiff Jane A2 Doe presented to Defendant Nassar with complaints of back pain suffered through her participation in field hockey.

286. On approximately four separate occasions, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A2 Doe's vagina without prior notice and without gloves or lubricant and put an excessive amount of pressure on her labia and vaginal area without gloves or lubricant.

287. Defendant Nassar would put his hands under Plaintiff Jane A2 Doe's underwear and push her underwear to the side to digitally penetrate Plaintiff Jane A2 Doe's vagina.

288. Defendant Nassar also touched her breasts without permission.

289. Defendant Nassar would put his hands under Plaintiff Jane A2 Doe's sports bra to touch her breasts.

290. In 2011, another medical professional was in the room and asked Defendant Nassar where his hand was while he was digitally penetrating Plaintiff Jane A2 Doe. Defendant Nassar allegedly said something the Plaintiff did not understand, dismissed the medical professional from the room and continued to digitally penetrate Plaintiff Jane A2 Doe.

291. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A2 Doe.

292. Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane A2 Doe's vagina or breasts.

293. Plaintiff Jane A2 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

294. Plaintiff Jane A2 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## G. JANE A3 DOE

295. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

296. Plaintiff Jane A3 Doe treated with Defendant Nassar between approximately 2004 and 2007 at his office at MSU.

297. From 2004 to 2007, Plaintiff Jane A3 Doe was a minor, approximately 12 to 15 years old.

298. Plaintiff Jane A3 Doe presented to Defendant Nassar with complaints of lower back pain as a result of old and new fractures suffered as a result of gymnastics.

299. On approximately eight separate occasions at appointments at his office at MSU,

Defendant Nassar digitally penetrated Plaintiff Jane A3 Doe's vagina and anus without prior notice and without gloves or lubricant for several minutes at a time. The assaults would sometimes last up to 30 minutes.

300. Defendant Nassar would put his hands under Plaintiff Jane A3 Doe's spandex shorts to digitally penetrate Plaintiff Jane A3 Doe's vagina and anus.

301. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A3 Doe.

302. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A3 Doe or from Jane A3 Doe's parents even though she was a minor at the time.

303. Plaintiff Jane A3 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

304. Plaintiff Jane A3 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

305. As a result of the sexual assault, abuse, and molestation Plaintiff Jane A3 Doe suffered severe urinary tract infections, vaginal bleeding, and bleeding while urinating.

## H.    JANE A4 DOE

306. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

307. Plaintiff Jane A4 Doe treated with Defendant Nassar between approximately 2006 and 2007 at his office at MSU.

308. From 2006 to 2007, Plaintiff Jane A4 Doe was a minor, approximately 14 years old.

309. Plaintiff Jane A4 Doe presented to Defendant Nassar with complaints of back pain caused by fractures suffered as a result of gymnastics.

310. On approximately six separate occasions at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A4 Doe's vagina without prior notice and without gloves for several minutes at a time.

311. Defendant Nassar required Plaintiff Jane A4 Doe to change into breakaway shorts with Velcro on the side, began massaging her back, and then put his hand under the shorts to digitally penetrate her vagina.

312. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A4 Doe.

313. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A4 Doe or from Jane A4 Doe's parents even though she was a minor at the time.

314. Plaintiff Jane A4 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

315. Plaintiff Jane A4 Doe's medical records produced Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

316. Plaintiff Jane A4 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## I.    __JANE A5 DOE__

317. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

318. Plaintiff Jane A5 Doe treated with Defendant Nassar in approximately 2004 at his office at MSU.

319. In 2004, Defendant Jane A5 Doe was a minor, approximately 16 and 17 years old.

320. Plaintiff Jane A5 Doe presented to Defendant Nassar with complaints of back pain caused by her participation on basketball and soccer teams.

321. On one occasion at a medical appointment at his office at MSU, Defendant Nassar touched Plaintiff Jane A5 Doe's vagina and/or vaginal area without prior notice and without gloves or lubricant for several minutes at a time.

322. Defendant Nassar also requested and required Plaintiff to re-dress while he was in the room.

323. Defendant Nassar also grabbed Plaintiff Jane A5 Doe's breast with his bare hand for several minutes at a time.

324. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A5 Doe.

325. Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane A5 Doe's vagina, vaginal area, or breasts from Jane A5 Doe or Jane A5 Doe's parents even though she was a minor at the time.

326. Plaintiff Jane A5 Doe requested her medical records, however Defendant MSU could not locate a paper chart documenting all of her appointments with Defendant Nassar.

327. The records Defendant MSU did produce were completely devoid of any reference to any type of intra-vaginal procedure.

328. Plaintiff Jane A5 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

329. Plaintiff Jane A5 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

330. Plaintiff Jane A5 Doe reported Defendant Nassar's conduct to her parents and to local law

enforcement, Meridian Township Police in 2004.

331. Plaintiff did not return for additional treatment following her complaints.

## J.   **JANE A6 DOE**

332. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

333. Plaintiff Jane A6 Doe treated with Defendant Nassar from approximately 1999 to 2003 at his office at MSU.

334. From 1999 to 2003, Plaintiff Jane A6 Doe was a minor, approximately 14 to 17 years old.

335. Plaintiff Jane A6 Doe presented to Defendant Nassar with complaints of low back pain caused by gymnastics.

336. On several occasions between 1999 and 2003, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A6 Doe's vagina and anus without prior notice and without gloves or lubricant.

337. On at least one occasion at a USAG sanctioned event which took place at Defendant Twistars USA Inc.'s facility, Defendant Nassar digitally penetrated Plaintiff Jane A6 Doe's vagina without gloves or lubricant.

338. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A6 Doe.

339. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A6 Doe or from Jane A6 Doe's parents even though she was a minor at the time.

340. Plaintiff Jane A6 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

341. Plaintiff Jane A6 Doe believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

342. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A6 Doe made a complaint to Defendant MSU's Police Department.

**K.     JANE A7 DOE**

343. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

344. Plaintiff Jane A7 Doe treated with Defendant Nassar in 1998.

345. In 1998, Plaintiff Jane A7 Doe was a minor, 16 years old.

346. Plaintiff Jane A7 Doe presented to Defendant with complaints of pain from a torn hamstring and fractured ischium caused by gymnastics.

347. On one occasion at a medical appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A7 Doe's anus without prior notice and without gloves or lubricant for several minutes.

348. At the appointment, Plaintiff was not permitted to sign in at the front desk and was brought to an examination by Defendant Nassar.

349. During the sexual assault, at 16 years old, only Plaintiff Jane A7 Doe and Defendant Nassar were in the examination room. There was no chaperone.

350. Defendant Nassar explained his conduct as a "new procedure" which involved vaginal penetration to Plaintiff Jane A7 Doe.

351. Defendant Nassar did not discuss anal penetration with Plaintiff Jane A7 Doe.

352. Defendant Nassar did not give prior notice or obtain consent for anal penetration from Plaintiff Jane A7 Doe or for vaginal or anal digital penetration from Plaintiff Jane A7 Doe's

parents even though she was a minor at the time.

353. Plaintiff Jane A7 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

354. Plaintiff Jane A7 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

355. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A7 Doe made a complaint to Defendant MSU's Police Department.

356. Plaintiff Jane A7 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**L.    JANE A8 DOE**

357. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

358. Plaintiff Jane A8 Doe treated with Defendant Nassar in 2005 and 2006 at his office at MSU and at Defendant Twistars' facility.

359. In 2005 and 2006 Plaintiff Jane A8 Doe was a minor, approximately 16 years old to 17 years old.

360. Plaintiff Jane A8 Doe presented to Defendant Nassar with complaints of back pain caused by gymnastics.

361. On at least two separate occasions during appointments at his office at MSU and on at least one occasion at Defendant Twistars' facility at a USAG sanctioned event, Defendant Nassar digitally penetrated Plaintiff Jane A8 Doe's vagina and anus without prior notice

and without gloves or lubricant.

362. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A8 Doe.

363. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A8 Doe or from Jane A8 Doe's parents even though she was a minor at the time.

364. Plaintiff Jane A8 Doe requested her medical records, however Defendant MSU could not locate a paper chart documenting all of her appointments with Defendant Nassar.

365. The records Defendant MSU did produce were completely devoid of any reference to any type of intra-vaginal procedure.

366. Plaintiff Jane A8 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

367. Plaintiff Jane A8 Doe was also sexually assaulted by Defendant Nassar in the same manner described above at Twistars Gymnastics Club.

368. As a result of Defendant Nassar's sexual assault, abuse, and molestation, Plaintiff Jane A8 Doe developed a bacterial infection.

369. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A8 Doe made a complaint to Defendant MSU's Police Department.

370. Plaintiff Jane A8 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**M.      JANE A9 DOE by Next Friend JANE A10 DOE**

371. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

372.    Plaintiff Jane A9 Doe treated with Defendant Nassar at his office at MSU in approximately 2014 and 2016.

373.    In 2014 and 2016, Plaintiff Jane A9 Doe was a minor, approximately 13 and 14 years old.

374.    Plaintiff presented to Defendant Nassar with complaints of hamstring pain as a result of gymnastics.

375.    On approximately two or three occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A9 Doe's vagina without prior notice and without gloves or lubricant, from 10 to 15 minutes at a time.

376.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A9 Doe, Jane A10 Doe, or Jane A9 Doe's father.

377.    Plaintiff Jane A9 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

378.    Plaintiff Jane A9 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

379.    At an appointment in approximately April 2016, during an examination he pulled Jane A9 Doe's shorts to the side and viewed her vagina and vaginal area.

380.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A9 Doe or Jane A10 Doe.

381.    It is believed some of the aforementioned sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Defendant Nassar during "treatments" with athletes.

382.    Following the September 12, 2016 publication of a story regarding a complaint filed with

Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A9 Doe made a complaint with Defendant MSU's Police Department.

383. Plaintiffs Jane A9 Doe and Jane A10 Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## N.     __JANE A11 DOE__

384. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

385. Plaintiff Jane A11 Doe treated with Defendant Nassar from approximately 1999 to 2002.

386. From 1999 to 2000, Plaintiff Jane A11 Doe was a minor, approximately 14 to 16 years old.

387. Plaintiff Jane A11 Doe presented to Defendant with complaints of low back pain caused by gymnastics.

388. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A11 Doe's vagina without prior notice and without gloves or lubricant.

389. Defendant Nassar would also touch Plaintiff Jane A11 Doe's vaginal area through her clothes.

390. Defendant Nassar would ask Plaintiff Jane A11 Doe to wear baggy shorts and put his hands under Plaintiff Jane A11 Doe's shorts to digitally penetrate her vagina or touch her vaginal area.

391. Defendant Nassar would also put his hand under Plaintiff Jane A11 Doe's shirt under the guise of "checking her sternum" and would touch her breasts.

392.     Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A11 Doe.

393.     Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A11 Doe or from Jane A11 Doe's parents even though she was a minor at the time.

394.     Plaintiff Jane A11 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

395.     Plaintiff Jane A11 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

396.     Plaintiff Jane A11 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**O.     JANE A12 DOE**

397.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

398.     Plaintiff Jane A12 Doe treated with Defendant Nassar in approximately 2002.

399.     Plaintiff Jane A12 Doe presented to Defendant Nassar with complaints of back pain caused by gymnastics.

400.     On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A12 Doe's vagina without prior notice and without gloves or lubricant for several minutes at a time.

401.     Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A12 Doe.

402.     Defendant Nassar did not give prior notice or obtain consent for digital penetration from

Jane A12 Doe.

403. Plaintiff Jane A12 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

404. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A12 Doe made a complaint to Defendant MSU's Police Department.

405. Plaintiff Jane A12 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## P.     JANE A13 DOE

406. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

407. Plaintiff Jane A13 Doe treated with Defendant Nassar from approximately 2000 to 2008.

408. From 2000 to 2006, Plaintiff Jane A13 Doe was a minor, approximately 11 to 17.

409. Plaintiff Jane A13 Doe presented to Defendant with complaints of injury to her hip, back, knees, ankles, wrists, and ribs caused by figure skating.

410. On more than one occasion at appointments at his office at MSU, Defendant Nassar moved his hands under Plaintiff Jane A13 Doe's underwear and digitally penetrated Plaintiff Jane A13 Doe's vagina without prior notice and without gloves or lubricant for up to 15 minutes at a time.

411. Defendant Nassar also touched Plaintiff's breast without permission on more than one occasion with his bare hand, once asking her if she had ever had a breast exam.

412. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A13 Doe.

413.     Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A13 Doe or from Jane A13 Doe's parents even though she was a minor at the time.

414.     Plaintiff Jane A13 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

415.     Plaintiff Jane A13 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

416.     Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A13 Doe made a complaint to Defendant MSU's Police Department.

417.     Plaintiff Jane A13 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### Q.     JANE A14 DOE[46]

418.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

419.     Plaintiff Jane A14 Doe treated with Defendant Nassar at his office at MSU in 2011.

420.     In 2011, Plaintiff Jane A14 Doe was a minor, 11 years old.

421.     Plaintiff Jane A14 Doe presented to Defendant Nassar with complaints of injuries to her back as a result of gymnastics.

422.     On approximately five to six separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A14 Doe's vagina and anus without

---

[46] Plaintiff Jane A14 Doe, previously Jane P. Doe, originally sought to proceed by Next Friend Jane Q. Doe due to her age, but recently reached the age of majority.

prior notice and without gloves or lubricant.

423. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A14 Doe or Jane Q. Doe.

424. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A14 Doe, Jane Q. Doe, or Jane A14 Doe's father.

425. Plaintiff Jane A14 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

426. Plaintiffs Jane A14 Doe and Jane Q. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

427. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane Q. Doe made a complaint to Defendant MSU's Police Department.

**R.    JANE A15 DOE**

428. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

429. Plaintiff Jane A15 Doe treated with Defendant Nassar from approximately 2007 to 2008.

430. From 2007 to 2008, Plaintiff Jane A15 Doe was a minor, approximately 14 to 15 years old.

431. Plaintiff Jane A15 Doe presented to Defendant with complaints of back pain caused by swimming.

432. On several occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A15 Doe's vagina without prior notice and without gloves, and other than one occasion, without lubricant, for several minutes at a time.

433. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A15 Doe.

434. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane A15 Doe or from Plaintiff Jane A15 Doe's parents even though she was a minor at the time.

435. Plaintiff Jane A15 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

436. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A15 Doe made a complaint to Defendant MSU's Police Department.

437. Plaintiff Jane A15 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

S.      **JANE A16 DOE by Next Friend JANE A17 DOE**

438. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

439. Plaintiff Jane A16 Doe treated with Defendant Nassar at his office at MSU from approximately 2009 to 2014.

440. From 2009 to 2014, Plaintiff Jane A16 Doe was a minor, approximately 9 to 14 years old.

441. Plaintiff Jane A16 Doe presented to Defendant Nassar with complaints of back pain and heel pain as a result of gymnastics.

442. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A16 Doe's vagina without prior notice and without gloves or lubricant.

443.  Plaintiff Jane A16 Doe was also sexually assaulted by Defendant Nassar in the same manner described above at Twistars USA, Inc. in or around 2009.

444.  Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A16 Doe or Jane A17 Doe.

445.  Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A16 Doe, Jane A17 Doe, or Jane A16 Doe's father.

446.  Plaintiff Jane A16 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

447.  It is believed some of the aforementioned sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Defendant Nassar during "treatments" with athletes.

448.  Plaintiffs Jane A16 Doe and Jane A17 Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**T.       JANE A18 DOE**

449.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

450.  Plaintiff Jane A18 Doe treated with Defendant Nassar from approximately 2002 to 2011.

451.  From 2002 to 2011, Plaintiff Jane A18 Doe was a minor, approximately 9 to 17 years old.

452.  Plaintiff Jane A18 Doe presented to Defendant with complaints of hip, tailbone, elbow pain caused by gymnastics.

453.  On several occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A18 Doe's vagina without prior notice and without gloves or

lubricant.

454.    Plaintiff Jane A18 Doe would undress to her underwear with a towel and Defendant Nassar would put his hand in her underwear and digitally penetrate Plaintiff Jane A18 Doe's vagina.

455.    Plaintiff Jane A18 Doe believes she had approximately 50 appointments with Defendant Nassar from 2002 to 2011.

456.    Defendant Nassar told Plaintiff Jane A18 Doe he performed the same "treatment" on Olympic athletes.

457.    Defendant Nassar also touched Plaintiff Jane A18 Doe's breasts without permission, on some occasions touching her over her sports bra, at other times under her sports bra, and at other times telling her to take her sports bra off.

458.    On one occasion, Defendant Nassar made inappropriate comments regarding his former girlfriends while digitally penetrating Plaintiff Jane A18 Doe.

459.    On one occasion Plaintiff Jane A18 Doe was assaulted at Defendant Nassar's home in his basement.

460.    Defendant Nassar also touched Plaintiff Jane A18 Doe's breasts indicating he was attempting to manipulate Plaintiff Jane A18 Doe's ribs, although she had no pain or injury to her rib area.

461.    During some sexual assaults at MSU, only Plaintiff Jane A18 Doe and Defendant Nassar were in the examination room. There was no chaperone.

462.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A18 Doe.

463.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from

Jane A18 Doe or from Jane A18 Doe's parents even though she was a minor at the time.

464. Plaintiff Jane A18 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

465. Plaintiff Jane A18 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

466. Plaintiff Jane A18 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## U.    **JANE A19 DOE**

467. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

468. Plaintiff Jane A19 Doe treated with Defendant Nassar in 1999 as a student athlete at Michigan State University.

469. Plaintiff Jane A19 Doe presented to Defendant Nassar with complaints of pain in her hamstring caused by track and field and cross-country.

470. Plaintiff Jane A19 Doe was referred to Defendant Nassar by MSU trainers and training staff.

471. On more than one occasion at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A19 Doe's vagina without prior notice and without gloves or lubricant.

472. Defendant Nassar used his hand to stimulate Plaintiff Jane A19 Doe's vagina before digitally penetrating her vagina.

473. In approximately 1999, Plaintiff Jane A19 Doe complained to MSU trainers and a MSU

Coach who were employees, representatives, and agents of MSU and who had a duty to report allegations of sexual assault and abuse about Defendant Nassar's conduct and was told that he was an "Olympic doctor" and that Defendant Nassar "knew what he was doing."

474. It is believed no investigation was initiated given Jane A19 Doe's complaints to MSU representatives nor was any corrective action taken, exposing Jane A19 Doe and others to continued assaults.

475. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A19 Doe.

476. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A19 Doe.

477. Plaintiff Jane A19 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

478. Plaintiff Jane A19 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## V.     JANE A20 DOE by Next Friend JANE A21 DOE

479. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

480. Plaintiff Jane A20 Doe treated with Defendant Nassar at his office at MSU and other locations from approximately 2015 to 2016.

481. From 2015 to 2016, Plaintiff Jane A20 Doe was a minor, approximately 12 years old.

482. Plaintiff Jane A20 Doe presented to Defendant Nassar with complaints of low back pain as a result of gymnastics.

483. On more than one occasion, approximately 20 to 30 times, at appointments at his office at MSU and other locations, Defendant Nassar digitally penetrated Plaintiff Jane A20 Doe's vagina and anus without prior notice and without gloves or lubricant.

484. Defendant Nassar would close his eyes and keep them closed while digitally penetrating Plaintiff Jane A20 Doe and on some occasions his face seemed flushed.

485. Plaintiff Jane A21 Doe, the mother of Plaintiff Jane A20 Doe, observed Defendant Nassar sexually aroused on more than one occasion at appointments at his office at MSU with Jane A20 Doe.

486. Defendant Nassar invited Jane A20 Doe and Jane A21 Doe to his home multiple times, yet they declined his invitations.

487. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A20 Doe or Jane A21 Doe.

488. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A20 Doe, Jane A21 Doe, or Jane A20 Doe's father.

489. Plaintiff Jane A20 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

490. It is believed all of the aforementioned sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Defendant Nassar during "treatments" with athletes.

491. Plaintiffs Jane A20 Doe and Jane A21 Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## W.    JANE A22 DOE

492.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

493.    Plaintiff Jane A22 Doe treated with Defendant Nassar at his office at MSU from approximately 2009 to 2014.

494.    From 2011 to 2014, Plaintiff Jane A22 Doe was a minor, approximately 12 to 15 years old.

495.    Plaintiff Jane A22 Doe presented to Defendant Nassar with complaints of back pain, tight hamstrings and legs, and elbow, foot and ankle injuries as a result of gymnastics.

496.    On approximately four occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A22 Doe's vagina without prior notice and without gloves or lubricant.

497.    On approximately four occasions, Defendant Nassar pulled Plaintiff Jane A22 Doe's leotard up, massaged up her hamstrings to her buttocks and then penetrated her vagina.

498.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiffs Jane A22 Doe or Jane Z. Doe.

499.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A22 Doe, Jane Z. Doe, or Jane A22 Doe's father.

500.    Plaintiff Jane Z. Doe, the mother of Plaintiff Jane A22 Doe, observed Defendant Nassar sexually aroused on more than one occasion at appointments at his office at MSU with Jane A22 Doe.

501.    Plaintiff Jane A22 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

502. Plaintiff Jane A22 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

503. Plaintiffs Jane A22 Doe and Jane Z. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## X.      JANE A23 DOE

504. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

505. Plaintiff Jane A23 Doe treated with Defendant Nassar at his office at MSU, at USAG sanctioned events, and at the Karolyi Ranch in Texas, from approximately 2012 to 2016.

506. From 2012 to 2016, Plaintiff Jane A23 Doe was a minor, approximately 13 to 17 years old.

507. Plaintiff Jane A23 Doe presented to Defendant Nassar with complaints of low back pain and hamstring pain as a result of gymnastics.

508. On more than one occasion at appointments at his office at MSU, at USAG sanctioned events, and at the Karolyi Ranch in Texas, Defendant Nassar digitally penetrated Plaintiff Jane A23 Doe's vagina without prior notice and without gloves or lubricant.

509. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A23 Doe or Jane A.B. Doe.

510. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane A23 Doe, Jane A.B. Doe, or Jane A23 Doe's father.

511. Plaintiff Jane A23 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

512.	Plaintiff Jane A23 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

513.	Jane A.B. Doe recently reported Defendant Nassar's conduct to the MSU Police Department and the Federal Bureau of Investigation.

514.	Plaintiff Jane A23 Doe and Jane A.B. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**Y.	JANE A24 DOE**

515.	Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

516.	Plaintiff Jane A24 Doe treated with Defendant Nassar at his office at MSU and USAG sanctioned meets sponsored by Defendant Twistars from approximately 1999 to 2003.

517.	From 1999 to 2003, Plaintiff Jane A24 Doe was a minor, approximately 14 to 17 years old.

518.	Plaintiff Jane A24 Doe presented to Defendant Nassar with complaints of low back pain, shin fractures, and associated pain as a result of gymnastics as well as injuries suffered in a motor vehicle accident.

519.	On more than one occasion, between approximately 8 and 10 times, at appointments at his office at MSU and at USAG sanctioned meets sponsored by Defendant Twistars, Defendant Nassar digitally penetrated Plaintiff Jane A24 Doe's vagina and anus without prior notice and without gloves or lubricant.

520.	Defendant Nassar referred to his conduct disguised as "treatment" as a pelvic adjustment to Plaintiff Jane A24 Doe.

521.	Defendant Nassar did not give prior notice or obtain consent for digital penetration from

Jane A24 Doe, or Jane A24 Doe's parents as she was a minor at the time.

522. Plaintiff Jane A24 Doe requested her medical records, however Defendant MSU could not locate a paper chart documenting all of her appointments with Defendant Nassar.

523. The records Defendant MSU did produce were completely devoid of any reference to any type of intra-vaginal procedure.

524. Plaintiff Jane A24 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

525. Plaintiff Jane A24 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## Z.    JANE A25 DOE

526. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

527. Plaintiff Jane A25 Doe treated with Defendant Nassar at his office at MSU between approximately 2000 and 2001.

528. From 2000 to 2001, Plaintiff Jane A25 Doe was a minor, approximately 14 years old.

529. Plaintiff Jane A25 Doe presented to Defendant Nassar with complaints of low back pain as a result of gymnastics.

530. On one occasion at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A25 Doe's vagina without prior notice and without gloves or lubricant for between 20 to 25 minutes at a time.

531. During the visits Plaintiff Jane A25 Doe's mother was in the room and Defendant Nassar would position himself in a manner in which Plaintiff Jane A25 Doe's mother could not see Defendant Nassar's conduct.

532. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A25 Doe, or Jane A25 Doe's parents as she was a minor at the time.

533. Plaintiff Jane A25 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

534. Following the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," Plaintiff Jane A25 Doe made a complaint to Defendant MSU's Police Department.

535. Plaintiff Jane A25 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## AA.   **JANE A26 DOE**

536. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

537. Plaintiff Jane A26 Doe treated with Defendant Nassar in approximately 1999 and between 2010 and 2012.

538. In 1999, Plaintiff Jane A26 Doe was a minor, approximately 16 years old.

539. Plaintiff Jane A26 Doe presented to Defendant Nassar with complaints of low back pain as a result of gymnastics at a USAG National Championship meet in Sacramento, California.

540. At the USAG National Championship meet, on at least two occasions, Defendant Nassar digitally penetrated Plaintiff Jane A26 Doe's vagina without prior notice and without gloves or lubricant.

541. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A26 Doe, or Jane A26 Doe's parents as she was a minor at the time.

542. Between 2010 and 2012, Plaintiff Jane A26 Doe presented to Defendant Nassar with

complaints of calf pain.

543. Between 2010 and 2012, on a monthly basis at his office at MSU, on approximately twenty or more occasions, Defendant Nassar digitally penetrated Plaintiff Jane A26 Doe's vagina without prior notice and without gloves or lubricant.

544. Defendant Nassar made comments and jokes about oral sex while digitally penetrating Plaintiff Jane A26 Doe's vagina.

545. On one occasion for treatment of her calf, Defendant Nassar examined Plaintiff Jane A26 Doe in a supply room at MSU at a late appointment, examined Plaintiff's Jane A26 Doe's rectum, abruptly left the room, and returned twenty minutes later without comment or explanation.

546. Plaintiff Jane A26 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

547. Plaintiff Jane A26 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

548. Plaintiff Jane A26 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**BB.** **JANE A27 DOE**

549. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

550. Plaintiff Jane A27 Doe treated with Defendant Nassar at his office at MSU between approximately 2003 and 2005 during the time she was a high school cross country and soccer athlete.

551.     From 2003 to 2005, Plaintiff Jane A27 Doe was a minor, approximately 15 to 16 years old.

552.     Plaintiff Jane A27 Doe presented to Defendant Nassar with complaints of low back pain unrelated to sport activity.

553.     During the first couple appointments, Nassar had his hands near and around her groin, hips, buttocks, and back, but did not touch her vagina.

554.     However, on several occasions at later appointments at his office at MSU, Defendant Nassar touched Plaintiff Jane A27 Doe's vaginal area and digitally penetrated Plaintiff Jane A27 Doe's vagina without prior notice and without gloves or lubricant for thirty seconds to one minute at a time.

555.     Defendant Nassar diagnosed Plaintiff Jane A27 Doe with a stress fracture, however, such diagnosis cannot be found in medical records provided by the MSU Defendants to Plaintiff, and in multiple places in the medical records regarding Plaintiff Jane A27 Doe's back, the records read "there is no evidence for fracture," yet the digital vaginal penetration continued.

556.     On at least one occasion, Defendant Nassar massaged Plaintiff Jane A27 Doe's breasts touching the sides of her breasts with his fingertips. Plaintiff wondered what massaging her breast had to do with healing a stress fracture in her back.

557.     Defendant Nassar instructed Plaintiff Jane A27 Doe to wear shorts to the appointments and if she did not, he provided her with a pair of loose-fitting shorts to change into.

558.     During the visits, Defendant Nassar would position himself in a manner in which Plaintiff Jane A27 Doe's mother could not see his conduct.

559.     Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A27 Doe, or Jane A27 Doe's parents as she was a minor at the time.

560. Plaintiff Jane A27 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

561. Plaintiff Jane A27 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

562. In late December 2016, Plaintiff Jane A27 Doe made a complaint to Defendant MSU's Police Department.

563. Plaintiff Jane A27 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## CC. JANE A28 DOE

564. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

565. Plaintiff Jane A28 Doe treated with Defendant Nassar at his office at MSU from approximately 1999 to 2016.

566. From 1999 to 2006, Plaintiff Jane A28 Doe was a minor, approximately 11 to 17 years old.

567. Plaintiff Jane A28 Doe presented to Defendant Nassar with complaints of hip pain, pelvic and groin pain, back pain and foot pain as a result of a broken foot due to gymnastics and cheerleading.

568. On over approximately 30 separate occasions, at appointments at his office at MSU Defendant Nassar touched Plaintiff Jane A28 Doe's vaginal and rectal area and digitally penetrated Plaintiff Jane A28 Doe's vagina without prior notice and without gloves or lubricant for five to fifteen minutes at a time.

569. At times Defendant Nassar used his arm to massage against Plaintiff Jane A28 Doe's

vagina while digitally penetrating her vagina in an aggressive manner.

570. At times Defendant Nassar would tap or spank Jane A28 Doe's buttocks toward the end of appointments and make inappropriate comments about her buttocks.

571. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A28 Doe.

572. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A28 Doe, or Jane A28 Doe's parents as she was a minor at the time.

573. Plaintiff Jane A28 Doe treated with Defendant Nassar as an MSU student athlete on the competitive cheerleading team.

574. Plaintiff Jane A28 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

575. Plaintiff Jane A28 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**DD.** **JANE A29 DOE**

576. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

577. Plaintiff Jane A29 Doe treated with Defendant Nassar his at office at MSU from approximately 2009 to 2012.

578. Plaintiff Jane A29 Doe initially as a minor, presented to Defendant Nassar with complaints of rib pain in 2009.

579. Defendant Nassar, while "treating" Plaintiff for rib pain, on numerous occasions touched and fondled Plaintiff's breasts without permission by reaching under her bra, massaging both of her breasts.

580.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A29 Doe.

581.    Plaintiff Jane A29 Doe was a student athlete at Hillsdale College in the State of Michigan from approximately 2011 to 2016.

582.    From approximately August of 2011 through March of 2012 Plaintiff Jane A29 Doe presented to Defendant Nassar with complaints of back pain suffered through her participation in basketball.

583.    On approximately three separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A29 Doe's vagina without prior notice and without gloves or lubricant for over eight minutes at a time under the guise of performing "treatment."

584.    Defendant Nassar would pull Plaintiff Jane A29 Doe's underwear down to digitally penetrate Plaintiff Jane A29 Doe's vagina.

585.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A29 Doe.

586.    Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane A29 Doe's vagina or breasts.

587.    Plaintiff Jane A29 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

588.    Plaintiff Jane A29 Doe did not treat or intend to treat Defendant Nassar for OB/GYN issues.

589.    Plaintiff Jane A29 Doe believes the conduct by Defendant Nassar was sexual assault, abuse and molestation and for Defendant Nassar's pleasure and gratification.

590.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

591.    Plaintiff Jane A30 Doe treated with Defendant Nassar at his office at MSU from approximately August of 2011 to December of 2011. Plaintiff Jane A30 Doe was referred to Defendant Nassar by the parents of Jane A29 Doe.

592.    Plaintiff Jane A30 Doe was a student athlete at Hillsdale College in the State of Michigan from approximately 2011 to 2015.

593.    From approximately August of 2011 through December 2011 Plaintiff Jane A30 Doe presented to Defendant Nassar with complaints of back pain suffered through her participation in basketball.

594.    On approximately six separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A30 Doe's vagina without prior notice and without gloves or lubricant for over eight minutes at a time under the guise of performing "treatment."

595.    Defendant Nassar would pull Plaintiff Jane A30 Doe's underwear down to digitally penetrate Plaintiff Jane A30 Doe's vagina.

596.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A30 Doe.

597.    Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane A30 Doe's vagina.

598.    Plaintiff Jane A30 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal

procedure.

599. Plaintiff Jane A30 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

600. Plaintiff Jane A30 Doe believes the conduct by Defendant Nassar was sexual assault, abuse and molestation and for Defendant Nassar's pleasure and gratification.

## FF.  **JANE A31 DOE**

601. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

602. Plaintiff Jane A31 Doe treated with Defendant Nassar at his office at MSU from approximately 2001 to 2008.

603. From 2001 to 2007, Plaintiff Jane A.K Doe was a minor, 11 years old to 17 years old.

604. Plaintiff Jane A31 Doe presented to Defendant Nassar with complaints of knee pain and general back pain as a result of gymnastics.

605. On one occasion, in approximately 2006 when Plaintiff was approximately 16 years old, Defendant Nassar asked Plaintiff Jane A31 Doe if she shaved her vaginal area.

606. In 2008, Plaintiff was a student at MSU, participating in club gymnastics.

607. On at least one occasion in 2008 at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A31 Doe's vagina without prior notice and without gloves or lubricant for up to approximately five to fifteen minutes at a time.

608. On the occasion in 2008 described above, Plaintiff Jane A31 Doe's mother was in the room, however, Defendant Nassar positioned himself in a manner in which Plaintiff Jane A31 Doe's mother could not see his conduct.

609. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical

procedure to Plaintiff Jane A31 Doe.

610. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A31 Doe.

611. Plaintiff Jane A31 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

612. Plaintiff Jane A31 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

613. Plaintiff Jane A31 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**GG.   JANE A32 DOE**

614. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

615. Plaintiff Jane A32 Doe treated with Defendant Nassar from 2013 to 2014.

616. From 2013 to 2014, Plaintiff was a minor, 15 years old.

617. Plaintiff Jane A32 Doe presented to Defendant Nassar with complaints of back pain and wrist pain as a result of gymnastics.

618. On at least three occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A32 Doe's vagina without prior notice and without gloves or lubricant for up to twenty minutes at a time multiple times during the same appointment.

619. One on occasion, Plaintiff Jane A32 Doe used a tampon to prevent Defendant Nassar from digitally penetrating her vagina. Defendant Nassar attempted to digitally penetrate her vagina, felt the tampon, and consequently stopped.

620. During the visits Plaintiff Jane A32 Doe's father was in the room and Defendant Nassar would position himself in a manner in which Plaintiff Jane A32 Doe's father could not see Defendant Nassar's conduct.

621. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A32 Doe.

622. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A32 Doe, or Jane A32 Doe's parents as she was a minor at the time.

623. Plaintiff Jane A32 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

624. Plaintiff Jane A32 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**HH.    JANE A33 DOE**

625. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

626. Plaintiff Jane A33 Doe treated with Defendant Nassar in approximately 1998 or 1999.

627. In 1998 or 1999, Plaintiff Jane A33 Doe was a minor, 16 or 17 years old.

628. Plaintiff Jane A33 Doe presented to Defendant Nassar with complaints of low back pain as a result of gymnastics.

629. On one occasion at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A33 Doe's vagina without prior notice and without gloves.

630. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A33 Doe.

631. Defendant Nassar did not give prior notice or obtain consent for digital penetration from

Jane A33 Doe, or Jane A33 Doe's parents as she was a minor at the time.

632. Plaintiff Jane A33 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

633. Plaintiff Jane A33 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## II.     JANE A34 DOE

634. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

635. Plaintiff Jane A34 Doe treated with Defendant Nassar from approximately March 2010 to June 2015.

636. From 2010 to 2011, Plaintiff Jane A34 Doe was a minor, 16 to 17 years old.

637. Plaintiff Jane A34 Doe presented to Defendant Nassar with complaints of low back pain as a result of track and field.

638. Defendant Nassar gave her gifts such as an Olympic sweatshirt and an Olympic pin.

639. On several occasions, approximately more than 48 times, at various locations including his office at MSU, the athletic training room at the Jenison Field House, and Defendant Nassar's home, Defendant Nassar digitally penetrated Plaintiff Jane A34 Doe's vagina without prior notice and without gloves or lubricant for up to twenty minutes at a time, multiple times during the same appointment.

640. On at least one occasion, Plaintiff Jane A34 Doe observed Defendant Nassar sexually aroused while he was digitally penetrating Plaintiff Jane A34 Doe's vagina.

641. At times Defendant Nassar would tap or spank Plaintiff Jane A34 Doe's buttocks and tell her to "flip over" during appointments.

642. Defendant Nassar would pull up her spandex shorts in order to digitally penetrate Plaintiff Jane A34 Doe's vagina.

643. On one occasion, Defendant Nassar told Plaintiff Jane A34 Doe her left side ribs were "out of alignment" and put his hand under Plaintiff Jane A34 Doe's sports bra and massaged her left breast for approximately three to five minutes.

644. On one occasion in approximately May 2014, Defendant Nassar set up an appointment with Plaintiff Jane A34 Doe by text message and told her to come to his home. Defendant Nassar had an examination table set up in his backyard and digitally penetrated Plaintiff Jane A34 Doe's vagina.

645. Defendant Nassar frequently made comments about Plaintiff Jane A34 Doe's buttocks and told her she had a "cheerleader butt."

646. Defendant Nassar also made comments regarding Plaintiff Jane A34 Doe's pubic hair near her vagina and buttocks and told her treatment would work better if she shaved.

647. Plaintiff also treated with Defendant Nassar while attending MSU as a track and field athlete.

648. Defendant Nassar gave Plaintiff Jane A34 Doe his cellular telephone number and instructed her to text him anytime she needed anything.

649. Defendant Nassar told Plaintiff Jane A34 Doe that she was saved in his phone as "Superfreak."

650. For a period of time in or around 2013, Plaintiff Jane A34 Doe was seeing Defendant Nassar weekly due to low back pain. Plaintiff Jane A34 Doe would text him and Defendant Nassar would instruct her to come in telling her he would "squeeze her in at the end of his clinic."

651. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A34 Doe.

652. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A34 Doe, or Jane A34 Doe's parents during the time she was a minor.

653. Some of the sexual assaults occurred after the MSU Defendants were notified in 2014 of allegations of sexual abuse by Defendant Nassar during "treatments" with athletes.

654. Plaintiff Jane A34 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

655. Plaintiff Jane A34 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

656. On February 2, 2017, Plaintiff Jane A34 Doe made a complaint to Defendant MSU's Police Department.

657. Plaintiff Jane A34 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## JJ. <u>JANE A35 DOE</u>

658. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

659. Plaintiff Jane A35 Doe treated with Defendant Nassar in approximately 2002.

660. In 2002, Plaintiff Jane A35 Doe was a minor, 14 years old.

661. Plaintiff Jane A35 Doe presented to Defendant Nassar for low back pain and tailbone pain as a result of gymnastics.

662. On at least two occasions at his office at MSU, Defendant Nassar touched Plaintiff Jane

A35 Doe's vaginal and rectal area without gloves, and digitally penetrated Plaintiff Jane A35 Doe's vagina at least twice without gloves and without lubricant.

663. At the time of the first assault, Defendant Nassar had her lay on her stomach. She was shocked when without any warning or advanced notice Defendant Nassar digitally penetrated her vagina.

664. Following her first appointment, Defendant Nassar requested that Plaintiff Jane A35 Doe wear shorts or a leotard to her subsequent appointments.

665. During one of the assaults, Plaintiff Jane A35 Doe's mother was trying to see what Defendant Nassar was doing, but Defendant Nassar moved around to block her view.

666. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A35 Doe.

667. Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane A35 Doe's vaginal or rectal area, or for vaginal penetration from Jane A35 Doe, or Jane A35 Doe's parents as she was a minor at the time.

668. Plaintiff Jane A35 Doe requested her medical records, however Defendant MSU could not locate a paper chart documenting all of her appointments with Defendant Nassar.

669. The records Defendant MSU did produce were completely devoid of any reference to any type of intra-vaginal procedure.

670. Plaintiff Jane A35 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

671. Plaintiff Jane A35 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**KK.  JANE A36 DOE**

672.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

673.  Plaintiff Jane A36 Doe treated with Defendant Nassar from approximately 1997 to 2003, and 2013.

674.  From 1997 to 2003, Plaintiff Jane A36 Doe was a minor, 12 to 17 years old.

675.  Throughout high school, Plaintiff Jane A36 Doe presented to Defendant Nassar for general back pain as a result of gymnastics.

676.  On several occasions between 1997 and 2003, and on at least two occasions in 2013, at his office at MSU and at gymnastics meets held throughout Michigan, Defendant Nassar digitally penetrated Plaintiff Jane A36 Doe's vagina without prior notice and without gloves or lubricant.

677.  During some visits at MSU, Plaintiff Jane A36 Doe's father was present and Defendant Nassar would position himself in a manner in which Plaintiff Jane A36 Doe's father could not see Defendant Nassar's conduct.

678.  At the gymnastics meets, Defendant Nassar would take Plaintiff Jane A36 Doe to a secluded location, away from others attending the meet, and would digitally penetrate Plaintiff Jane A36 Doe's vagina while no other individual was present.

679.  Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A36 Doe.

680.  Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A36 Doe, or Jane A36 Doe's parents as she was a minor at the time.

681.  Plaintiff Jane A36 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN

issues.

682. Plaintiff Jane A36 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**LL.    JANE A37 DOE**

683. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

684. Plaintiff Jane A37 Doe treated with Defendant Nassar from approximately 2006 to 2013.

685. From 2006 to 2008, Plaintiff Jane A37 Doe was a minor, 15 to 17 years old.

686. Plaintiff Jane A37 Doe presented to Defendant Nassar for back pain caused by recreational sports.

687. On at least 20 occasions between 2006 and 2013 at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A37 Doe's vagina without prior notice and without gloves for several minutes at a time.

688. Defendant Nassar required Plaintiff Jane A37 Doe to change into breakaway shorts with Velcro on the side and would put his hands under the shorts to digitally penetrate her vagina.

689. One on occasion at an appointment when Plaintiff Jane A37 Doe's mother was not present, Defendant Nassar touched Plaintiff Jane A37 Doe's breasts.

690. Defendant Nassar said he was going to do "myofascial release" and a "sports massage" that involved "different techniques" to Plaintiff Jane A37 Doe, but never explained that any "treatment" would involve digital penetration of her vagina.

691. After penetration by Defendant Nassar, Plaintiff Jane A37 Doe experienced bleeding and soreness.

692. Plaintiff Jane A37 Doe stopped seeing Defendant Nassar after she stopped competing in collegiate sports.

693. Since treating with Defendant Nassar, Plaintiff Jane A37 Doe has had other treatments for low back pain by therapists and there has never been vaginal penetration.

694. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A37 Doe, or Jane A37 Doe's parents as she was a minor at the time.

695. Plaintiff Jane A37 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

696. Plaintiff Jane A37 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**MM.   JANE A38 DOE**

697. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

698. Plaintiff Jane A38 Doe treated with Defendant Nassar from approximately 2005 to 2014 or 2015.

699. From 2005 to 2013, Plaintiff Jane A38 Doe was a minor, 10 to 17 years old.

700. Plaintiff Jane A38 Doe presented to Defendant Nassar for back pain caused by gymnastics.

701. On multiple occasions, between 2005 to 2014 or 2015, at various locations including but not limited to his office at MSU, Defendant Twistars' facility, and Defendant Nassar's residence, Defendant Nassar digitally penetrated Plaintiff Jane A38 Doe's vagina and anus without prior notice and without gloves for several minutes at a time.

702. When Plaintiff visited Defendant Nassar's home, he gave her gifts including an Olympic jacket.

703. On one occasion, Plaintiff Jane A38 Doe's mother observed Defendant Nassar "treating" Plaintiff Jane A38 Doe and asked him what he was doing. Defendant Nassar gave an explanation she did not understand. He did not explain that he was using vaginal or anal penetration.

704. On that same occasion, Plaintiff Jane A38 Doe's mother stood up and moved to attempt to see what Defendant Nassar was doing and Defendant Nassar moved to block her view.

705. On another occasion, Plaintiff Jane A38 Doe's mother observed Defendant Nassar touching different parts of Plaintiff Jane A38 Doe's body including her feet and legs and asked him why he wasn't using gloves. Defendant Nassar did not provide an explanation and was dismissive of her question.

706. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A38 Doe, or Jane A38 Doe's parents as she was a minor at the time.

707. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A38 Doe or Jane A38 Doe's parents.

708. Plaintiff Jane A38 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

709. Plaintiff Jane A38 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**NN.**     **JANE A39 DOE**

710. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

711. Plaintiff Jane A39 Doe was a student athlete at MSU from approximately 2001 to 2005.

712. Plaintiff Jane A39 Doe treated with Defendant Nassar from approximately 2001 to 2003.

713. Plaintiff Jane A39 Doe presented to Defendant Nassar for low back pain caused by tennis.

714. On approximately two to three occasions, between approximately 2001 and 2003 in training rooms in the Jenison Fieldhouse and Duffy Daugherty building on MSU's campus, Defendant Nassar digitally penetrated Plaintiff Jane A39 Doe's vagina without prior notice and without gloves for between five to ten minutes or more at a time.

715. No one other than Defendant Nassar and Plaintiff Jane A39 Doe was present in the room at the times of the digital penetration.

716. The digital penetration took her by surprise and was very uncomfortable.

717. On one occasion, Plaintiff Jane A39 Doe observed Defendant Nassar breathing heavily while digitally penetrating her vagina.

718. On that same occasion, a trainer knocked on the door and opened it and Defendant Nassar jumped up from his stool and walked away from Plaintiff Jane A39 Doe who was lying on a training table.

719. Plaintiff Jane A39 Doe's observations of Defendant Nassar's heavy breathing and response when the trainer walked in prompted her to request that Defendant Nassar refrain from any additional "intravaginal treatment."

720. In response to Plaintiff Jane A39 Doe's request, Defendant Nassar bashfully and awkwardly put his head down, said something along the lines of "okay," and quickly changed the conversation.

721. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A39 Doe.

722. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A39 Doe.

723. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A39 Doe.

724. Plaintiff Jane A39 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

725. Plaintiff Jane A39 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## OO.    JANE A40 DOE

726. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

727. Plaintiff Jane A40 Doe treated with Defendant Nassar from approximately 1997 to 2006.

728. From 1997 to 2003 Plaintiff Jane A40 Doe was a minor, 13 to 17 years old.

729. Plaintiff Jane A40 Doe presented to Defendant Nassar for low back pain and knee pain caused by gymnastics.

730. On approximately two to three occasions, in approximately 1997 and 1998 at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A40 Doe's vagina without prior notice and without gloves for approximately one to two minutes at a time.

731. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A40 Doe or Jane A40 Doe's parents as she was a minor at the time.

732. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A40 Doe or Jane A40 Doe's parents.

733. Plaintiff Jane A40 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

734. Plaintiff Jane A40 Doe believes the conduct by Defendant Nassar was sexual assault,

abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**PP.** **JANE A41 DOE**

735. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

736. Plaintiff Jane A41 Doe treated with Defendant Nassar from approximately 1997 to 2006.

737. In 2003, Plaintiff Jane A41 Doe presented to Defendant Nassar for low back pain caused by gymnastics.

738. While competing in collegiate gymnastics at a university in Michigan, on approximately one occasion in 2003 at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A41 Doe's vagina without prior notice, lubricant, or gloves.

739. Defendant Nassar had Plaintiff Jane A41 Doe lay down to try to recreate the pain she was experiencing, and then he digitally penetrated her vagina without notice or explanation.

740. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A41 Doe.

741. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A41 Doe.

742. Plaintiff Jane A41 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

743. Plaintiff Jane A41 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**QQ.** **JANE A42 DOE**

744. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

745. Plaintiff Jane A42 Doe treated with Defendant Nassar in approximately 2002.

746. In 2002, Plaintiff Jane A42 Doe was a minor, 15 to 16 years old.

747. Plaintiff Jane A42 Doe was a ballet dancer, but presented to Defendant Nassar for low back pain and knee pain sustained in a motor vehicle collision.

748. On approximately two to three occasions in 2002 at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A42 Doe's vagina and anus without prior notice, gloves, or lubricant for up to five minutes at a time.

749. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A21 Doe or Jane A21 Doe's parents.

750. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A42 Doe or Jane A42 Doe's parents as Jane A42 Doe was a minor at the time.

751. Plaintiff Jane A42 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

752. Plaintiff Jane A42 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**RR.   JANE A43 DOE**

753. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

754. Plaintiff Jane A43 Doe treated with Defendant Nassar in approximately 2003.

755. In 2003, Plaintiff Jane A43 Doe was a minor, 15 years old.

756. Plaintiff Jane A43 Doe presented to Defendant Nassar for low back pain and knee pain as a result of track and field.

757. On one occasion in 2003 at his office at MSU, Defendant Nassar touched Plaintiff Jane

A43 Doe's vagina and vaginal area with his fingers and thumbs in a manner in which it seemed he was trying to stimulate her sexually. He laid her on her back placing his hands on her thigh doing stretches. He then placed his hands on the inside of her thighs and proceeded upward until his thumbs were touching and rubbing against her vagina. Defendant Nassar then asked her to lay on her stomach. He again touched the inside of her thigh and moved upward rubbing against her vagina. All of this was done without prior notice and without gloves or lubricant for between approximately two to three minutes at a time.

758.  Defendant Nassar explained his conduct as "stretching her muscles" to Plaintiff Jane A43 Doe.

759.  Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane A43 Doe's vagina or vaginal area from Jane A43 Doe or Jane A43 Doe's parents as Jane A43 Doe was a minor at the time.

760.  Plaintiff Jane A43 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

761.  Plaintiff Jane A43 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**SS.**    **JANE A44 DOE**

762.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

763.  Plaintiff Jane A44 Doe treated with Defendant Nassar from approximately 1994 to 2001.

764.  From 1994 to 2001, Plaintiff Jane A44 Doe was a minor, 9 to 15 years old.

765.  Plaintiff Jane A44 Doe presented to Defendant Nassar for back pain as a result of

gymnastics.

766. Plaintiff Jane A44 Doe first met Defendant Nassar at a gymnastics meet.

767. For a period of time, Plaintiff Jane A44 Doe saw Defendant Nassar weekly at his office at MSU.

768. On multiple occasions, at his office at MSU Defendant Nassar digitally penetrated Plaintiff Jane A44 Doe's vagina without prior notice and without gloves or lubricant.

769. On one occasion, when Plaintiff was not competing but attending a meet as a spectator at Twistars, she "treated" with Defendant Nassar and on that occasion he digitally penetrated Plaintiff Jane A44 Doe's vagina without prior notice and without gloves or lubricant.

770. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A44 Doe or Jane A44 Doe's parents.

771. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane A44 Doe or Jane A44 Doe's parents as Jane A44 Doe was a minor at the time.

772. Plaintiff Jane A44 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

773. Plaintiff Jane A44 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## TT.   JANE A45 DOE

774. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

775. Plaintiff Jane A45 Doe treated with Defendant Nassar from approximately 2008 to 2011 as a student athlete at MSU.

776. Plaintiff Jane A45 Doe presented to Defendant Nassar with complaints of low back pain as a result of rowing.

777. Plaintiff Jane A45 Doe was referred to Defendant Nassar by MSU trainers and training staff.

778. During some of her early treatments in approximately 2008 and 2009, there was another trainer in the room and Nassar did not do any "treatment" that included digital penetration.

779. Some of Plaintiff Jane A45 Doe's teammates discussed being touched in a different manner by Defendant Nassar.

780. On approximately one occasion in 2010 at a training room in the Jenison Field House, Defendant Nassar digitally penetrated Plaintiff Jane A45 Doe's vagina without prior notice.

781. On this occasion, there were no trainers or chaperones present.

782. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A45 Doe.

783. She was shocked and wanted to tell him to stop, but wanted to trust him because he was an Olympic doctor and had been her doctor for a significant period of time before this appointment.

784. After this assault, Jane A45 Doe told Defendant Nassar that the "treatment" didn't help.

785. Plaintiff Jane A45 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

786. Plaintiff Jane A45 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**UU.** **JANE A46 DOE**

787. Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

788. Plaintiff Jane A46 Doe treated with Defendant Nassar from approximately 2000 to 2001.

789. From 2000 to 2001 Plaintiff Jane A46 Doe was a minor, 14 to 15 years old.

790. Plaintiff Jane A46 Doe presented to Defendant Nasser with complaints of pain in her foot, ankle, shins, and lower back as a result of gymnastics.

791. On one occasion at an appointment at his office at MSU Defendant Nassar digitally penetrated Plaintiff Jane A46 Doe's vagina without prior notice and without gloves or lubricant.

792. Immediately prior to the digital penetration, Defendant Nassar asked Plaintiff Jane A46 Doe to demonstrate a back leg grab split move.

793. During the visit Plaintiff Jane A46 Doe's mother was in the room and Defendant Nassar positioned himself in a manner in which Plaintiff Jane A46 Doe's mother could not see Defendant Nassar's conduct.

794. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A46 Doe, or Jane A46 Doe's parents as she was a minor at the time.

795. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A46 Doe or Plaintiff Jane A46 Doe's parents as she was a minor at the time.

796. Plaintiff Jane A46 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

797. Plaintiff Jane A46 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## VV.  JANE A47 DOE by Next Friend JANE A48 DOE

798. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

799. Plaintiff Jane A47 Doe treated with Defendant Nassar from approximately 2011 to 2016.

800. From 2011 to 2016 Plaintiff Jane A47 Doe was a minor, 10 to 14 years old.

801. Plaintiff Jane A47 Doe presented to Defendant Nassar with complaints of pain in her back, tailbone, groin, shoulder, and foot as a result of gymnastics and other recreational sports.

802. On at least approximately three occasions at appointments at his office at MSU and at other locations, Defendant Nassar touched Plaintiff Jane A47 Doe's vaginal area without prior notice and without gloves or lubricant.

803. On multiple occasions, when Plaintiff Jane A47 Doe sought treatment for issues with her shoulder Defendant Nassar would ask her to remove her shirt and would grab and massage her breasts while she was only wearing a sports bra.

804. Defendant Nassar did not give prior notice or obtain consent to touch her breasts or vaginal area from Jane A47 Doe, Jane A48 Doe, or Jane A47 Doe's father as she was a minor at the time.

805. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A47 Doe, Plaintiff Jane A48 Doe or Plaintiff Jane A47 Doe's father as she was a minor at the time.

806. Plaintiff Jane A47 Doe and Plaintiff Jane A48 Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

807. In March 2017, Plaintiff Jane A47 Doe made a complaint regarding Defendant Nassar to

MSU's Police Department.

## WW.   JANE A49 DOE

808.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

809.   Plaintiff Jane A49 Doe was a scholarship student athlete at MSU from 2008 to 2012.

810.   Plaintiff Jane A49 Doe presented to Defendant Nassar with injuries to her lower back, hips, ribs, and sacrum resulting from her sport.

811.   On approximately one to three occasions at appointments at the Jenison Fieldhouse athletic training room, Defendant Nassar touched and rubbed her vaginal area without notice, gloves, or lubricant.

812.   Although the touching and rubbing never alleviated the pain in her back, Jane A49 Doe always told Defendant Nassar the "treatments" worked because she did not want him "going deeper" into her vagina.

813.   On one occasion Defendant Nassar made a comment regarding the size of Plaintiff Jane A49 Does vagina, indicating her vagina was small and she couldn't have children.

814.   Defendant Nassar did not obtain consent to touch or rub Plaintiff Jane A49 Doe's vaginal area or vagina.

815.   Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A49 Doe.

816.   Plaintiff Jane A49 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## XX.   JANE A50 DOE

817.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

818. Plaintiff Jane A50 Doe treated with Defendant Nassar from approximately 2010 to 2016.

819. From 2010 to 2016, Plaintiff Jane A50 Doe was a minor, 11 to 17 years old.

820. Plaintiff Jane A50 Doe was 18 years old when she last treated with Defendant Nassar in July 2016,

821. Plaintiff presented to Defendant Nassar with complaints of back, hamstring, knee, and shoulder pain as a result of gymnastics.

822. On over one hundred occasions, at appointments at his office at MSU, at Twistars, and at his residence Defendant Nassar digitally penetrated Plaintiff Jane A50 Doe's vagina and anus without notice, gloves, or lubricants.

823. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A50 Doe or Jane A50 Doe's parents.

824. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane A50 Doe or Jane A50 Doe's parents as Jane A50 Doe was a minor at the time.

825. Plaintiff Jane A50 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

826. Plaintiff Jane A50 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**YY.** **JANE A51 DOE**

827. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

828. Plaintiff Jane A51 Doe was a scholarship student athlete at MSU from 2008 to 2012.

829. Plaintiff Jane A51 Doe presented to Defendant Nassar with complaints of sacrum, rib, and back pain as a result of rowing.

830. On at least one occasion in approximately 2009 or 2010 at an appointment at his office at MSU Defendant Nassar digitally penetrated Plaintiff Jane A51 Doe's vagina without prior notice, gloves, or lubricant for approximately 10 minutes.

831. Defendant Nassar regularly scheduled Plaintiff Jane A51 Doe for 20 minute sessions, however, on the occasion described above Defendant Nassar scheduled her for a 60 minute session stating he was going to perform a more intense procedure.

832. Defendant Nassar pulled down Plaintiff Jane A51 Doe's spandex, put lotion on one of his hands, began massaging her legs, and then used the other ungloved, and unlubricated, hand to digitally penetrate her vagina.

833. Plaintiff's trainer, an MSU employee/representative/agent was in the room when the procedure began, but left the room at some point during the appointment.

834. Defendant Nassar did not indicate the procedure would involve vaginal penetration.

835. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A51 Doe.

836. Plaintiff Jane A51 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**ZZ.**     **JANE A52 DOE by Next Friend JANE A53 DOE**

837. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

838. From 2007 to the present date, Plaintiff Jane A52 Doe was a minor, and in or around 2015 or 2016 Plaintiff Jane A52 Doe was approximately 9 or 10 years old.

839. From approximately 2007 to 2016, Plaintiff Jane A52 Doe visited Defendant Nassar's residence.

840. Plaintiff Jane A52 Doe and her parents were aware Defendant Nassar was a medical professional at MSU as he provided medical care to her at her home for minor illnesses and ailments.

841. Plaintiff Jane A52 Doe was a gymnast and participated in gymnastics at Twistars for a short period of time.

842. Defendant Nassar would give Plaintiff Jane A52 Doe gifts such as Olympic pencil holders, towels, and other mementos.

843. On some occasions, Plaintiff Jane A52 Doe observed Defendant Nassar working with patients in his back yard.

844. In 2015 or 2016, on at least one occasion Defendant Nassar attempted to pull Plaintiff Jane A52 Doe's bathing suit down and "tickle" her, as well as other actions sexual in nature.

845. Defendant Nassar did not have consent to touch Plaintiff Jane A52 Doe from Jane A53 Doe or Jane A52 Doe's father as she was a minor at the time.

846. Plaintiff Jane A52 Doe and Plaintiff Jane A53 Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## AAA.  JANE A54 DOE

847. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

848. Plaintiff Jane A54 Doe was a student athlete at MSU from 2010 to 2014.

849. Plaintiff Jane A54 Doe presented to Defendant Nassar with complaints of low back pain as

a result of her sport.

850. On multiple occasions, Defendant Nassar touched her vaginal area and vagina without prior notice, gloves or lubricant.

851. Defendant Nassar would place his hands inside her spandex shorts to touch her vaginal area and vagina.

852. On approximately four to five occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A54 Doe's vagina without notice, gloves, or lubricant.

853. Although there was a trainer or medical student in the room with Plaintiff Jane A54 Doe and Defendant Nassar, he would always position himself in a way that the trainer or medical student could not see his hand inside or near her vagina.

854. Defendant Nassar did not obtain consent to touch Plaintiff Jane A54 Doe's vaginal area or vagina, nor did he obtain consent for digital penetration from Plaintiff Jane A54 Doe.

855. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A54 Doe.

856. Plaintiff Jane A54 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

857. Plaintiff Jane A54 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**BBB.  JANE A55 DOE**

858. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

859. Plaintiff Jane A55 Doe treated with Defendant Nassar from approximately 1997 to 2003.

860. From 1997 to 2003, Plaintiff Jane A55 Doe was a minor, approximately 12 to 17 years old.

861. Plaintiff Jane A55 Doe presented to Defendant Nassar with complaints of back pain.

862. On one occasion in approximately 1997 at an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A55 Doe's vagina without prior notice, gloves or lubricant.

863. Plaintiff Jane A55 Doe jumped when he penetrated her vagina as she had not been touched in her vaginal area, and in response Defendant Nassar commented that he knew that felt "a little different."

864. Plaintiff Jane A55 Doe's mother was in the room at the time, however, Defendant Nassar positioned himself in a way so that she could not see his conduct.

865. Defendant Nassar did not obtain consent for digital penetration from Plaintiff Jane A55 Doe or Plaintiff Jane A55 Doe's parents as she was a minor at the time.

866. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A55 Doe or Plaintiff Jane A55 Doe's parents.

867. Plaintiff Jane A55 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

868. Plaintiff Jane A55 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**CCC.  JANE A56 DOE**

869. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

870. Plaintiff Jane A56 Doe treated with Defendant Nassar in approximately 2002.

871. From 1999 to 2004, Plaintiff Jane A56 Doe was a scholarship student athlete at MSU.

872. In 2002, Plaintiff Jane A56 Doe presented to Defendant Nassar with complaints of groin pain as a result of track and field.

873. Plaintiff Jane A56 Doe was referred to Defendant Nassar by a MSU trainer.

874. On approximately three to five occasions in 2002, at appointments at his office at MSU Defendant Nassar digitally penetrated Plaintiff Jane A56 Doe's vagina without prior notice, gloves, or lubricant for up to 10 minutes at a time.

875. Defendant Nassar required Plaintiff Jane A56 Doe to remove all clothing from the waist down for each appointment and would use a sheet or gown to cover her lower body.

876. Plaintiff Jane A56 Doe was alone with Defendant Nassar for each treatment without any chaperone or other medical professional in the room.

877. Defendant Nassar did not obtain consent from Plaintiff Jane A56 Doe to touch Plaintiff Jane A56 Doe's vaginal area or vagina or for digital vaginal penetration.

878. Plaintiff Jane A56 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues related to

879. Plaintiff Jane A56 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

880. Following publication of a story by MSNBC, on or around February 20, 2017 Plaintiff Jane A56 Doe made a complaint to Defendant MSU's Police Department.

**DDD.  JANE A57 DOE**

881. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

882. Plaintiff Jane A57 Doe treated with Defendant Nassar from approximately 2011 to 2016.

883. From 2011 to 2016, Plaintiff Jane A57 Doe was a minor, 13 to 17 years old.

884. Plaintiff presented to Defendant Nassar with complaints of back and ankle pain as a result of gymnastics.

885. At times, Defendant Nassar would take Plaintiff Jane A57 Doe's shirt off and he would touch Plaintiff's B.P. Doe's breast area and breasts.

886. At some appointments Defendant Nassar would require her to change into loose fitting shorts that he provided.

887. Defendant Nassar told Plaintiff Jane A57 Doe to do Kegel exercises and felt to see if she was doing them correctly.

888. Members of Plaintiff Jane A57 Doe's family would be present at appointments, but Defendant Nassar would position himself in a manner in which Plaintiff Jane A57 Doe's family members could not see his conduct.

889. On at least one occasion, Defendant Nassar asked Plaintiff Jane A57 Doe's father to leave the examination room, leaving Defendant Nassar and Plaintiff Jane A57 Doe alone.

890. At appointments where Plaintiff Jane A57 Doe was seeking treatment for ankle issues, Defendant Nassar would always ask if her back hurt.

891. Defendant Nassar did not obtain consent to touch Plaintiff Jane A57 Doe's vaginal area or vagina from Plaintiff Jane A57 Doe or Plaintiff Jane A57 Doe's parents as she was a minor at the time.

892. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A57 Doe or Plaintiff Jane A57 Doe's parents.

893. Plaintiff Jane A57 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

894. Plaintiff Jane A57 Doe believes the conduct by Defendant Nassar was sexual assault,

abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**EEE. JANE A58 DOE**

895.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

896.    Plaintiff Jane A58 Doe treated with Defendant Nassar in or around 1999 and 2002.

897.    Plaintiff Jane A58 Doe suffered neck and back injuries as a result of a car accident in 1999.

898.    Plaintiff Jane A58 Doe, sought treatment from Defendant Nassar after her gymnastics coaches spoke with Defendant Nassar at the Karolyi Ranch about her injuries.

899.    Plaintiff Jane A58 Doe traveled from Florida to Michigan and treated with Defendant Nassar in 1999 at his office at MSU.

900.    At the appointment in 1999, Defendant Nassar requested she remove all her clothing for the appointment.

901.    In 2002, after suffering injuries to her hip, neck, and back in a second car accident, Plaintiff Jane A58 Doe again sought treatment from Defendant Nassar.

902.    Defendant Nassar advised Plaintiff Jane A58 Doe to travel to the USAG National Championships in Cleveland, Ohio in August 2002 for treatment, which she did.

903.    Defendant Nassar treated Plaintiff Jane A58 Doe in the training room of the competition arena for three days.

904.    For the first two days Plaintiff Jane A58 Doe's mother was present during each treatment.

905.    After two days of treatment, Defendant Nassar requested that Plaintiff Jane A58 Doe change her flight home to Florida so he could have additional time to finish the "treatment" telling her he had made progress but needed more time.

906.    Plaintiff Jane A58 Doe was able to change her travel plans, however, it was not possible

for Plaintiff Jane A58 Doe's mother to do so.

907. Therefore, on the third day of treatment, Plaintiff Jane A58 Doe's mother was not present, and there was no chaperone in the treatment room.

908. On all three days Defendant Nassar requested Plaintiff Jane A58 Doe be naked from the waist down and that she lay face down on the training table.

909. However, on the third day when Plaintiff Jane A58 Doe's mother was not present, Defendant Nassar digitally penetrated Plaintiff Jane A58 Doe's vagina without prior notice, gloves, or lubricant.

910. While Defendant Nassar penetrated Plaintiff Jane A58 Doe's vagina, he stated that the girls trusted him.

911. Although Defendant Nassar did not mention names, Plaintiff Jane A58 Doe understood his reference to "the girls" to mean famous Olympic gymnasts.

912. Defendant Nassar's comment also led Plaintiff Jane A58 Doe to believe his conduct and "treatment" must have been okay and normal if Olympic gymnasts trusted and allowed Defendant Nassar to engage in the same conduct with them.

913. Defendant Nassar did not give prior notice or obtain consent from Plaintiff Jane B.Q Doe to touch Plaintiff Jane A58 Doe's vaginal area or for vaginal penetration.

914. Plaintiff Jane A58 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

915. Plaintiff Jane A58 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### FFF.   JANE A59 DOE

916.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

917.   Plaintiff Jane A59 Doe treated with Defendant Nassar in or around 2000 and 2002.

918.   Plaintiff Jane A59 Doe was a minor in 2000 and 2002, approximately 13 and 15 years old.

919.   Plaintiff Jane A59 Doe sought treatment from Defendant Nassar for injuries to her hips (2000) and back (2002) as a result of gymnastics.

920.   Defendant Nassar diagnosed Plaintiff Jane A59 Doe with pre-fractures and bursitis.

921.   On several occasions at appointments at his office at MSU, Defendant Nassar touched Plaintiff Jane A59 Doe's pelvic area near her genitals without gloves.

922.   Plaintiff believes the touching was inappropriate and unnecessary as she believes her diagnoses largely required rest.

923.   Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane A59 Doe's pelvic area near her genitals from Plaintiff Jane A59 Doe or Plaintiff Jane A59 Doe's parents as Plaintiff Jane A59 Doe was a minor at the time.

924.   Defendant Nassar did not explain his touching and conduct as a medical procedure to Plaintiff Jane A59 Doe or Plaintiff Jane A59 Doe's parents.

925.   Plaintiff Jane A59 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

926.   Plaintiff Jane A59 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**GGG.  JANE A60 DOE**

927.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

928.   Plaintiff Jane A60 Doe treated with Defendant Nassar from approximately 2006 to 2010.

929.   Plaintiff Jane A60 Doe was a minor from 2006 to 2010, approximately 12 to 16 years old.

930.   Plaintiff Jane A60 Doe sought treatment from Defendant Nassar for injuries to her back as a result of gymnastics.

931.   Defendant Nassar told Plaintiff Jane A60 Doe he was going to "fix her back" because her "spine was twisted."

932.   On at least approximately two occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A60 Doe's anus without notice, gloves, or lubricant.

933.   Defendant Nassar did not give prior notice or obtain consent for digital anal penetration from Plaintiff Jane A60 Doe or Plaintiff B.T. Doe's parents as Plaintiff Jane A60 Doe was a minor at the time.

934.   Defendant Nassar did not explain his conduct as a medical procedure to Plaintiff Jane A60 Doe or Plaintiff Jane A60 Doe's parents.

935.   Plaintiff Jane A60 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-rectal procedure.

936.   Plaintiff Jane A60 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

937.   Plaintiff Jane A60 Doe believes the conduct by Defendant Nassar was sexual assault,

abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

938. In fall 2016, Plaintiff B.T. Doe made a complaint regarding Defendant Nassar to MSU's Police Department.

### HHH. JANE A61 DOE

939. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

940. Plaintiff Jane A61 Doe treated with Defendant Nassar from approximately November 2000 to July 2002.

941. From November 2000 to July 2002, Jane A61 Doe was a student at MSU.

942. Plaintiff Jane A61 Doe sought treatment from Defendant Nassar for injuries to her lower back as a result of injuries suffered as a former figure skater and through other athletic activities such as running and rowing.

943. On a few occasions, between four and five, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A61 Doe's vagina without prior notice and without gloves or lubricant.

944. Defendant Nassar told Plaintiff Jane A61 Doe that some people found what he was going to do to be "uncomfortable" but told her it would help her.

945. At no time did Defendant Nassar inform Plaintiff Jane A61 Doe that his "treatment" would involve digital vaginal penetration.

946. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A61 Doe

947. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane A61 Doe.

948. Plaintiff Jane A61 Doe's medical records produced by Defendant MSU regarding her visits with Defendant Nassar are completely devoid of any reference to any type of intra-vaginal procedure.

949. Plaintiff Jane A61 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

950. Plaintiff Jane A61 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

951. Plaintiff Jane A61 Doe became aware of the allegations against Defendant Nassar in late January 2017 and immediately contacted the FBI.

952. The FBI referred Plaintiff Jane A61 Doe to Defendant MSU's Police Department and she made a complaint in early February 2017.

### III.    JANE A62 DOE

953. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

954. Plaintiff Jane A62 Doe treated with Defendant Nassar from approximately 1995 to 1998.

955. From 1995 to 1998 Plaintiff Jane A62 Doe was a minor, approximately 12 to 15 years old.

956. Plaintiff Jane A62 Doe presented to Defendant Nassar with complaints of low back pain and tight hamstrings as a result of competitive soccer.

957. On approximately eighteen occasions from 1995 to 1998 at appointments with Defendant Nassar, he digitally penetrated Plaintiff Jane A62 Doe's vagina without prior notice or gloves.

958. Defendant Nassar required Plaintiff Jane A62 Doe to wear loose baggy shorts, and if Plaintiff Jane A62 Doe came to an appointment without them, he would provide a pair of

loose baggy shorts, similar to men's basketball shorts.

959. At times, Defendant Nassar would use a towel as a drape to obscure the digital penetration and to wipe his hands.

960. On some occasions Defendant Nassar would require Plaintiff Jane A62 Doe to lie on her stomach and would digitally penetrate her vagina while stretching one of her legs upward.

961. On other occasions Defendant Nassar would require Plaintiff Jane A62 Doe to lie on her back with one of her knees on or near his shoulder, and would digitally penetrate her vagina while stretching one of her legs.

962. On a few occasions, Plaintiff Jane A62 Doe was alone with Defendant Nassar for appointments without a chaperone or other medical professional in the room.

963. At other times Plaintiff Jane A62 Doe's mother was present, however, she was seated in a chair at the head of the examination table a manner and could not see Defendant Nassar's hand placement.

964. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A62 Doe or Plaintiff Jane A62 Doe's parents as she was a minor at the time.

965. Defendant Nassar did not obtain consent from Plaintiff Jane A62 Doe or Plaintiff Jane A62 Doe's parents to touch Plaintiff Jane A62 Doe's vaginal area or vagina, nor did he obtain consent for digital vaginal penetration as she was a minor at the time.

966. Plaintiff Jane A62 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

967. Plaintiff Jane A62 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

968. Plaintiff Jane A62 Doe first became aware of the allegations against Defendant Nassar on December 2, 2016 and subsequently made a complaint to Defendant MSU's Police Department.

## JJJ. JANE A63 DOE

969. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

970. Plaintiff Jane A63 Doe treated with Defendant Nassar between approximately 2007 and 2008.

971. From 2004 to 2008, Plaintiff Jane A63 Doe was a student athlete at a private college in Michigan.

972. Also during 2008, Plaintiff Jane A63 Doe was a graduate student at a public college in Michigan.

973. Plaintiff Jane A63 Doe presented to Defendant Nassar with complaints of pain in her left hip and low back as a result of her sport.

974. On approximately eleven occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A63 Doe's vagina without prior notice and without gloves or lubricant for up to twenty minutes at a time under the guise of performing "treatment."

975. Defendant Nassar moved Plaintiff Jane A63 Doe's underwear aside to digitally penetrate Jane A63 Doe's vagina.

976. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A63 Doe.

977. Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane A63 Doe's vagina.

978. Plaintiff Jane A63 Doe does not believe the digital penetration by Defendant Nassar provided any relief for her hip or back pain.

979. Plaintiff Jane A63 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

980. Plaintiff Jane A63 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and gratification.

### LLL.  JANE A64 DOE

981. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

982. Plaintiff Jane A64 Doe was an elite gymnast and competed for Defendant USAG as a Junior Olympic National Team member.

983. Plaintiff Jane A64 Doe attended camps at the Karolyi ranch from approximately 2001 to 2003.

984. From 2001 to 2003, Plaintiff Jane A64 Doe was a minor, approximately 13 to 15 years old.

985. Prior to attending the camps, Plaintiff Jane A64 Doe suffered a stress fracture in her back and tore both of her hamstrings.

986. While at the camps at the Karolyi ranch she was sent to Defendant Nassar for treatment.

987. At this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities," which included but was not limited to his involvement with Defendant USAG.

988. On approximately one occasion, in a lounge where camp attendees would often watch

television, Defendant Nassar digitally penetrated Plaintiff Jane A64 Doe's vagina without gloves or lubricant for up to 10 minutes.

989. Before the digital penetration, Defendant Nassar made a statement to Plaintiff Jane A64 Doe to the effect of, "this might feel weird, but it's part of the treatment."

990. However, Defendant Nassar did not explain that he was going to engage in digital penetration before doing so.

991. Several years later, while attending college, Plaintiff Jane A64 Doe disclosed Defendant Nassar's conduct to a counselor at the college's counseling center.

992. To the best of Plaintiff Jane M.B.A.'s knowledge, no action was taken regarding her allegations against Defendant Nassar.

993. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A64 Doe or Plaintiff Jane A64 Doe's parents as she was a minor at the time.

994. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A64 Doe or Jane A64 Doe's parents as she was a minor at the time.

995. Plaintiff Jane A64 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

996. Plaintiff Jane A64 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**MMM.** **JANE A65 DOE**

997. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

998. Plaintiff Jane A65 Doe was a junior elite gymnast from approximately 1998 to 2002.

999. Plaintiff Jane A65 Doe attended camps at the Karolyi ranch from in or around 1998 and 2002.

1000. From 1998 to 2002, Plaintiff Jane A65 Doe was a minor, approximately 8 to 12 years old.

1001. While attending camps at the Karolyi ranch, Plaintiff presented to Defendant Nassar with complaints of low back pain as a result of gymnastics.

1002. At this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities," which included but was not limited to his involvement with Defendant USAG.

1003. On approximately one or two occasions, Defendant Nassar digitally penetrated Plaintiff Jane A65 Doe's vagina without gloves or lubricant for several minutes.

1004. During the digital penetration, Defendant Nassar asked Plaintiff Jane A65 Doe to look at a picture of his family.

1005. During the sexual assault, only Plaintiff Jane T. M. Doe and Defendant Nassar were in the examination room. There was no chaperone.

1006. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A65 Doe or Plaintiff Jane A65 Doe's parents as she was a minor at the time.

1007. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A65 Doe or Jane A65 Doe's parents as she was a minor at the time.

1008. Plaintiff Jane A65 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1009. Plaintiff Jane A65 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### NNN.  JANE A66 DOE

1010. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1011. Plaintiff Jane A66 Doe attended camp at the Karolyi ranch from in May 2001 for approximately two weeks.

1012. In 2001, Plaintiff Jane A66 Doe was a minor, approximately 16 years old.

1013. While attending camps at the Karolyi ranch, Plaintiff Jane A66 Doe presented to Defendant Nassar with complaints of low back sciatic pain as a result of gymnastics.

1014. At this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities" which included but was not limited to his involvement with Defendant USAG.

1015. For the first four days of camp, Plaintiff Jane A66 Doe was accompanied by her gymnastics coach from her home gym during appointments with Defendant Nassar.

1016. During the time Plaintiff Jane A66 Doe was chaperoned by her coach, Plaintiff Jane A66 Doe received treatment from Defendant Nassar similar to that which she had previously experienced in her home state which did not include any digital vaginal penetration.

1017. Plaintiff Jane A66 Doe's coach left the Karolyi camp, and Plaintiff Jane A66 Doe continued to treat with Defendant Nassar for increased sciatic pain.

1018. During the final week Plaintiff Jane A66 Doe was at the Karolyi ranch without a chaperone, on approximately six to seven occasions, Defendant Nassar digitally penetrated Plaintiff Jane A66 Doe's vagina without gloves or lubricant.

1019. Defendant Nassar told Plaintiff Jane A66 Doe that he needed release the muscles in her back by going inside her vagina and that the pressure points could only be released by

pushing them with his fingers inside her vagina.

1020. Following the first instance of digital penetration, Defendant Nassar told Plaintiff Jane A66 Doe not to wear underwear for future treatments.

1021. Defendant Nassar did not give obtain consent for digital penetration from Jane A66 Doe's parents as she was a minor at the time.

1022. Plaintiff Jane A66 Doe does not believe the digital penetration provided any relief for her back pain.

1023. Plaintiff Jane A66 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1024. Plaintiff Jane A66 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**OOO. JANE A67 DOE**

1025. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1026. Plaintiff Jane A67 Doe was an international elite gymnast and competed at USAG sanctioned events from approximately1994 to 2001.

1027. From 1994 to 2001, Plaintiff Jane A67 Doe was a minor, approximately 8 to 15 years old.

1028. In or around 2000, Plaintiff attended a USAG sanctioned event in Tulsa, Oklahoma and injured her hamstring.

1029. At this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities," which included but was not limited to his involvement with Defendant USAG.

1030. On approximately one occasion, at the USAG meet in Tulsa, Defendant Nassar digitally

penetrated Plaintiff Jane A67 Doe's vagina without gloves or lubricant.

1031. Defendant Nassar did not explain that he was going to engage in digital penetration before doing so.

1032. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A67 Doe or Plaintiff Jane A67 Doe's parents as she was a minor at the time.

1033. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A67 Doe or Jane A67 Doe's parents as she was a minor at the time.

1034. Plaintiff Jane A67 Doe did not treat or intend to treat with Defendantr. Nassar for OB/GYN issues.

1035. Plaintiff Jane A67 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**PPP.  JANE A68 DOE**

1036. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1037. Plaintiff Jane A68 Doe trained and competed as an elite gymnast as a member of the USA Gymnastics National Team from approximately 2013 to 2016.

1038. As a member of the USAG National Team, Plaintiff Jane A68 Doe trained at the Karolyi Ranch in Texas from 2013 to 2016.

1039. From 2013 to 2015, Plaintiff Jane A68 Doe was a minor, approximately 15 to 17 years old.

1040. During this time, Defendant Nassar was employed by Defendant MSU as an Assistant Professor and part of his duties included participation in "Outreach" and "Community Activities," which included but were not limited to his involvement with Defendant USAG.

1041.   Plaintiff Jane A68 Doe presented to Defendant Nassar with complaints of sprains, injuries, and soreness suffered as a result of gymnastics training.

1042.   On approximately 20 occasions, in the "end room" at the Karolyi Ranch, Defendant Nassar digitally penetrated Plaintiff Jane A68 Doe's vagina without prior notice, gloves, or lubricant.

1043.   Defendant Nassar digitally penetrated Plaintiff Jane A68 Doe's vagina, moved his fingers around in her vagina, and left them in her vagina for several minutes at a time.

1044.   At no time was there a chaperon present for any of Plaintiff Jane A68 Doe's appointments with Defendant Nassar.

1045.   Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A68 Doe or Plaintiff A68 Doe's parents.

1046.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff JaneA68 Doe or Plaintiff Jane A68 Doe's parents.

1047.   Plaintiff Jane A68 Doe did not intend to treat with Defendant Nassar for OB/GYN issues.

1048.   In or around June 2015, while training at the Karolyi Ranch, Plaintiff Jane A68 Doe discussed Defendant Nassar's conduct with another USAG National Team member.

1049.   An adult overheard the conversation and asked Plaintiff Jane A68 Doe for additional information.

1050.   The adult reported Defendant Nassar's misconduct to Defendant USAG officials and Plaintiff Jane A68 Doe's parents.

1051.   Defendant Nassar's misconduct was reported to Defendant USAG's immediate past president Steve Penny, among other officials.

1052. On multiple occasions Mr. Penny discouraged Plaintiff Jane A68 Doe's parents from reporting Defendant Nassar's conduct to law enforcement and pressured them to keep the matter quiet.

1053. Plaintiff Jane A68 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## QQQ. JANE A69 DOE

1054. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1055. As a child and young adult, Plaintiff Jane A69 Doe frequently visited Defendant Nassar's residence.

1056. Plaintiff Jane A69 Doe and her parents were aware Defendant Nassar was a medical professional at MSU.

1057. Beginning in approximately 1998 or 1999 until approximately 2003 or 2004, Defendant Nassar sexually abused, assaulted, and molested Plaintiff Jane A69 Doe at his residence.

1058. From approximately 1998 to 2004, Plaintiff Jane A69 Doe was a minor, 6 to 12 years old.

1059. Defendant Nassar began grooming Plaintiff Jane A69 Doe by engaging in games such as hide and seek in the basement of his residence.

1060. Defendant Nassar's abuse, assault, and molestation of Plaintiff Jane A69 Doe took place in various rooms in the basement of Defendant Nassar's residence.

1061. Defendant Nassar's abuse, assault, and molestation of Plaintiff Jane A69 Doe included, but was not limited to:

a.      Exposing his erect penis to Plaintiff Jane A69 Doe;

b.      Asking Plaintiff Jane A69 Doe if she would ever like to see his penis she could ask;

c.      Asking Plaintiff Jane A69 Doe if she would like to touch his penis;

d.      Masturbating with lotion in the presence of Plaintiff Jane A69 Doe;

e.      Rubbing his penis on Plaintiff Jane A69 Doe's bare feet;

f.      Using Plaintiff Jane A69 Doe's feet to masturbate; and,

g.      Digitally penetrating Plaintiff Jane A69 Doe's vagina.

1062.   The conduct described above happened repeatedly over a period of several years.

1063.   In or around 2004, Plaintiff Jane A69 Doe informed her parents of Defendant Nassar's conduct.

1064.   Shortly thereafter, Plaintiff Jane A69 Doe's parents took her to visit a psychologist/counselor employed by Defendant MSU.

1065.   Plaintiff Jane A69 Doe met with the MSU psychologist/counselor approximately eight times and told the psychologist/counselor about some of Defendant Nassar's conduct, including but not limited to how Defendant Nassar touched her bare feet with his penis.

1066.   The MSU psychologist/counselor failed to report Defendant Nassar's conduct to law enforcement.

1067.   The MSU psychologist/counselor also failed to report Defendant Nassar's conduct to MSU officials.

1068.   To the best of Plaintiff Jane A69 Doe's knowledge, belief, and understanding, the MSU psychologist/counselor took no steps to report Defendant Nassar's conduct.

1069.   After reading a news article published in or around September 2016 by the Lansing State Journal regarding allegations against Defendant Nassar, Plaintiff Jane A69 Doe made a complaint to Defendant MSU's Police Department.

1070. Plaintiff Jane A69 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**RRR.  <u>JANE A70 DOE</u>**

1071. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1072. Plaintiff Jane A70 Doe treated with Defendant Nassar at his office at MSU in approximately 2002.

1073. Plaintiff Jane A70 Doe presented to Defendant Nassar with complaints of back and hip pain as a result of basketball and softball.

1074. In 2002, at approximately three to ten appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane A70 Doe's vagina without prior notice.

1075. Defendant Nassar did not explain his conduct would involve intra-vaginal digital penetration to Plaintiff Jane A70 Doe.

1076. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A70 Doe.

1077. Plaintiff Jane A70 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1078. Upon reviewing news stories regarding allegations against Defendant Nassar in approximately April 2017, Plaintiff Jane A70 Doe made a complaint to MSU's Police Department and Office of Institutional Equity.

1079. Plaintiff Jane A70 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### SSS.   JANE A71 DOE

1080.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1081.   Plaintiff Jane A71 Doe treated with Defendant Nassar at his office at MSU and at Twistars from approximately 1996 to 2000.

1082.   From 1996 to 2000, Plaintiff Jane A71 Doe was a minor, approximately 10 to 14 years old.

1083.   Plaintiff Jane A71 Doe presented to Defendant Nassar with complaints of back pain as a result of gymnastics.

1084.   From 1996 to 2000, at appointments at his office at MSU and once at Twistars, Defendant Nassar touched Plaintiff Jane A71 Doe's vagina and vaginal area without prior notice and without gloves or lubricant.

1085.   Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A71 Doe or Plaintiff Jane A71 Doe's parents as she was a minor at the time.

1086.   Defendant Nassar did not explain his conduct would involve touching of Jane A71 Doe's vagina and vaginal area to Plaintiff Jane A71 Doe or Jane A71 Doe's parents.

1087.   Defendant Nassar did not give prior notice that he would touch Jane A71 Doe's vagina/vaginal area or obtain consent from Jane A71 Doe or Jane A71 Doe's parents to do so.

1088.   On one occasion Defendant Nassar made an inappropriate comment regarding the size of Plaintiff Jane A71 Doe's breasts.

1089.   Defendant Nassar went on to say he could "do something" about it and suggested he could get Defendant MSU to pay for a breast reduction if he said her breasts were causing

Plaintiff Jane A71 Doe's back problems.

1090. After being assaulted at Twistars in or around 1998, Plaintiff Jane A71 Doe, at approximately 12 years old, told a coach at Twistars Defendant Nassar was being inappropriate and doing inappropriate things.

1091. In response, the coach told Plaintiff Jane A71 Doe Defendant Nassar "wouldn't do that."

1092. To the best of Plaintiff Jane A71 Doe's knowledge, belief, and understanding, the coach at Twistars took no steps to investigate or report Defendant Nassar's conduct.

1093. Plaintiff Jane A71 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1094. Plaintiff Jane A71 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**TTT.  JANE A72 DOE by next friend JANE A73 DOE**

1095. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1096. Plaintiff Jane A72 Doe treated with Defendant Nassar at his office at MSU and at his residence from approximately 2009 to 2016.

1097. From approximately 2009 to 2016, Plaintiff Jane A72 Doe was a minor, 8 to 14 years old.

1098. Plaintiff Jane A72 Doe presented to Defendant Nassar with complaints of back pain, and injuries to her quadriceps and groin as a result of gymnastics.

1099. On several different occasions, Defendant Nassar gave gifts to Plaintiff Jane A72 Doe.

1100. On approximately fifty occasions at appointments at his office at MSU and at his residence, Defendant Nassar digitally penetrated Plaintiff Jane A72 Doe's vagina without prior notice and without gloves.

1101. At times, Defendant Nassar covered Plaintiff Jane A72 Doe with a sheet preventing Plaintiff Jane A73 Doe from observing Defendant Nassar's hand placement.

1102. On some occasions, Plaintiff Jane A72 Doe was instructed to call or text Defendant Nassar at his office at MSU and she would be given entrance to the building through a back door.

1103. On one occasion, Plaintiff Jane A73 Doe asked Defendant Nassar about a glide on lubricant for Plaintiff Jane A72 Doe's wrists. Defendant Nassar responded he had previously developed one himself that male gymnasts referred to as the "love glove" implying they used it for sexual purposes.

1104. Plaintiff Jane A72 Doe underwent an MRI for her groin injury which came back negative for fractures.

1105. Although it is believed the MRI was negative for fractures, Defendant Nassar told Plaintiff Jane A72 Doe she had a fractured pubis and continued intra-vaginal digital penetration.

1106. Defendant Nassar did not explain his "treatment" would involve intra-vaginal digital penetration to Plaintiff Jane A72 Doe or Jane A72 Doe's parents.

1107. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane A72 Doe or Jane A72 Doe's parents.

1108. Defendant Nassar told Plaintiff Jane A72 Doe he retired from his duties with Defendant USAG although Defendant USAG relieved Defendant Nassar of his duties after receiving allegations of "athlete concern."

1109. Plaintiff Jane A72 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1110. Plaintiff Jane A72 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### UUU. JANE A74 DOE

1111. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1112. Plaintiff Jane A74 Doe was a scholarship student athlete at MSU from 2010 to 2014.

1113. In or around 2010 or 2011, Plaintiff Jane A74 Doe was diagnosed with a herniated disc.

1114. Plaintiff Jane A74 Doe treated with Defendant Nassar from approximately 2010 to 2014.

1115. Plaintiff Jane A74 Doe presented to Defendant Nassar with complaints of back and hip pain caused by her participation in softball.

1116. Weekly, for approximately two years, at medical appointments at Jenison Fieldhouse, Defendant Nassar touched Plaintiff Jane A74 Doe's vagina and/or vaginal area without prior notice.

1117. At her first appointment Defendant Nassar requested Plaintiff Jane A74 Doe wear athletic shorts or spandex to appointments.

1118. During appointments with Defendant Nassar, he would pull Jane A74 Doe's shorts or spandex to the side, and sometimes below her buttocks, and touched her vagina and vaginal area.

1119. Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane A74 Doe.

1120. Defendant Nassar never gave Plaintiff Jane A74 Doe notice that he would touch Plaintiff Jane A74 Doe's vagina or vaginal area.

1121. Defendant Nassar did not give prior notice or obtain consent to touch Plaintiff Jane A74 Doe's vagina or vaginal area from Jane A74 Doe.

1122. Plaintiff Jane A74 Doe requested her medical records and the records Defendant MSU

produced were completely devoid of any reference to any type of vaginal procedure.

1123. Plaintiff Jane A74 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN issues.

1124. Plaintiff Jane A74 Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## VI. FRAUDULENT CONCEALMENT

### A. DEFENDANT NASSAR

1125. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1126. Plaintiffs hereby allege that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred making a material representation(s) to Plaintiffs involving a past or existing fact by:

a. making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b. making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.    making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1127.    The material representation(s) to Plaintiffs were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1128.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist,

1129.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs should believe that the "treatments" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue the "treatment[s]" so that he could continue to sexually assault them; should not question and/or report the conduct to

appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

1130. Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

    a.    reasonably believed that the "treatments" were in fact "treatments;"

    b.    reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    c.    reasonably did not believe that they had been sexually assaulted;

    d.    believed that they should continue the "treatment[s];"

    e.    did not believe that they should question and/or report the conduct to appropriate authorities; and,

    f.    did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants.

1131. Plaintiffs thereby suffered injury, in that Plaintiffs:

    a.    could not stop the sexual assault;

    b.    continued to undergo the "treatment[s]" and sexual assaults;

    c.    and suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1132. Concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a. making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b. making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e. making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f. making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and, making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1133. Concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a. positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b. dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c. prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d. did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e. did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

f. gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1134. The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1135. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his negligence is imputed to Defendant MSU.

1136. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

1137. Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

a. Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

b. Plaintiffs were minors and/or young females at the time of the assaults and "treatments;"

c. Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because they had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before;

d. Plaintiffs had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

e. Plaintiffs did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f. Plaintiffs had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family

Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.  Plaintiffs had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiffs to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.  Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.  In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k. Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l. Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m. Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n. Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

o. Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were in fact legitimate "treatments;"

p. Plaintiffs trusted and felt that Defendant Nassar was a friend because he gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;"

q. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of the civil just system;

r. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of any remedy at law;

s. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason

to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.  Plaintiffs were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.  Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

v.  Plaintiffs were minors and young athletes, therefore they were easily suggestible; and,

w.  Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar

**B.     THE MSU DEFENDANTS**

1138. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1139. Plaintiffs hereby allege that Defendant MSU committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

a.  making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.  making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.  making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.  making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.  making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.  making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1140.  The material representation(s) to Plaintiffs were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1141.  When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

1142.  Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.      should believe that the "treatments" were in fact "treatments;"

b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      should not believe that they had been sexually assaulted;

d.      should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.      should continue the "treatment[s]" so that he could continue to sexually assault them;

f.      should not question and/or report the conduct to appropriate authorities; and,

g.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU;

1143.   Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that they had been sexually assaulted;

d.      believed that they should continue the "treatment[s];"

e.      did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.      did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

1144.   Plaintiffs thereby suffered injury, in that Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults; and,

c. suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1145. Defendants Nassar in concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a. making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b. making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.  making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.  making a statement, explaining to Plaintiffs and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1146.  Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.  positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.  dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c.  prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d. did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e. did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

f. gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1147. Defendant MSU's sports medicine trainers, trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiffs involving a past or existing fact by making statements that:

a. Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b. Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c. Defendant Nassar's conduct was "not sexual abuse,"

d. Defendant Nassar was a "world-renowned doctor;" and,

e. that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

1148. The material representation(s) to Plaintiffs were false, in that the MSU Defendants had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

1149. The MSU Defendants made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

1150. The MSU Defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

   a.      should believe that the "treatments" were in fact "treatments;"

   b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

   c.      should not believe that they had been sexually assaulted;

   d.      should not question and/or report the conduct to other authorities; and,

   e.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or the MSU Defendants.

1151.   Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

   a.      reasonably believed that the "treatments" were in fact "treatments;"

   b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

   c.      reasonably did not believe that they had been sexually assaulted;

   d.      reasonably believed that they should continue the "treatment[s];"

e.  did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.  did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

1152. Plaintiffs thereby suffered injury, in that Plaintiffs:

a.  could not stop the sexual assault;

b.  continued to undergo the "treatment[s]" and sexual assaults; and,

c.  suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1153. The MSU Defendants concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.  making the statement that Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.　making the statement that Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.　making the statement that Defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor;" and,

d.　making the statement that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

1154.　The MSU Defendants concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

a.　ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;"

b.　did not create a policy to require adults, parents, chaperones, guardians, and/or caregivers presence during an examination of a minor or female by a physician; and,

c.　did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room;

1155.　Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants until the September 12, 2016 publication of a story regarding a complaint filed

with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or shortly thereafter, for the following reasons among others:

a.  Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

b.  Plaintiffs were minors and/or young females at the time of the assaults and "treatments;"

c.  Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal treatment was like because they had never experienced and/or had an intra-vaginal treatment before;

d.  Plaintiffs had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

e.  Plaintiffs did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.  Plaintiffs had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of

Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology to name a few;

g.   Plaintiffs had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.   Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiffs to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.    Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.    In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k. Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l. Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m. Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n. Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

o. Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were in fact legitimate "treatments;"

p. Plaintiffs trusted and felt that Defendant Nassar was a friend because he gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;"

q. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of the civil just system;

r. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of any remedy at law;

s. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them

had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.      Plaintiffs were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.      Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

v.      Plaintiffs were minors and young athletes, therefore they were easily suggestible;

w.      Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

x.      Plaintiffs reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

y.      Plaintiffs trusted Defendant MSU that they would protect Plaintiffs from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatment[s]," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

z.      Plaintiffs were never told by Defendant MSU that Defendant Nassar's conduct and "treatment[s]" were inappropriate and sexual assault, to the contrary Plaintiffs were told that Defendant Nassar's conduct and "treatment[s]" were appropriate and

legitimate "treatment[s]," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiffs, because of their age and inexperience with intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

aa.  Plaintiffs reasonably relied on Defendant MSU to protect them and Defendant MSU's statements; and,

bb.  Plaintiffs were compelled by Defendant MSU to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate.

1156.  The actions and inactions of the MSU Defendants and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1157.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

1158.  The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1159.  At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

1160. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## C.     <u>DEFENDANT USA GYMNASTICS</u>

1161. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1162. Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant USAG at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.     making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.     making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.     making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.     making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.     making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.     making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.      making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1163.    The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1164.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

1165.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.      should believe that the "treatments" were in fact "treatments;"

b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

d.      should continue the "treatment[s]" so that he could continue to sexually assault them;

e.      should not question and/or report the conduct to appropriate authorities; and,

f.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant USAG.

1166. Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that they had been sexually assaulted;

d.      believed that they should continue the "treatment[s];"

e.      did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant USAG.

1167. Plaintiffs thereby suffered injury, in that Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults; and,

c.      suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1168. Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape

investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.　making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.　making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.　making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.　making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.　making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.　making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.　making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1169.　Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a. positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;,

b. dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c. prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d. did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e. did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

f. gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1170. The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1171. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

1172. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

### D. DEFENDANT TWISTARS

1173. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1174. Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant Twistars committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant Twistars at the time his sexual assaults occurred by:

a.   Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

b.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

c.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

d.   making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

e.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

f.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

g.      making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

h.      making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1175.   The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1176.   When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

1177.   Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs should:

a.      believe that the "treatments" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate;

b.      should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

c.      should continue the "treatment[s]" so that he could continue to sexually assault them;

d.      should not question and/or report the conduct to appropriate authorities; and,

e.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar, Defendant USAG, and/or Defendant Twistars;

1178.   Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that they had been sexually assaulted;

d.      believed that they should continue the "treatment[s],"

e.      did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.      did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar, Defendant USAG, and/or Defendant Twistars

1179.   Plaintiffs thereby suffered injury, in that Plaintiffs could not stop the sexual assault; continued to undergo the "treatment[s]" and sexual assaults; and suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity;

1180. Defendant Nassar concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

   a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

   b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

   c.   making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

   d.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

   e.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

   f.   making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

   g.   making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1181. Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a. positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b. dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

    c. prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

    d. did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e. did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver;

    f. did not abide by or follow Defendant Twistars' Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he

was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

g.  gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1182.  The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1183.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant Twistars and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant Twistars.

1184.  At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## VII.  CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A.  COUNT ONE

### VIOLATIONS OF TITLE IX
### 20 U.S.C. §1681(a), *et seq.*
### ALL PLAINTIFFS AGAINST DEFENDANTS MSU, MSU TRUSTEES

1185.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1186.  Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"[47]

---

[47] U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. Last accessed, January 5, 2017.

1187.  Plaintiffs are "persons" under the Title IX statutory language.

1188.  Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

1189.  Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

1190.  The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.[48]

1191.  Defendant Nassar's actions and conduct were carried out under one of Defendant MSU programs, which provides medical treatment to students, athletes, and the public.

1192.  Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

1193.  As early as 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

1194.  Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by Jane A19 Doe in or around 1999 and by Jane T.T. Doe in 2000 on more than one occasion.

1195.  The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following Jane A19 Doe and Jane T.T. Doe's complaints of sexual assault, abuse, and molestation in or around 1999 and/or 2000.

---

[48] Cite OCR guidance that says this.

1196. The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[49]

1197. The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

1198. Defendant Nassar was sexually aroused while touching her;

1199. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

1200. Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[50]

1201. Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[51]

1202. The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females whom he had unfettered access.

---

[49] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/, last accessed January 5, 2017.
[50] *Id*.
[51] *Id*.

1203. After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals, including but not limited to Plaintiffs Jane A1 Doe, Jane A9 Doe, Jane A16 Doe, and Jane A20 Doe.

1204. The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

1205. failing to investigate and address Jane A19 Doe and Jane T.T. Doe's allegations as required by Title IX;

1206. failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

1207. failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

1208. The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

1209. The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

1210. A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

1211. That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a

continuation of the sexually hostile environment.[52]

1212. The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

1213. Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiffs on and off school premises.

1214. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to further harassment and a sexually hostile environment, effectively denying them all access to educational opportunities at MSU, including medical care.

1215. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

---

[52] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

**B. COUNT TWO**

**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, DEFENDANT NASSAR**

1216.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1217.    Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

1218.    Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

1219.    At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

1220.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

1221.    The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.'

1222.    As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate

indifference.

1223. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

1224. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event. .. "

1225. Defendant MSU's aforementioned internal policies were violated in or around 1999 when Jane A19 Doe reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

1226. Defendant MSU's aforementioned internal policies were violated in 2000 when Jane T.T. Doe reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

1227. The MSU Defendants' failure to address Jane A19 Doe and Jane T.T. Doe's complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

1228. Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

1229. Ultimately, Defendants failed to adequately and properly investigate the complaints of Plaintiffs or other similarly-situated individuals including but not limited to failing to:

    a.    perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1999 and 2000;

    b.    thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

    c.    recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

    d.    ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

1230. As indicated in the U.S. Department of Education Office of Civil Rights report,[53] the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

1231. Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

1232. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual

---

[53] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

1233. The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

1234. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

1235. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### C.     COUNT THREE

**FAILURE TO TRAIN AND SUPERVISE**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1236. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1237. The MSU Defendants have the ultimate responsibility and authority to train and supervise its

employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

1238. The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

1239. Perceive, report, and stop inappropriate sexual conduct on campus;

1240. Provide diligent supervision over student-athletes and other individuals;

1241. Report suspected incidents of sexual abuse or sexual assault;

1242. Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

1243. Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

1244. Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

1245. The above list of duties is not exhaustive.

1246. The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiffs' rights.

1247. As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

1248. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing

Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

D.     **COUNT FOUR**

**GROSS NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

1249.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1250.  The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

1251.  Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

1252.  By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

1253.  The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

1254.  Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial

lack of concern for whether an injury would result to Plaintiffs.

1255. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

1256. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

1257. The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1258. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E.   **COUNT FIVE**

**NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

1259. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1260. The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees,

representatives and/or agents.

1261. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

1262. Defendant Nassar owed Plaintiffs a duty of ordinary care.

1263. The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

1264. The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

1265. The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

1266. The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

1267. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

1268. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented

from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

F.      **COUNT SIX**

**VICARIOUS LIABILITY**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1269.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1270.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

1271.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

1272.   The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

1273.   Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[54]

1274.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

---

[54] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

1275. As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

G. **COUNT SEVEN**

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

1276. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1277. An agent is a person who is authorized by another to act on its behalf.

1278. The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1279. On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

1280. Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

1281. Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

1282. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**H.** **COUNT EIGHT**

**NEGLIGENT SUPERVISION**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1283. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1284. The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

1285. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

1286. The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant

Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

1287. The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

1288. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

1289. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

1290. As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

I.  **COUNT NINE**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1291. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1292. The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

1293. As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

1294. The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1295. The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

1296. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

1297. The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

1298. The MSU Defendants breached its duties to protect Plaintiffs by failing to:

    a.    respond to allegations of sexual assault, abuse, and molestation;

    b.    detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

    c.    investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

1299. The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

1300.  The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

1301.  As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J.    COUNT TEN**

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1302.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1303.  The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiffs and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

1304.  The MSU Defendants failed to implement reasonable safeguards to:

a.      Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

b.      Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

1305.  As a direct and/or proximate result of the MSU Defendants' negligent failure to train or

educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**K.** **COUNT ELEVEN**

**NEGLIGENT RETENTION**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1306. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1307. The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

1308. The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

1309. The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

1310. The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting

Plaintiffs and an unknown number of other individuals.

1311. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

1312. As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

**L.    COUNT TWELVE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

1313. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1314. The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

1315. A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

1316. The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his

services and to not question his methods or motives.

1317. The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

1318. A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

1319. The MSU Defendants' conduct as described above was intentional and/or reckless.

1320. As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## M.   COUNT THIRTEEN

### FRAUD AND MISREPRESENTATION
### ALL PLAINTIFFS AGAINST MSU DEFENDANTS

1321. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1322. From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

1323. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high

moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

1324. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

1325. As of 1999 and 2000, the MSU Defendants knew their representations of Defendant Nassar were false as Jane A19 Doe and Jane T.T. Doe had complained of Defendant Nassar's conduct to MSU representatives.

1326. Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address Jane A19 Doe or Jane T.T. Doe's complaints.

1327. The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

1328. Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.[55]

1329. Between the time of the 2014 complaint and September 2016, the MSU Defendants continued

---

[55] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

to hold Defendant Nassar out as a competent and safe physician.

1330. Plaintiffs relied on the assertions of the MSU Defendants and several Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

1331. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

1332. As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## VIII.     CLAIMS AGAINST USA GYMNASTICS

### A.     COUNT FOURTEEN

**GROSS NEGLIGENCE**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

1333. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1334. Defendant USAG owed Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane

A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

1335.  The above-named Plaintiffs are or were members of USAG, participated in USAG sanctioned events, and were knowledgeable of and in some cases referred to Defendant Nassar through USAG affiliations.

1336.  Defendant Nassar owed Plaintiffs Denhollander, Howard,  Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane B. F. Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

1337.  By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane

A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane

A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane

A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane

A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane

A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane

A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, Jane A72 Doe and Defendant Nassar

was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

1338. Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to

demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs

Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7

Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18

Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane

A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane

A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane

A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane

A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe.

1339. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under

the guise of rendering medical "treatment" as an employee, representative, and/or agent of

Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether

an injury would result to Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane

A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16

Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane

A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane

A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe.

1340. Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe's safety.

1341. Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe.

1342. Defendant USAG breached duties owed to Plaintiffs Denhollander, Howard,  Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe,

Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe,

Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe,

Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe,

Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe,

and Jane A72 Doe and were grossly negligent when they conducted themselves by actions

described above, including but not limited to their failure to notify MSU about the reasons for

Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in

gymnastics and warning signs and reporting requirements. Said acts were committed with

reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with

a substantial lack of concern as to whether an injury would result.

1343. As a direct and/or proximate result of Defendant USAG'S actions and/or inactions,

Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and

continue to suffer pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright,

grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented

from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and

have sustained and continue to sustain loss of earnings and earning capacity.

### B.     COUNT FIFTEEN

**NEGLIGENCE**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4
DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE
BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE
BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE;
JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE;
JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE;
JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE;
JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE;
AND, JANE A72 DOE**

1344. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1345. Defendant USAG owed Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

1346. Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe as members of the USAG had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

1347. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent,

and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe and Defendant Nassar was created, resulting in Defendant Nassar owing the aforementioned Plaintiffs a duty to use ordinary care.

1348. Defendant Nassar owed Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe a duty of ordinary care in carrying out medical treatment.

1349. Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

1350. Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

1351. Defendant USAG's failure to inform Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane

A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe, and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

1352. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe was a breach of the duty to use ordinary care.

1353. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and

have sustained and continue to sustain loss of earnings and earning capacity.

### C.   COUNT SIXTEEN

**VICARIOUS LIABILITY**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG**

1354. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1355. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

1356. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

1357. Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.[56]

1358. Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

1359. Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above

---

[56] For example, *see*, https://usagym.org/pages/post.html?PostID=14677&prog=h, Last accessed, January 5, 2017.  As of March 16, 2017, it appears this site is no longer accessible.

that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

1360. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### D. COUNT SEVENTEEN

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG**

1361. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1362. An agent is a person who is authorized by another to act on its behalf.

1363. Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1364. On the basis of those representations, Plaintiffs reasonably believed Defendant Nassar was

acting as an employee, agent, and/or representation of Defendant USAG.

1365. Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

1366. Plaintiffs were injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

1367. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E.    **COUNT EIGHTEEN**

**NEGLIGENT SUPERVISION**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG**

1368. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1369. Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiffs.

1370. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

1371. Defendant USAG by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

1372. Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

1373. The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

1374. Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe,

Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe with impunity.

1375. As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F.** **COUNT NINETEEN**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG**

1376. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1377. Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

1378. Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

1379. Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

1380. Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1381. Defendant USAG had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

1382. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe.

1383. Defendant USAG breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs Denhollander, Howard,  Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22

Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe from Defendant Nassar.

1384. Defendant USAG breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

1385. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe's rights.

1386. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

1387. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or

protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## G.    <u>COUNT TWENTY</u>

<u>NEGLIGENT FAILURE TO TRAIN OR EDUCATE</u>
<u>PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE;</u>
<u>AGAINST DEFENDANT USAG</u>

1388.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1389.   Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe,

Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and other individuals from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

1390. Defendant USAG failed to implement reasonable safeguards to:

c.     Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

d.     Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiffs and other young athletes.

1391. As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

H.     **COUNT TWENTY-ONE**

**NEGLIGENT RETENTION**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE**
**AGAINST DEFENDANT USAG**

1392. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1393. Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

1394. Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

1395. Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

1396. Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe as well as an unknown  number of other individuals.

1397. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of

harm to Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe, Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe as well as other minors and young adults.

1398. As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

### I.     COUNT TWENTY-TWO

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE;**
**AGAINST DEFENDANT USAG**

1399. Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

1400. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

1401. A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

1402. Defendants USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

1403. Defendants USAG protected Defendant Nassar in part to bolster its national and international reputation in the gymnastics community.

1404. A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

1405. Defendant USAG's conduct as described above was intentional and/or reckless.

1406. As a direct and/or proximate result of Defendant USAG's conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## J.    COUNT TWENTY-THREE

### FRAUD AND MISREPRESENTATION
### PLAINTIFFS DENHOLLANDER; HOWARD; JANE A1 DOE; JANE A3 DOE; JANE A4 DOE; JANE A6 DOE; JANE A7 DOE; JANE A8 DOE; JANE A12 DOE; JANE A14 DOE BY JANE Q. DOE; JANE A16 DOE BY JANE A17 DOE; JANE A18 DOE; JANE A20 DOE BY JANE A21 DOE; JANE A22 DOE; JANE A23 DOE; JANE A24 DOE; JANE A26 DOE; JANE A28 DOE; JANE A31 DOE; JANE A32 DOE; JANE A36 DOE; JANE A38 DOE; JANE A40 DOE; JANE A44 DOE; JANE A46 DOE; JANE A47 DOE BY JANE A48 DOE; JANE A50 DOE; JANE A57 DOE; JANE A58 DOE; JANE A59 DOE; JANE A60 DOE; JANE A64 DOE; JANE A65 DOE; JANE A66 DOE; JANE A67 DOE; JANE A71 DOE; AND, JANE A72 DOE
### AGAINST DEFENDANT USAG

1407.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1408.  From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was a competent, ethical, and safe physician.

1409.  By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

1410.  The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

1411.  Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiffs Denhollander, Howard, Jane A1 Doe , Jane A3 Doe, Jane A4 Doe, Jane A6 Doe, Jane A7 Doe, Jane A8 Doe, Jane A12 Doe, Jane A14 Doe, Jane A16 Doe by Jane A17 Doe, Jane A18 Doe, Jane A20 Doe by Jane A21 Doe, Jane A22 Doe, Jane A23 Doe,

Jane A24 Doe, Jane A26 Doe, Jane A28 Doe, Jane A31 Doe, Jane A32 Doe, Jane A36 Doe, Jane A38 Doe, Jane A40 Doe, Jane A44 Doe, Jane A46 Doe, Jane A47 Doe by Jane A48 Doe, Jane A50 Doe, Jane A57 Doe, Jane A58 Doe, Jane A59 Doe, Jane A60 Doe, Jane A64 Doe, Jane A65 Doe, Jane A66 Doe, Jane A67 Doe, Jane A71 Doe, and Jane A72 Doe, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs and others.

1412. Plaintiffs relied on the assertions of Defendant USAG and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

1413. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

1414. As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## IX.    CLAIMS AGAINST TWISTARS

### A.    COUNT TWENTY-FOUR

**GROSS NEGLIGENCE**
**PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE AGAINST DEFENDANT TWISTARS AND DEFENDANT NASSAR**

1415. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1416. Defendant Twistars owed Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

1417. Defendant Nassar owed Plaintiffs a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

1418. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

1419. Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendant Twistars' action were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1420. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to

demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1421. Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe's safety.

1422. Defendant Twistars' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1423. Defendant Twistars breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1424. As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## B. COUNT TWENTY-FIVE

### NEGLIGENCE
### PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE AGAINST DEFENDANT TWISTARS AND DEFENDANT NASSAR

1425. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1426. In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Defendant Nassar's conduct alleging sexual abuse, assault, and molestation.

1427. Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

1428. Also, in or ar4ound 1998, after being assaulted at Twistars Plaintiff Jane A71 Doe, at approximately 12 years old, told a coach at Twistars, Defendant Nassar was being inappropriate and doing inappropriate things.

1429. To the best of Plaintiff Jane A71 Doe's knowledge, belief, and understanding, the coach at Twistars took absolutely no steps to investigate or report Defendant Nassar's conduct.

1430. Mr. Geddert owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation.

1431. In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiffs and the public.

1432. Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public in failing to investigate the 1998 allegations, which were made to Mr. Geddert.

1433. Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public by failing to report the 1998 allegations, which were made to Mr. Geddert, to law enforcement.

1434. Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe as members of Defendant Twistars, in taking the recommendation of Mr. Geddert to seek medical treatment from Defendant Nassar had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse, or molestation.

1435. Plaintiff Jane A24 Doe in attending and competing in USAG sanctioned meets sponsored by Defendant Twistars and receiving treatment from Defendant Nassar at said events had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting her to sexual assault, abuse, or molestation.

1436. Plaintiff Jane A44 Doe in attending a USAG sanctioned meet sponsored by Defendant Twistars and receiving treatment from Defendant Nassar at said events had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting her to sexual assault, abuse, or molestation.

1437. By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

1438. Defendant Nassar owed Plaintiffs a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

1439. Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

1440. Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiffs in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

1441. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### C.     COUNT TWENTY-SIX

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE AGAINST DEFENDANT TWISTARS**

1442. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1443. An agent is a person who is authorized by another to act on its behalf.

1444. Defendant Twistars intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1445. On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

1446. Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

1447. Plaintiffs were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

1448. As a proximate cause of Defendant Nassar's negligence carried out through his

employment, agency, and or representation of Defendant Twistars Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D.    COUNT TWENTY-SEVEN**

**NEGLIGENT SUPERVISION**
**PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE;**
**JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE**
**AGAINST DEFENDANT TWISTARS**

1449.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1450.  Defendant Twistars each had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including Plaintiffs.

1451.  It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe, unless properly supervised.

1452.  Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that

Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1998 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

1453. Defendant Twistars breached its duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1454. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

1455. Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe with impunity.

1456. As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## E.    COUNT TWENTY-EIGHT

### NEGLIGENT FAILURE TO WARN OR PROTECT
### PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE AGAINST DEFENDANT TWISTARS

1457.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1458.   Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

1459.   As early as 1998, Defendant Twistars, by complaints made to its owner/employees/agents/representatives John Geddert and a coach, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

1460.   Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1461.   Defendant Twistars had a duty to warn or protect Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

1462.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1463.   Defendant Twistars breached said duty by failing to warn Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane

A50 Doe, and Jane A71 Doe and/or by failing to take reasonable steps to protect Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe from Defendant Nassar.

1464. Defendant Twistars breached its duties to protect Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

1465. Defendant Twistars breached its duties to protect Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe by failing to investigate Defendant Nassar, and adjudicate and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

1466. Defendant Twistars failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe.

1467. Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe from Defendant Nassar's conduct.

1468. As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F.    COUNT TWENTY-NINE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE
AGAINST DEFENDANT TWISTARS**

1469.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1470.    Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

1471.    A reasonable person would not expect Defendant Twistars to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

1472.    Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar, seek his services, and to not question his methods or motives.

1473.    Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars' reputation in the gymnastics community.

1474.    A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on their premises and at their facility.

1475. Defendant Twistars' conduct as described above was intentional and/or reckless.

1476. As a result of Defendant Twistars' conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

G.     COUNT THIRTY

FRAUD AND MISREPRESENTATION
PLAINTIFFS JANE A6 DOE; JANE A8 DOE; JANE A16 DOE BY JANE A17 DOE; JANE A24 DOE; JANE A38 DOE; JANE A44 DOE; JANE A50 DOE; AND JANE A71 DOE AGAINST DEFENDANT TWISTARS

1477. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1478. From approximately 1996 to September 2016, Defendant Twistars represented to Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe, and the public that Defendant Nassar was a competent, ethical, and safe physician.

1479. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented to Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe, and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane

A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe, and the public need not worry about being harmed by Defendant Nassar.

1480. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe, and an unknown number of individuals, at times at Defendant Twistars' facility.

1481. As early as 1998, Defendant Twistars knew their representations of Defendant Nassar were false as Defendant Twistars received a complaint of Defendant Nassar's conduct.

1482. Between the time of the 1998 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician.

1483. Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe relied on the assertions of Defendant Twistars and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

1484. Plaintiffs Jane A6 Doe, Jane A8 Doe, Jane A16 Doe by Jane A17 Doe, Jane A24 Doe, Jane A38 Doe, Jane A44 Doe, Jane A50 Doe, and Jane A71 Doe were subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent misrepresentations regarding Defendant Nassar.

1485. As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright,

grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## X.  CLAIMS AGAINST NASSAR

### A.  COUNT THIRTY-ONE

**ASSAULT & BATTERY**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

1486.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1487.  The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

1488.  Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

1489.  Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

1490.  Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching some of Plaintiffs' breasts without notice or explanation of the "treatment."

1491.  Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

1492.  As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to

suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.     COUNT THIRTY-TWO**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

1493. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1494. Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiffs, and an unknown number of other individuals, minors, and young adults.

1495. Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

1496. A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

1497. Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs over several years, from approximately 1996 to 2016.

1498. Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

1499. As a direct and/or proximate result of Defendant Nassar's outrageous conduct Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C.   **COUNT THIRTY-THREE**

**FRAUD AND MISREPRESENTATION**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

1500. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1501. From approximately 1996 to September 2016, Defendant Nassar represented to Plaintiffs and the public that he was a competent, ethical, and safe physician.

1502. By representing that he was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Nassar represented to Plaintiffs the public that Defendant Nassar he was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

1503. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of individuals at MSU, Twistars' facilities, USAG meets, Defendant Nassar's home, and other locations.

1504. Specifically, Defendant Nassar's false representations include but are not limited to the following:

e.  making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

f.  making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

g.  making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

h.  making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

i.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

j.  making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

k.  making a statement, explaining to a plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating the plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1505.  The material representation(s) to Plaintiffs were false, in that Defendant Nassar was actually engaging in conduct for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1506.  Plaintiffs relied on the assertions of Defendant Nassar and several Plaintiffs continued to seek treatment of Defendant Nassar even after Defendant Nassar became aware of concerns and complaints of his "treatment."

1507.  When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

1508.  Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted and/or relied upon by Plaintiffs, in that Plaintiffs:

l.       should believe that the "treatments" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted;

m.      should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue the "treatment[s]" so that he could continue to sexually assault them; should not question and/or report the conduct to appropriate authorities; and,

n.       should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

1509.   Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

o.       positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

p.       dismissed a medical professional from the room, during an examination of a plaintiff of whom he was digitally penetrating, who questioned the placement of his hands;

q.       prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during some examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

r.       did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

s.       did not abide by or follow restrictions that had been put into place in 2014 by

Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

t.       gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1510.   The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted fraud.

1511.   Between the times of the 1998 complaint to Defendant Twistars, the 1999 complaint to MSU coaches and trainers, the 2000 complaint to MSU trainers, the 2004 complaint to Meridian Township Police, the 2014 Complaint to MSU officials, and September 2016 when he was fired, Defendant Nassar continued to hold himself out as a competent and safe physician.

1512.   Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant Nassar's fraudulent misrepresentations regarding Defendant Nassar.

1513.   At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and operated within the scope of his employment and his negligence is imputed to the MSU Defendants.

1514.   At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

1515.   As a direct and/or proximate result of Defendant Nassar's fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have

sustained and continue to sustain loss of earnings and earning capacity.

## XI.        DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

1516.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1517.   As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

1518.   The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

1519.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

1520.   The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages

arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)   Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)   Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)   Reasonable attorney fees, interest, and costs; and,

d)   Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Dated: August 21, 2017          By:     /s/ Stephen R. Drew
                                        Stephen R. Drew (P24323)
                                        Adam C. Sturdivant (P72285)
                                        DREW, COOPER & ANDING
                                        Attorneys for Plaintiffs
                                        80 Ottawa Avenue NW, Suite 200
                                        Grand Rapids, Michigan 49503
                                        Ph: (616) 454-8300
                                        E: sdrew@dca-lawyers.com
                                        E: asturdivant@dca-lawyers.com


Dated: August 21, 2017          By:     /s/ John C. Manly (with permission)
                                        John C. Manly (CA 149080)
                                        Vince W. Finaldi (CA 238279)
                                        Alex E. Cunny (CA 291567)
                                        MANLY, STEWART & FINALDI
                                        Attorneys for Plaintiffs
                                        19100 Von Karman Avenue, Suite 800
                                        Irvine, California 92612
                                        Ph: (949) 252-9990

E: jmanly@manlystewart.com
E: vfinaldi@manlystewart.com
E: acunny@manlystewart.com

## RELIANCE UPON JURY DEMAND

Plaintiffs, DREW, COOPER & ANDING, and MANLY, STEWART & FINALDI, hereby rely on the demand for a trial by jury previously asserted on all claims set forth above.

Dated: August 21, 2017  By: /s/ Stephen R. Drew
          Stephen R. Drew (P24323)
          Adam C. Sturdivant (P72285)
          DREW, COOPER & ANDING
          Attorneys for Plaintiffs
          80 Ottawa Avenue NW, Suite 200
          Grand Rapids, Michigan 49503
          Ph: (616) 454-8300
          E: sdrew@dca-lawyers.com
          E: asturdivant@dca-lawyers.com

Dated: August 21, 2017  By: /s/ John C. Manly (with permission)
          John C. Manly (CA 149080)
          Vince W. Finaldi (CA 238279)
          Alex E. Cunny (CA 291567)
          MANLY, STEWART & FINALDI
          Attorneys for Plaintiffs
          19100 Von Karman Avenue, Suite 800
          Irvine, California 92612
          Ph: (949) 252-9990
          E: jmanly@manlystewart.com
          E: vfinaldi@manlystewart.com
          E: acunny@manlystewart.com