## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DENHOLLANDER, et al.       )
                                  )   Lead Case No. 1:17-cv-00029-GJQ-ESC
                Plaintiffs,   )   and all consolidated member cases:
                                  )   1:17-cv-00222-GJQ-ESC
v.                            )   1:17-cv-00244-GJQ-ESC
                                  )   1:17-cv-00254-GJQ-ESC
MICHIGAN STATE UNIVERSITY,   )   1:17-cv-00257-GJQ-ESC
et al.,                           )   1:17-cv-00288-GJQ-ESC
                                  )   1:17-cv-00349-GJQ-ESC
                Defendants.  )   1:17-cv-00676-GJQ-ESC
                                  )   1:17-cv-00684-GJQ-ESC
                                  )
                                  )   Hon. Gordon J. Quist
                                  )
                                  )

## BRIEF IN SUPPORT OF JOINT OMNIBUS MOTION TO DISMISS
## OF DEFENDANTS MICHIGAN STATE UNIVERSITY,
## BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY,
## <u>KATHIE KLAGES, DR. JEFFREY KOVAN, AND DR. WILLIAM STRAMPEL</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

SUMMARY OF ALLEGATIONS ......................................................................................4

STANDARD OF REVIEW ..................................................................................................9

ARGUMENT .......................................................................................................................11

I.  THE MSU DEFENDANTS ARE IMMUNE FROM PLAINTIFFS' STATE LAW CLAIMS. ..................................................................................................................11

    A.  Tort Claims Against MSU Are Barred By Sovereign Immunity............................11

    B.  The MSU Individuals Are Immune From Tort And CPL Claims. .........................14

    C.  State Law Claims Against The MSU Defendants Are Barred Because Plaintiffs Did Not Comply With The Governmental Notice Requirement...........16

        1.  Failure To Strictly Comply With The Governmental Notice Requirement Is A Complete Defense To Liability. ...................................18

        2.  Plaintiffs' Notices Are Untimely And Otherwise Inadequate. .................20

II.  PLAINTIFFS' TITLE IX CLAIMS FAIL.........................................................................22

    A.  Non-Student Plaintiffs Lack Standing To Assert Title IX Claims Against MSU........................................................................................................................22

    B.  Claims Arising Prior To April 2014 Must Be Dismissed Because Plaintiffs Fail To Allege Reporting To An "Appropriate Person." ......................................24

    C.  Plaintiffs Do Not Adequately Allege Deliberate Indifference..............................27

III.  PLAINTIFFS' SECTION 1983 CLAIMS FAIL. ...............................................................31

    A.  Section 1983 Claims Are Not Viable Against MSU Or The MSU Individuals In Their Official Capacities As A Matter Of Law. .............................31

    B.  Section 1983 Claims Against The MSU Individuals In Their Individual Capacities Fail........................................................................................................32

        1.  The MSU Individuals Are Immune From Section 1983 Claims. .............32

        2.  Plaintiffs Fail To Adequately Allege Supervisory Liability. ....................34

IV.  PLAINTIFFS' CLAIMS ARE TIME-BARRED..............................................................37

V.      PLAINTIFFS FAIL TO PLEAD VIABLE STATE LAW CLAIMS. ..............................41

        A.      Plaintiffs' Tort Claims Fail. ...................................................................41

        B.      Plaintiffs' Claims Under Michigan's Elliott-Larsen Civil Rights Act Fail. ..........44

                1.      Only MSU Students Or Prospective MSU Students Are Covered
                        By The ELCRA.......................................................................44

                2.      Plaintiffs Fail To Plead *Respondeat Superior* Liability.............................45

                3.      Plaintiffs Do Not Assert That They Were Denied Access To A
                        Public Accommodation............................................................46

                4.      Plaintiffs Do Not Plead ELCRA Claims Against the MSU
                        Individuals..........................................................................48

        C.      Plaintiffs' Claims Under Michigan's Child Protection Law Fail Because
                The Statute Does Not Apply. ...................................................................48

CONCLUSION......................................................................................................50

**CASES**

*Amini v. Oberlin College*,
259 F.3d 493 (6th Cir. 2001) ................................................................ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................... 10, 48

*Badiee v. Brighton Area Schools*,
265 Mich. App. 343, 695 N.W.2d 521 (2005) ...................................... 45

*Bass v. Robinson*,
167 F.3d 1041 (6th Cir. 1999) ............................................................ 35

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................... 10, 48

*Berry v. Board of Regents of University of Michigan*,
No. 14-000254-MZ, 2015 WL 9999535 (Mich. Ct. Cl. June 2, 2015) ................. 19

*Bowling v. Holt Public Schools*,
No. 1:16-CV-1322, 2017 WL 4512587 (W.D. Mich. May 26, 2017) ................. 38

*In re Bradley Estate*,
494 Mich. 367, 835 N.W.2d 545 (2013) .............................................. 11

*Brewer v. Central Michigan University Board of Trustees*,
No. 312374, 2013 WL 6124216 (Mich. Ct. App. Nov. 21, 2013) ........................ 19

*Bromley v. Mallison*,
No. 312901, 2014 WL 667799 (Mich. Ct. App. Feb. 18, 2014) ............................ 40

*Burrow v. State*,
No. 184874, 1997 WL 33331009 (Mich. Ct. App. Nov. 21, 1997) ....................... 13

*Campbell v. Dundee Community Schools*,
No. 12-CV-12327, 2015 WL 4040743 (E.D. Mich. July 1, 2015) ....................... 15

*Campbell v. Dundee Community Schools*,
661 F. App'x 884 (6th Cir. 2016)......................................... 24, 28, 29, 35

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) ................................................................ 10

*Chambers v. Trettco,*
    463 Mich. 297, 614 N.W.2d 910 (2000) ............................................................... 45

*Chandler v. Wackenhut Corp.,*
    465 F. App'x 425 (6th Cir. 2012)........................................................... 38, 40, 41

*Chiesa v. Rowe,*
    486 F. Supp. 236 (W.D. Mich. 1980)...................................................................... 44

*Clemente v. Vaslo,*
    679 F.3d 482 (6th Cir. 2012) ................................................................................. 33

*Colombo v. Board of Education for the Clifton School District,*
    Nos. 11-CV-785, 12-CV-7132, 2016 WL 6471013 (D.N.J. Oct. 31, 2016).... 23, 24

*Davis ex rel. LaShonda D. v. Monroe County Board of Education,*
    526 U.S. 629 (1999) ....................................................................................... *passim*

*DeShaney v. Winnebago County Department of Social Services,*
    489 U.S. 189 (1989) ............................................................................................... 4

*Desriveau v. Wayne State University,*
    No. 16-000033-MZ, 2016 WL 8739160 (Mich. Ct. Cl. Nov. 17, 2016)............... 17

*Detroit International Bridge Co. v. Michigan Department of Transportation,*
    No. 298276, 2011 WL 6058037 (Mich. Ct. App. Dec. 6, 2011)........................... 19

*Dibbern v. University of Michigan,*
    No. 12-15632, 2016 WL 2894491 (E.D. Mich. May 18, 2016)............................ 39

*Dockweiler v. Wentzell,*
    169 Mich. App. 368, 425 N.W.2d 468 (1988) ...................................................... 47

*Doe ex rel. Doe v. City of Roseville,*
    296 F.3d 431 (6th Cir. 2002) ............................................................. 33, 34, 35, 36

*Doe v. Brown University,*
    No. CV 16-614-M-LDA, 2017 WL 3911028 (D.R.I. Sept. 6, 2017).............. 23, 24

*Doe v. Claiborne County, Tennessee,*
    103 F.3d 495 (6th Cir. 1996) ............................................................. 27, 34, 35, 36

*Doe v. Doe,*
    289 Mich. App. 211, 809 N.W.2d 163 (2010) ...................................................... 50

*Doe v. Magoffin County Fiscal Court*,
174 F. App'x 962 (6th Cir. 2006) ...................................................................... 36, 37

*Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*,
264 Mich. App. 632, 692 N.W.2d 398 (2004) ................................................ 38, 41

*Does v. Michigan Department of Corrections*,
No. 15-000238-MZ, 2016 WL 5800404 (Mich. Ct. Cl. Feb. 1, 2016) ................. 17

*EBI-Detroit, Inc. v. City of Detroit*,
279 F. App'x 340 (6th Cir. 2008).......................................................................... 13

*Ellis ex rel. Pendergrass v. Cleveland Municipal School District*,
455 F.3d 690 (6th Cir. 2006) ................................................................................ 34

*Fairley v. Department of Corrections*,
497 Mich. 290, 871 N.W.2d 129 (2015) .........................................................*passim*

*Felder v. Casey*,
487 U.S. 131 (1988) .............................................................................................. 17

*Frank v. Linkner*,
500 Mich. 133, 894 N.W.2d 574 (2017) ............................................................... 41

*Gardner v. Michigan State University Board of Trustees*,
No. 1:12-CV-1018, 2014 WL 558818 (W.D. Mich. Feb. 11, 2014)..................... 32

*Garg v. Macomb County Community Mental Health Services*,
472 Mich. 263, 696 N.W.2d 646 (2005) .............................................................. 39

*Gebser v. Lago Vista Independent School District*,
524 U.S. 274 (1998) ..........................................................................................*passim*

*Graves v. Warner Bros.*,
253 Mich. App. 486, 656 N.W.2d 195 (2002) ...................................................... 42

*Gray v. Cry*,
No. 291142, 2011 WL 4375074 (Mich. Ct. App. Sept. 20, 2011) ........................ 15

*Hamed v. Wayne County*,
490 Mich. 1, 803 N.W. 2d 237 (2011) .................................................................. 42

*Hannay v. Department of Transportation*,
497 Mich. 45, 860 N.W.2d 67 (2014) ................................................................... 12

*Heike v. Guevara*,
654 F. Supp. 2d 658 (E.D. Mich. 2009) ................................................................ 32

*Henderson v. Walled Lake Consolidated Schools*,
469 F.3d 479 (6th Cir. 2006) ................................................................ 28, 29, 45

*Hill v. Board of Trustees of Michigan State University*,
182 F. Supp. 2d 621 (W.D. Mich. 2001) ................................................................ 12, 32

*Holmes v. City of Detroit*,
No. 276949, 2008 WL 821591 (Mich. Ct. App. Mar. 27, 2008) ........................... 15

*Hunter v. Bryant*,
502 U.S. 224 (1991) ................................................................ 33

*Jackson v. Schultz*,
429 F.3d 586 (6th Cir. 2005) ................................................................ 10

*Johnson v. Operation Get Down, Inc.*,
No. CIV.A. 11-15487, 2013 WL 4041868 (E.D. Mich. Aug. 8, 2013) ................ 17

*Jones v. Bitner*,
300 Mich. App. 65, 832 N.W.2d 426 (2013) ................................................................ 14

*K.T. v. Culver–Stockton College*,
No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11, 2016) .......... 23, 24

*Lemmerman v. Fealk*,
449 Mich. 56, 534 N.W.2d 695 (1995) ................................................................ 38

*Lillard v. Shelby County Board of Education*,
76 F.3d 716 (6th Cir. 1996) ................................................................ 33, 35, 37

*Loewen v. Grand Rapids Medical Educational Partners*,
No. 1:10-cv-1284, 2012 WL 1190145 (W.D. Mich. Apr. 9, 2012) ................ 23, 29

*Long v. Chelsea Community Hospital*,
219 Mich. App. 578, 557 N.W.2d 157 (1996) ................................................................ 39, 44

*Lynn v. City of Detroit*,
98 F. App'x 381 (6th Cir. 2004) ................................................................ 36

*Mack v. City of Detroit*,
467 Mich. 186, 649 N.W.2d 47 (2002) ................................................................ 1124

*Marcelletti v. Bathani*,
    198 Mich. App. 655, 500 N.W. 2d 124 (1993) ...................................................... 42

*May v. Greiner*,
    No. 269516, 2006 WL 2987709 (Mich. Ct. App. Oct. 19, 2006) ......................... 15

*McCahan v. Brennan*,
    492 Mich. 730, 822 N.W.2d 747 (2012) ................................................... 16, 17, 18

*McCarrick v. Lapeer Community Schools*,
    No. 12-11654, 2012 WL 3600377 (E.D. Mich. Aug. 21, 2012) ............................ 50

*McCoy v. Board of Education, Columbus City Schools*,
    515 F. App'x 387 (6th Cir. 2013) ............................................................. 28, 30, 31

*McQueen v. Beecher Community School*,
    433 F.3d 460 (6th Cir. 2006) ................................................................................ 4

*Miller ex rel. Miller v. Lord*,
    262 Mich. App. 640, 686 N.W.2d 800 (2004) ...................................................... 15

*Murdock v. Higgins*,
    454 Mich. 46, 559 N.W.2d 639 (1997) ................................................................ 42

*Nair v. Oakland County Community Mental Health Authority*,
    443 F.3d 469 (6th Cir. 2006) ................................................................................ 9

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
    650 F.3d 1046 (6th Cir. 2011) ............................................................................ 10

*Nixon v. Wilmington Trust Co.*,
    543 F.3d 354 (6th Cir. 2008) .............................................................................. 20

*North Haven Board of Education v. Bell*,
    456 U.S. 512 (1982) .......................................................................................... 22

*Odom v. University of Michigan*,
    No. 16-12791, 2017 WL 2117978 (E.D. Mich. May 16, 2017) ......................... 9, 10

*Odom v. Wayne County*,
    482 Mich. 459, 760 N.W.2d 217 (2008) ........................................................ 12, 14

*Ontha v. Rutherford County, Tennessee*,
    222 F. App'x 498 (6th Cir. 2007) ....................................................................... 36

*Patterson v. Hudson Area Schools*,
    No. 05-74439, 2010 WL 455386 (E.D. Mich. Feb. 3. 2010) ................................. 23

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ............................................................................. 33

*Peatross v. City of Memphis*,
    818 F.3d 233 (6th Cir. 2016) .................................................................. 10

*Peer ex rel. Doe v. Porterfield*,
    No. 1:05CV769, 2007 WL 9655728 (W.D. Mich. Jan. 8, 2007) .......................... 26

*People v. Beardsley*,
    263 Mich. App. 408, 688 N.W.2d 304 (2004) ......................................... 49

*Pew v. Michigan State University*,
    307 Mich. App. 328, 859 N.W.2d 246 (2014) ......................................... 12

*Phifer v. City of Grand Rapids, Michigan*,
    657 F. Supp. 2d 867 (W.D. Mich. 2009) .................................................. 39

*Phillips v. Anderson County Board of Education*,
    259 F. App'x 842 (6th Cir. 2008) ........................................................... 23

*Pillar v. State, Department of Treasury*,
    No. 2013000164, 2015 WL 7692978 (Mich. Ct. Cl. Sept. 22, 2015) ................... 18

*Plamp v. Mitchell School District No. 17-2*,
    565 F.3d 450 (8th Cir. 2009) ........................................................... 25, 26

*Pohutski v. City of Allen Park*,
    465 Mich. 675, 641 N.W.2d 219 (2002) ................................................. 11

*Ray v. Swager*,
    501 Mich. 52, 903 N.W.2d 366 (2017) .................................................. 15

*Reich v. State*,
    5 Mich. App. 509, 147 N.W.2d 431 (1967) ............................................ 19

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ......................................................... 43, 44

*Rippy ex rel. Rippy v. Hattaway*,
    270 F.3d 416 (6th Cir. 2001) .............................................................. 10

*Riverside Auto Sales, Inc. v. GE Capital Warranty Corp.*,
No. 2:03-cv-55, 2004 WL 2106638 (W.D. Mich. Mar. 30, 2004) ........................ 39

*Robinson v. City of Detroit*,
462 Mich. 439, 613 N.W.2d 307 (Mich. 2000) ...................................................... 14

*Romeo Community Schools v. United States Department of Health, Education & Welfare*,
438 F. Supp. 1021 (E.D. Mich. 1977) ................................................................... 22

*Rosa H. ex rel. Deborah H. v. San Elizario Independent School District*,
106 F.3d 648 (5th Cir. 1997) ................................................................................ 26

*Ross v. Consumers Power Co.*,
420 Mich. 567, 363 N.W.2d 641 (1984) ............................................................... 11

*Ross v. University of Tulsa*,
859 F.3d 1280 (10th Cir. 2017) ....................................................................... 25, 26

*Rowland v. Washtenaw County Road Commission*,
477 Mich. 197, 731 N.W.2d 41 (2007) .......................................................... 16, 17

*Russo v. City of Cincinnati*,
953 F.2d 1036 (6th Cir. 1992) .............................................................................. 34

*Sanches v. Carrollton-Farmers Branch Independent School District*,
647 F.3d 156 (5th Cir. 2011) ................................................................................ 31

*Schweiker v. Gray Panthers*,
453 U.S. 34 (1981) ................................................................................................. 4

*Secosky v. Sanders*,
Nos. 316441, 316544, 316688, 2014 WL 5364104 (Mich. Ct. App. Oct. 21, 2014) ................................................................................................................... 20

*Sharpe v. Cureton*,
319 F. 3d 259 (6th Cir. 2003) ............................................................................... 39

*Sheets v. Mullins*,
287 F.3d 581 (6th Cir. 2002) ................................................................................ 33

*Smith v. Gilles*,
28 Mich. App. 166, 184 N.W.2d 271 (1970) ......................................................... 37

*Smith v. Department of Public Health*,
428 Mich. 540, 410 N.W.2d 749 (1987) .......................................................... 13, 32

*Soper v. Hoben*,
　　195 F.3d 845 (6th Cir. 1999) ................................................................. 24, 29, 30

*Sparks v. Bellin Health Systems, Inc.*,
　　No. 2:09-CV-14, 2010 WL 2349467 (W.D. Mich. June 7, 2010) ........................ 46

*Stevenson v. Robinson*,
　　39 Mich. 160 (1878) ................................................................................. 42

*Stiles ex rel. D.S. v. Grainger County, Tennessee*,
　　819 F.3d 834 (6th Cir. 2016) ..................................................................... 30

*Super v. Department of Transportation*,
　　No. 282636, 2009 WL 2032041 (Mich. Ct. App. July 14, 2009) ........................ 19

*Taylor v. Eastern Michigan University*,
　　No. 2015000180, 2015 WL 10845490 (Mich. Ct. Cl. Oct. 30, 2015) .................. 20

*Teadt v. Lutheran Church Missouri Synod*,
　　237 Mich. App. 567, 603 N.W.2d 816 (1999) ............................................... 43

*Techner v. Greenberg*,
　　No. 11-14722, 2012 WL 1753008 (E.D. Mich. May 16, 2012) .......................... 10

*Tinney v. Widdis, Inc.*,
　　No. 328050, 2016 WL 6584571 (Mich. Ct. App. Nov. 3, 2016) ........................ 41

*Trentadue v. Gorton*,
　　479 Mich. 378, 738 N.W.2d 664 (2007) ..................................................... 37

*Tumminello v. Father Ryan High School, Inc.*,
　　678 F. App'x 281 (6th Cir. 2017) .................................................... 27, 28, 31

*Twersky v. Yeshiva University*,
　　993 F. Supp. 2d 429 (S.D.N.Y. 2014) ......................................................... 38

*Van Domelen v. Menominee County*,
　　935 F. Supp. 918 (W.D. Mich. 1996) .......................................................... 35

*Vargo v. Sauer*,
　　457 Mich. 49, 576 N.W.2d 656 (1998) ................................................... 11, 12

*Warren ex rel. Good v. Reading School District*,
　　278 F.3d 163 (3d Cir. 2002) ..................................................................... 27

*Weisbord v. Michigan State University*,
    495 F. Supp. 1347 (W.D. Mich. 1980) .................................................................. 12

*Wesche v. Mecosta County Road Commission*,
    267 Mich. App. 274, 705 N.W.2d 136 (2005) ...................................................... 13

*Will v. Michigan Department of State Police*,
    491 U.S. 58 (1989) ...................................................................................... 13, 32

*Wilson v. City of Detroit*,
    No. 219777, 2001 WL 760020 (Mich. Ct. App. Jan. 30, 2001) ............................ 46

*Yan v. Pennsylvania State University*,
    No. 4:14-CV-01373, 2015 WL 3953205 (M.D. Pa. June 29, 2015) ..................... 22

*Zelek v. State*,
    No. 305191, 2012 WL 4900517 (Mich. Ct. App. Oct. 16, 2012) .......................... 19

## STATUTES

20 U.S.C. § 1681(a) ............................................................................................... 22

42 U.S.C. § 1983 .......................................................................................... passim

MCL 37.2302 .......................................................................................................... 46

MCL 37.2401 .......................................................................................................... 48

MCL 37.2402 .......................................................................................................... 45

MCL 600.5805 ........................................................................................................ 37

MCL 600.5813 ........................................................................................................ 37

MCL 600.5827 ........................................................................................................ 37

MCL 600.5851 ........................................................................................................ 39

MCL 600.5855 .................................................................................................. 39, 41

MCL 600.6431 .................................................................................................. 20, 21

MCL 600.6452 ........................................................................................................ 37

MCL 691.1401 ........................................................................................................ 11

MCL 691.1402 ........................................................................................................ 12

MCL 691.1405 ............................................................................................... 12

MCL 691.1406 ............................................................................................... 12

MCL 691.1407 ................................................................................. 11, 13, 14

MCL 691.1410 ............................................................................................... 16

MCL 691.1413 ............................................................................................... 13

MCL 691.1417 ............................................................................................... 13

MCL 722.622 ................................................................................................. 49

MCL 722.623 ................................................................................................. 48

MCL 722.633 ........................................................................................... 48, 49

## RULES

Fed. R. Civ. P. 8(a) ...................................................................................... 48

Fed. R. Civ. P. 9(b) ...................................................................................... 43

**<u>INTRODUCTION</u>**[1]

For over two decades, Lawrence ("Larry") Nassar masqueraded as a highly regarded doctor, a respected employee, friend, and family man, and an admired member of the community. In the fall of 2016, Nassar was unmasked and exposed for what he is: a fraud, a pedophile, and a criminal. He has now publicly admitted that he abused his position of trust to surreptitiously sexually assault his patients under the guise of medical care. He will likely spend the rest of his life behind bars—and deservedly so.

Plaintiffs are 140 victims of Nassar.[2] Plaintiffs seek redress for Nassar's intentional misconduct from MSU as his employer and the MSU Individuals as his co-workers. The law, however, does not provide for recovery under the circumstances here.

Under Michigan law, State institutions like MSU are generally immune from suit. Sovereign immunity is an inherent characteristic of government that protects the State's citizens by safeguarding its fiscal stability. The Legislature has carefully limited the State's waiver of sovereign immunity with the Governmental Tort Liability Act ("GTLA"). The GTLA waives immunity only for discrete causes of action. Thus, plaintiffs who wish to sue the State must demonstrate that their claims fall within one of the limited, statutory exceptions to immunity. Here, Plaintiffs fail to make this showing, which is unsurprising because none of the exceptions to immunity apply. The Michigan Supreme Court and the Sixth Circuit both have recognized that the State is immune from lawsuits premised on the intentional torts of State employees. Hence,

---

[1]    Capitalized terms not defined in this brief have the meaning ascribed to them in the MSU Defendants' accompanying Joint Omnibus Motion to Dismiss.

[2]    At the motion to dismiss stage, the facts as alleged in the Complaints are presumed to be true.

although Nassar himself may be held civilly liable for his crimes, MSU may not. It retains absolute immunity from liability for his intentional misconduct.

The MSU Individuals are also immune from liability for Plaintiffs' claims. Under the GTLA, a government employee is insulated from tort liability where, as here, that employee reasonably believes he is acting within the scope of his authority, the government agency is engaged in the exercise or discharge of a governmental function, and the employee's conduct does not amount to gross negligence that is "the" proximate cause of the injury or damage. M.C.L. § 691.1407(2). The Michigan Supreme Court has reiterated that proximate cause in this context contemplates only *one* cause. In this case, the Complaints allege that the single, most proximate cause of Plaintiffs' alleged injuries was Nassar's criminal activity; this precludes liability for any MSU Individual. The MSU Individuals are entitled to immunity and the claims against them must be dismissed.

Even if a State law claim falls within a statutory exception, to overcome immunity, Michigan's Court of Claims Act mandates that Plaintiffs must file, within six months of the alleged abuse, a verified notice of intention to sue the State. Plaintiffs failed to comply with that mandate. The notice requirement provides State entities with security "knowing that only timely, verified claims in [properly filed] notices . . . can give rise to potential liability," ensuring sufficient monetary reserves, "reducing the uncertainty of the extent of future demands," and "even [] forc[ing] claimant[s] to an early choice regarding how to proceed." *Fairley v. Dep't of Corr.*, 497 Mich. 290, 299 n.14, 871 N.W.2d 129, 134 n.14 (2015). The notice requirement has *no* exceptions, no tolling is allowed for any reason, and the MSU Defendants need not show that they were prejudiced by the Plaintiffs' failure to comply. Because this notice requirement serves legitimate State interests, it is constitutional and rigorously enforced. Indeed, the Michigan

Supreme Court has held as a matter of law that a notice's failure to meet even one of the statutory requirements is fatal to a plaintiff's claims. Here, all Plaintiffs failed to comply with the Court of Claims Act notice requirement in one or more respects, necessitating dismissal of all of their State law claims.

Plaintiffs' federal claims cannot survive either. Only students and employees of MSU may pursue claims against MSU under Title IX. The vast majority of Plaintiffs lack standing to assert Title IX claims against MSU because they were *never* MSU students or they were not MSU students at the time of Nassar's misconduct. Indeed, most Plaintiffs allege no affiliation whatsoever with MSU. Those Plaintiffs with standing fail to plead viable Title IX claims because they do not allege that Nassar's misconduct was reported to an "appropriate person" under the law or that MSU acted with "deliberate indifference" to alleged reports of sexual assault.

Plaintiffs' claims under 42 U.S.C. § 1983 against MSU or the MSU Individuals in their official capacities fail as a matter of law because Section 1983 allows suits against State employees only in their individual capacities. The MSU Individuals are generally immune from Section 1983 claims in their personal capacities, and Plaintiffs do not allege that they engaged in constitutional violations that would be required to overcome that immunity.

Finally, most Plaintiffs' claims—which were filed years and, in some cases, more than a decade after the alleged abuse—are time-barred and otherwise inadequately pled against the MSU Defendants.

As much as MSU sympathizes with Plaintiffs, it would be contrary to the State's established public policy, as embodied in its laws and the decisions of its courts, to impose legal liability on the MSU Defendants in this case. As the Sixth Circuit has recognized, "[j]udges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for

[plaintiffs] to receive adequate compensation for the grievous harm inflicted upon them." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 472 (6th Cir. 2006) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 202–03 (1989)). But here, "sympathy is an insufficient basis for approving a recovery based on a theory inconsistent with law." *Id.* (quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 48-49 (1981)). As a matter of law, Plaintiffs' Complaints must be dismissed.[3]

## SUMMARY OF ALLEGATIONS

These consolidated cases arise out of the criminal misdeeds of Larry Nassar, a now-disgraced doctor of osteopathic medicine. Nassar began his career as a certified athletic trainer for USA Gymnastics ("USAG") in 1986. (PageID.5382, 5533-34, 5676, 5966; *see also* PageID.5884-85, 6109; 1:17-cv-00684 PageID.86.)[4] He received his medical degree from MSU in 1993. (PageID.5382, 5533, 5676-77, 5887, 5965-66, 6112; 1:17-cv-00684 PageID.88.) Thereafter, from approximately 1996 to 2016, Nassar worked as a physician and Associate Professor for MSU. (PageID.5382-83, 5534, 5676-77, 5888, 5966, 6112; 1:17-cv-00684 PageID.88.) During most of this time period, Nassar simultaneously served as USAG's National Medical Director and National Team Physician. (PageID.5382, 5533-34, 5676, 5887-88, 5966, 6112; 1:17-cv-00684 PageID.88.) In addition to his roles at MSU and USAG, Nassar also volunteered at Gedderts' Twistars Gymnastics Club ("Twistars") and Holt High School. (PageID.5383, 5533, 5677, 5966-67; *see also* PageID.5534, 5888; 1:17-cv-00684 PageID.88.) Because of his perceived expertise, Nassar was routinely sought out by or "highly

---

[3]  For ease of reference, a chart delineating the defenses applicable to each of Plaintiffs' claims is attached hereto as Exhibit A.

[4]  Citations to "PageID" refer to the docket in lead case *Denhollander v. Mich. State Univ.*, No. 17-cv-00029, unless otherwise noted.

recommended" to both athletes and non-athletes as a "renowned orthopedic sports medicine physician" who was "well-respected in the sports medicine community." (PageID.5367, 5526, 5656, 5953; *see also* 1:17-cv-00684 PageID.90.)

Then, in the fall of 2016, a former patient publicly accused Nassar of sexually assaulting her, sixteen years earlier, under the guise of medical treatment. (PageID.5371, 5539-40, 5661, 5897, 5957, 6119.) This revelation prompted a series of events that caused Nassar's carefully constructed façade to rapidly crumble. MSU terminated Nassar. (PageID.5390, 5539-40, 5684-85, 5973.) His medical license was revoked. (PageID.5545.) The Michigan Attorney General charged Nassar in Ingham and Eaton counties with 25 counts of first degree criminal sexual assault. (1:17-cv-00684 PageID.101-02; *see also* PageID.5372, 5542-43, 5662, 5897, 5958, 6119.) Additionally, Nassar was federally indicted for receipt and possession of child pornography. (PageID.5372, 5541, 5662, 5897, 5958, 6119; 1:17-cv-00684 PageID.101.) Nassar has pled guilty to all of these charges. (*See* PageID.5393, 5543-44, 5689, 5976-77.)

By and large, Plaintiffs here are Nassar's former patients. (*See* PageID.5368, 5535, 5656, 5889, 6113; 1:17-cv-00684 PageID.86.) Plaintiffs allege that at various times from approximately 1992 through sometime in 2016, Nassar sexually assaulted and exploited them, usually under the guise of medical treatment. (*See* PageID.5368, 5538-39, 5657-59, 5889, 6113; 1:17-cv-00684 PageID.90, 93, 96.)[5]

Most Plaintiffs allege the assaults occurred at the MSU Sports Medicine Clinic (which is open to the public) or in training facilities on MSU's campus. (*See, e.g.*, PageID.5369, 5547,

---

[5]    At least two Plaintiffs apparently were never patients of Nassar. These Plaintiffs allege that Nassar sexually assaulted them in his home while they were there for social visits; they do not claim that Nassar attempted to disguise the assaults as medical treatments. (PageID.5751-52, 5772-74 (Jane A52 Doe and Jane A69 Doe).) Additionally, seven Plaintiffs are husbands of Nassar patients who assert loss of consortium claims. (PageID.5519.)

5659, 5890, 6113.) Some Plaintiffs additionally or exclusively allege they were assaulted at USAG-sponsored events, at Karolyi Ranch (a USAG training center in Texas), at Twistars' facilities or events, or at Nassar's home. (*See, e.g.*, PageID.5369, 5557, 5659, 5692, 5889.)

Although Plaintiffs allege assaults dating back as early as 1992, Plaintiffs claim that Nassar so thoroughly deceived them that they did not know they were victims until sometime in 2016 or later, after the allegations against Nassar first surfaced in the media. (*See* PageID.5371, 5661, 5892, 6114; 1:17-cv-00684 PageID.92.) Likewise, some Plaintiffs' parents, who accompanied Plaintiffs to appointments and were in the examination room during the alleged assaults, were deceived by Nassar. (*See* PageID.5369, 5658; 1:17-cv-00684 PageID.91.) Plaintiffs allege that Nassar positioned himself such that parents could not observe the assaults, or that Nassar moved to block the parents' view. (*E.g.*, PageID.5735, 5739; 1:17-cv-00684 PageID.91.) Various Plaintiffs further claim that either they or their parents observed that Nassar was sexually aroused during "treatments"—sometimes "on more than one occasion"—yet Nassar was so well regarded that they did not suspect wrongdoing. (*E.g.*, PageID.5394, 5420, 5717, 5718, 6000, 6005.)

Despite Nassar's deception, Plaintiffs claim that a few people raised concerns about his conduct to MSU employees. Plaintiffs Larissa Boyce and Jane B8 Doe allege that, in approximately late 1997 or mid-1998, they contemporaneously raised concerns to MSU Individual Defendant Kathie Klages, then the MSU Women's Gymnastics Coach. (PageID.5395, 5405.) Klages allegedly told Boyce "she had known Nassar for years and could not imagine him doing anything questionable" and Boyce "must be 'misunderstanding' or 'reading into'"

Nassar's conduct. (PageID.5395.) Additionally, Klages allegedly discouraged both Plaintiffs from making further complaints. (PageID.5395, 5405.)[6]

In approximately 1999, Plaintiff Jane A19 Doe allegedly raised concerns about Nassar's conduct to an unidentified MSU coach and athletic trainers. (*See* PageID.5715-16.) One of these individuals allegedly told Jane A19 Doe that Nassar was an "'Olympic doctor' and that . . . Nassar 'knew what he was doing.'" (PageID.5715-16.)

A year later, in approximately 2000, non-plaintiff "Jane T.T. Doe" allegedly complained about Nassar's conduct, first to an unidentified "trainer on her [MSU] softball team" and then to two unidentified "higher level" MSU athletic trainers. (PageID.5679-80.) The softball trainer allegedly responded by calling Nassar a "world renowned doctor" and describing his treatment as "legitimate." (*Id.*) One of the other trainers allegedly told Jane T.T. Doe that Nassar's conduct "was not sexual abuse, that Nassar was a world renowned doctor, and that [she] was not to discuss what happened with Nassar and was to continue seeing him." (*Id.*)

Jane A69 Doe claims she reported assaults in approximately 2004, first to her parents and then to a psychologist/counselor "employed by [] MSU." (PageID.5773.) The latter report occurred in the context of a doctor-patient relationship. (PageID.5773.) Plaintiff Jane A69 Doe claims she was repeatedly sexually assaulted by Nassar during social visits at his home—not at MSU—from approximately 1998 or 1999 to 2003 or 2004. (PageID.5772.) These assaults did not occur under the guise of medical treatment; Nassar allegedly exposed himself, masturbated, and subjected Jane A69 Doe to digital penetration. (PageID.5772-73.)

---

[6] Although Klages denies these allegations, the outcome of the MSU Defendants' motion to dismiss does not rest on disagreements with the facts alleged in the Complaints.

Plaintiffs do not allege that Defendant Klages or the unidentified coach, athletic trainers, or the psychologist/counselor were supervisory to Nassar or otherwise members of MSU's administration.

Instead, Plaintiffs allege that the first time MSU administration received a report concerning Nassar was in April 2014, when adult Plaintiff Jane D1 Doe made a complaint of sexual harassment against him. (PageID.5549-50; *see also* PageID.5369, 5659-70.) Jane D1 Doe alleged Nassar touched her inappropriately during a medical examination, but did not allege vaginal or anal penetration. (*See* PageID.5547-49.) Defendant Kovan received the initial complaint and immediately elevated the complaint to MSU's Office of Inclusion and Intercultural Initiatives ("I3"). I3 investigated Nassar's conduct, including conducting interviews of fact and expert witnesses. (*See* PageID.5549-50.) At the conclusion of the investigation, I3 determined that Nassar's conduct as alleged by Jane D1 Doe was "not of a sexual nature" and was medically appropriate. (PageID.5550.) However, because Nassar's treatment of Jane D1 Doe had caused her confusion and distress, Nassar was instructed that, going forward, when performing procedures near sensitive areas, he should utilize a chaperone, minimize skin-on-skin contact, and explain such procedures to the patient in detail. (*See* PageID.5551, 5636.)

No other complaints regarding Nassar's conduct were presented to MSU's administration until 2016, when, in late August or early September 2016, Plaintiff Rachael Denhollander filed a criminal complaint against Nassar with the MSU Police Department. (PageID.5684-85.) Denhollander alleged that approximately 16 years earlier when she was 15 years old, Nassar assaulted her under the guise of medical treatment by, among other things, digitally penetrating her vagina and anus. (*Id*.) When Denhollander's claims were publicized in September 2016, other patients of Nassar stepped forward to allege similar abuse. (PageID.5371.)

MSU terminated Nassar on September 20, 2016. (*See* PageID.5390, 5539, 5684-85.) One of the reasons for Nassar's termination was his failure to follow the protocols implemented in 2014. (PageID.5390, 5540, 5685.)

Plaintiffs allege that the MSU Defendants are liable for Nassar's crimes. In particular, all Plaintiffs assert common law and statutory claims against MSU for gross negligence, ordinary negligence, negligent retention, negligent supervision, negligent failure to warn or protect, negligent failure to train or educate, intentional infliction of emotional distress, fraud, vicarious/agency liability for Nassar's assaults, sex discrimination in education under Title IX, and deprivation of civil rights under Section 1983. Thirty-eight Plaintiffs (in Plaintiff Groups B, D, E and F) additionally assert Elliott-Larsen Civil Rights Act ("ELCRA") claims against MSU. Thirty-five Plaintiffs (in Plaintiff Groups B, E, and F) appear to assert all of the foregoing claims (except Title IX) against the MSU Individuals.[7] Of those, 33 Plaintiffs (in Plaintiff Group B) also allege violations of Michigan's Child Protection Law ("CPL") against the MSU Individuals. Finally, seven of Plaintiffs' husbands (in Plaintiff Group B) bring loss of consortium claims as John Does against all MSU Defendants. (*See* PageID.5519-20.)

## STANDARD OF REVIEW

The MSU Defendants move to dismiss Plaintiffs' Complaints on grounds of sovereign and individual immunity, as well as failure to state a claim for which relief may be granted. "A motion to dismiss on the ground that sovereign immunity bars the plaintiff[s'] claims is properly treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Odom v. Univ. of Mich.*, No. 16-12791, 2017 WL 2117978, at *2 (E.D. Mich. May 16, 2017); *see also*

---

[7] Group B Plaintiffs name Klages, Kovan, and Strampel as defendants. (*See* PageID.5380.) Jane E1 Doe and Jane F1 Doe bring these claims against only Klages and Strampel. (*See* PageID.5885-86, 6110.)

*Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). The plaintiff generally bears the burden of establishing jurisdiction. *Odom*, 2017 WL 2117978, at *2.

By contrast, courts review motions to dismiss based on a State employee's qualified/governmental immunity under Rule 12(b)(6). *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005); *see also Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). Where a complaint unambiguously shows that an individual defendant is entitled to immunity as a matter of law, dismissal is appropriate. *See Jackson*, 429 F.3d at 589-90.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). To survive a motion to dismiss for failure to state a claim, a plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct"). Although courts generally accept as true the complaint's allegations, this rule is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678. The Sixth Circuit has explained that, "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor Inc. v. Louisville Tractor Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). Accordingly, a complaint that does not provide the "when, where, [] what or by whom" to support conclusory allegations fails to state a claim. *Ctr. for Bio-Ethical Reform Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

<u>**ARGUMENT**</u>

**I.      THE MSU DEFENDANTS ARE IMMUNE FROM PLAINTIFFS' STATE LAW CLAIMS.**

**A.      Tort Claims Against MSU Are Barred By Sovereign Immunity.**

"From the time of Michigan's statehood, [the Michigan Supreme Court's] jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents, and that any relinquishment of sovereign immunity must be strictly interpreted." *Pohutski v. City of Allen Park*, 465 Mich. 675, 681, 641 N.W.2d 219, 225 (2002); *see also Ross v. Consumers Power Co.*, 420 Mich. 567, 598, 363 N.W.2d 641, 650 (1984) ("[T]he sovereign (the state) [is] immune from *all* suits, including suits for tortious injuries which it [] caused."). To ensure this immunity could not be abrogated by the courts, the Legislature enacted the GTLA, M.C.L. § 691.1401, *et seq. Ross*, 420 Mich. at 605, 363 N.W.2d at 654. This act codifies the long-standing common law with respect to State sovereign immunity: "the state [is] immune from tort liability when it [is] engaged in the exercise or discharge of a governmental function, unless a statutory exception [is] applicable." *Id.*, 420 Mich. at 606, 363 N.W.2d at 654; *see also* M.C.L. § 691.1407(1); *Fairley*, 497 Mich. at 297, 871 N.W.2d at 133 ("Under the government tort liability act . . . governmental agencies are broadly shielded from tort liability."); *In re Bradley Estate*, 494 Mich. 367, 389, 835 N.W.2d 545, 557 (2013) (holding that the GTLA grants immunity from all legal responsibility for injuries caused by "noncontractual civil wrong[s]" no matter how the action is labeled).

It is "undisputed" that "MSU, as an extension of the state, generally is entitled to invoke sovereign immunity." *Vargo v. Sauer*, 457 Mich. 49, 66, 576 N.W.2d 656, 664 (1998). Michigan statutory law includes MSU in the definition of "state" for purposes of immunity. M.C.L. § 691.1401(g) ("State includes a public university or college of this state, whether established as a constitutional corporation or otherwise."). Accordingly, State and federal courts—including

this Court—routinely have recognized MSU's status as a State institution, entitled to the privileges and immunities of the State. *See, e.g.*, *Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) (Quist, J.) ("MSU is a state entity"); *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1356 (W.D. Mich. 1980); *Vargo*, 457 Mich. at 66, 576 N.W.2d at 664; *Pew v. Mich. State Univ.*, 307 Mich. App. 328, 859 N.W.2d 246, 253 (2014).

Governmental immunity is not an affirmative defense; it is a characteristic of government. *Fairley*, 497 Mich. at 298, 871 N.W.2d. at 133; *Mack v. City of Detroit*, 467 Mich. 186, 199-200, 649 N.W.2d 47, 54-55 (2002). This means that MSU is entitled to a *presumption* of immunity. *See id.*, 467 Mich. at 201, 649 N.W.2d at 56. Plaintiffs bear the burden to overcome this presumption by pleading their claims "in avoidance of governmental immunity." *Hannay v. Dep't of Transp.*, 497 Mich. 45, 58, 860 N.W.2d 67, 75 (2014); *see also, e.g.*, *Odom v. Wayne Cty.*, 482 Mich. 459, 479-80, 760 N.W.2d 217, 227 (2008) ("A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity. Placing this burden on the plaintiff relieves the government of the expense of discovery and trial in many cases."). In particular, Plaintiffs must establish that their claims "fall[] within a statutory exception" to immunity. *Mack*, 467 Mich. at 201, 649 N.W.2d at 56. Plaintiffs have not carried this burden.

The GTLA sets forth only six statutory exceptions to MSU's immunity from tort liability, none of which are applicable here: (1) the highway exception, M.C.L. § 691.1402; (2) the motor vehicle exception, M.C.L. § 691.1405; (3) the public building exception, M.C.L. § 691.1406;

(4) the medical care exception,[8] M.C.L. § 691.1407(4); (5) the proprietary function exception, M.C.L. § 691.1413; and (6) the sewage-disposal-system-event exception, M.C.L. § 691.1417(2), (3). Notably, although State employees may be individually liable for the intentional torts they commit, the State is not liable. *See, e.g.*, *Smith v. Dep't of Pub. Health*, 428 Mich. 540, 544, 410 N.W.2d 749, 751 (1987) ("There is no 'intentional tort' exception to governmental immunity."), *aff'd*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Burrow v. State*, No. 184874, 1997 WL 33331009, at *1 (Mich. Ct. App. Nov. 21, 1997) ("This Court has repeatedly held that there is no intentional tort exception to governmental immunity."); *see also EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 351 (6th Cir. 2008) ("All Michigan cases agree that government agencies are immune from liability for intentional torts.").

The Legislature has not waived MSU's immunity from claims premised on an employee's intentional sexual assault. Moreover, Plaintiffs have failed to plead that any statutory exception to immunity applies—and none do, as Plaintiffs clearly allege Nassar committed intentional torts. (*See* PageID.5511-16, 5625-30, 5868-74, 5946-48, 6087-93, 6157-60; 1:17-cv-00684 PageID.142-44.) Further, because loss of consortium claims are derivative of and contingent upon a spouse's recovery for the alleged underlying injury, where an immunity exception does not apply to the spouse's injury, the loss of consortium claim is also barred. *See Wesche v. Mecosta Cty. Rd. Comm'n*, 267 Mich. App. 274, 279, 705 N.W.2d 136, 139 (2005), *aff'd*, 480 Mich. 75, 746 N.W.2d 847 (2008). Thus, all of Plaintiffs' tort claims against MSU,

---

[8]   The medical care exception, which was enacted on October 24, 2000 and does not apply retroactively, 2000 P.A. 318, is inapplicable because it applies only to tort claims premised on the provision of medical care, M.C.L. § 691.1407(4). Plaintiffs allege that Nassar committed intentional sexual assault.

including those premised on vicarious liability for Nassar's misconduct, must be dismissed with prejudice.

**B.      The MSU Individuals Are Immune From Tort And CPL Claims.**

Like MSU, the MSU Individuals are entitled to immunity from tort liability for injuries caused while acting within the scope of their employment for the State. M.C.L. § 691.1407(2) (conferring immunity from negligence-based torts upon State employees); *Odom*, 482 Mich. at 479-80, 760 N.W.2d at 228 (recognizing government employees may be immune from liability for intentional torts). Although the burden falls on the governmental employee to "raise and prove his entitlement to immunity as an affirmative defense," *id.*, 482 Mich. at 479, 760 N.W.2d at 227-28, the MSU Individuals easily meet that burden here.

The allegations against the MSU Individuals are sparse, and Plaintiffs do not plead any viable claims against them. *See infra* §§ III, V. To the extent Plaintiffs allege any conduct on the part of the MSU Individuals at all, they appear to claim only that the MSU Individuals negligently "failed to appropriately respond to allegations" against Nassar. (PageID.5371.) The MSU Individuals are immune from claims premised on such conduct, however, because their alleged action (or inaction) was not "the" proximate cause of Plaintiffs' injuries as a matter of law.

Under the GTLA, government employees are immune from liability for injuries caused while acting in the scope of employment unless the employee's conduct "amount[s] to gross negligence that is the proximate cause of the injury or damage." M.C.L. § 691.1407(2)(c); *see Jones v. Bitner*, 300 Mich. App. 65, 77, 832 N.W.2d 426, 428, 432-33 (2013) (finding CPL does not abrogate governmental immunity and plaintiffs must show the gross negligence exception

14

applies to claims of failure to report against State employees).[9] In *Robinson v. City of Detroit*, the Michigan Supreme Court defined proximate cause as used in the GTLA as "the one most immediate, efficient, and direct cause preceding an injury." 462 Mich. 439, 459, 613 N.W.2d 307, 317 (2000). This contemplates only "*one* cause." *Id.*, 462 Mich. at 462, 613 N.W.2d at 319 (emphasis in original) (finding police officers immune from suit brought by bystanders injured during car chase because the single proximate cause of plaintiffs' injuries was "the reckless conduct of the drivers of the fleeing vehicles"). In the sexual assault context, courts have applied *Robinson* to hold that even gross negligence by teachers that resulted in the sexual assault of one student by another was not the proximate cause of the student's injuries; the student-rapist was the actual proximate cause. *Miller ex rel. Miller v. Lord*, 262 Mich. App. 640, 644, 686 N.W.2d 800, 802 (2004).

"[O]nly a human actor's breach of a duty can be a proximate cause." *Ray v. Swager*, 501 Mich. 52, 72, 903 N.W.2d 366, 376 (2017). Thus, to determine the one proximate cause under the GTLA, courts must consider each defendant's actions "alongside any other potential proximate causes to determine whether [that] defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id.*, 501 Mich. 52 at 76, 903 N.W.2d at 378. Where proximate cause "cannot be established . . . as a matter of law," *Robinson* requires dismissal. *Gray v. Cry*, No. 291142, 2011 WL 4375074, at *4 (Mich. Ct. App. Sept. 20, 2011) (finding teacher who encouraged students to fight was not the proximate cause of student's injuries, the other student was the proximate cause); *see also, e.g.*, *Campbell*, 2015 WL 4040743,

---

[9]    The "gross negligence" exception applies only to individual employees, not to governmental agencies; therefore, MSU's immunity cannot be abrogated on this ground. *See, e.g.*, *Holmes v. City of Detroit*, No. 276949, 2008 WL 821591, at *6 (Mich. Ct. App. Mar. 27, 2008); *May v. Greiner*, No. 269516, 2006 WL 2987709, at *3 (Mich. Ct. App. Oct. 19, 2006).

at *10 ("[I]f reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should rule as a matter of law." (citation omitted)).

In this case, it cannot be disputed that Nassar was the one most immediate and direct cause of Plaintiffs' injuries as he intentionally perpetrated sexual assaults against them. Indeed, in a case recently affirmed by the Sixth Circuit, the Eastern District ruled: "Where a child is abused by a third party, the third party is *the* proximate cause, and the governmental employee will not be held liable." *Id.* at *12 (dismissing CPL claims as barred by GTLA). Because the MSU Individuals are not the proximate cause of Plaintiffs' injuries, all tort and CPL claims against them must be dismissed with prejudice.

### C. State Law Claims Against The MSU Defendants Are Barred Because Plaintiffs Did Not Comply With The Governmental Notice Requirement.

Even when the government "voluntarily subject[s] itself to liability, it may also place conditions or limitations on the liability imposed." *McCahan v. Brennan*, 492 Mich. 730, 736, 822 N.W.2d 747, 750 (2012); *see also Rowland v. Washtenaw Cty. Road Comm'n*, 477 Mich. 197, 212, 731 N.W.2d 41, 51 (2007) (recognizing that the Legislature can attach to the right to sue the State any limitations it chooses). "One such condition on the right to sue the state is the notice provision of the Court of Claims Act," which bars all claims against the State unless the plaintiff first files a timely notice of intention ("NOI") to file a claim that strictly complies with statutory requirements. *McCahan*, 492 Mich. at 736, 822 N.W.2d at 750; M.C.L. § 600.6431; *see also* M.C.L. § 691.1410(1) ("[c]laims against the state authorized under [the GTLA] shall be brought in the manner provided in [the Court of Claims Act]").

The Court of Claims Act requires that, in all actions for personal injury, the "claimant *shall* file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action."

M.C.L. § 600.6431(3) (emphasis added). This NOI must state "the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained" and the NOI "*shall* be *signed* and *verified* by the *claimant* before an officer authorized to administer oaths." M.C.L. § 600.6431(1) (emphases added). This statute "established a clear procedure that eliminates any ambiguity about whether an attempted notice [of intent to sue the State] is effective." *Fairley*, 497 Mich. at 298-99, 871 N.W.2d at 134. Thus, the Michigan Supreme Court has reiterated that the "statutory notice requirement[] must be interpreted and enforced as plainly written and that no judicially created saving construction is permitted to avoid a clear statutory mandate." *McCahan*, 492 Mich. at 732, 822 N.W.2d at 748 (reaffirming the "fundamental principle articulated in *Rowland* to the interpretation of M.C.L. § 600.6431"); *Rowland*, 477 Mich. at 219, 731 N.W.2d at 54-55 (holding governmental notice requirement "must be enforced as written" and "judicial construction is not permitted").

The NOI prerequisite embodied in the Court of Claims Act applies to all Michigan law claims against the MSU Defendants. *See* M.C.L. § 600.6431(1), (3); *Does v. Mich. Dep't of Corr.*, No. 15-000238-MZ, 2016 WL 5800404, at *5 (Mich. Ct. Cl. Feb. 1, 2016) (holding ELCRA and CPL claims barred for failure to comply with NOI requirement of M.C.L. § 600.6431); *Desriveau v. Wayne State Univ.*, No. 16-000033-MZ, 2016 WL 8739160, at *2 (Mich. Ct. Cl. Nov. 17, 2016) (holding M.C.L. § 600.6431 notice requirement applied to claims against employee of State university). This Court is bound to apply the notice requirement because "[w]hen a federal court exercises diversity or pendent jurisdiction over state-law claims, the outcome of the litigation in the federal court should be substantially the same." *Felder v. Casey*, 487 U.S. 131, 151 (1988). Thus, "federal courts entertaining state-law claims against [the State] are obligated to apply [] notice-of-claim provision[s]." *Id.*; *see also, e.g.*, *Johnson v.*

*Operation Get Down, Inc.*, No. 11-15487, 2013 WL 4041868, at *4 (E.D. Mich. Aug. 8, 2013) (applying M.C.L. § 600.6431 to negligence claim).

### 1. Failure To Strictly Comply With The Governmental Notice Requirement Is A Complete Defense To Liability.

The failure to comply with the governmental notice requirement is "a complete defense that may be raised at any time by a defendant entitled to governmental immunity." *Fairley*, 497 Mich. at 292, 871 N.W.2d at 130. The Michigan Supreme Court repeatedly has held that plaintiffs must strictly comply with all of the conditions of M.C.L. § 600.6431 to compromise governmental immunity. *Id.*, 497 Mich. at 297-300, 871 N.W.2d at 133-35; *McCahan*, 492 Mich. at 747 n.29, 822 N.W.2d at 756 n.29. Indeed, "'six months' means 'six months,' 'files in the office of the clerk' means 'files in the office of the clerk,' and 'in detail' means 'in detail.'" *Id.* For this reason, the State need not show that it was actually prejudiced by a plaintiff's failure to comply with the statutory notice requirement. *Fairley*, 497 Mich. at 298, 871 N.W.2d at 134; *McCahan*, 492 Mich. at 752, 822 N.W.2d at 759 (affirming dismissal of claims against State for failure to comply with statutory notice requirement even where State university had actual notice of claim). Likewise, it is impossible to belatedly cure a defective NOI because "the relation-back doctrine" does not apply to the notice requirements of M.C.L. § 600.6431. *Pillar v. State, Dep't of Treasury*, No. 2013000164, 2015 WL 7692978, at *3 (Mich. Ct. Cl. Sept. 22, 2015) (barring claims raised in amended complaint that were not included in NOI), *aff'd sub nom*, *Allen Park Retirees Ass'n, Inc. v. State, Dep't of Treasury*, 2016 WL 6992174 (Mich. Ct. App. Nov. 29, 2016).

The Court of Claims Act requires would-be personal injury plaintiffs to file a NOI with the Court of Claims within six months of the event giving rise to the claim—here, the alleged sexual assaults. *McCahan*, 492 Mich. at 744-45, 822 N.W.2d at 755. The notice provision is not

a statute of limitations and is therefore not subject to legal or equitable tolling. *Fairley*, 497 Mich. at 298, 871 N.W.2d at 133-34; *Brewer v. Cent. Mich. Univ. Bd. of Trs.*, No. 312374, 2013 WL 6124216, at *2 (Mich. Ct. App. Nov. 21, 2013) ("[T]he notice requirement of M.C.L. § 600.6431(3) is not a statute of limitations, a savings provision, or a tolling provision. Instead, it is a condition precedent to sue the state." (internal quotation and citation omitted)). Thus, courts refuse to toll the six-month notice period for *any reason*, including alleged fraudulent concealment or minor disability. *See id.* (refusing to apply fraudulent concealment tolling (M.C.L. § 600.5855) to government notice provision); *Zelek v. State*, No. 305191, 2012 WL 4900517, at *2 (Mich. Ct. App. Oct. 16, 2012) (same); *Super v. Dep't of Transp.*, No. 282636, 2009 WL 2032041, at *2 (Mich. Ct. App. July 14, 2009) (refusing to apply minor tolling to governmental notice provision because minor tolling applies to "periods of limitations" and M.C.L. § 600.6431(3) is not a period of limitations).

Similarly, courts are not free to overlook any substantive deficiencies in the notice, which must specify the time and place where the claim arose, along with a detailed account of the nature of the claim and resulting damage. *See, e.g.*, *Berry v. Bd. of Regents of Univ. of Mich.*, No. 14-000254-MZ, 2015 WL 9999535, at *1 (Mich. Ct. Cl. June 2, 2015) (granting defendant's motion for summary disposition because plaintiff's failure to specify date on which his claim arose was "fatal" omission); *Detroit Int'l Bridge Co. v. Mich. Dep't of Transp.*, No. 298276, 2011 WL 6058037, at *9 (Mich. Ct. App. Dec. 6, 2011) (upholding grant of summary disposition where plaintiff's notice was "woefully inadequate" and insufficient as matter of law because the "notice did not identify the place where the claim arose, it did not state in detail the nature of the claim, and the notice did not indicate in detail the items of damage alleged or claimed to have been sustained"); *Reich v. State*, 5 Mich. App. 509, 513, 147 N.W.2d 431, 433 (1967) (affirming

dismissal of claim because substance of notice was insufficient where plaintiff failed to include date on which events occurred).

Finally, by its plain language, the Court of Claims Act bars any claim against the State unless the notice is "signed and verified by the claimant before an officer authorized to administer oaths." M.C.L. § 600.6431(1). The failure of the claimant to sign and verify the notice is fatal. *Fairley*, 497 Mich. at 299-300, 871 N.W.2d at 134-35 (finding personal injury claims barred where notice lacked claimant signature). Moreover, because the statute requires the *claimant* to sign the notice, the Michigan Supreme Court has held that the signature of the claimant's attorney is insufficient. *Id.* (remanding to trial court for entry of summary disposition in favor of defendant where attorney rather than claimant signed notice); *see also Secosky v. Sanders*, Nos. 316441, 316544, 316688, 2014 WL 5364104, at *3 (Mich. Ct. App. Oct. 21, 2014) (same); *Taylor v. E. Mich. Univ.*, No. 2015000180, 2015 WL 10845490, at *2 (Mich. Ct. Cl. Oct. 30, 2015) (signature of attorney insufficient).

### 2. Plaintiffs' Notices Are Untimely And Otherwise Inadequate.

All Plaintiffs fail to overcome the MSU Defendants' immunity because their NOIs are unfiled, untimely, or otherwise defective. (*See* Ex. B (chart setting forth deficiencies in Plaintiffs' NOIs); *see also* Ex. C (Plaintiffs' NOIs).)[10] Twelve Plaintiffs, including all of the

---

[10] When reviewing motions under Rule 12(b)(6), the Court may consider matters of public record and items that appear in the records of the case. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (stating that "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."). Additionally, "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims." *Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008). Plaintiffs' Complaints reference or attach their NOIs and they are otherwise part of the record. (*See* PageID.5374, 5529, 5665, 5692, 5694, 5884, 5960, 6097-100, 6109; 1:17-cv-00684 PageID.85.)

seven husbands, failed to file any NOI with the Court of Claims at all. Of the remaining 128 Plaintiffs, all but potentially one failed to file NOIs within six months of the time they allege they were last assaulted.[11] Because the Court of Claims Act notice requirement is not a statute of limitations, the tolling provisions found in Chapter 58 of the Revised Judicature Act, M.C.L. § 600.5801-5869, do not apply to save these untimely NOIs.

To purport to satisfy the requirement that the NOI set forth the "time when and the place where [the] claim arose," M.C.L. § 600.6431(1), many NOIs state only: "The claims [of the multiple listed pseudonymous Plaintiffs] arise out of multiple instances of sexual assault and battery, molestation, and harassment of our clients by Dr. Lawrence Nassar, an employee/agent/ representative, etc. of Michigan State University from 1996 to as recent as 2016." (*See* Ex. C at C-1-C-9, C-42-C-61.) Citing Nassar's 20-year employment period is plainly insufficient to notice the date on which any one Plaintiff's claim arose. Moreover, many NOIs provide no detail at all concerning theories of recovery asserted against MSU. Some NOIs state summarily: "It is [] our understanding that [MSU] received complaints regarding Dr. Nassar and failed to properly investigate, discipline, and sanction Dr. Nassar for his abusive and harassing conduct." (*See id.*) Other NOIs omit this allegation entirely. Such notices are insufficient as a matter of law.

Plaintiffs' NOIs are also lacking in other respects. For instance, none of the NOIs notice any claims against the MSU Individuals. (*See generally* Ex. C.) Similarly, many NOIs fail to notice certain claims that were ultimately filed in federal court. (*See* Ex. B.)

Finally, in addition to these shortcomings, many of the NOIs were not signed and verified by Plaintiffs, as required by the Court of Claims Act. (*See* Ex. B.)

---

[11] As noted below, all of Plaintiffs' claims accrued at the time of the wrong, regardless of when they discovered their claims. *See infra* § IV.

At bottom, all of Plaintiffs' NOIs are deficient in one or more respects. Plaintiffs' failure to timely and properly comply with the Court of Claims Act notice requirement is fatal to all of their State law claims against the MSU Defendants. Because it is impossible for Plaintiffs to cure these deficiencies, all of Plaintiffs' tort, CPL, and ELCRA claims against the MSU Defendants must be dismissed with prejudice.

Although dismissing these claims based upon the failure to provide adequate notice may seem harsh, it should be recognized that these claims also fail for the other reasons set forth herein. Thus, these notice defects result in the same ultimate outcome that would otherwise obtain.

## II.     PLAINTIFFS' TITLE IX CLAIMS FAIL.

### A.     Non-Student Plaintiffs Lack Standing To Assert Title IX Claims Against MSU.

Most Plaintiffs' Title IX claims must be dismissed because they were not MSU students at the time of the alleged assaults and they, therefore, lack standing.[12] Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). "Though cast in broad terms, Section 1681 . . . addresses itself only to sex discrimination against the participants in and the beneficiaries of federally assisted education programs." *Yan v. Pa. State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015), *aff'd*, 623 F. App'x 581 (3d Cir. 2015) (quoting *Romeo Cmty. Sch. v. U.S. Dep't*

---

[12] Though employees may also have standing to bring suit under Title IX, *see N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982), none of the Plaintiffs here alleges that she was an MSU employee at the time of her alleged assault.

*of Health, Educ. & Welfare*, 438 F. Supp. 1021 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979)).

Outside of the employment context, courts consistently have held that Title IX applies only to students and participants in educational programs. *See, e.g.*, *Patterson v. Hudson Area Sch.*, No. 05-74439, 2010 WL 455386, at *1 (E.D. Mich. Feb. 3. 2010) ("The Sixth Circuit has recognized that parents lack standing to bring a Title IX action on their own behalf.") (citing *Phillips v. Anderson Cty. Bd. of Educ.*, 259 F. App'x 842, 843 n.1 (6th Cir. 2008)); *Loewen v. Grand Rapids Med. Educ. Partners*, No. 1:10-cv-1284, 2012 WL 1190145, at *12 (W.D. Mich. Apr. 9. 2012) (Quist, J.) (finding no Title IX liability where plaintiff "offer[ed] no evidence to show that she was an MSU student"); *K.T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11. 2016) (holding non-student who was assaulted on campus while visiting university as soccer recruit had no standing to bring Title IX claim), *aff'd on other grounds*, 865 F.3d 1054 (8th Cir. 2017); *Doe v. Brown Univ.*, No. 16-614-M-LDA, 2017 WL 3911028 (D.R.I. Sept. 6, 2017) (holding non-student who was assaulted on university campus had no standing to pursue Title IX claim); *Yan*, 2015 WL 3953205, at *13 (holding former student had no standing to pursue Title IX claim); *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Nos. 11-CV-785, 12-CV-7132, 2016 WL 6471013, at *7 (D.N.J. Oct. 31, 2016) (holding parent who was sexually harassed by employees at school her child attended had no standing to bring Title IX claim); *see also Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999) (school not liable for damages "unless its deliberate indifference subjects *its students* to harassment") (emphasis added). Non-students lack Title IX standing because they have not suffered an exclusion from participation in, or denial of any

benefits of, any education program. *See Doe*, 2017 WL 3911028, at *4; *K.T.*, 2016 WL 4243965, at *5-6; *Colombo*, 2016 WL 6471013, at *7.

Only 14 Plaintiffs allege assaults while enrolled at MSU.[13] All remaining Plaintiffs lack standing, and their Title IX claims against MSU should be dismissed with prejudice.[14]

**B.    Claims Arising Prior To April 2014 Must Be Dismissed Because Plaintiffs Fail To Allege Reporting To An "Appropriate Person."**

Under Title IX, liability can attach only if MSU "intentionally acted in clear violation of [the statute] by remaining deliberately indifferent to known acts of harassment." *Campbell v. Dundee Cmty. Sch.*, 661 F. App'x 884, 889 (6th Cir. 2016). MSU can be liable "only for its own misconduct" arising from "an official decision by [MSU] not to remedy" a known Title IX violation. *Davis*, 526 U.S. at 640. Accordingly, Plaintiffs must allege "notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures." *Id*. at 290.

Requiring "notice of the violation 'to the appropriate person' and an opportunity for voluntary compliance . . . avoid[s] diverting education funding from beneficial uses where a [school] was unaware of discrimination in its programs and is willing to institute prompt corrective measures." *Id*. at 289. Indeed, "it would frustrate the purposes of Title IX to permit a damages recovery against a school . . . without actual notice to a school district official." *Id*. at

---

[13]    A chart setting forth the Plaintiffs who claim they were MSU students at the time of the alleged assaults is attached hereto as Exhibit D.

[14]    Although the Complaints are imprecise, Plaintiffs appear to bring Title IX claims against only MSU; any claim under Title IX against the MSU Individuals is not viable as there is no individual liability under the statute. *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (holding student had no private right of action under Title IX for damages against school officials in their individual capacities).

285. Especially because "an award of damages in a particular case might well exceed a [school's] level of federal funding," the most severe sanctions under Title IX—the loss of federal funding or an award of damages—cannot be imposed unless an appropriate person at the school had actual notice of and an opportunity to remedy a violation. *Id.* at 290.

Here, Plaintiffs do not sufficiently allege that an appropriate person at MSU had actual knowledge of Nassar's abuse prior to April 2014. From 1997 to 2004, Plaintiffs allege only that athletic coaches and trainers and a counselor received isolated complaints about Nassar. (*See* PageID.5384-86, 5387, 5395, 5405, 5536-38, 5679-80, 5715-16, 5892-94, 5968-69, 6115-16; 1:17-cv-00684 PageID.99-100.)[15] That these individuals were MSU employees does not make any of them an "appropriate person." The Supreme Court has repeatedly rejected the use of agency principles to impute liability to a school based on the conduct of its employees. *Davis*, 526 U.S. at 643 ("The high standard imposed in *Gebser* sought to eliminate any 'risk that the [school] would be liable in damages not for its own official decision but instead for its employees' independent actions.'" (quoting *Gebser*, 524 U.S. at 290-91)). To be an "appropriate person" for purposes of Title IX liability, the recipients of complaints must at a minimum have the authority to "institute corrective measures." *Gebser*, 524 U.S. at 290.

The authority to institute corrective measures does not "include the mere ability to report suspicions of discriminatory conduct to someone with the authority to stop the abuse or control the harasser." *Plamp v. Mitchell Sch. Dist.* No. 17-2, 565 F.3d 450, 458 (8th Cir. 2009). "[M]erely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir.

---

[15]   Plaintiffs allege the counselor (Gary Stollak) was acting as an MSU employee when he received a purported complaint regarding Nassar. (*See* PageID.5518, 5886, 6110.) Although MSU disputes this allegation, it is treated as true for purposes of this motion.

2017) (collecting cases); *Rosa H. ex rel. Deborah H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997) (explaining that "appropriate person" was circumscribed to "school employees in the chain of command . . . appointed to monitor the conduct of other employees and, as distinguished from reporting to others, remedy the wrongdoing themselves"). Indeed, even were a school policy or statute to obligate the coaches, trainers, or counselor to report suspected harassment, that still would not make any of them an "appropriate person" with the requisite authority for purposes of Title IX liability. *Ross*, 859 F.3d at 1291-92 (holding campus security officers were not "appropriate persons" even though school policy designated them as proper recipients of sexual harassment reports and required officers to report sexual assaults to the Office of Student Affairs); *Plamp*, 565 F.3d at 458 (rejecting argument that teachers and guidance counselors can serve as "appropriate persons" because they have ability and duty to report child abuse).

Courts have strictly interpreted who has the authority to institute corrective measures by "requiring that the official in question be capable of terminating or suspending the individual" accused of harassment. *Peer ex rel. Doe v. Porterfield*, No. 1:05CV769, 2007 WL 9655728, at *9 (W.D. Mich. Jan. 8, 2007). "[N]onsupervisory personnel are not 'appropriate persons' under the statute, because they do not have authority to terminate or suspend the offending individual." *Id.*; *see also Plamp*, 565 F.3d at 458 (concluding teachers and guidance counselor were not an "appropriate person" because they did not have power to stop harassment "by taking actions such as suspending [the teacher] from teaching, curtailing his teaching or other school-related privileges, requiring him to attend sessions or meetings about his behavior, or ensuring that he was under greater supervision"); *Rosa H.*, 106 F.3d at 660 (explaining that notice of harassment to school employees, such as "fellow teachers, coaches, and janitors," does not trigger Title IX

liability "unless the district has assigned them both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse"); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002) (finding guidance counselor was not an appropriate person with sufficient authority to supervise and discipline teachers during any relevant time even though counselor was charged with handling "referrals for abuse and assumed the role of principal when [the principal] was not in the building").

Plaintiffs have not alleged that the coaches, trainers, or counselor were supervisors of Nassar, or that these individuals had the authority to terminate or suspend Nassar. Accordingly, the Title IX claims based on conduct prior to Jane D1 Doe's April 2014 report must be dismissed with prejudice because Plaintiffs do not sufficiently allege that an "appropriate person" at MSU had actual notice of Nassar's abuse and made an "official decision" not to act. *See Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281 (6th Cir.), *cert. denied*, 138 S. Ct. 121 (2017) (upholding dismissal of Title IX claim where allegations did not plausibly establish that appropriate person had actual knowledge of abuse). Therefore, pre-April 2014 Plaintiffs cannot establish Title IX liability a matter of law.

### C.     Plaintiffs Do Not Adequately Allege Deliberate Indifference.

For a Title IX claim to survive dismissal, Plaintiffs must adequately plead that MSU knew of and acted with deliberate indifference to Nassar's sexual abuse or harassment. *See Davis*, 526 U.S. at 642; *Gebser*, 524 U.S. at 281. "Deliberate indifference in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). Plaintiffs must plausibly allege that the response to the harassment or lack thereof was "clearly unreasonable in light of the known circumstances" such that it amounts to an

official decision by the school not to remedy the violation. *McCoy v. Bd. of Educ., Columbus City Sch.*, 515 F. App'x 387, 391 (6th Cir. 2013).

In Title IX cases, "there is a connection between what school officials know and whether their response is clearly unreasonable." *Id*. at 392. A school can be liable only for deliberate indifference to acts "of which it had actual knowledge"—not acts of which it "*should have known*." *Davis*, 526 U.S. at 642 (emphasis in original); *see also Gebser*, 524 U.S. at 285 (requiring actual notice). Under the actual notice standard, the school must have notice "of the actual type of harassment that occurred." *Campbell*, 661 F. App'x at 888; *see also Gebser*, 524 U.S. at 291 (complaints of inappropriate comments did not provide school with actual notice of sexual relationship).

Even construing all allegations in favor of the Plaintiffs, the facts as pled do not meet the high standard of deliberate indifference and actual notice required for Title IX liability. *See Davis*, 526 U.S. at 648-49; *Gebser*, 524 U.S. at 290. Plaintiffs allege that one adult patient reported to MSU in 2014 that Nassar sexually assaulted her at a medical appointment through physical contact that did not involve penetration.[16] None of the Plaintiffs allege, however, that they reported their abuse such that an appropriate official had actual notice of the abuse. *See supra* § II(B); *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 492 (6th Cir. 2006) (concluding constructive notice of harassment of one student "in no way translates into actual notice of widespread harassment" by the perpetrator or actual notice that another student was subject to that harassment when there were no other complaints); *Tumminello*, 678 F. App'x at

---

[16] Plaintiffs rely on media reports of the allegations made by Jane D1 Doe regarding the 2014 investigation by MSU. (*See, e.g.* PageID.5682-83.) With respect to allegations made by Jane D1 Doe, the MSU Defendants refer to the allegations set forth in her Fourth Amended Complaint and Reliance on Jury Demand. (PageID.5547-51.)

286 (upholding dismissal because allegations that school "knew or should have known of the relentless abuse [of the plaintiff] . . . because the students doing the abusing and harassment had a history of abuse and harassment at [the school] and at other schools" did not plausibly establish actual notice to an appropriate person).

Nor do Plaintiffs allege that an appropriate person received complaints about the primary type of abuse alleged here—ungloved vaginal and anal penetration of minor patients—or that the complaint received in 2014 was recognized as abuse instead of a medical treatment. *See supra* § II(B); *Campbell*, 661 F. App'x at 889 (courts require "notice of the actual type of harassment that occurred"). Rather, they allege that they did not know they were abused, and that Nassar even evaded detection by parents who were in the room during the treatment. (*See, e.g.*, PageID.5763, 5779-80, 5782-87.) These allegations do not establish that MSU had actual notice of abuse as required to impose Title IX liability. *See Soper*, 195 F.3d at 855 (no actual notice where "defendants did not have actual knowledge of the harassment until after the fact"); *Henderson*, 469 F.3d at 492 (school had no notice because it was "not until after [abuser] had actually resigned that the extent of his misconduct became known to administration officials"); *Campbell*, 661 F. App'x. at 888 (school had no actual notice where coach and student kept relationship secret and "even [the student's] father, who was also coaching the team, was fooled").

As a matter of law, MSU could not have been deliberately indifferent to unknown sexual harassment. If there was no notice to school officials of the abuse, then there was no deliberate indifference toward that abuse. *Id.* at 889; *see also Loewen*, 2012 WL 1190145, at *12 ("[Plaintiff] presents no evidence to show that MSU was deliberately indifferent to the alleged discrimination and harassment because [Plaintiff] failed to report such acts to MSU.").

Further, Plaintiffs have not adequately alleged that MSU was deliberately indifferent to Jane D1 Doe's 2014 complaint. In response to that complaint, MSU conducted an investigation (including interviewing Jane D1 Doe and her friends and family and consulting with medical professionals), concluded that the alleged physical contact was consistent with established medical procedures, issued a report of its findings, and recommended "best practices" for providing treatment near sensitive areas. (PageID.5550-51; *see also* PageID.5388-89, 5683-84, 5895, 5971-72, 6117; 1:17-cv-00684 PageID.100.) In these circumstances, as a matter of law, deliberate indifference cannot be found. *See Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 849 (6th Cir. 2016) (no deliberate indifference where "school investigated promptly and thoroughly by interviewing" the plaintiff, alleged offender, and eyewitnesses, and "school also took proactive steps to reduce opportunities for future harassment"); *Soper*, 195 F. 3d at 854 (no deliberate indifference where school contacted proper authorities, investigated the incidents, and took remedial steps).

In light of the investigation and conclusion that no sexual assault occurred in 2014, the remedial measures instituted by MSU were not clearly unreasonable. *McCoy*, 515 F. App'x at 392 (no deliberate indifference where school issued warnings to teacher after being made aware of "several instances of physical contact that were ostensibly non-sexual but could have served as potential indicia for sexual malfeasance"). Indeed, Jane D1 Doe does not allege that she was again assaulted after she made the report, and Plaintiffs do not allege that MSU had actual notice that the remedial measures were ineffective prior to 2016. *See, e.g.*, *Stiles*, 819 F. 3d at 848-51 (no deliberate indifference where "remedial responses were reasonably tailored to the findings of each investigation" but proved to be ineffective; rather, school acts with deliberate indifference

where it knows "its efforts to remediate are ineffective, and it continues to use those same methods to no avail").

With the benefit of hindsight, Plaintiffs contend that MSU should have known that Nassar was a predator or done more to prevent his criminal conduct. But that is not the standard by which Title IX liability is measured. *See Davis*, 526 U.S. at 642, 648 (emphasizing Title IX does not impose liability for what school "*should have* known" or require any "particular disciplinary action" or remedial measures) (emphasis in original); *McCoy*, 515 F. App'x 387 at 392 (no deliberate indifference even where "[i]n hindsight, the school district could certainly have done more" to prevent sexual abuse by teacher). "Title IX does not require flawless investigations or perfect solutions." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist*. 647 F.3d 156, 170 (5th Cir. 2011). The Title IX claims here must be dismissed because Plaintiffs have not adequately pled that MSU had actual notice of, much less was deliberately indifferent to, abuse by Nassar. *See Gebser*, 524 U.S. at 292; *Davis*, 526 U.S. at 649 ("There is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law."); *Tumminello*, 678 F. App'x at 286 (upholding dismissal of Title IX claim where allegations did not plausibly establish actual notice to an appropriate person).

## III.   PLAINTIFFS' SECTION 1983 CLAIMS FAIL.

### A.   Section 1983 Claims Are Not Viable Against MSU Or The MSU Individuals In Their Official Capacities As A Matter Of Law.

None of the Plaintiffs can bring a Section 1983 claim against MSU or the MSU Individuals in their official capacities. Section 1983 provides, in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (affirming *Smith v. Dep't of Pub. Health*, 428 Mich. 540, 410 N.W.2d 749 (1987)); *see also Heike v. Guevara*, 654 F. Supp. 2d 658, 672 (E.D. Mich. 2009) (explaining that State employees sued in their official capacities "are not 'persons' within the meaning of § 1983"), *aff'd*, 519 F. App'x 911 (6th Cir. 2013). Likewise, "Michigan State University is an arm of the state of Michigan, and it is therefore not considered a 'person' for purposes of § 1983." *Gardner v. Mich. State Univ. Bd. of Trs.*, No. 1:12-CV-1018, 2014 WL 558818, at *5 (W.D. Mich. Feb. 11, 2014) (holding plaintiff could not maintain Section 1983 claim against MSU); *see also Hill*, 182 F. Supp. 2d at 625 ("[A]s a state entity, MSU is not a 'person' subject to suit for damages under § 1983.").

In short, Plaintiffs' Section 1983 claims are not cognizable against MSU or the MSU Individuals in their official capacities. The Court should dismiss these claims with prejudice.

**B. Section 1983 Claims Against The MSU Individuals In Their Individual Capacities Fail.**

**1. The MSU Individuals Are Immune From Section 1983 Claims.**

To the extent Plaintiffs seek to bring claims against the MSU Individuals in their individual capacities, such claims are barred by qualified immunity.[17] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct

---

[17] Though they do not clearly define the parties against whom individual counts are brought, the Complaints of Group B, Jane E1 Doe, and Jane F1 Doe purport to state Section 1983 claims against Klages and Strampel. (PageID.5459-65, 5902-08, 6124-29.) The Complaint of Group B also purports to state Section 1983 claims against Kovan. (PageID.5380.)

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clemente v. Vaslo*, 679 F.3d 482, 489 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Once the defendant raises the defense of qualified immunity, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). To determine whether qualified immunity applies, a court must perform a two-step inquiry: (1) determine whether the facts show that the official's conduct violated a constitutional right, and (2) determine whether the right was clearly established. *Clemente*, 679 F.3d at 489.

Plaintiffs have not alleged that the MSU Individuals violated a constitutional right. The Due Process Clause of the Fourteenth Amendment unquestionably "protects the right of a child to be free from sexual abuse inflicted by a public school [employee]." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002). The only person alleged to have violated Plaintiffs' constitutional right to be free from sexual abuse, however, is Nassar himself. (*See, e.g.*, PageID.5368, 5882, 6106.) Plaintiffs have made almost no factual allegations at all concerning Klages, Kovan, or Strampel, and there are certainly no allegations that they physically abused the Plaintiffs or violated their constitutional rights in any other manner. (*See, e.g.*, PageID.5381-5433 (containing no factual allegations against defendants Kovan or Strampel); PageID.5887-98, 6111-20, 6124-29 (containing no factual allegations against Strampel and failing to assert any specific claims against MSU Individuals).)

The MSU Individuals cannot be held liable for the constitutional injury caused by Nassar simply because they worked with or supervised him. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76

F.3d 716, 727 (6th Cir. 1996) ("Although [plaintiff] may have stated a substantive due process claim under section 1983 based on [the perpetrator's] conduct, the remaining defendants cannot be held liable simply on a theory of *respondeat superior*."); *Doe*, 296 F.3d at 440 (explaining liability must be based on defendant's own "active unconstitutional behavior"). Although Plaintiffs had a constitutional right to be free from sexual abuse at the hands of Nassar, they "did not have a constitutional right to be free from negligence in the supervision of the [person] who is alleged to have actually abused [them]." *Id*. at 441. Even if the Plaintiffs alleged that the MSU Individuals were negligent in their supervision of Nassar, "[n]egligence is not enough to impose section 1983 liability on a supervisor." *Id*. Accordingly, the Section 1983 claims against the MSU Individuals are barred by qualified immunity.

### 2. Plaintiffs Fail To Adequately Allege Supervisory Liability.

Plaintiffs also have not pled sufficient facts in support of a Section 1983 claim on a theory of supervisory liability. To succeed on a failure to train or supervise claim, the Plaintiff must prove that (1) a supervisor inadequately trained or supervised Nassar; (2) the inadequacy was the result of deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992). Plaintiffs fail to plead that any of the MSU Individuals acted as Nassar's supervisor, much less that they acted with deliberate indifference. (*See* PageID.5459-65, 5902-08, 6124-29.)

#### (a) The MSU Individuals did not act as Nassar's supervisors.

MSU Individuals cannot be liable as supervisors where they "had no individual supervisory responsibilities." *Doe*, 103 F.3d 495 at 511 ("Liability for a failure to act necessarily implies a 'duty' to carry out the action the person is accused of derogating."). Plaintiffs do not allege that the MSU Individuals were charged with supervising Nassar at MSU. (*See*

34

PageID.5368, 5380, 5885-86, 5892-93, 6110, 6115.) Nor do they allege that the MSU

Individuals acted as supervisors of Nassar's volunteer work at USAG and Twistars. (*See*

PageID.5381, 5886, 6111.) In the absence of supervisory responsibilities, the MSU Individuals

cannot be subject to supervisory liability as a matter of law.

**(b)  Plaintiffs fail to allege deliberate indifference.**

Plaintiffs also fail to allege that the MSU Individuals acted with deliberate indifference.

"In the Sixth Circuit, supervisory liability cannot be imposed unless it is shown that the

supervisor encouraged the specific incident of misconduct or in some other way directly

participated in it." *Van Domelen v. Menominee Cty.*, 935 F. Supp. 918, 924 (W.D. Mich. 1996)

(Quist, J.) (quoting *Lillard*, 76 F.3d at 727 (internal quotations omitted)). Mere knowledge of the

alleged harassment, a failure to act, or tacit approval does not support a finding of supervisory

liability. *Id.*; *Lillard*, 76 F.3d at 728; *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

Likewise, negligent, sloppy, or even reckless supervision will not support liability. *Doe*, 296

F.3d at 439. Instead, at a minimum, Plaintiffs must plead facts plausibly suggesting that a

supervisor "at least implicitly authorized, approved or knowingly acquiesced in the

unconstitutional conduct of the offending subordinate." *Campbell*, 661 F. App'x at 889 (citation

omitted).

The Complaints are devoid of allegations that Klages, a gymnastics coach with no alleged

medical role, authorized Nassar's actions or otherwise supervised him. Moreover, neither Kovan

nor Strampel is alleged to have encouraged, authorized, or approved Nassar's misconduct.

Indeed, Kovan and Strampel clearly did not encourage or acquiesce in Nassar's misconduct

when Kovan reported Jane D1 Doe's complaint (*see* PageID.5549-50), or when Strampel relied

on the investigation and determinations of the I3 office. *See Doe*, 103 F.3d at 508-509, 513 (no

deliberate indifference by supervisors or school board where allegations of child abuse were

reported to Department of Human Services ("DHS"), investigation was delegated to DHS, and

teacher returned to school after it appeared that he had been exonerated by DHS); *Lynn v. City of*

*Detroit,* 98 F. App'x 381, 386 (6th Cir. 2004) (holding supervisors did not acquiesce in

misconduct of police officers where they reported complaints to Internal Affairs and "were

entitled to rely on Internal Affairs to perform its assigned function").

Further, the failure to institute guidelines or training that "might have prevented the harm

suffered in a given case" does not establish supervisory liability unless the alleged misconduct

"is almost inevitable" or is "part of a pattern of misconduct." *Ontha v. Rutherford Cty., Tenn.*,

222 F. App'x 498, 504 (6th Cir. 2007). Plaintiffs have not alleged that Kovan or Strampel were

"confronted with conduct that was obvious, flagrant, rampant, and of continued duration, rather

than isolated occurrences." *Doe*, 296 F.3d at 440-41. At most, Plaintiffs allege that Kovan and

Strampel knew of one complaint made by Jane D1 Doe, which was investigated by MSU's I3

office and resulted in a determination of no wrongdoing. (*See* PageID.5549-50.)

As a matter of law, the information available at the time—a single, investigated and

discharged complaint against Nassar in 2014—could not reveal a "widespread pattern of

constitutional violations." *Doe*, 103 F.3d at 503, 513 (no widespread pattern of constitutional

violations where DHS investigated allegations of sexual abuse of students, determined certain

allegations were "unfounded," and appeared to exonerate teacher of other charges). Further, in

the absence of any other complaints, there was no obvious and inevitable risk of abuse. *See also*

*Doe v. Magoffin Cty. Fiscal Ct.*, 174 F. App'x 962, 970 (6th Cir. 2006) (no "high degree of

predictability" that employee would rape anyone where background "does not reveal any

inclination to assault another sexually"). "The intentional, violent act that [an employee]

performed far outside the scope of his duties cannot be something that was 'obvious' to occur."

*Id.*

The Section 1983 claims against the MSU Individuals are insufficiently pled and should be dismissed with prejudice.

## IV. PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Statutes of limitations provide an additional defense to Plaintiffs' claims against the MSU Defendants. Most Plaintiffs' claims accrued well outside the applicable limitations periods and are untimely on their face. Plaintiffs claim the benefit of statutory or common law tolling; however, by and large, tolling does not apply.

As an initial matter, all of Plaintiffs' claims against the MSU Defendants are subject to limitations periods of three years or fewer. *See* M.C.L. § 600.5805(10) (three-year limitations period for personal injury claims); M.C.L. § 600.5805(2) (two-year limitations period for claims premised on assault and battery); *Lillard*, 76 F.3d at 729 (federal courts apply the state statute of limitations applicable to personal injury actions for Section 1983 and Title IX claims). Although fraud claims could be subject to a six-year statute of limitations, M.C.L. § 600.5813, this longer period is inapplicable to fraud claims that seek recovery for personal injury. M.C.L. § 600.5805(2); *see also Smith v. Gilles*, 28 Mich. App. 166, 169-70, 184 N.W.2d 271, 273 (1970). And, in any event, all limitations periods are shortened to three years by operation of the Court of Claims Act. M.C.L. § 600.6452(1) (claims against the State "shall be forever barred unless the claim is filed . . . within 3 years after the claim first accrues").

Plaintiffs' Michigan law claims accrued at the time of assault, regardless of when Plaintiffs discovered such claims. *See* M.C.L. § 600.5827 (a "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results"); *Trentadue v. Gorton*, 479 Mich. 378, 392-93, 738 N.W.2d 664, 672 (2007) (rejecting discovery

rule and finding claims accrued at time of rape/murder even though plaintiff could not learn identity of perpetrator until years later); *Lemmerman v. Fealk*, 449 Mich. 56, 65, 534 N.W.2d 695, 698 (1995) (claims premised on sexual abuse accrued at time of abuse); *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich. App. 632, 639, 692 N.W.2d 398, 403 (2004) (same); *see also, e.g.*, *Chandler v. Wackenhut Corp.*, 465 F. App'x 425, 430 (6th Cir. 2012) (finding neither equitable tolling nor common law discovery rule applies under Michigan law). Likewise, Plaintiffs' federal claims accrued at the time of the alleged abuse. *See, e.g.*, *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at \*2 (W.D. Mich. May 26, 2017) (Quist, J.) (Title IX and § 1983 claims untimely where complaint filed more than three years after last sexual assault); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y.) (Title IX claims accrued at time of abuse, not when plaintiffs "discovered" claims through news article), *aff'd*, 579 F. App'x 7 (2d. Cir. 2014).

Here, assuming any Plaintiffs can overcome the MSU Defendants' immunity from suit— which they cannot—the claims of at least 135 Plaintiffs are completely time-barred or partially

time-barred.[18] (*See* Ex. E (chart setting forth Plaintiffs with time-barred claims).) This includes

the derivative loss of consortium claims, which "stand[] or fall[] with the primary claims in the

complaint." *See Long v. Chelsea Cmty. Hosp.*, 219 Mich. App. 578, 589, 557 N.W.2d 157, 162

(1996), *abrogated on other grounds*, *Feyz v. Mercy Mem. Hosp.*, 475 Mich. 663, 719 N.W.2d 1

(2006). While sixteen of these Plaintiffs may potentially avail themselves of Michigan's minor

tolling as they purport to have instituted proceedings prior to their nineteenth birthdays, *see*

M.C.L. § 600.5851(1), the claims of the remaining 119 Plaintiffs must be dismissed because the

only other basis for tolling—fraudulent concealment—does not apply to the claims against the

MSU Defendants.

Michigan's fraudulent concealment rule provides for tolling "[i]f a person who is or may

be liable for any claim fraudulently conceals the existence of the claim . . . from the knowledge

of the person entitled to sue on the claim." M.C.L. § 600.5855. Courts must "strictly construe

and narrowly apply" this exception. *Riverside Auto Sales, Inc. v. GE Capital Warranty Corp.*,

---

[18] Because Michigan does not recognize the continuing wrongs doctrine, Plaintiffs' State law claims are partially time-barred to the extent they are based on abuse that occurred outside of the limitations period. *See Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 283-85, 696 N.W.2d 646, 658 (2005) (abrogating the continuing wrongs doctrine). With respect to the federal claims, "the Sixth Circuit has never before applied the continuing violations doctrine to Title IX claims." *Dibbern v. Univ. of Mich.*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich., May 18, 2016) (concluding continuing violations doctrine does not apply to Title IX cases). Rather, the Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). In any event, the Supreme Court has precluded "the invocation of the continuing violation doctrine to 'allow recovery for [discrete] acts which occurred outside the filing period." *Phifer v. City of Grand Rapids, Mich.*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) (Quist, J.) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002)). In this case, the continuing violations doctrine cannot apply to the sexual assaults, which constitute separate, actionable events. *See Sharpe*, 319 F.3d at 267; *Phifer*, 657 F. Supp. 2d at 873 (concluding continuing violations doctrine did not apply to Section 1983 claim where "each of the acts complained of independently provided notice that [the Plaintiffs'] rights were reputedly being violated").

No. 2:03-cv-55, 2004 WL 2106638, at *5 (W.D. Mich. Mar. 30, 2004) (Quist, J.). Thus, the

"fraudulent concealment section cannot be extended to concealments made by persons other than

[the defendant] charged in the action." *Chandler*, 465 F. App'x at 428 (quoting *Stevenson v.*

*Robinson*, 39 Mich. 160, 160 (1878) (internal quotations omitted)). Importantly, employers are

not charged with the fraudulent concealment of employees acting outside the scope of their

employment to conceal a crime. *Id.* (fraudulent concealment by employees not imputed to

employer where employees concealing murder were acting outside of scope of employment). In

practice, this means that Nassar's statements and actions designed to conceal his misconduct will

not work to extend the limitations periods against anyone but Nassar himself. *See id.*; *see also,*

*e.g.*, *Techner v. Greenberg*, No. 11-14722, 2012 WL 1753008, at *4 (E.D. Mich. May 16, 2012)

("[T]he fraudulent concealment exception is enforced against only the person(s) who committed

the acts to conceal the action.").

      Plaintiffs point to statements allegedly made by certain MSU coaches or trainers in 1997-

2000 and the conclusion of MSU's I3 investigation in 2014 as additional instances of "fraudulent

concealment." (*See, e.g.*, PageID.5440, 5442, 5792, 5794-95, 6019, 6021.) But the statements

Plaintiffs allege—*e.g.*, that Nassar was "world renowned," "knew what he was doing," or that

Plaintiff must be "misunderstanding"—do not constitute fraudulent concealment. *See Bromley v.*

*Mallison*, No. 312901, 2014 WL 667799, at *5 (Mich. Ct. App. Feb. 18, 2014) (telling young

child she "must have been dreaming" in response to allegations of sexual assault is not

fraudulent concealment). This is especially true where there are no allegations of fraudulent

intent on the part of the speakers. *See Techner*, 2012 WL 1753008, at *4 (no fraudulent

concealment where no evidence defendant was aware of wrongful conduct).

Even if the alleged statements could be interpreted as fraudulent, the statements would not toll the limitations period because the speakers were not persons liable for Nassar's conduct. *See* M.C.L. § 600.5855. Moreover, those statements could not work to toll the claims of anyone other than—potentially—the four Plaintiffs who received them.[19] This is because each Plaintiff must individually demonstrate reliance on affirmative misstatements or acts designed to conceal a claim; mere silence by the defendant is not enough to make a case for fraudulent concealment. *Doe*, 264 Mich. App. at 645-46, 692 N.W.2d at 406-07; *Chandler*, 465 F. App'x at 427; *Tinney v. Widdis, Inc.*, No. 328050, 2016 WL 6584571, at *6 (Mich. Ct. App. Nov. 3, 2016); *see also Frank v. Linkner*, 500 Mich. 133, 894 N.W.2d 574, 583 (2017) (reiterating that plaintiff must prove defendant engaged in affirmative fraudulent acts to invoke fraudulent concealment statute).

Here, the majority of Plaintiffs assert claims that are untimely as a matter of law; their claims against the MSU Defendants must be dismissed with prejudice for this additional reason.

## V.    PLAINTIFFS FAIL TO PLEAD VIABLE STATE LAW CLAIMS.

To the extent any of Plaintiffs' State law claims could survive the MSU Defendants' immunity and statute of limitations challenges—which they cannot—such claims still must be dismissed as inadequately pled.

### A.    Plaintiffs' Tort Claims Fail.

Plaintiffs fail to plead viable tort claims against the MSU Defendants. First, many negligence-based claims fail because the MSU Defendants did not owe a legal duty to the

---

[19]    At most, four Plaintiffs allege that they personally received "fraudulent" statements regarding Nassar from MSU personnel: Jane A19 Doe (PageID.5715-16); Larissa Boyce (PageID.5395); Jane B8 Doe (PageID.5405); and Jane D1 Doe (PageID.5550). Notably, there are no allegations that Dr. Kovan or Dr. Strampel made any statements whatsoever to any Plaintiff.

Plaintiffs who advance them. Plaintiffs assert various negligence-based causes of action essentially premised on the notion that the MSU Defendants had a duty to protect them from or warn them of Nassar's misconduct. (*See, e.g.*, PageID.5821-31.) But, there is "no duty to protect another from the criminal acts of a third party in the absence of a special relationship between the defendant and the plaintiff or the defendant and the third party." *Graves v. Warner Bros.*, 253 Mich. App. 486, 493, 656 N.W.2d 195, 200 (2002) (citing *Murdock v. Higgins*, 454 Mich. 46, 54, 559 N.W. 2d 639, 642 (1997)).

To the extent Plaintiffs allege a "special relationship" exists because Nassar was an employee of MSU, that relationship does not extend to his conduct at home or while volunteering at USAG and Twistars. *See, e.g.*, *Murdock*, 454 Mich. at 56-58, 559 N.W.2d at 644 (holding supervisor did not have "special relationship" with employee who transferred to another department and sexually assaulted a child because supervision of employee concluded when employee left). Similarly, the MSU Defendants could not have a special relationship with the Plaintiffs who had no interactions with them whatsoever. For example, Plaintiffs who were not coached by or even known to Klages have not—and indeed cannot—allege a "special relationship" that obligated her to protect unknown potential victims from abuse. *See, e.g.*, *Marcelletti v. Bathani*, 198 Mich. App. 655, 664, 500 N.W. 2d 124, 129 (1993) (concluding no duty to warn unidentified potential victims of suspicions of child abuse even though mandatory reporting statute imposed duty to report child abuse). Plaintiffs who were not treated at MSU Sports Medicine also have no "special relationship" with Strampel and Kovan. *See id.*, 198 Mich. App. at 665-66, 500 N.W. 2d at 130. Further, those who were treated at MSU have not adequately pled that the MSU Defendants "knew or should have known of [the] employee's propensities and criminal record" such that a duty to warn arose. *Hamed v. Wayne Cty.*, 490

Mich. 1, 12, 803 N.W. 2d 237, 245 (2011). Accordingly, the negligence-based claims of many

Plaintiffs fail because they have not established that the MSU Defendants had a legal duty to

them.

Second, the intentional infliction of emotional distress claims fail because Plaintiffs do

not allege intentional conduct by the MSU Defendants, much less the type of outrageous conduct

required for such a claim. (*See, e.g.*, PageID.5831-32.) "In order to state a claim of intentional

infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct,

(2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. Lutheran

Church Mo. Synod*, 237 Mich. App. 567, 582, 603 N.W.2d 816, 823 (1999). "Liability for such a

claim has been found only where the conduct complained of has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as

atrocious and utterly intolerable in a civilized community." *Id.*, 237 Mich. App. at 582, 603

N.W.2d at 823-24. Although the Complaints allege intentional and outrageous conduct by

Nassar, the Complaints do not allege that any of the MSU Defendants intentionally engaged in

conduct that "reasonably may be regarded as so extreme and outrageous as to permit recovery"

against them. *Id.*, 237 Mich. App. at 582, 603 N.W.2d at 824.

Third, Plaintiffs fail to plead their fraud and misrepresentation claims with the

particularity required by Federal Rule of Civil Procedure 9(b). To plead with particularity, "the

plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the

statement; (3) plead when and where the statement was made; and (4) explain what made the

statement fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th

Cir. 2012). Plaintiffs allege that "[f]rom approximately 1996 to September 2016, the MSU

Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and

safe physician." (PageID.5482, 5832, 5921, 6056, 6143; *see also* PageID.5594.) These sweeping and conclusory allegations do not identify a particular misstatement made by any MSU Defendant, or "when, where, or to whom the alleged misstatement was made." *Republic Bank*, 683 F.3d at 253. This defect is fatal to the fraud and misrepresentation claims.

And finally, the loss of consortium claims brought by the seven John Doe husbands must fail because the underlying claims of their wives are insufficiently pled. *See Long*, 219 Mich. App. at 589, 557 N.W.2d at 162 ("A derivative claim for loss of consortium stands or falls with the primary claims in the complaint."). Moreover, a spouse cannot maintain a loss of consortium claim where the couple married after the underlying injury occurred. *See Chiesa v. Rowe*, 486 F. Supp. 236, 238-39 (W.D. Mich. 1980). Notably, the wives of six of the seven John Doe husbands allege they were minors at the time of Nassar's assaults, which suggests they were unmarried. Moreover, neither these John Does nor their wives allege they were married at the time of abuse. Thus, at minimum, six John Does' loss of consortium claims must also fail because they fail to plausibly allege they were married at the time the injuries allegedly occurred.[20]

**B.     Plaintiffs' Claims Under Michigan's Elliott-Larsen Civil Rights Act Fail.**

**1.     Only MSU Students Or Prospective MSU Students Are Covered By The ELCRA.**

Although 38 Plaintiffs assert educational discrimination claims under the ELCRA, only two allege that they were students at the time of the alleged conduct.[21] (PageID.5413, 5415; *see*

---

[20]    John B Doe's wife, Larissa Boyce, alleges she was a minor when many of Nassar's assaults occurred. (PageID.5394) Similarly, John B3 Doe, John B7 Doe, John B8 Doe, John B24 Doe, and John B29 Doe's wives, Jane B3 Doe, Jane B7 Doe, Jane B8 Doe, Jane B24, and Jane B29 Doe, respectively, allege they were minors when Nassar's assaults began. (PageID.5400, 5404, 5405, 5421, 5428.)

[21]    Jane B19 Doe and Jane D1 Doe each allege they were MSU students at the time of the alleged conduct. (*See* PageID.5413, 5415, 5547.)

*also* Ex. D.) For the other 35, their claims fail because they are not covered by the statute. The ELCRA prohibits an "educational institution" from "[d]iscriminat[ing] against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex." M.C.L. § 37.2402(a). Importantly, "[t]he plain language of [M.C.L. § 37.2402(a)] clearly shows that it applies to conduct between a school and its students or prospective students." *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 363-64, 695 N.W.2d 521, 537 (2005). If a plaintiff is neither a student nor a prospective student, her claim fails. *Id.* Accordingly, because 35 Plaintiffs who assert claims under the ELCRA do not allege that they were MSU students or prospective students of MSU at the time of the alleged assaults, their educational discrimination claims under the ELCRA fail.

### 2. Plaintiffs Fail To Plead *Respondeat Superior* Liability.

For the two Plaintiffs who allege they were MSU students, their educational discrimination claims—which effectively assert that they were subjected to a hostile educational environment—fail because they cannot establish *respondeat superior*. *Henderson*, 469 F.3d at 489 (citing *Chambers v. Trettco Inc.*, 463 Mich. 297, 614 N.W.2d 910 (2000)). "*Respondeat superior* liability can be imposed on an employer for an employee's hostile environment harassment only if the employer had reasonable notice of the harassment and failed to take appropriate corrective action." *Id.* (internal quotes omitted). Here, none of the MSU students who could be covered by the ELCRA allege that they reported the harassment or assault, and non-reporting Plaintiffs cannot rely on reports filed by other Plaintiffs. This is because alleged reports by others "can hardly support a reasonable finding that [MSU] should therefore have known that *another* [person], was the victim of a hostile environment." *Id.* at 491 (knowledge of incident between soccer coach and another soccer player did not establish that school officials

should have known that the plaintiff-student was also being harassed) (emphasis in original). Consequently, Plaintiffs' ELCRA claims fail for this separate reason.

### 3. Plaintiffs Do Not Assert That They Were Denied Access To A Public Accommodation.

The same 38 Plaintiffs asserting educational discrimination assert ELCRA public accommodation claims, which are also fatally deficient. The ELCRA provides that "a person shall not . . . [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex . . . ." M.C.L. § 37.2302(a). In the sexual assault context, ELCRA denial of access to public accommodations claims are limited to cases where submission to sexual assault is a condition of receiving access to public facilities or services. *See Sparks v. Bellin Health Sys., Inc.*, No. 2:09-CV-14, 2010 WL 2349467, at *15 (W.D. Mich. June 7, 2010) (doctor's sexual assault of patient did not amount to a denial of public accommodations because "there is no evidence creating a genuine issue of material fact regarding whether submission to sexual assault by [the doctor] was made a condition of her receipt of medical services"); *Wilson v. City of Detroit*, No. 219777, 2001 WL 760020, at *3 (Mich. Ct. App. Jan. 30, 2001) (plaintiff who was sexually harassed by a bus driver when she boarded a city bus failed to meet this element because she did not "allege that submission to the bus driver's conduct was a term or condition of receiving public accommodations or services, or that submission to or rejection of the conduct was a factor in any decision affecting her access to a public accommodations service").

The ELCRA's public accommodations provision does not apply to the facts here. Specifically, Plaintiffs do not allege that they were denied access to public facilities provided by MSU on account of sex. Nor do they allege that submission to sexual assault was a condition to gaining access to, or receiving services from, the MSU Sports Medicine clinic. Instead,

46

Plaintiffs' Complaints clearly state that they received access to the clinic, but that while there Nassar assaulted them without their knowledge or consent. In *Dockweiler v. Wentzell*, 169 Mich. App. 368, 372-73, 425 N.W.2d 468, 470 (1988), the Michigan Court of Appeals rejected a public accommodation claim under analogous circumstances. Dismissing the claim on the pleadings, the court explained: "That plaintiff was sexually abused by her assigned staff psychologist during her treatment does not necessarily suggest that she was also denied the public services provided by [the public entity] due to prejudices and biases against her because of her sex." *Id.* The plaintiff could have "walk[ed] away, request[ed] a new therapist, or take[n] her concerns to a higher authority." *Id.*, 169 Mich. App. at 374, 425 N.W.2d at 471. The court concluded, "the allegations made by plaintiff in her complaint concerning [the therapist's] sexual advances and assaults do not give rise to any inference that his advances and assaults were linked to plaintiff's receipt of public services." *Id.*, 169 Mich. App. at 375; 425 N.W.2d at 471. The same result should obtain here because "the statutory provision herein relied upon . . . simply does not encompass the action alleged." *Id.*, 169 Mich. App. at 373, 425 N.W.2d at 470. Because Plaintiffs do not allege that they were denied access to MSU facilities because of sex or that submission to Nassar's sexual abuse was a condition of access, they fail to state a viable "public accommodation" claim under the ELCRA.[22]

---

[22] Jane D1 Doe also purports to bring a retaliation claim under the ELCRA, alleging that after she initiated this lawsuit, MSU retaliated against her by refusing to reopen the 2014 I3 investigation of Nassar. (PageID.5577-78.) This claim fails. "To establish a *prima facie* case of retaliation, plaintiff must show: (1) that she engaged in protected activity; (2) that this was known to defendants; (3) that plaintiff was subjected to adverse action by defendants []; and (4) that there was a causal connection between the protected activity and the adverse action." *Henderson*, 469 F.3d at 491 (internal citations omitted). Setting aside that these claims arise almost exclusively in the employment context, the fact that MSU has not reopened the 2014 investigation could not be materially adverse to Jane D1 Doe when she had an avenue to pursue, was already pursuing, and continues to pursue her ELCRA claims in litigation.

**4.     Plaintiffs Do Not Plead ELCRA Claims Against the MSU Individuals.**

Although Plaintiffs asserting ELCRA claims attempt to do so against all of the "MSU Defendants" (PageID.5484), their Complaints are devoid of any specific ELCRA allegations against MSU Individuals Klages, Strampel, or Kovan. Nowhere in the Complaints do Plaintiffs suggest that the MSU Individuals are proper defendants as individuals under the ELCRA or that they engaged in conduct that states a "plausible" claim under the ELCRA. *Twombly*, *supra*; *Iqbal*, *supra*; *see also* M.C.L. § 37.2401; Fed. R. Civ. P. 8(a). For this separate reason, Plaintiffs' ELCRA claims against defendants Klages, Strampel, and Kovan fail to state a claim upon which relief may be granted.

**C.     Plaintiffs' Claims Under Michigan's Child Protection Law Fail Because The Statute Does Not Apply.**

The 33 Group B Plaintiffs assert claims against Klages, Strampel, and Kovan for violating Michigan's Child Protection Law ("CPL"), which mandates that certain individuals report suspected child abuse or neglect. (PageID.5516-19.) Civil liability under the statute extends only to those who are "required by this act to report." M.C.L. § 722.633(1). Here, although Strampel and Kovan are mandatory reporters under the statute, Klages is not.[23] M.C.L. § 722.623(1)(a) (listing individuals required to report under the CPL, including physicians but not coaches). Plaintiffs admit that Klages was the head coach of MSU's women's gymnastics program (*e.g.*, PageID.5380), and not a "school administrator, school counselor or teacher," as described in the statute. *See id*.

More critically, setting aside the fact that the allegations do not suggest that Strampel or Kovan were on notice of abuse of a child, Nassar's conduct could not create an obligation to

---

[23]     Regardless, the MSU Individuals are immune from Plaintiffs' CPL claim. *See supra* § I(B)-(C).

report because, as discussed below, the statutory duty applies only when the abuse is carried out by certain categories of persons, which do not include doctors.

Civil liability potentially attaches only when a "person who is required . . . to report an instance of suspected child abuse or neglect" fails to do so. M.C.L. § 722.633(1). "Child abuse" is defined as:

> [H]arm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, *by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy.*

M.C.L. § 722.622(g) (emphasis added). "Child neglect" is similarly defined to include harm caused "by a parent, legal guardian, or any other person responsible for the child's health or welfare." M.C.L. § 722.622(k). The statute defines "[p]erson responsible for the child's health or welfare" as "a parent, legal guardian, person 18 years of age or older who resides for any length of time in the same home in which the child resides," a "nonparent adult," and individuals involved in operating child care or foster care organizations. M.C.L. § 722.622(x). "Nonparent adult" is, in turn, defined as "a person [over] 18" who "[h]as substantial and regular contact with the child," "[h]as a close personal relationship with the child's parent or with a person responsible for the child's health or welfare," and "[i]s not the child's parent or a person otherwise related to the child." M.C.L. § 722.622(v). Nassar does not fall within any category of abuser included in the definition of child abuse or child neglect.

Under Michigan's CPL, mandated reporters are required only to report the certain types of conduct by the certain categories of perpetrators listed in the statute. *See, e.g.*, *People v. Beardsley*, 263 Mich. App. 408, 413, 688 N.W.2d 304, 307 (2004) (identifying the CPL's purpose as limited to "protecting children in situations where abuse and neglect frequently go

unreported, *i.e.*, when perpetrated by family members or others with control over the child" );

*Doe v. Doe*, 289 Mich. App. 211, 216, 809 N.W.2d 163, 166 (2010) ("[T]he imposition of a duty

to report suspected child abuse [under the CPL] is based, not on the occurrence of such abuse,

but on the type of relationship the alleged perpetrator has with the minor child."). Because

Nassar does not fit within the list of "specifically enumerated" persons, Plaintiffs' CPL claims

fail as a matter of law. *See McCarrick v. Lapeer Cmty. Sch.*, No. 12-11654, 2012 WL 3600377,

at *4 (E.D. Mich. Aug. 21, 2012) ("Under [*People v. Beardsley*], there is no duty to report . . .

unless the suspected perpetrator is a person specifically enumerated in the CPL."); *see also, e.g.*,

*Doe*, 289 Mich. App. at 217-18, 809 N.W.2d at 166-67 (holding that emergency medical

technician ("EMT") and ambulance service were not required to report child molestation by

fellow EMT because EMT was not a person responsible for child's health or welfare under

CPL). Plaintiffs' CPL claims must be dismissed.

## CONCLUSION

Although Nassar's actions were repugnant and merit the heavy criminal penalties

imposed upon him, the law does not support Plaintiffs' attempts to hold the MSU Defendants

liable for his wrongs. For the reasons set forth above, the MSU Defendants respectfully request

that the Court dismiss Plaintiffs' Complaints in their entirety with prejudice.

Dated: January 12, 2018                     Respectfully submitted,

/s/ *Patrick J. Fitzgerald*
Patrick J. Fitzgerald
Albert L. Hogan, III
Amy Lynn Van Gelder
Skadden Arps Slate Meagher & Flom LLP
**Attorneys for MSU, Board of Trustees of MSU**
155 N Wacker Dr., Ste. 2700
Chicago, IL 60606-1720
(312) 407-0700

patrick.fitzgerald@skadden.com

/s/ *Scott R. Eldridge* (w/ permission)
Scott R. Eldridge (P66452)
Megan P. Norris (P39318)
Brian M. Schwartz (P69018)
Miller, Canfield, Paddock and Stone P.L.C.
**Attorneys for MSU, Board of Trustees of MSU**
One Michigan Avenue, Suite 900
Lansing, MI  48933
(517) 483-4918
eldridge@millercanfield.com

/s/ *Steven F. Stapleton* (w/ permission)
Steven F. Stapleton (P51571)
Maria Cesira Fracassa Dwyer (P60946)
Clark Hill, P.L.C.
**Attorneys for Defendants Kathie Klages,**
**William D. Strampel, and Jeffrey R. Kovan**
200 Ottawa Ave., NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1145
sstapleton@clarkhill.com

## Certificate of Service

I hereby certify that on January 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ *Patrick J. Fitzgerald*
Patrick J. Fitzgerald