# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DENHOLLANDER, *et al.*,

              Plaintiffs,

v.

MICHIGAN STATE UNIVERSITY, *et al.*,

              Defendants.

Lead Case 1:17-cv-00029-GJQ-ESC and all consolidated member and related cases:
1:18-cv-00773-GJQ-ESC
1:18-cv-00806-GJQ-ESC
1:18-cv-00828-GJQ-ESC
1:18-cv-00829-GJQ-ESC
1:18-cv-00831-GJQ-ESC
1:18-cv-00886-GJQ-ESC
1:18-cv-00913-GJQ-ESC
1:18-cv-00915-GJQ-ESC
1:18-cv-00944-GJQ-ESC
1:18-cv-00968-GJQ-ESC
1:18-cv-00982-GJQ-ESC
1:18-cv-00987-GJQ-ESC
1:18-cv-00993-GJQ-ESC
1:18-cv-00995-GJQ-ESC
1:18-cv-01005-GJQ-ESC
1:18-cv-01006-GJQ-ESC
1:18-cv-01010-GJQ-ESC
1:18-cv-01012-GJQ-ESC
1:18-cv-01016-GJQ-ESC
1:18-cv-01018-GJQ-ESC
1:18-cv-01025-GJQ-ESC
1:18-cv-01027-GJQ-ESC
1:18-cv-01038-GJQ-ESC
1:18-cv-01042-GJQ-ESC
1:18-cv-01045-GJQ-ESC
1:18-cv-01046-GJQ-ESC
1:18-cv-01047-GJQ-ESC
1:18-cv-01056-GJQ-ESC
1:18-cv-01057-GJQ-ESC
1:18-cv-01058-GJQ-ESC
1:18-cv-01060-GJQ-ESC
1:18-cv-01169-GJQ-ESC
1:18-cv-01258-GJQ-ESC
1:19-cv-00178-GJQ-ESC
1:19-cv-00440-GJQ-ESC
1:19-cv-00579-GJQ-ESC
*Related Case:*
1:19-cv-00629-GJQ-ESC

Hon. Gordon J. Quist

# MSU DEFENDANTS' BRIEF IN SUPPORT OF
# THEIR JOINT OMNIBUS MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... i

INDEX OF EXHIBITS ................................................................................................... i

INTRODUCTION .......................................................................................................... 1

SUMMARY OF COMMON ALLEGATIONS ............................................................ 5

STANDARD OF REVIEW ........................................................................................... 9

ARGUMENT ................................................................................................................ 10

I.       MSU IS IMMUNE FROM ALL OF PLAINTIFFS' STATE LAW CLAIMS ................ 10

         A.       Sovereign Immunity Bars All Tort Claims Against MSU .................................... 10

         B.       Failure to Comply with the Governmental Notice Requirement Bars All
                  State Law Claims Against MSU ......................................................................... 15

                  1.       Plaintiffs Failed to Comply with the Notice Requirement ......................... 17

                  2.       No Tolling Applies to Governmental Notices as a Matter of Law ............ 18

                  3.       Fraudulent Concealment Cannot Toll the Notice Requirement Here
                           Because Plaintiffs Knew of Their Claims .................................................. 19

II.      THE MSU INDIVIDUALS ARE IMMUNE FROM ALL TORT AND CHILD
         PROTECTION LAW CLAIMS .............................................................................. 23

III.     PLAINTIFFS' TITLE IX CLAIMS FAIL ................................................................. 26

         A.       Non-Student Plaintiffs Lack Standing to Assert Title IX Claims ......................... 26

         B.       Claims Arising Prior to April 2014 Must Be Dismissed Because Plaintiffs
                  Fail to Allege Reporting to an "Appropriate Person" .......................................... 28

         C.       Plaintiffs Do Not Adequately Allege Deliberate Indifference to Known
                  Harassment ....................................................................................................... 31

IV.      PLAINTIFFS' AFFORDABLE CARE ACT CLAIMS FAIL ......................................... 34

         A.       Plaintiffs Lack Standing to Pursue ACA Claims that Arose Prior to the
                  ACA's Enactment in 2010 or for Injuries at Non-MSU Locations ....................... 34

         B.       Plaintiffs Do Not Adequately Allege ACA Claims for Sex Discrimination ......... 36

V.      PLAINTIFFS' SECTION 1983 CLAIMS FAIL ...................................................37

    A.      Section 1983 Does Not Authorize Suits for Damages Against MSU or the
        MSU Individuals in Their Official Capacities as a Matter of Law......................37

    B.      Section 1983 Claims Against the MSU Individuals in Their Individual
        Capacities Fail................................................................................................37

        1.      The MSU Individuals Are Immune from Section 1983 Claims ...............37

        2.      Plaintiffs Fail to Allege Supervisory Liability...........................................42

        3.      Intra-Corporate Conspiracy Claims Fail as a Matter of Law....................46

        4.      Plaintiffs Fail to Allege a Close Causal Connection Between Their
            Claimed Injuries and Any Act by the MSU Individuals..........................47

    C.      Plaintiffs Fail to Allege a State-Created Danger.......................................50

VI.     PLAINTIFFS' SEX TRAFFICKING CLAIMS FAIL .......................................52

    A.      Sovereign Immunity Bars TVPA Claims Against MSU ......................................52

    B.      Plaintiffs Lack Standing to Pursue Claims that Arose Prior to the 2008
        Enactment of the TVPA's Private Right of Action Against Non-
        Perpetrators ..................................................................................................53

    C.      Plaintiffs Fail to Plead TVPA Claims Against the MSU Defendants....................54

VII.    PLAINTIFFS LACK STANDING TO PURSUE CIVIL RICO CLAIMS .....................55

VIII.   PLAINTIFFS' ELLIOTT-LARSEN CIVIL RIGHTS ACT CLAIMS FAIL....................56

    A.      Non-Students Lack Standing to Sue for Educational Discrimination .................57

    B.      Plaintiffs Were Not Denied Access to a Public Accommodation.........................57

    C.      Plaintiffs Do Not Adequately Allege *Respondeat Superior* ...................59

    D.      Plaintiffs Fail to Plead Civil Rights Act Claims Against the MSU
        Individuals....................................................................................................60

IX.     PLAINTIFFS' CHILD PROTECTION LAW CLAIMS FAIL ...................................62

X.      PLAINTIFFS' CLAIMS ARE TIME-BARRED.....................................................64

    A.      The Statutes of Limitations Began to Run at the Time of Alleged Assault...........65

    B.      Plaintiffs Did Not File Within the Limitations Periods .........................................66

C.     The Minor Savings Provision Applies Only to Claims Against Nassar ...............68

D.     Plaintiffs Fail to Allege That Fraudulent Concealment Tolls the
       Limitations Periods .........................................................................................70

       1.     Plaintiffs Fail to Plead Affirmative Statements on Which They
              Relied ..................................................................................................73

       2.     Plaintiffs Fail to Allege a Fiduciary Relationship....................................73

XI.    PLAINTIFFS FAIL TO PLEAD COMMON LAW CLAIMS............................................75

A.     Plaintiffs Fail to Allege a Legal Duty for Negligence-Based Claims...................75

B.     Plaintiffs Fail to Plead Intentional Infliction of Emotional Distress.....................77

C.     Plaintiffs Fail to Plead Negligent Infliction of Emotional Distress ......................77

D.     Plaintiffs Fail to Plead Fraud and Misrepresentation...............................................78

E.     Plaintiffs Fail to Plead Invasion of Privacy ............................................................78

F.     Vicarious Liability and Agency Theories Fail as a Matter of Law........................79

G.     Concert of Action and Gross Negligence Are Not Viable Causes of Action ........79

CONCLUSION.........................................................................................................................80

# TABLE OF AUTHORITIES

## CASES

*Adams v. County of Calhoun*,
　No. 1:16-CV-678, 2017 WL 1100845 (W.D. Mich. Mar. 24, 2017)................................53

*In re AJR*,
　834 N.W.2d 904 (Mich. Ct. App. 2013) .........................................................................69

*Amini v. Oberlin College*,
　259 F.3d 493 (6th Cir. 2001) .........................................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..........................................................................10, 41, 45, 61

*Badiee v. Brighton Area Schools*,
　695 N.W.2d 521 (Mich. Ct. App. 2005) ........................................................................57

*Ball v. Union Carbide Corp.*,
　385 F.3d 713 (6th Cir. 2004) ........................................................................................21

*Bass v. Robinson*,
　167 F.3d 1041 (6th Cir. 1999) ......................................................................................42

*Baynard v. Malone*,
　268 F.3d 228 (4th Cir. 2001) ........................................................................................31

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007)..........................................................................10, 13, 42, 61

*Bernie v. Blue Cloud Abbey*,
　821 N.W.2d 224 (S.D. 2012) ........................................................................................70

*Blue v. District of Columbia*,
　850 F. Supp. 2d 16 (D.D.C. 2012)...................................................................31, 32, 36

*Boler v. Snyder*,
　No. 16-000126, 2017 WL 4075963 (Mich. Ct. Cl. Feb. 17, 2017) .................................21

*Boman v. Catholic Diocese*,
　No. 338458, 2018 WL 3129703 (Mich. Ct. App. June 26, 2018) ............................62, 75

*Bowling v. Holt Public Schools*,
　No. 1:16-cv-1322, 2017 WL 4512587 (W.D. Mich. May 26, 2017)................................66

*In re Bradley Estate*,
　835 N.W.2d 545 (Mich. 2013).......................................................................................11

i

*Brent v. Wayne County Department of Human Services*,
   901 F.3d 656 (6th Cir. 2018) ...............................................................80

*Brent v. Wenk*,
   555 F. App'x 519 (6th Cir. 2014) ........................................................62

*Brewer v. Central Michigan University Board of Trustees*,
   No. 312374, 2013 WL 6124216 (Mich. Ct. App. Nov. 21, 2013)...................16

*Briscoe v. Health Care Service Corp.*,
   281 F. Supp. 3d 725 (N.D. Ill. 2017) ..................................................36

*Bromley v. Mallison*,
   No. 312901, 2014 WL 667799 (Mich. Ct. App. Feb. 18, 2014)................66, 73

*Brown v. Brown*,
   739 N.W.2d 313 (Mich. 2007)...........................................................76, 79

*Brownell v. Garber*,
   503 N.W.2d 81 (Mich. Ct. App. 1993) .................................................71, 73

*Burton v. William Beaumont Hospital*,
   373 F. Supp. 2d 707 (E.D. Mich. 2005)....................................................74

*Bush v. Shabahang*,
   772 N.W.2d 272 (Mich. 2009)........................................................13, 18, 68

*Campbell v. Dundee Community Schools*,
   No. 12-cv-12327, 2015 WL 4040743 (E.D. Mich. July 1, 2015)...............25, 39

*Campbell v. Dundee Community Schools*,
   661 F. App'x 884 (6th Cir. 2016) ...................................................25, 31, 32

*Cartwright v. City of Marine City*,
   336 F.3d 487 (6th Cir. 2003) .............................................................50, 51

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) ...............................................................10

*Chandler v. Wackenhut Corp.*,
   465 F. App'x 425 (6th Cir. 2012) .............................................66, 71, 72, 73

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ...............................................................22

*Clay v. Emmi*,
   No. 13-11555, 2014 WL 4855091 (E.D. Mich. Sept. 30, 2014).....................25

*Clemente v. Vaslo*,
    679 F.3d 482 (6th Cir. 2012) ...........................................................................38

*Coleman v. Court of Appeals*,
    566 U.S. 30 (2012)...........................................................................................52

*Colson v. City of Alcoa*,
    No. 3:16-CV-377, 2017 WL 4019596 (E.D. Tenn. Sept. 11, 2017)................44

*Combs v. International Insurance Co.*,
    354 F.3d 568 (6th Cir. 2004) ...........................................................................19

*Cunmulaj v. Chaney*,
    Nos. 282264, 282265, 2009 WL 349753 (Mich. Ct. App. Feb. 12, 2009) .......14

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
    526 U.S. 629 (1999)..................................................................................*passim*

*Davis v. Scherer*,
    468 U.S. 183 (1984).........................................................................................41

*DeBrow v. Century 21 Great Lakes Inc.*,
    No. 161048, 1996 WL 33360653 (Mich. Ct. App. Aug. 13, 1996)................61

*DeShaney v. Winnebago County Department of Social Services*,
    489 U.S. 189 (1989)...................................................................................39, 40

*Diamond v. Witherspoon*,
    696 N.W.2d 770 (Mich. Ct. App. 2005) .........................................................58

*Dibbern v. University of Michigan*,
    No. 12-15632, 2016 WL 2894491 (E.D. Mich., May 18, 2016) .....................65

*Ditullio v. Boehm*,
    662 F.3d 1091 (9th Cir. 2011) .........................................................................54

*Dixon v. City of Detroit*,
    No. 333554, 2018 WL 1545499 (Mich. Ct. App. Mar. 29, 2018) ...................60

*Dockweiler v. Wentzell*,
    425 N.W.2d 468 (Mich. Ct. App. 1988) .........................................................58

*Doe 1 v. Young*,
    No. 335089, 2018 WL 521832 (Mich. Ct. App. Jan. 23, 2018) .................75, 76

*Doe ex rel. Doe v. City of Roseville*,
    296 F.3d 431 (6th Cir. 2002) .....................................................................*passim*

*Doe ex rel. Doe v. Livonia Public School*,
No. 13-CV-11687, 2018 WL 4953086 (E.D. Mich. Oct. 12, 2018) ..........................51, 52

*Doe v. Bishop Foley Catholic High School*,
No. 336795, 2018 WL 2024589 (Mich. Ct. App. May 1, 2018 ) ...............................71, 75

*Doe v. Board of Trustees of University of Illinois*,
429 F. Supp. 2d 930 (N.D. Ill. 2006) ...............................................................................56

*Doe v. Brown University*,
270 F. Supp. 3d 556 (D.R.I. 2017)...................................................................................27

*Doe v. Claiborne County, Tennessee*,
103 F.3d 495 (6th Cir. 1996) ...................................................................................*passim*

*Doe v. Doe*,
809 N.W.2d 163 (Mich. Ct. App. 2010) ..........................................................................64

*Doe v. Miami University*,
882 F. 3d 579 (6th Cir. 2018) ..........................................................................................39

*Doe v. Mills*,
536 N.W.2d 824 (Mich. Ct. App. 1995) .....................................................................78, 79

*Doe v. Northern Michigan University*,
No. 2:18-CV-196, 2019 WL 2269721 (W.D. Mich. May 28, 2019)...............................12

*Doe v. Peterson*,
784 F. Supp. 2d 831 (E.D. Mich. 2011).............................................................................79

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
692 N.W.2d 398 (Mich. Ct. App. 2004) ...................................................................*passim*

*Doe v. Siddig*,
810 F. Supp. 2d 127 (D.D.C. 2011) .................................................................................54

*Does v. Michigan Department of Corrections*,
No. 15-000238-MZ, 2016 WL 5800404 (Mich. Ct. Cl. Feb. 1, 2016) ............................17

*Douglas v. Brookville Area SchoolDistrict*,
836 F. Supp. 2d 329 (W.D. Pa. 2011)...............................................................................29

*Duran v. Detroit News, Inc.*,
504 N.W.2d 715 (Mich. Ct. App. 1993) ...........................................................................77

*EBI-Detroit, Inc. v. City of Detroit*,
279 F. App'x 340 (6th Cir. 2008) .....................................................................................12

*Ellsworth v. Battle Creek Health Care System*,
No. 194752, 1997 WL 33344742 (Mich. Ct. App. June 27, 1997) ...................................74

*Erickson v. United States*,
No. 2:15-CV-95, 2016 WL 316725 (W.D. Mich. Jan. 27. 2016)......................................15

*Essex v. County of Livingston*,
518 F. App'x 351 (6th Cir. 2013) ...............................................................................44, 45

*Estate of Abdullah ex rel. Carswell v. Arena*,
601 F. App'x 389 (6th Cir. 2015) ...............................................................................71, 73

*Fairley v. Department of Corrections*,
871 N.W.2d 129 (Mich. 2015)...............................................................................11, 16, 17

*Felder v. Casey*,
487 U.S. 131 (1988).............................................................................................................17

*Flagg v. City of Detroit*,
715 F.3d 165 (6th Cir. 2013) ...........................................................................................44

*Franciscan Alliance, Inc. v. Burwell*,
227 F. Supp. 3d 660 (N.D. Tex. 2016) ...........................................................................36

*Gardner v. Michigan State University Board of Trustees*,
No. 1:12-CV-1018, 2014 WL 558818 (W.D. Mich. Feb. 11, 2014) ...............................37

*Garg v. Macomb County Community Mental Health Services*,
696 N.W.2d 646 (Mich. 2005).......................................................................................65

*Garvin v. Detroit Board of Education*,
No. 298838, 2013 WL 951118 (Mich. Ct. App. Feb. 26, 2013)......................................57

*Gazette v. City of Pontiac*,
41 F.3d 1061 (6th Cir. 1994) ......................................................................................47, 51

*Gebser v. Lago Vista Independent School District*,
524 U.S. 274 (1998)......................................................................................28, 29, 31, 32

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)...............................................................................55

*Gillespie v. City of Battle Creek*,
100 F. Supp. 3d 623 (W.D. Mich. 2015) ............................................................46, 47, 77

*Gilley v. Dunaway*,
572 F. App'x 303 (6th Cir. 2014) ...................................................................................73

*Gleason v. Department of Transportation*,
    662 N.W.2d 822 (Mich. Ct. App. 2003) ................................................................67

*Glidden Co. v. Jandernoa*,
    5 F. Supp. 2d 541 (W.D. Mich. 1998) .................................................................74

*Gohl v. Turbiak*,
    No. 335389, 2018 WL 2067796 (Mich. Ct. App. May 3, 2018) .....................63

*Gordon v. Traverse City Area Public Schools*,
    182 F. Supp. 3d 715 (W.D. Mich. 2016) ..........................................................39

*Graves v. Warner Bros.*,
    656 N.W.2d 195 (Mich. Ct. App. 2002) ..........................................................75

*Gray v. Cry*,
    No. 291142, 2011 WL 4375074 (Mich. Ct. App. Sept. 20, 2011)...................24

*Guerra v. Garratt*,
    564 N.W.2d 121 (Mich. Ct. App. 1997) ..........................................................66

*Guy v. Lexington-Fayette Urban County Government*,
    488 F. App'x 9 (6th Cir. 2012) .........................................................................21

*Guy v. Lexington-Fayette Urban County Government*,
    624 F. App'x 924 (6th Cir. 2015) .....................................................................52

*Hamed v. Wayne County*,
    803 N.W.2d 237 (Mich. 2011)...........................................................59, 60, 79

*Hannay v. Department of Transportation*,
    860 N.W.2d 67 (Mich. 2014).............................................................................12

*Hawthorne-Burdine v. Oakland University*,
    Nos. 338605, 339188, 2018 WL 1832336 (Mich. Ct. App. Apr. 17, 2018).....17

*Hayden v. Wells*,
    125 F.3d 855 (6th Cir. 1997) ............................................................................49

*Hayes v. Vessey*,
    777 F.2d 1149 (6th Cir. 1985) ..........................................................................48

*Haynes v. Neshewat*,
    729 N.W.2d 488 (Mich. 2007)....................................................................57, 58

*Heike v. Guevara*,
    654 F. Supp. 2d 658 (E.D. Mich. 2009)...........................................................37

*Henderson v. Walled Lake Consolidated Schools*,
    469 F.3d 479 (6th Cir. 2006) ...............................................................32, 59, 60

*Heyne v. Metropolitan Nashville Public Schools*,
    655 F.3d 556 (6th Cir. 2011) ...........................................................................30, 44

*Hill v. Board of Trustees of Michigan State University*,
    182 F. Supp. 2d 621 (W.D. Mich. 2001) ..........................................................11, 37

*Holmes v. City of Detroit*,
    No. 276949, 2008 WL 821591 (Mich. Ct. App. Mar. 27, 2008) .........................24

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ...........................................................................................38

*Hyde v. University of Michigan Board of Regents*,
    393 N.W.2d 847 (Mich. 1986) ........................................................................13, 14

*Jackson v. City of Columbus*,
    194 F.3d 737 (6th Cir. 1999) ..............................................................................22

*Jackson v. New Center Community Mental Health Services*,
    404 N.W.2d 688 (Mich. Ct. App. 1998) ..............................................................76

*Jackson v. Schultz*,
    429 F.3d 586 (6th Cir. 2005) .......................................................................9, 10, 40

*Jackson v. Sedgwick Claims Management Services, Inc.*,
    731 F.3d 556 (6th Cir. 2013) ..............................................................................56

*James v. Meow Media*, Inc.,
    300 F.3d 683 (6th Cir. 2002) ..............................................................................76

*Johnson v. Pastoriza*,
    818 N.W.2d 279 (Mich. 2012) ............................................................................68

*Jones v. Bitner*,
    832 N.W.2d 426 (Mich. Ct. App. 2013) ..............................................................24

*K.S. v. Detroit Public Schools*,
    No. 14-12214, 2015 WL 4459340 (E.D. Mich. July 21, 2015) ......................45, 57

*K.T. v. Culver-Stockton College*,
    No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11, 2016) .................27

*Kalich v. AT&T Mobility, LLC*,
    679 F.3d 464 (6th Cir. 2012) ..............................................................................59

*Kaminski v. Coulter*,
    865 F.3d 339 (6th Cir. 2017) ...................................................................................13, 63

*Kassab v. Michigan Basic Property Insurance Association*,
    491 N.W.2d 545 (Mich. 1992).................................................................................58

*Kesterson v. Kent State University*,
    345 F. Supp. 3d 855 (N.D. Ohio 2018)...............................................................29, 31

*Kimel v. Florida Board of Regents*,
    528 U.S. 62 (2000)..............................................................................................52, 53

*Kramer v. Bachan Aerospace Corp.*,
    912 F.2d 151 (6th Cir. 1990) ...................................................................................55

*Krygoski Const. Co. v. Johnson*,
    No. 2:01-CV-22, 2002 WL 1492204 (W.D. Mich. Apr. 23, 2002) ............................23, 71

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994)..............................................................................................35, 54

*Langdon v. Skelding*,
    524 F. App'x 172 (6th Cir. 2013) ...........................................................................51

*Lanman v. Hinson*,
    529 F.3d 673 (6th Cir. 2008) ...................................................................................41

*Lemmerman v. Fealk*,
    534 N.W.2d 695 (Mich. 1995).................................................................................17, 65

*Lillard v. Shelby County Board of Education*,
    76 F.3d 716 (6th Cir. 1996) ...................................................................41, 42, 43, 67

*Loewen v. Grand Rapids Medical Education Partners*,
    No. 1:10-cv-1284, 2012 WL 1190145 (W.D. Mich. Apr. 9. 2012).....................27, 28, 32

*Lynn v. City of Detroit*,
    98 F. App'x 381 (6th Cir. 2004) .............................................................................46

*Mack v. City of Detroit*,
    649 N.W.2d 47 (Mich. 2002).................................................................................11, 12

*Marcelletti v. Bathani*,
    500 N.W.2d 124 (Mich. Ct. App. 1993) .................................................................62, 76

*Martinez v. California*,
    444 U.S. 277 (1980)..............................................................................................47, 48

*Massey v. Mandell*,
    614 N.W.2d 70 (Mich. 2000) .................................................................69

*May v. Greiner*,
    No. 269516, 2006 WL 2987709 (Mich. Ct. App. Oct. 19, 2006) ....................24

*Mays v. Snyder*,
    916 N.W.2d 227 (Mich. Ct. App. 2018) ............................................18, 19, 51

*Mays v. Governor of Michigan*,
    926 N.W.2d 803 (Mich. 2019) ...............................................................19

*McBride v. Village of Michiana*,
    No. 4:92-CV-155, 1998 WL 276139 (W.D. Mich. Apr. 2, 1998) ...................47

*McCahan v. Brennan*,
    822 N.W.2d 747 (Mich. 2012) ...........................................................15, 16

*McCarrick v. Lapeer Community Schools*,
    No. 12-11654, 2012 WL 3600377 (E.D. Mich. Aug. 21, 2012) ....................64

*McCoy v. Board of Education, Columbus City Schools*,
    515 F. App'x 387 (6th Cir. 2013) ........................................................31, 33, 34

*McLean v. McElhaney*,
    798 N.W.2d 29 (Mich. Ct. App. 2010) .................................................14, 25

*McQueen v. Beecher Community Schools*,
    433 F.3d 460 (6th Cir. 2006) ................................................................46

*Michigan Corrections Organization v. Michigan Department of Corrections*,
    774 F.3d 895 (6th Cir. 2014) ................................................................53

*Miller ex rel. Miller v. Lord*,
    686 N.W.2d 800 (Mich. Ct. App. 2004) ...................................................24

*Mitchell v. Hininger*,
    553 F. App'x 602 (6th Cir. 2014) .......................................................42, 49

*Mojsilovic v. Oklahoma ex rel. Board of Regents for University of Oklahoma*,
    841 F.3d 1129 (10th Cir. 2016) .............................................................53

*Molina v. State of New York*,
    956 F. Supp. 257 (E.D.N.Y. 1995) ......................................................56, 57

*Montgomery v. Shelby & Belle, LLC*,
    No. 255278, 2005 WL 2323946 (Mich. Ct. App. Sept. 22, 2005) ..................79

*Moore v. St. Joseph Nursing Home, Inc.*,
    459 N.W.2d 100 (Mich. Ct. App. 1990) ...............................................................77

*Moore v. Smith*,
    No. 1:13-CV-881, 2017 WL 1159805 (W.D. Mich. Mar. 28, 2017)................................41

*Mueller v. Brannigan Brothers Restaurants & Taverns, LLC*,
    918 N.W.2d 545 (Mich. Ct. App. 2018) ...............................................................79

*Murdock v. Higgins*,
    559 N.W.2d 639 (Mich. 1997)...........................................................62, 75, 76

*North Haven Board of Education v. Bell*,
    456 U.S. 512 (1982)...................................................................................27

*Nair v. Oakland County Community Mental Health Authority*,
    443 F.3d 469 (6th Cir. 2006) ........................................................................9

*Napier v. Osmose, Inc.*,
    399 F. Supp. 2d 811 (W.D. Mich. 2005) ............................................................80

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)...............................................................55

*Nunag-Tanedo v. East Baton Rouge Parish School Board*,
    No. SACV101172AGMLGX, 2011 WL 13153190 (C.D. Cal. May 12, 2011) ...............53

*Odom v. University of Michigan*,
    No. 16-12791, 2017 WL 2117978 (E.D. Mich. May 16, 2017) ..........................9

*Odom v. Wayne County*,
    760 N.W.2d 217 (Mich. 2008).............................................................12, 23, 24

*Owino v. CoreCivic*, Inc.,
    No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ...............54

*Pahssen v. Merrill Community School District*,
    668 F.3d 356 (6th Cir. 2012) .......................................................................27

*Palacios v. MedStar Health, Inc.*,
    298 F. Supp. 3d 87 (D.D.C. 2018).................................................................67

*Patel v. Gonzales*,
    432 F.3d 685 (6th Cir. 2005) .......................................................................35

*Pearson v. Callahan*,
    555 U.S. 223 (2009).................................................................................38

*Peatross v. City of Memphis*,
 818 F.3d 233 (6th Cir. 2016) ................................................................9

*Peer ex rel. Doe v. Porterfield*,
 No. 1:05CV769, 2007 WL 9655728 (W.D. Mich. Jan. 8, 2007).......................30

*People v. Beardsley*,
 688 N.W.2d 304 (Mich. Ct. App. 2004) ...................................................64

*Perez v. Oakland County*,
 No. 278129, 2008 WL 5158809 (Mich. Ct. App. Dec. 9, 2008) .....................14

*Pew v. Mich. State University*,
 859 N.W.2d 246 (Mich. Ct. App. 2014) ...................................................11

*Phifer v. City of Grand Rapids, Michigan*,
 657 F. Supp. 2d 867 (W.D. Mich. 2009) ..................................................65

*Plamp v. Mitchell School District No. 17-2*,
 565 F.3d 450 (8th Cir. 2009) ..........................................................29, 30

*Poe v. Haydon*,
 853 F.2d 418 (6th Cir. 1988) ...........................................39, 40, 44, 48

*Pohutski v. City of Allen Park*,
 641 N.W.2d 219 (Mich. 2002)................................................................11

*Prentis Family Foundation, Inc. v Barbara Ann Karmanos Cancer Institute*,
 698 N.W.2d 900 (Mich. Ct. App. 2005) ..............................................20, 21

*Progress Michigan v. Attorney General*,
 922 N.W.2d 654 (Mich. Ct. App. 2018) ...................................................16

*Quarry v. Doe I*,
 272 P.3d 977 (Cal. 2012) ...................................................................68

*Railroad Passenger Corp. v. Morgan*,
 536 U.S. 101 (2002)..........................................................................65

*Ramsey v. Board of Regents of the University of Michigan*,
 No. 303794, 2012 WL 1320103 (Mich. Ct. App. Apr. 17, 2012) ...................67

*Ray v. Swager*,
 903 N.W.2d 366 (Mich. 2017)...............................................................24

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
 683 F.3d 239 (6th Cir. 2012) ...............................................................71

*Richards v. Minnesota*,
  No. 13-3029 (JRT/JSM), 2016 WL 818657 (D. Minn. Jan. 15, 2016)............................36

*Rippy ex rel. Rippy v. Hattaway*,
  270 F.3d 416 (6th Cir. 2001) ........................................................................10

*Riverside Auto Sales, Inc. v. GE Capital Warranty Corp.*,
  No. 2:03-cv-55, 2004 WL 2106638 (W.D. Mich. Mar. 30, 2004) ............................20, 71

*Robinson v. City of Detroit*,
  613 N.W.2d 307 (Mich. 2000)..............................................................24, 69, 70

*Robinson v. Fiedler*,
  870 F. Supp. 193 (W.D. Mich. 1994) ..............................................................19

*Roman Catholic Bishop of Louisville v. Burden*,
  168 S.W.3d 414 (Ky. Ct. App. 2004) ..............................................................70

*Romeo Community Schools v. U.S. Department of Health, Education & Welfare*,
  438 F. Supp. 1021 (E.D. Mich. 1977)..............................................................26

*Rosa H. v. San Elizario Independent School District*,
  106 F.3d 648 (5th Cir. 1997) ....................................................................29, 30

*Ross v. Consumers Power Co.*,
  363 N.W.2d 641 (Mich. 1984)....................................................................11, 14

*Ross v. University of Tulsa*,
  859 F.3d 1280 (10th Cir. 2017) ....................................................................29

*Rowland v. Washtenaw County Road Commission*,
  731 N.W.2d 41 (Mich. 2007)....................................................................15, 16

*Rubenstein v. Doe No. 1*,
  400 P.3d 372 (Cal. 2017) ............................................................................68

*Sanches v. Carrollton-Farmers Branch Independent School District*,
  647 F.3d 156 (5th Cir. 2011) ........................................................................34

*Scott v. Ambani*,
  577 F.3d 642 (6th Cir. 2009) ....................................................................49, 50

*Seminole Tribe v. Florida*,
  517 U.S. 44 (1996)......................................................................................53

*Sharpe v. Cureton*,
  319 F.3d 259 (6th Cir. 2003) ........................................................................65

xii

*Sheets v. Mullins,*
    287 F.3d 581 (6th Cir. 2002) ....................................................................38

*Shehee v. Luttrell,*
    199 F.3d 295 (6th Cir. 1999) ....................................................................42

*Sheridan v. Forest Hills Public School,*
    637 N.W.2d 536 (Mich. Ct. App. 2001) ...................................................60

*Siding & Insulation Co. v. Alco Vending, Inc.,*
    822 F.3d 886 (6th Cir. 2016) ....................................................................35

*Simplicean v. SSI (US), Inc.,*
    No. 18-CV-11297, 2018 WL 6499476 (E.D. Mich. Dec. 11, 2018) ..........61

*Simpson v. Corizon Health, Inc.,*
    No. 1:15-cv-357, 2015 WL 5225057 (W.D. Mich. Sept. 8, 2015)........40, 44

*Smith v. Department of Public Health,*
    410 N.W.2d 749 (Mich. 1987) .............................................................12, 37

*Smith v. Freland,*
    954 F.2d 343 (6th Cir. 1992) ....................................................................41

*Smith v. Gilles,*
    184 N.W.2d 271 (Mich. Ct. App. 1970) ...................................................67

*Smith v. Highland Hospital,*
    No. 17-CV-6781-CJS, 2018 WL 4748187 (W.D.N.Y. Oct. 2, 2018)............67

*Soper ex rel. Soper v. Hoben,*
    195 F.3d 845 (6th Cir. 1999) ..........................................................26, 33, 36

*Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.,*
    102 F. Supp. 3d 688 (E.D. Pa. 2015) ........................................................35

*Sparks v. Bellin Health Systems, Inc.,*
    No. 2:09-CV-14, 2010 WL 2349467 (W.D. Mich. June 7, 2010) ...............58

*St. Onge v. Bray, Cameron, Larabee & Clark, PC,*
    No. 341953, 2019 WL 3432575 (Mich. Ct. App. July 30, 2019) ................16

*Stiles ex rel. D.S. v. Grainger County, Tennessee,*
    819 F.3d 834 (6th Cir. 2016) ..........................................................33, 39, 40, 51

*Super ex rel. Super v. Department of Transportation,*
    No. 282636, 2009 WL 2032041 (Mich. Ct. App. July 14, 2009) ...............16

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506 (2002)...........................................................................................22

*Taylor v. Goodson*,
    No. 1:10-CV-37, 2010 WL 1544365 (W.D. Mich. Apr. 19, 2010) .................................40

*Teadt v. St. John's Evangelical Lutheran Church*,
    603 N.W.2d 816 (Mich. Ct. App. 1999) ........................................................77

*Techner v. Greenberg*,
    553 F. App'x 495 (6th Cir. 2014) ...............................................................19

*Texas v. United States*,
    340 F. Supp. 3d 579 (N.D. Tex. 2018) ........................................................34

*Thiokol Corp. v. Department of Treasury*,
    987 F.2d 376 (6th Cir. 1993) .....................................................................53

*Trentadue v. Gorton*,
    738 N.W.2d 664 (Mich. 2007) ...................................................................65

*Tumminello v. Father Ryan High School, Inc.*,
    678 F. App'x 281 (6th Cir. 2017) ...........................................................26, 30

*Twersky v. Yeshiva University*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014)...........................................................66

*Tyra v. Organ Procurement Agency*,
    869 N.W.2d 213 (Mich. 2015).....................................................................15

*Ulrich v. Federal Land Bank*,
    480 N.W.2d 910 (Mich. Ct. App. 1991) ........................................................74

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ...........................................................54, 55

*Van Domelen v. Menominee Cty.*,
    935 F. Supp. 918 (W.D. Mich. 1996) .......................................................42, 43

*Vargo v. Sauer*,
    576 N.W.2d 656 (Mich. 1998)....................................................................11

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)......................................................................54

*Vierria v. California Highway Patrol*,
    644 F. Supp. 2d 1219 (E.D. Cal. 2009)........................................................56

xiv

*Virginia M. Damon Trust v. Mackinaw Financial Corp.*,
   No. 2:03-CV-135, 2008 WL 53230 (W.D. Mich. Jan. 2, 2008) ........................................19

*Vredevelt v. GEO Group, Inc.*,
   145 F. App'x 122 (6th Cir. 2005) .......................................................................................60

*Walker v. Barrett*,
   650 F.3d 1198 (8th Cir. 2011) ...........................................................................................70

*Warren ex rel. Good v. Reading School District*,
   278 F.3d 163 (3d Cir. 2002)..............................................................................................30

*Weisbord v. Michigan State University*,
   495 F. Supp. 1347 (W.D. Mich. 1980) ..............................................................................11

*White v. Bell*,
   656 F. App'x 745 (6th Cir. 2016) ......................................................................................47

*Will v. Michigan Department of State Police*,
   491 U.S. 58 (1989).............................................................................................................37

*Wilson v. City of Detroit*,
   No. 219777, 2001 WL 760020 (Mich. Ct. App. Jan. 30, 2001) .......................................59

*Wrobbel v. International Brotherhood of Electrical Workers, Local 17*,
   638 F. Supp. 2d 780 (E.D. Mich. 2009)............................................................................61

*Yan v. Pennsylvania State University*,
   No. 4:14-CV-01373, 2015 WL 3953205 (M.D. Pa. June 29, 2015)................................27

*Zelek v. State*,
   No. 305191, 2012 WL 4900517 (Mich. Ct. App. Oct. 16, 2016)....................................16

*Zsigo v. Hurley Medical Center.*,
   716 N.W.2d 220 (Mich. 2006) ..........................................................................................79

## STATUTES

1 U.S.C. § 1.................................................................................................................................53

18 U.S.C. § 1591.................................................................................................................52, 53, 55

18 U.S.C. § 1595.................................................................................................................52, 53, 55

18 U.S.C. § 1964.........................................................................................................................56

20 U.S.C. § 1681.........................................................................................................................26

28 U.S.C. § 1658.........................................................................................................................67

42 U.S.C. § 18116 ................................................................................................34, 35

42 U.S.C. § 1983 ....................................................................................................... *passim*

MCL 37.2101 ..................................................................................................................56

MCL 37.2103 ............................................................................................................57, 58

MCL 37.2302 ......................................................................................................56, 58, 59

MCL 37.2402 ..................................................................................................56, 57, 59, 60

MCL 37.2701 ..................................................................................................................61

MCL 600.2912 ..............................................................................................................15

MCL 600.5805 ....................................................................................................2, 66, 67, 68

MCL 600.5812 ..............................................................................................................67

MCL 600.5827 ..............................................................................................................65

MCL 600.5851 ..................................................................................................2, 67, 68, 69

MCL 600.5855 ........................................................................................................19, 72

MCL 600.5869 ..............................................................................................................66

MCL 600.6431 ....................................................................................................... *passim*

MCL 600.6452 ........................................................................................................67, 68, 70

MCL 691.1401 ..................................................................................................11, 14, 15

MCL 691.1407 ..................................................................................................13, 14, 23, 24

MCL 691.1413 ..............................................................................................................13

MCL 722.621 ..............................................................................................................62

MCL 722.622 ........................................................................................................63, 64

MCL 722.623 ..............................................................................................................63

MCL 722.633 ..............................................................................................................63

Pub. L. No. 108-193 ....................................................................................................54

Pub. L. No. 110-457 ....................................................................................................54

Pub. L. No. 111-148.................................................................................................34

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ...............................................................................................23

Fed. R. Evid. 201 ...................................................................................................22

H.R. Rep. No. 108-264(I) .......................................................................................53

S.B. 872...........................................................................................................2, 68

S.B. 875..................................................................................................................18

S.B. 876..................................................................................................................68

S.B. 877..................................................................................................................12

## INDEX OF EXHIBITS

| Exhibit 1 | Pending Cases Against the MSU Defendants |
|---|---|
| Exhibit 2 | Claims Asserted Against the MSU Defendants and Applicable Defenses (by Complaint) |
| Exhibit 3 | Timeline of Key Events |
| Exhibit 4 | Plaintiffs with Deficient Notices |
| Exhibit 5 | Notices Filed By Plaintiffs in the Court of Claims |
| Exhibit 6 | Plaintiffs Who Failed to File Any Notice |
| Exhibit 7 | Comparison of Allegations of Abuse, Actual Knowledge, Last Alleged Date of Tolling, and Filing of Notice |
| Exhibit 8 | Plaintiffs Affirmatively Alleging Actual Knowledge of Claims |
| Exhibit 9 | Plaintiffs Alleging Other Inappropriate Conduct by Nassar |
| Exhibit 10 | Fraudulent Concealment Allegations |
| Exhibit 11 | News Stories Related to Nassar and MSU (September 2016 – January 2018) |
| Exhibit 12 | Implausible Allegations of Lack of Knowledge |
| Exhibit 13 | Plaintiffs Alleging Title IX Standing |
| Exhibit 14 | Plaintiffs Alleging Affordable Care Act Claims |
| Exhibit 15 | Plaintiffs Alleging Trafficking Victims Protection Act Claims |
| Exhibit 16 | Plaintiffs Alleging Elliott-Larsen Civil Rights Act Claims |
| Exhibit 17 | Plaintiffs Alleging Assaults Exclusively at Non-MSU Locations |
| Exhibit 18 | Plaintiffs Alleging That Parents/Guardians Were Present During Alleged Abuse |
| Exhibit 19 | Plaintiffs Alleging Claims Barred by Statutes of Limitations |
| Exhibit 20 | Allegations Regarding MSU Individual Defendant Douglas Dietzel |
| Exhibit 21 | Allegations Regarding MSU Individual Defendant Lianna Hadden |
| Exhibit 22 | Allegations Regarding MSU Individual Defendant Kathie Klages |
| Exhibit 23 | Allegations Regarding MSU Individual Defendant Jeffrey Kovan |
| Exhibit 24 | Allegations Regarding MSU Individual Defendant Brooke Lemmen |
| Exhibit 25 | Allegations Regarding MSU Individual Defendant Kristine Moore |
| Exhibit 26 | Allegations Regarding MSU Individual Defendant Lou Anna Simon |
| Exhibit 27 | Allegations Regarding MSU Individual Defendant Gary Stollak |
| Exhibit 28 | Allegations Regarding MSU Individual Defendant William Strampel |
| Exhibit 29 | Allegations Regarding MSU Individual Defendant Destiny Teachnor-Hauk |

# **INTRODUCTION**[1]

These consolidated and related cases arise out of the criminal misdeeds of Larry Nassar, a now-disgraced doctor of osteopathic medicine who formerly worked for USA Gymnastics from 1986-2015 and MSU from 1996-2016. To the outside world, including his colleagues at MSU, Nassar appeared to be an exemplary physician and a respected member of the community. But this changed in the fall of 2016, when a former patient accused Nassar of sexually assaulting her, sixteen years earlier, under the guise of medical treatment. In response to these allegations, MSU promptly terminated Nassar, other victims stepped forward, and law enforcement investigated and charged Nassar with multiple crimes.

Shortly after the first public reports of Nassar's misconduct, his victims began to file suit against MSU and USA Gymnastics, alleging that these organizations and certain of their employees were civilly liable for Nassar's crimes. This "first-wave" litigation began with a single California state court complaint in November 2016, and—over the course of 18 months—expanded to more than 300 plaintiffs litigating against MSU in this Court, and additional plaintiffs litigating in several courts in California. At the same time, Nassar's criminal proceedings progressed and, in November 2017, he pled guilty to ten counts of first degree criminal sexual conduct. Nassar publicly admitted that he exploited his victims' trust and his position of authority to perpetrate sexual assaults that had no medical purpose.

In January and early February 2018, courts held widely televised sentencing hearings, during which more than 150 women and girls confronted Nassar with victim-impact statements. On the heels of those hearings, the Michigan Senate proposed a series of Nassar-inspired bills

---

[1]   Capitalized terms not defined in this brief have the meaning ascribed to them in the MSU Defendants' accompanying Joint Omnibus Motion to Dismiss.

intended to, among other things, amend the Governmental Immunity Act[2], Court of Claims Act, and statutes of limitations. Specifically, the Senate proposed retroactively (1) eliminating sovereign immunity for tort claims based on sexual misconduct; (2) eliminating the six-month time limit for minor victims of sexual misconduct to file governmental notice of intent to sue the state; and (3) expanding all statutes of limitations, including the limitations period for claims against the state, to render timely civil claims premised on sexual misconduct dating back to 1992. *See* S.B. 872, 875, 876, 877 (2018).

These bills did not pass. The Legislature instead passed other bills that provided prospective relief for future victims of sexual abuse, including certain amendments to the generally applicable statute of limitations. *See* MCL 600.5805(6), 600.5851b.

Meanwhile, in May 2018, MSU reached a settlement with 333 first-wave plaintiffs. MSU agreed to immediately pay $425 million to the first-wave plaintiffs, while holding $75 million in reserve for the defense or resolution of unknown future claims, with any remainder reverting to the first-wave plaintiffs after two years. When news of this settlement became public, Plaintiffs here—the "second-wave" plaintiffs—began to file suit.

Plaintiffs are 107 individuals claiming to be victims of Nassar, who seek redress for Nassar's intentional misconduct from the MSU Defendants under a number of different common law and statutory theories.[3] The MSU Defendants, however, are not liable for Nassar's crimes.

As a threshold and dispositive matter, sovereign immunity bars all of Plaintiffs' state law claims against MSU. It is well-established that MSU is a state entity entitled to the privileges and

---

[2]   The Governmental Immunity Act is also known as the Governmental Tort Liability Act.

[3]   As of the date of this filing, MSU has individually settled the claims of 72 second-wave Plaintiffs. A chart setting forth the Complaints pending against the MSU Defendants, including the current Plaintiffs in each Complaint, is attached hereto as Exhibit 1.

immunities of the state. Plaintiffs who wish to sue MSU for personal injury must both

(1) demonstrate that their claims fall within one of the limited, statutory exceptions to immunity

and (2) file a proper governmental notice of intent to sue the state within six months of the event

giving rise to the cause of action—here, the alleged assaults. Plaintiffs fail on both fronts.

First, as recognized by the Michigan Supreme Court and the Sixth Circuit, there is no

intentional tort exception to the state's immunity; thus, MSU retains absolute immunity from

liability for Nassar's intentional misconduct. That the Legislature recently refused to amend the

Governmental Immunity Act to create an exception to immunity for sexual abuse underscores

that no such exception exists.

Second, all Plaintiffs failed to file timely governmental notices, which is fatal to every

state law claim against MSU. Because the notice requirement serves legitimate state interests, it

is constitutional and rigorously enforced. Indeed, this case, in which MSU settled hundreds of

first-wave claims only to face a second wave of claims, illustrates precisely why the state

requires notice: it provides the state with the opportunity to evaluate claims and appropriately

allocate monetary resources. Because the state knows that only timely notices could result in

liability, the notice requirement eliminates uncertainty regarding the extent of future demands.

Indeed, dismissal of Plaintiffs' belated claims on notice grounds is precisely what the Legislature

expected and intended when it recently refused to amend the Court of Claims Act to allow late-

filed notices by minor victims of sexual misconduct.

Similarly, the MSU Individuals are immune from liability for Plaintiffs' state law claims.

The Governmental Immunity Act shields a government employee from tort liability where, as

here, the employee's conduct does not amount to gross negligence that is "the" proximate cause

of the injury or damage. The proximate cause in this context contemplates only *one* cause. Here,

the MSU Individuals cannot be liable because Nassar's criminal activity was *the* single, proximate cause of Plaintiffs' alleged injuries.

Plaintiffs' federal claims cannot survive either. Most Plaintiffs lack standing under Title IX because they were not MSU students at the time of the alleged assaults. Those Plaintiffs with standing fail to plead viable Title IX claims because they do not allege that Nassar's misconduct was reported to an "appropriate person" under the law, or that MSU otherwise acted with "deliberate indifference" to alleged reports of sexual assault.

Plaintiffs who allege assaults prior to the March 2010 enactment of the Affordable Care Act cannot rely on that statute to bring sex discrimination claims against MSU because it is not retroactive. Likewise, Plaintiffs who allege assaults at non-MSU locations lack standing because they cannot allege discrimination in a federally funded health program. Otherwise viable Affordable Care Act claims fail for the same reasons as Plaintiffs' Title IX claims because the Affordable Care Act incorporates the same liability standards.

Plaintiffs' claims under 42 U.S.C. § 1983 against MSU or the MSU Individuals in their official capacities fail as a matter of law because Section 1983 allows suits for damages only against state employees in their individual capacities. The MSU Individuals are generally immune from Section 1983 claims in their individual capacities, and Plaintiffs do not allege that they engaged in constitutional violations that would be required to overcome that immunity.

Plaintiffs' other, variably-asserted statutory claims—under the Trafficking Victims Protection Act, Racketeer Influenced and Corrupt Organizations Act, Elliott-Larsen Civil Rights Act, and Michigan Child Protection Law—are subject to certain immunity defenses and otherwise suffer from numerous deficiencies of standing and pleading.

Finally, most Plaintiffs' claims—which were filed years and, in some cases, decades after the alleged abuse—are time-barred and otherwise inadequately pled against the MSU Defendants.

Nassar committed horrible crimes. As a matter of law, however, the MSU Defendants are not liable for his crimes. Plaintiffs' Complaints must be dismissed.

## SUMMARY OF COMMON ALLEGATIONS[4]

Nassar began his career as a certified athletic trainer for USA Gymnastics ("USAG") in 1986.[5] (*E.g.*, 18-1018, PageID.21-22; 18-1038, PageID.9.) He received his medical degree from MSU in 1993. (*E.g.*, 18-987, PageID.252; 18-1018, PageID.21; 18-1038, PageID.9.) Thereafter, from approximately 1996 to 2016, Nassar worked as a physician and Associate Professor for MSU. (*E.g.*, 18-987, PageID.253; 18-1018, PageID.22; 18-1038, PageID.10, 27-28.) During most of this time period, Nassar simultaneously served as USAG's National Medical Director and National Team Physician. (*E.g.*, 18-987, PageID.253; 18-1018, PageID.21-22; 18-1038, PageID.9-10.) In addition to his roles at MSU and USAG, Nassar volunteered at Gedderts' Twistars Gymnastics Club ("Twistars"). (*E.g.*, 18-987, PageID.253; 18-1038, PageID.9.) Because of his perceived expertise, Nassar was routinely sought out by or "highly recommended" to both athletes and non-athletes as a "renowned orthopedic sports medicine

---

[4]  This brief addresses only the factual allegations that are common among Plaintiffs. To the extent isolated Complaints plead unique allegations, such allegations will be addressed in individual side briefs per the Court's June 14, 2019 Scheduling Order.

[5]  Citations to "PageID" refer to the docket in lead case *Denhollander v. Mich. State Univ.*, No. 1:17-cv-00029. Because the 37 Complaints at issue to do not appear on the lead case docket, Complaint citations reference the consolidated or related case number and associated docket PageID in short format. For example, a citation to the first page of the Complaint in *Does 1-21 v. Mich. State. Univ.*, No. 1:18-cv-01038, will appear as: 18-1038, PageID.1.

physician" who was "well-respected in the sports medicine community." (*E.g.*, 18-831, PageID.128-129; 18-1018, PageID.5; 18-1047, PageID.7.)

In September 2016, former patient Rachael Denhollander publicly accused Nassar of sexually assaulting her, years earlier, under the guise of medical treatment. (*E.g.*, 18-1038, PageID.35.) This revelation prompted a series of events that caused Nassar's carefully constructed façade to rapidly crumble. MSU promptly terminated Nassar. (*E.g.*, *id.*, PageID.27-28.) The Michigan Attorney General charged Nassar in Ingham and Eaton counties with multiple counts of criminal sexual conduct. (*E.g.*, 18-1018, PageID.43-45; 18-1038, PageID.35-37.) Additionally, Nassar was federally indicted for receipt and possession of child pornography and destruction and concealment of records. (*E.g.*, 18-1018, PageID.43-44; 18-1038, PageID.35-36.)

By November 2017, Nassar had pled guilty to seven counts of first degree criminal sexual conduct in Ingham County, three counts of first degree criminal sexual conduct in Eaton County, and each of the federal charges against him. (*E.g.*, 18-1018, PageID.47; 18-1038, PageID.36-37.) He received an effective life sentence for his crimes. (*See, e.g.*, 18-1018, PageID.47-48; 18-1038, PageID.36-37.)

Plaintiffs here allege that at various times from approximately 1986—a decade before Nassar worked for MSU—through mid-2016, Nassar sexually assaulted them under the guise of medical treatment. (*See* Exs. 4, 19 (citing alleged dates of abuse).) Most Plaintiffs allege the assaults occurred at the MSU Sports Medicine Clinic or in training facilities on MSU's campus. Some Plaintiffs additionally or exclusively allege they were assaulted at USAG facilities or events (including at the Karolyi Ranch in Texas), Twistars facilities or events, Nassar's private residence, or other non-MSU locations or events. (*See, e.g.*, Ex. 17.)

Although Plaintiffs allege assaults dating back as early as 1986, most Plaintiffs claim that Nassar so thoroughly deceived them that they did not know they were victims until sometime in 2016 or later, after the allegations against Nassar first surfaced in the media. (*E.g.*, 18-831, PageID.149; 18-1038, PageID.40.) Likewise, some of Plaintiffs' parents, who were in the examination room during the alleged assaults, were deceived because Nassar positioned himself to block the parents' view. (*See* Ex. 18.) Some Plaintiffs claim that Nassar appeared aroused or made inappropriate comments during their "treatments," yet Nassar was so well regarded that they did not suspect wrongdoing. (*See* Ex. 9.)

Despite Nassar's deception, Plaintiffs allege on information and belief that a few of the settled first-wave plaintiffs—who are not parties to these cases—raised concerns about Nassar's conduct to MSU employees from 1997 to 2004, and that such concerns were not elevated or investigated:

- In approximately 1997 or 1998, two minor gymnasts (Larissa Boyce and Jane B8 Doe) allegedly contemporaneously raised concerns to Kathie Klages, then the MSU women's gymnastics coach;

- In approximately 1999, an MSU track athlete (Christie Achenbach) allegedly raised concerns to an MSU track coach and unidentified MSU athletic trainers;

- In approximately 2000, an MSU softball player (Tiffany Thomas Lopez) allegedly raised concerns to MSU athletic trainers Lianna Hadden and Destiny Teachnor-Hauk;

- In approximately 2001 or 2002, an MSU volleyball player (Jennifer Rood Bedford) allegedly raised concerns to MSU athletic trainer Lianna Hadden; and

- In approximately 2004, a minor who was not a patient of Nassar (Kyle Stephens) allegedly disclosed abuse by Nassar to psychologist Gary Stollak, who then served as an MSU psychology professor.

(*E.g.*, 18-987, PageID.259-262; 18-1018, PageID.28-34; 18-1038, PageID.19-20.)

Plaintiffs additionally allege that, in April 2014, an adult patient of Nassar (first-wave plaintiff Amanda Thomashow) reported concerns about Nassar to MSU. (*E.g.*, 18-831,

PageID.145; 18-987, PageID.262.) MSU doctor Jeffrey Kovan received the complaint and
immediately elevated it to MSU's Office of Inclusion and Intercultural Initiatives ("I3").
(PageID.9950.)[6] Thomashow alleged Nassar touched her inappropriately during a medical
appointment, but did not allege vaginal or anal penetration. (*E.g.*, 18-831, PageID.145; 18-987,
PageID.262; *see also* PageID.9953)

Kristine Moore, who was then an Assistant Director for I3, investigated whether Nassar's
conduct, as alleged by Thomashow, violated MSU's Sexual Harassment Policy. (*E.g.*, 18-1038,
PageID.24-25.) During the course of the investigation, Moore interviewed ten witnesses,
including several doctors. (*See* PageID.9951-9966.) Based on her investigation, Moore
determined at the time that Nassar's conduct did not violate MSU policy because it was "not of a
sexual nature" and was "medically appropriate." (*E.g.*, 18-1018, PageID.37; 18-1038,
PageID.25-26; *see also* PageID.9969.) Nevertheless, because Nassar's conduct had caused
Thomashow distress, Moore recommended evaluation of certain Sports Medicine Clinic
practices. (*E.g.*, 18-1038, PageID.25-26; *see also* PageID.9971-9972.)

At the conclusion of the investigation, William Strampel, who at the time was the Dean
of MSU's College of Osteopathic Medicine, instructed Nassar by email that, going forward,
when performing procedures near sensitive areas, he should utilize a chaperone, minimize skin-
on-skin contact, and explain such procedures to the patient in detail. (*E.g.*, 18-987, PageID.263;
18-1038, PageID.26-27.) Plaintiffs allege that Strampel sent a copy of this email to MSU doctor
Douglas Dietzel. (*E.g.*, 18-987, PageID.263; 18-1038, PageID.27.)

---

[6]   On a motion to dismiss, the Court may consider "items appearing in the record of the case."
*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The report of I3's investigation
appears on the lead case docket at PageID.9949-9994.

No other reports were made to MSU regarding Nassar's conduct until late August 2016, when Rachael Denhollander filed a criminal complaint against Nassar. Denhollander alleged that 16 years earlier, when she was a minor, Nassar assaulted her under the guise of medical treatment by digitally penetrating her vagina and anus. (*E.g.*, 18-1018, PageID.42.) When Denhollander's claims were publicized in September 2016, other patients of Nassar stepped forward to allege similar abuse. (*E.g.*, 18-1038, PageID.35; 18-1047, PageID.11.) Following Denhollander's allegations, MSU immediately suspended Nassar, and then terminated him on September 20, 2016. (*E.g.*, 18-1038, PageID.27-28.)

Plaintiffs allege that the MSU Defendants are liable for Nassar's crimes, variably asserting common law and state and federal statutory claims. A chart setting forth the counts asserted in each Complaint, the MSU Defendants named on each count, and the applicable defenses to each count, is attached hereto as Exhibit 2.

## STANDARD OF REVIEW

The MSU Defendants move to dismiss Plaintiffs' Complaints on grounds of sovereign and individual immunity, as well as failure to state a claim for which relief may be granted. "A motion to dismiss on the ground that sovereign immunity bars the plaintiff's claims is properly treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Odom v. Univ. of Mich.*, No. 16-12791, 2017 WL 2117978, at *2 (E.D. Mich. May 16, 2017); *see also Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). The plaintiff generally bears the burden of establishing jurisdiction. *Odom*, 2017 WL 2117978, at *2.

By contrast, courts review motions to dismiss based on a state employee's qualified immunity under Rule 12(b)(6). *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005); *see also Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). Where a complaint

unambiguously shows that an individual defendant is entitled to immunity as a matter of law, dismissal is appropriate. *See Jackson*, 429 F.3d at 589-90.

To survive a motion to dismiss for failure to state a claim, a plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct"). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). Although courts generally accept as true the complaint's allegations, this rule is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Accordingly, a complaint that does not provide the "when, where, [] what or by whom" to support conclusory allegations fails to state a claim. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

## ARGUMENT

## I.   MSU IS IMMUNE FROM ALL OF PLAINTIFFS' STATE LAW CLAIMS

All Plaintiffs assert common law tort and Michigan statutory law claims against MSU. These claims must be dismissed with prejudice because (A) tort claims against MSU are barred by sovereign immunity and no exception to that immunity applies, and (B) all Plaintiffs failed to file a timely governmental notice of intent to sue that meets the strict statutory requirements, which is a non-curable precondition to all suits against MSU premised on state law.

### A.   Sovereign Immunity Bars All Tort Claims Against MSU

"From the time of Michigan's statehood, [the Michigan Supreme Court's] jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents, and that any

relinquishment of sovereign immunity must be strictly interpreted." *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 225 (Mich. 2002); *see also Ross v. Consumers Power Co.*, 363 N.W.2d 641, 650 (Mich. 1984) ("[T]he sovereign (the state) [is] immune from *all* suits, including suits for tortious injuries which it [] caused."). To ensure this immunity could not be abrogated by the courts, the Legislature enacted the Governmental Immunity Act ("GIA"), MCL 691.1401, *et seq.* *Ross*, 363 N.W.2d at 654. This act codifies long-standing common law principles of state sovereign immunity and makes clear that "the state [is] immune from tort liability when it [is] engaged in the exercise or discharge of a governmental function, unless a statutory exception [is] applicable." *Id.*; *see also* MCL 691.1407(1); *In re Bradley Estate*, 835 N.W.2d 545, 557 (Mich. 2013) (holding GIA grants immunity from all "noncontractual civil wrong[s]" no matter how the action is labeled).

It is "undisputed" that "MSU, as an extension of the state, generally is entitled to invoke sovereign immunity." *Vargo v. Sauer*, 576 N.W.2d 656, 664 (Mich. 1998). The GIA includes MSU in the definition of "state" for purposes of immunity, MCL 691.1401(g), and the courts—including this Court—consistently have recognized MSU as a state institution, entitled to the privileges and immunities of the state. *See, e.g.*, *Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) (Quist, J.) ("MSU is a state entity"); *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1356 (W.D. Mich. 1980); *Vargo*, 576 N.W.2d at 664; *Pew v. Mich. State Univ.*, 859 N.W.2d 246, 253 (Mich. Ct. App. 2014).[7]

Governmental immunity is not an affirmative defense; it is a characteristic of government. *Fairley v. Dep't of Corrs.*, 871 N.W.2d 129, 133 (Mich. 2015); *Mack v. City of*

---

[7]   Plaintiffs agree that MSU is an "arm of the state." (*See, e.g.*, 18-1012, PageID.21; 18-1018, PageID.23; 18-cv-1038, PageID.18; 18-1047, PageID.23-24.)

*Detroit*, 649 N.W.2d 47, 54-55 (Mich. 2002). This means that MSU is entitled to a *presumption* of immunity. *See Mack*, 649 N.W.2d at 56; *Doe v. N. Michigan Univ.*, No. 2:18-CV-196, 2019 WL 2269721, at *10 (W.D. Mich. May 28, 2019) (Quist, J.). Plaintiffs bear the burden to overcome this presumption by pleading their claims "in avoidance of governmental immunity." *Hannay v. Dep't of Transp.*, 860 N.W.2d 67, 75 (Mich. 2014); *see also, e.g.*, *Odom v. Wayne Cty.*, 760 N.W.2d 217, 227 (Mich. 2008) (requiring the plaintiff to plead in avoidance of immunity "relieves the government of the expense of discovery and trial in many cases"). In particular, Plaintiffs must establish that their claims "fall[] within a statutory exception" to immunity. *Mack*, 649 N.W.2d at 56.

Plaintiffs have not carried this burden because their claims are premised on Nassar's intentional torts. Michigan has never recognized—and the Legislature recently refused to create—an "intentional tort" exception to immunity. Thus, while state employees may be individually liable for the intentional torts they commit, the state is immune. *E.g.*, *Smith v. Dep't of Pub. Health*, 410 N.W.2d 749, 751 (Mich. 1987) ("There is no 'intentional tort' exception to governmental immunity."), *aff'd*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 351 (6th Cir. 2008) ("All Michigan cases agree that government agencies are immune from liability for intentional torts.").

Indeed, the Michigan Legislature recently considered and *rejected* amendments to the GIA that would have abrogated MSU's immunity from "tort liability for sexual misconduct" of an employee. *See* S.B. 877 (Mar. 14, 2018). This is stark evidence of the Legislature's state of mind: it recognized that no immunity exception applied to hold MSU liable for Nassar's misconduct, and ultimately declined to create such an exception. In these circumstances, the GIA

12

"should not be held to authorize what the Legislature explicitly rejected." *Bush v. Shabahang*, 772 N.W.2d 272, 282 (Mich. 2009).

Undeterred, many Plaintiffs attempt to plead that the proprietary function exception to immunity, MCL 691.1413, applies to their claims against MSU.[8] (*See*, *e.g.*, 18-1012, PageID.21; 18-1018, PageID.23-24; 18-1038, PageID.17-18; 18-1047, PageID.24.) For this exception to apply, however, Plaintiffs must plead facts showing that the activity at issue—the operation of the MSU Sports Medicine Clinic—"[is] conducted primarily for the purpose of producing a pecuniary profit," and "cannot normally be supported by taxes or fees." *Hyde v. Univ. of Mich. Bd. of Regents*, 393 N.W.2d 847, 862 (Mich. 1986). Although Plaintiffs recite the bare legal conclusion that the Clinic is a proprietary function, they fail to plead any facts plausibly suggesting that operation of the Clinic (even if self-sustaining) is conducted primarily for pecuniary reasons, rather than to fulfill MSU's educational and research missions. (*E.g.*, 18-1012, PageID.21; 18-1018, PageID.23-24; 18-1038, PageID.17-18; 18-1047, PageID.24.) The Court is free to disregard these bare conclusions of law because they are unsupported by any alleged facts and contrary to controlling authority. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) ("'[A] legal conclusion couched as a factual allegation' need not be accepted as true." (quoting *Twombly*, 550 U.S. at 555)).

Operation of the Sports Medicine Clinic is clearly a governmental function. A governmental function—as opposed to a proprietary function—is any "'activity [that] is expressly or impliedly mandated or authorized by constitution, statute, or other law.'" *Hyde*, 393

---

8    To the extent applicable, the proprietary function exception to immunity can apply only to claims against a governmental agency, not an individual. *See* MCL 691.1413 ("The immunity of the *governmental agency* shall not apply to actions . . . arising out of the performance of a proprietary function . . . ." (emphasis added)).

N.W.2d at 855 (quoting *Ross*, 363 N.W.2d at 661); *see also* MCL 691.1401(b) (defining

"governmental function"). This definition "is broad and encompasses most of the activities

undertaken by governmental agencies." *Ross*, 363 N.W.2d at 661. Indeed, Michigan courts

recognize that medical facilities that are "an arm of one of the state's educational institutions"—

like the MSU Sports Medicine Clinic—are *not* proprietary in nature. *Cunmulaj v. Chaney*, Nos.

282264, 282265, 2009 WL 349753, at *6 (Mich. Ct. App. Feb. 12, 2009) (concluding MSU's

veterinary hospital is not a proprietary function); *see also Hyde*, 393 N.W.2d at 860-64

(concluding public general hospital and university hospital are not proprietary functions). The

proprietary function exception is inapplicable as a matter of law.

Some Plaintiffs attempt to plead that the medical care exception, MCL 691.1407(4),

applies to their claims.[9] (*See, e.g.*, 18-915, PageID.310-311; 18-cv-987, PageID.247.) But sexual

assault is not medical care; it is an intentional tort. *Cf. Perez v. Oakland Cty.*, No. 278129, 2008

WL 5158809, at *3 (Mich. Ct. App. Dec. 9, 2008) (finding "medical care or treatment" as used

in the GIA means "to administer or apply remedies of or relating to the practice of medicine, by

a medical professional, to a patient for disease or injury"). Indeed, Nassar admitted his conduct

was criminal and had no medical purpose. (*See* PageID.26212-26213.) Intentional torts are not

excepted from MSU's immunity; thus, the medical care exception cannot apply to any of

Plaintiffs' claims because they are all premised on Nassar's intentional misconduct.[10]

---

[9]   The medical care exception was enacted on October 24, 2000, and does not apply
retroactively. 2000 P.A. 318. Plaintiffs' alleging abuse prior to that time cannot invoke it.

[10]   Some Plaintiffs allege Nassar assaulted them exclusively in non-MSU locations. (*See* Ex.
17.) Such Plaintiffs were not "patients" of MSU; therefore, the medical care exception could
not apply to their claims in any event. *See McLean v. McElhaney*, 798 N.W.2d 29, 35 (Mich.
Ct. App. 2010) (for the medical care exception to apply the plaintiff "must have [] been the
defendant['s] 'patient'" (quoting MCL 691.1407(4)).

Moreover, any purported medical malpractice claims are barred—regardless of whether the medical care exception could apply—because Plaintiffs failed to satisfy the mandatory pre-suit requirements for such claims. MCL 600.2912b; *see also, e.g.*, *Erickson v. United States*, No. 2:15-CV-95, 2016 WL 316725, at *4 (W.D. Mich. Jan. 27. 2016) (Quist, J.); *Tyra v. Organ Procurement Agency*, 869 N.W.2d 213, 226 (Mich. 2015).

Because no exception to immunity applies, all tort claims against MSU, including those premised on vicarious liability for Nassar's misconduct, must be dismissed with prejudice.

### B.    Failure to Comply with the Governmental Notice Requirement Bars All State Law Claims Against MSU

Even if an exception to immunity could apply, all of Plaintiffs' state law claims against MSU fail because Plaintiffs did not comply with the six-month governmental notice requirement. MCL 600.6431(3). When the government "voluntarily subject[s] itself to liability, it may also place conditions or limitations on the liability imposed." *McCahan v. Brennan*, 822 N.W.2d 747, 750 (Mich. 2012); *see also Rowland v. Washtenaw Cty. Road Comm'n*, 731 N.W.2d 41, 51 (Mich. 2007). "One such condition on the right to sue the state is the notice provision of the Court of Claims Act," which bars all claims against the state unless the plaintiff first files a notice that strictly complies with statutory requirements. *McCahan*, 822 N.W.2d at 750; *see also* MCL 691.1401(1) (providing that all claims authorized against the state must be brought in accordance with the Court of Claims Act).

The Court of Claims Act requires all personal injury claimants to "file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action." MCL 600.6431(3). This notice must provide specified details regarding the nature of the claim and alleged damages, and be signed and verified by the claimant. MCL 600.6431(1). The plain language of this statute

"established a clear procedure that eliminates any ambiguity about whether an attempted notice is effective." *Fairley*, 871 N.W.2d at 134.

Failure to comply with the notice requirement, in any respect, "is a complete defense that may be raised at any time by a defendant entitled to governmental immunity." *Id.* at 130. The Michigan Supreme Court has emphasized that the "statutory notice requirements must be interpreted and enforced as plainly written" and "no judicially created saving construction is permitted." *McCahan*, 822 N.W.2d at 748; *see also Fairley*, 871 N.W.2d at 133-34; *Rowland*, 731 N.W.2d at 54-55. "Courts may not engraft an actual prejudice requirement or otherwise reduce the obligation to comply fully with the statutory notice requirements." *McCahan*, 822 N.W.2d at 746-47; *see also Fairley*, 871 N.W.2d at 134. Thus, even when a state university had actual notice of claims within the six-month notice period, the Michigan Supreme Court affirmed the dismissal of those claims because the plaintiff did not timely file a notice in the Court of Claims. *McCahan*, 822 N.W.2d at 759. Likewise, the failure of the plaintiff—as opposed to her attorney—to sign or verify the notice is fatal. *See Fairley*, 871 N.W.2d at 134-35; *St. Onge v. Bray, Cameron, Larabee & Clark PC*, No. 341953, 2019 WL 3432575, at *4 (Mich. Ct. App. July 30, 2019). And, defective notice may not be cured or excused. *See Progress Mich. v. Attorney Gen.*, 922 N.W.2d 654, 661-62 (Mich. Ct. App. 2018), *appeal granted*, 923 N.W.2d 886 (Mich. 2019).

Relying on this clear precedent, Michigan appellate courts have refused to toll the six-month notice period for *any* reason, even for minor tolling or fraudulent concealment. *See, e.g.*, *Zelek v. State*, No. 305191, 2012 WL 4900517, at *2 (Mich. Ct. App. Oct. 16, 2016) (refusing to apply minor tolling to governmental notice provision); *Brewer v. Cent. Mich. Univ. Bd. of Trs.*, No. 312374, 2013 WL 6124216, at *2 (Mich. Ct. App. Nov. 21, 2013) (same); *Super ex. rel.*

*Super v. Dep't of Transp.*, No. 282636, 2009 WL 2032041, at *2 (Mich. Ct. App. July 14, 2009) (same); *see also Fairley*, 871 N.W.2d at 133-34 (citing approvingly to "no saving construction" rule relied on by Michigan appellate court in rejecting fraudulent concealment tolling for notices).

The notice requirement applies to all state law claims against MSU, both common law and statutory. *See Hawthorne-Burdine v. Oakland Univ.*, Nos. 338605, 339188, 2018 WL 1832336, at *3 (Mich. Ct. App. Apr. 17, 2018) (recognizing the Michigan Legislature "clearly intended for MCL 600.6431[] to apply regardless of the type of claim being brought"); *Does v. Mich. Dep't of Corr.*, No. 15-000238-MZ, 2016 WL 5800404, at *5 (Mich. Ct. Cl. Feb. 1, 2016) (holding Elliott-Larsen Civil Rights Act and Child Protection Law claims barred for failure to comply with notice requirement). This Court is bound to apply the notice requirement because when exercising pendent jurisdiction "the outcome of the litigation in [] federal court should be substantially the same" as in state court. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (explaining that "federal courts entertaining state-law claims against [the state] are obligated to apply [] notice-of-claim provision[s]").

### 1.      Plaintiffs Failed to Comply with the Notice Requirement

Here, to bring suit against MSU, Plaintiffs were required to file proper notices or claims in the Court of Claims within six months of the alleged assaults. MCL 600.6431(3); *Lemmerman v. Fealk*, 534 N.W.2d 695, 698, 703 (Mich. 1995) (claims premised on sexual assault accrue at time of abuse); *see also infra* at 65-66. All Plaintiffs' notices were filed, if at all, well outside of this six-month period and are therefore untimely; six Plaintiffs also failed to sign or notarize their belated notice; and five Plaintiffs failed to file any notice at all. (*See* Exs. 4-6.) Because all Plaintiffs patently failed to comply with the governmental notice requirement, all of their state law claims against MSU are barred.

17

This is precisely the outcome that the Michigan Legislature intended here. In 2018, the Michigan Senate proposed changes to the governmental notice requirement that would retroactively allow minor victims of sexual misconduct to file notices "at any time" and without signature or verification. S.B. 875 (Feb. 27, 2018). The bill did not pass. *See* MCL 600.6431. The Legislature understood that all of Nassar's victims, including minors, were barred from pursuing claims against MSU due to untimely or unfiled notices. It considered retroactively preserving minor victims' claims against the state, but declined to do so. Excusing the belated and otherwise deficient notices here would undermine clear legislative intent—an impermissible outcome. *See Bush*, 772 N.W.2d at 282.

## 2. No Tolling Applies to Governmental Notices as a Matter of Law

Plaintiffs recognize that they did not comply with the governmental notice requirement, but hope to escape dismissal by claiming that the six-month filing period should be tolled due to MSU's purported fraudulent concealment of their claims. Applying fraudulent concealment tolling to the notice requirement runs afoul of unequivocal Michigan Supreme Court precedent denouncing any savings construction for notices. *See supra* at 16-17. Nevertheless, in a recent case arising out of the Flint water crisis, a Michigan appellate court found that fraudulent concealment could toll the six-month notice period if a defendant "actively concealed" the causes of action such that a plaintiff "*could not, or should not, have known* of the existence of the causes of action until a date *less than six months prior* to the date of [her] complaint." *See Mays v.*

*Snyder*, 916 N.W.2d 227, 254 (Mich. Ct. App. 2018) (emphases added), *appeal granted sub nom.*, *Mays v. Governor of Mich.*, 926 N.W.2d 803 (Mich. 2019).[11]

This Court is not bound by *Mays* and should decline to follow it. *See Techner v. Greenberg*, 553 F. App'x 495, 504 (6th Cir. 2014); *Virginia M. Damon Tr. v. Mackinaw Fin. Corp.*, No. 2:03-CV-135, 2008 WL 53230, at *6 (W.D. Mich. Jan. 2, 2008) (Quist, J.). Instead, this Court should apply established Michigan Supreme Court precedent strictly construing the notice requirement. *See Robinson v. Fiedler*, 870 F. Supp. 193, 199 (W.D. Mich. 1994) (Quist, J.) (federal court "need not blindly follow" an appellate court when convinced "the highest court of the state would decide otherwise"), *aff'd*, 91 F.3d 144 (6th Cir. 1996).[12] Proceeding in this manner comports with the general principle that, when choosing between interpretations of state law that either restrict or expand liability, federal courts "should choose the narrower and more reasonable path." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

### 3. Fraudulent Concealment Cannot Toll the Notice Requirement Here Because Plaintiffs Knew of Their Claims

Even if *Mays* applies, Plaintiffs do not and cannot allege that fraudulent concealment tolling applies to their notices. In addition to the reasons set forth *infra* at 70-75, Plaintiffs'

---

[11]   When granting leave to appeal in *Mays*, the Michigan Supreme Court directed the parties to address "whether the Court of Appeals erred in holding that the fraudulent concealment exception in MCL 600.5855 applies to the statutory notice period in MCL 600.6431(3)." *Mays*, 926 N.W.2d 803. The appeal is pending.

[12]   It is evident that the *Mays* court strayed far afield of Michigan Supreme Court precedent rejecting judicially created savings constructions, as well as settled statutory interpretation principles. The court engrafted fraudulent concealment tolling onto the governmental notice provision by relying on MCL 600.5855, which expands statutes of limitations to two years after discovery of a fraudulently concealed claim. *See Mays*, 916 N.W.2d at 253. Because the two-year tolling period of MCL 600.5855 did not square with the six-month notice requirement, however, the court incorrectly disregarded the statutory language and created its own from whole cloth, allowing notice to be filed within only *six months* after discovery of a fraudulently concealed claim. *Mays*, 916 N.W.2d at 254.

allegations of fraudulent concealment fail because they concede that they knew, or as a matter of law they should have known, of their claims more than six months before they filed notice.

It is black letter law that fraudulent concealment tolling does not apply to a known cause of action and a plaintiff "will be held to know what [s]he ought to know." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 407 (Mich. Ct. App. 2004). Fraudulent concealment tolling "was not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by facts known." *Prentis Fam. Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 907 n.2 (Mich. Ct. App. 2005). Thus, if a plaintiff objectively *should have known* of the existence of her claim, she cannot claim fraudulent concealment. *See id.*; *see also Riverside Auto Sales, Inc. v. GE Capital Warranty Corp.*, No. 2:03-cv-55, 2004 WL 2106638, at *5 (W.D. Mich. Mar. 30, 2004) (Quist, J.) (no fraudulent concealment of known claims). This holds true even when victims of sexual abuse regrettably delay filing suit due to a "reluctance to initiate legal proceedings." *Doe*, 692 N.W.2d at 408.

Here, Plaintiffs filed notices of intent to sue between June 2018 and July 2019. (*See* Exs. 4, 5.) Plaintiffs' Complaints demonstrate on their face and as a matter of law that Plaintiffs knew or, at the very least, should have known of their claims more than six months prior to the time that they made these filings.

(a) **Plaintiffs Had Actual Knowledge of Their Claims**

First, many Plaintiffs' allegations conclusively establish that they actually knew of their claims more than six months before filing notice. Indeed, a few Plaintiffs admit that they knew of their claims at the time of the alleged abuse—years or decades before filing.[13] (*See, e.g.*, 18-

---

[13] Others allege facts strongly suggesting that they knew at the time that Nassar's conduct toward them was sexual in nature. (*See* Ex. 9.)

20

1046, PageID.43-44 (1992); 18-915, PageID.258-259 (1995); 18-1027, PageID.40-48 (1995-2002); 18-913, PageID.44 (2014).) Most Plaintiffs admit that they knew of their claims by "approximately 2016 [or shortly thereafter] when stories of Nassar's abuse of others became public." (*E.g.*, 18-987, PageID.279; *see also* Exs. 7-8). Others admit that they knew of their claims by November 2017, when Nassar openly admitted as part of his plea deal to having had sexual motivations for abuse disguised as treatment. (18-1025, PageID.13; Exs. 7-8.) Still others allege that they realized that they were victims during Nassar's sentencing hearings in January-February 2018 (*e.g.*, 18-1258, PageID.57), and at least two Plaintiffs testified at those hearings (*e.g.*, 18-1038, PageID.42; 18-829, PageID.11). Additionally, at least five Plaintiffs reported Nassar's abuse to the police by early 2018. (Ex. 8 (lines 3, 33-36).)

### (b)      Plaintiffs Had Constructive Knowledge of Their Claims

Second, as a matter of law, all Plaintiffs had constructive knowledge of their claims more than six months before filing notice. "The rule in this Circuit is that where events receive widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722 (6th Cir. 2004); *see also Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9, 20 (6th Cir. 2012) (no fraudulent concealment of sexual abuse claims where two news articles provided constructive notice that county funded program where abuse occurred); *Boler v. Snyder*, No. 16-000126, 2017 WL 4075963, at *9 (Mich. Ct. Cl. Feb. 17, 2017) (dismissing for failure to file timely notice because information was "available in the public domain and known to the citizenry"). Likewise, a plaintiff will be charged with knowledge of facts that were discoverable from public records. *Prentis*, 698 N.W.2d at 907 n.2.

Here, the public accusations against Nassar, his criminal proceedings, and related civil litigation pending against MSU were the subject of extraordinarily widespread publicity

beginning in September 2016.[14] (*See* Ex. 11.) At that time, more than 150 news articles covered

Denhollander's initial accusations against Nassar (which were virtually identical to Plaintiffs'

allegations here) and linked Nassar to MSU. (*Id.*) By November 2017, when Nassar pled guilty

to charges of criminal sexual misconduct, almost 2,000 articles mentioning Nassar and MSU had

been published by local and national news outlets. (*Id.*) And, in January 2018 *alone*, nearly 3,000

separate news articles locally, nationally, and internationally covered Nassar and made mention

of MSU. (*Id.*) Additionally, during this same time period, the public record grew to include

lawsuits against MSU and Nassar by hundreds of plaintiffs, Nassar's criminal indictments, and

Nassar's guilty pleas.[15] *See generally, e.g.*, *Denhollander v. Mich. State Univ.*, No. 17-cv-00029

(W.D. Mich. filed Jan. 10, 2017). (*See also, e.g.*, Ex. 3). Indeed, Plaintiffs' Complaints uniformly

acknowledge Nassar's indictments, guilty pleas, and sentencing.[16] (*E.g.*, 18-1038, PageID.35-

37.)

     Nevertheless, none of the Plaintiffs filed notice within six months of September 2016, or

even within six months of November 2017. (Exs. 4, 5.) And, although all Plaintiffs clearly knew

---

[14]   The MSU Defendants request that the Court take judicial notice of the fact of publication of the news articles cited in Exhibit 11. *See, e.g.*, *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 662 n.10 (6th Cir. 2005) ("We take judicial notice of the fact that the media articles cited above were published, without reaching any conclusions about their truth.") (citing Fed. R. Evid. 201).

[15]   Some plaintiffs make implausible allegations that they were still unaware of claims against MSU in 2018 because Nassar had never been sued. (*See* Ex. 12.) This is patently false.

[16]   The MSU Defendants request that the Court take judicial notice of Nassar's criminal proceedings and guilty pleas because they are a matter of public record and not subject to reasonable dispute. *See* Fed. R. Evid. 201(d); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (court may consider public records on motion to dismiss), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Indeed, Plaintiffs previously requested that the Court take judicial notice of these facts. (PageID.26034; *see also* PageID.26165-26238 (criminal dockets and pleas).)

or should have known of their claims long before Nassar's sentencing hearings, only eight

Plaintiffs filed a signed and verified notice within six months of the start of those proceedings on

January 16, 2018. (*See* Ex. 4 (lines 4-6, 28, 33, 36, 45, and 93).) Tellingly, Plaintiffs fail to plead

any actions by the MSU Defendants that could constitute fraudulent concealment during the six

months prior to filing their notices. Nor do they even attempt to plead the reasons they were

purportedly unable to discover their potential claims against MSU until February 2018 or later,

when hundreds of other Nassar victims brought suit—in a very public manner—against MSU

prior to that time. *See Krygoski Constr. Co. v. Johnson*, No. 2:01-CV-22, 2002 WL 1492204, at

*4 (W.D. Mich. Apr. 23, 2002) (Quist, J.) (no fraudulent concealment where plaintiffs fail to

plead their "own due diligence with particularity as required in Fed. R. Civ. P. 9(b)"). This Court

should decline to apply fraudulent concealment tolling to Plaintiffs' governmental notices and

dismiss with prejudice all state law claims against MSU for failure to comply with MCL

600.6431(3).

## II.   THE MSU INDIVIDUALS ARE IMMUNE FROM ALL TORT AND CHILD PROTECTION LAW CLAIMS

The MSU Individuals are entitled to immunity from liability for injuries caused while

acting within the scope of their employment for the state.[17] MCL 691.1407(2) (conferring

immunity from negligence-based torts upon state employees); *Odom*, 760 N.W.2d at 228

(recognizing government employees may be immune from liability for intentional torts).

---

[17]   Plaintiffs allege that defendant Stollak was acting in the scope of his MSU employment when a first-wave plaintiff allegedly disclosed to him that she had been abused by Nassar—the only substantive allegation against him. (*See* Ex. 27.) Although MSU and Stollak agree that Stollak's private counseling practice was not part of his MSU employment, this allegation is taken as true for purposes of this motion.

Although state employees must "raise and prove [their] entitlement to immunity as an affirmative defense," *id.* at 227-28, the MSU Individuals easily clear that hurdle.

Under the GIA, government employees are immune from liability for injuries caused while acting in the scope of employment unless the employee's conduct "amount[s] to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2)(c); *see Jones v. Bitner*, 832 N.W.2d 426, 428, 432-33 (Mich. Ct. App. 2013) (finding Child Protection Law does not abrogate governmental immunity, but the gross negligence exception could apply to claims of failure to report against state employees).[18] Proximate cause, as used in the GIA, is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000). This contemplates only "*one* cause." *Id.* at 319 (finding police officers immune from suit brought by bystanders injured during car chase because the single proximate cause of plaintiffs' injuries was "the reckless conduct of the drivers of the fleeing vehicles"); *see also Ray v. Swager*, 903 N.W.2d 366, 378 (Mich. 2017) (courts must consider each defendant's actions "alongside any other potential proximate causes to determine . . . 'the one most immediate, efficient, and direct cause' of the injuries.").

Accordingly, in the sexual assault context, courts have found a teacher's negligence was not the proximate cause of a student's injuries; the rapist was the single proximate cause. *Miller ex rel. Miller v. Lord*, 686 N.W.2d 800, 802 (Mich. Ct. App. 2004); *see also Gray v. Cry*, No. 291142, 2011 WL 4375074, at *4 (Mich. Ct. App. Sept. 20, 2011) (finding teacher who

---

[18]  The "gross negligence" exception applies only to individual employees, not to governmental agencies; therefore, MSU's immunity cannot be abrogated on this ground. *See, e.g.*, *Holmes v. City of Detroit*, No. 276949, 2008 WL 821591, at *6 (Mich. Ct. App. Mar. 27, 2008); *May v. Greiner*, No. 269516, 2006 WL 2987709, at *3 (Mich. Ct. App. Oct. 19, 2006).

encouraged students to fight was not the proximate cause of student's injuries; the other student was the proximate cause).

In this case, it is incontrovertible that Nassar was the one immediate and direct cause of Plaintiffs' injuries as he intentionally perpetrated sexual assaults against them. *See Campbell v. Dundee Cmty. Sch.*, No. 12-cv-12327, 2015 WL 4040743, at *12 (E.D. Mich. July 1, 2015) ("Where a child is abused by a third party, the third party is *the* proximate cause, and the governmental employee will not be held liable."), *aff'd*, 661 F. App'x 884 (6th Cir. 2016). Because "reasonable minds could not differ regarding the proximate cause" of Plaintiffs' injuries, the Court "should rule as a matter of law." *Id.* at *10 (dismissing Child Protection Law claims as barred by GIA). The MSU Individuals are not the proximate cause of Plaintiffs' injuries; therefore, all tort and Child Protection Law claims against them must be dismissed with prejudice.[19]

---

[19] The medical care exception may apply to individual state employees, but only to the extent they that were involved in the provision of medical care to a plaintiff. *See, e.g.*, *Clay v. Emmi*, No. 13-11555, 2014 WL 4855091, at *9 (E.D. Mich. Sept. 30, 2014) (exception not applicable to medics who transported plaintiff, but did not provide medical care), *aff'd*, 797 F.3d 364 (6th Cir. 2015); *McLean*, 798 N.W.2d at 36 (exception not applicable to CEO of health services agency where CEO did not provide medical care to plaintiff). Here, Plaintiffs fail to allege that *any* MSU Individual provided them with actionable medical care (*see* Exs. 20-29); thus the exception is inapplicable. Indeed, most Plaintiffs do not appear to have had any contact whatsoever with any MSU Individual. (*See id.*) Moreover, Plaintiffs admit that, by virtue of their positions, Klages, Hadden, Moore, Simon, and Teachnor-Hauk could have no responsibility for Plaintiffs' medical care.

### III.    PLAINTIFFS' TITLE IX CLAIMS FAIL

All but one Plaintiff—even those who were never treated by Nassar on MSU grounds—

bring Title IX claims against MSU.[20] (Ex. 2.) These claims fail because (A) all but six Plaintiffs

lack standing under Title IX because they fail to allege that they were MSU students at the time

of assault (*see* Ex. 13); and (B) regardless, Plaintiffs do not allege that an "appropriate person" at

MSU had actual notice of Nassar's abuse and made an "official decision" not to act. *See*

*Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 281 (6th Cir.) (upholding

dismissal where allegations did not plausibly establish that "appropriate person" had actual

knowledge of abuse), *cert. denied*, 138 S. Ct. 121 (2017).

#### A.    Non-Student Plaintiffs Lack Standing to Assert Title IX Claims

The Title IX claims of most Plaintiffs must be dismissed because they were not MSU

students or employees at the time of the alleged assaults and they, therefore, lack standing. Title

IX provides:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). "Though cast in broad terms, Section 1681 . . . addresses itself only to sex

discrimination against the participants in and the beneficiaries of federally assisted education

programs." *Romeo Cmty. Sch. v. U.S. Dep't of Health, Educ. & Welfare*, 438 F. Supp. 1021,

1031 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979). Accordingly, a school "may not be

---

[20]    Some Plaintiffs appear to bring Title IX claims against the MSU Individuals. (*See* Ex. 2.)
These claims must be dismissed because there is no individual liability under the statute.
*Soper ex rel. Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (holding student had no
private right of action under Title IX for damages against school officials in their individual
capacities).

liable for damages unless its deliberate indifference subjects *its students* to harassment." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999) (emphasis added).

Indeed, outside of the employment context, courts consistently have held that non-students lack standing to pursue a Title IX claim.[21] *See, e.g.*, *Loewen v. Grand Rapids Med. Educ. Partners*, No. 1:10-cv-1284, 2012 WL 1190145, at *12 (W.D. Mich. Apr. 9. 2012) (Quist, J.) (no Title IX liability where plaintiff "offer[ed] no evidence to show that she was an MSU student"); *K.T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *5-6 (E.D. Mo. Aug. 11, 2016) (non-student who was assaulted on university campus had no standing under Title IX), *aff'd on other grounds*, 865 F.3d 1054 (8th Cir. 2017); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 561-62 (D.R.I. 2017) (same), *aff'd*, 896 F.3d 127 (1st Cir. 2018); *Yan v. Pa. State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015) (former student had no standing under Title IX), *aff'd*, 623 F. App'x 581 (3d Cir. 2015). Non-students lack Title IX standing because they have not been "excluded from participation in, or denied the benefits of, any education program." *Doe*, 2017 WL 3911028, at *4; *K.T.*, 2016 WL 4243965, at *5-6.

Moreover, Title IX imposes liability on a school only when the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under the [school's] programs.'" *Id*. When conduct occurs entirely off school grounds, "the school . . . has control over neither the harasser, nor the context." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012) (no Title IX

---

[21]   School employees may have standing to bring suit under Title IX. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982).

claim for conduct that occurred off campus). Thus, as a matter of law, Plaintiffs cannot plead a Title IX claim for any alleged assaults that occurred off MSU premises.

### B.   Claims Arising Prior to April 2014 Must Be Dismissed Because Plaintiffs Fail to Allege Reporting to an "Appropriate Person"

Under Title IX, MSU can be liable "only for its own misconduct" arising from "an official decision by [MSU] not to remedy" a known Title IX violation. *Davis*, 526 U.S. at 640, 642. For this reason, each Plaintiff must allege "notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures." *Id*. Requiring actual notice to an appropriate person "eliminate[s] any risk that [the school] would be liable in damages not for its own official decision but instead for its employees' independent actions." *Davis*, 526 U.S. at 643; *Loewen*, 2012 WL 1190145, at *11 (emphasizing U.S. Supreme Court has "rejected the application of principles such as *respondeat superior* and constructive notice to impose liability" under Title IX).

As a matter of law, none of the alleged reports about Nassar prior to 2014 were made to an "appropriate person" at MSU. Plaintiffs allege that athletic coaches, trainers, and a psychologist[22] received isolated complaints about Nassar from third parties, and failed to comply with supposed obligations to report suspected abuse.[23] (*See, e.g.*, 18-828, PageID.9.) This falls far short of pleading Title IX liability. First, as a matter of law, the alleged failure of MSU employees to report, investigate, or otherwise take action in response to a complaint, without

---

[22]   *See supra* n.17.

[23]   While these allegations are disputed, they are taken as true for purposes of this motion.

more, does not establish that an "appropriate person" made an "official decision" not to act on behalf of MSU. *See Gebser*, 524 U.S. at 290-91. To be an "appropriate person" for purposes of Title IX liability, the recipient of the complaint must "at a minimum" have the authority to "institute corrective measures." *Id*. But the authority to institute corrective measures does not "include the mere ability to report suspicions of discriminatory conduct to someone with the authority to stop the abuse or control the harasser." *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 458 (8th Cir. 2009). This is because "merely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir. 2017) (collecting cases), *cert. denied*, 138 S. Ct. 1267 (2018); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997) (explaining that an "appropriate person" has ability to "remedy the wrongdoing themselves").

Likewise, the obligation to report a complaint of sexual abuse—whether imposed by statute or school policy—does not transform an employee into an "appropriate person" for purposes of Title IX. *Ross*, 859 F.3d at 1291-92 (holding campus security officers were not "appropriate persons" even though school policy designated them as proper recipients of sexual harassment reports and required officers to report sexual assaults); *Plamp*, 565 F.3d at 458 (rejecting argument that ability and duty to report child abuse makes teachers and guidance counselors "appropriate persons" under Title IX); *Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855, 871 (N.D. Ohio 2018) (holding coach was not an "appropriate person" because "there is a difference between an employee designated to report a sexual harassment complaint and an employee designated to respond to such a claim"); *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D. Pa. 2011) (rejecting argument that "every 'school employee' who is required to report . . . suspected child abuse under state or local law" is an appropriate person).

Second, Plaintiffs have not alleged that the coaches, athletic trainers, or psychologist who allegedly received complaints prior to 2014 had the authority to terminate or suspend Nassar. Courts strictly interpret who has the authority to institute corrective measures by "requiring that the official in question be capable of terminating or suspending the individual" accused of harassment. *Peer ex rel. Doe v. Porterfield*, No. 1:05CV769, 2007 WL 9655728, at *9 (W.D. Mich. Jan. 8, 2007). "[N]onsupervisory personnel are not 'appropriate persons' under the statute, because they do not have authority to terminate or suspend the offending individual." *Id.*; *see also Plamp*, 565 F.3d at 458 (teachers and guidance counselor were not "appropriate persons" where they did not have power to, e.g., suspend the perpetrator, curtail his privileges, or ensure greater supervision); *Rosa H.*, 106 F.3d at 660 (notice of harassment to school employees, such as "fellow teachers, coaches, and janitors," does not trigger Title IX liability "unless the district has assigned them both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse"); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002) (school counselor was not an "appropriate person" with sufficient authority to discipline teachers even though counselor was charged with handling "referrals for abuse, and assumed the role of principal when [the principal] was not in the building").

Here, Plaintiffs plead legal conclusions that MSU coaches, athletic trainers, or a psychologist constitute an "appropriate person." (*E.g.*, 18-987, PageID.304-305.) But legal conclusions masquerading as factual allegations are not sufficient to state a Title IX claim. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011); *see also Tumminello*, 678 F. App'x at 286 (dismissing Title IX claims "supported by mere conclusory statements"). As a matter of law, the conclusory allegations that coaches, athletic trainers, or a psychologist "acted in a supervisory role" over Nassar do not plausibly suggest that they were "appropriate persons"

with the authority to terminate or suspend Nassar. *See, e.g.*, *Baynard v. Malone*, 268 F.3d 228, 239 (4th Cir. 2001) (school principal with responsibility to supervise teachers was not an "appropriate person" because she had "no independent authority to suspend, reassign, or terminate [the teacher in question]" where authority rested with school board); *Kesterson*, 345 F. Supp. 3d at 871 (softball coach was not an "appropriate person" because coach had "no authority to impose discipline upon students who were not softball players"); *Blue v. D.C.*, 850 F. Supp. 2d 16, 34 (D.D.C. 2012), *aff'd*, 811 F.3d 14 (D.C. Cir. 2015) (dismissing Title IX claims for failure to allege—apart from conclusory assertions—that school officials with authority to institute corrective measures knew of abuse).

### C.    Plaintiffs Do Not Adequately Allege Deliberate Indifference to Known Harassment

For a Title IX claim to survive a motion to dismiss, Plaintiffs must also allege that MSU "intentionally acted in clear violation of [the statute] by remaining deliberately indifferent to known acts of harassment." *Campbell v. Dundee Cmty. Sch.*, 661 F. App'x 884, 889 (6th Cir. 2016). "Deliberate indifference in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). Plaintiffs must allege that the response to the harassment was "clearly unreasonable in light of the known circumstances" such that it amounts to an official decision by the school not to remedy the violation. *McCoy v. Bd. of Educ., Columbus City Sch.*, 515 F. App'x 387, 391 (6th Cir. 2013).

In Title IX cases, "there is a connection between what school officials know and whether their response is clearly unreasonable." *Id.* at 392. A school can be liable only for deliberate indifference to acts "of which it had actual knowledge"—not acts of which it "*should have* known." *Davis*, 526 U.S. at 642; *see also Gebser*, 524 U.S. at 285 (requiring actual notice).

Thus, as a matter of law, a school cannot be deliberately indifferent to unknown sexual abuse. *Loewen*, 2012 WL 1190145, at \*12 (Quist, J.). Further, under the actual notice standard, the school must have notice "of the actual type of harassment that occurred." *Campbell*, 661 F. App'x at 888; *see also Gebser*, 524 U.S. at 291 (inappropriate comments did not provide school with actual notice of sexual relationship); *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 490 (6th Cir. 2006) (school had no notice of sexual harassment despite complaints that coach had "communications at odd hours, inappropriate counseling, unchaperoned off-campus activities and inappropriate interactions with team members").

The overwhelming majority of Plaintiffs admittedly did not report their own alleged abuse to MSU until after Nassar was terminated in 2016, if at all. *See supra* at 20-21. (*See also* Ex. 8.) Indeed, Plaintiffs allege that they did not know they were abused, and that Nassar even evaded detection by parents who were in the room. (*E.g.*, 18-1006, PageID.6, 13; *see also* Exs. 8, 18.) Such allegations plainly do not establish that an "appropriate person" at MSU had actual notice of the abuse, as required to impose Title IX liability. *See Loewen*, 2012 WL 1190145, at \*12 (Quist, J.) ("[Plaintiff] presents no evidence to show that MSU was deliberately indifferent to the alleged discrimination and harassment because [Plaintiff] failed to report such acts to MSU."); *Campbell*, 661 F. App'x at 888 (school had no actual notice of sexual abuse where coach and student kept relationship secret and "even [the student's] father, who was also coaching the team, was fooled"); *Henderson*, 469 F.3d at 492 (school had no actual notice because extent of coach's misconduct was unknown to administration officials until after coach resigned).

Plaintiffs have not even adequately alleged that MSU had actual knowledge of Nassar's abuse or was deliberately indifferent in April 2014, when an adult patient (first-wave plaintiff

Amanda Thomashow) complained to MSU that Nassar sexually assaulted her during a medical appointment through physical contact that did not involve vaginal or anal penetration. (*See, e.g.*, 18-987, PageID.262.) In response, MSU reported the allegations to the police, conducted an investigation, concluded based on information available at the time that the alleged physical contact was consistent with established medical procedures, issued a report of its findings, and gave Nassar instructions to follow when providing treatment near sensitive areas. (*See, e.g.*, 18-cv-1012, PageID.30-31.)

Plaintiffs do not allege that MSU recognized Nassar's conduct as abuse (instead of medical treatment) in 2014, or knew that the remedial measures were ineffective prior to September 2016. Moreover, the 2014 allegations, which involved external contact with an adult patient, could not have put MSU on notice of alleged widespread abuse of minors involving internal penetration. In these circumstances, as a matter of law, neither actual knowledge nor deliberate indifference could be found. *See, e.g.*, *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 849 (6th Cir. 2016) (no deliberate indifference where school investigated allegations and "took proactive steps to reduce opportunities for future harassment"); *Soper*, 195 F.3d at 855 (no deliberate indifference where school contacted proper authorities, investigated incidents, and instituted remedial measures that proved to be ineffective); *McCoy*, 515 F. App'x at 392 (no deliberate indifference where school issued warning to teacher after being made aware of "several instances of physical contact that were ostensibly non-sexual but could have served as potential indicia for sexual malfeasance").

With the benefit of hindsight, Plaintiffs contend that MSU should have known that Nassar was a predator or done more to prevent his criminal conduct. But that is not the standard by which Title IX liability is measured. *See Davis*, 526 U.S. at 642, 648 (emphasizing Title IX

does not impose liability for what a school "*should have* known" or require any "particular

disciplinary action" or remedial measures); *McCoy*, 515 F. App'x 387 at 392 (no deliberate

indifference even where "[i]n hindsight, the school district could certainly have done more" to

prevent sexual abuse by teacher). "Title IX does not require flawless investigations or perfect

solutions." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir.

2011); *cf. Davis*, 526 U.S. at 649 (on a motion to dismiss, courts may "identify a response as not

'clearly unreasonable' as a matter of law"). The Court should dismiss Plaintiffs' Title IX claims.

## IV.    PLAINTIFFS' AFFORDABLE CARE ACT CLAIMS FAIL

Ninety-one Plaintiffs bring claims against the MSU Defendants under the Affordable

Care Act ("ACA"), 42 U.S.C. § 18116, which prohibits discrimination on the basis of sex in

federally funded health programs or activities. (Ex. 14.) The ACA claims of 44 Plaintiffs

completely or partially fail for lack of standing because they allege abuse prior to the ACA's

enactment or outside of covered health programs. Because the ACA expressly incorporates Title

IX standards, all remaining claims fail for the same reasons as Plaintiffs' Title IX claims.[24]

### A.    Plaintiffs Lack Standing to Pursue ACA Claims that Arose Prior to the ACA's Enactment in 2010 or for Injuries at Non-MSU Locations

Plaintiffs cannot pursue ACA claims for alleged abuse that occurred prior to the ACA's

enactment on March 23, 2010 because the statute does not apply retroactively. *See* Patient

Protection & Affordable Care Act, PL 111-148, Mar. 23, 2010, 124 Stat 119 (2010) (codified at

42 U.S.C. § 18116). When interpreting statutes, courts apply a "presumption against

retroactivity" because "considerations of fairness dictate that individuals should have an

---

[24]   Notably, a U.S. District Court recently held that all provisions of the ACA are invalid as
inseverable from an unconstitutional provision of the Act. *See Texas v. United States*, 340 F.
Supp. 3d 579, 619 (N.D. Tex. 2018), *appeal filed at* dkt. 19-10011 (5th Cir. Jan. 7, 2019). No
court in this Circuit has addressed the decision in *Texas*.

opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 286 (1994); *Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005). A statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" does not apply retroactively "absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280; *see also Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 892 (6th Cir. 2016).

Because the ACA does not contain language indicating that it should be applied retroactively, the presumption against retroactivity squarely applies. Indeed, the Supreme Court rejected the retroactive application of a similar statute that, like the ACA, created a right to recover damages for certain violations of Title VI of the Civil Rights Act. *Landgraf*, 511 U.S. at 247. The Court concluded that the presumption against retroactivity applied, and the statutory provision authorizing compensatory damages could not govern pre-enactment conduct because, as here, the statute conferred a new right to monetary relief and substantially increased the liability of employers. *Id*. at 283; *see also, e.g.*, *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015) (recognizing ACA provides for a private right of action and increases liability for covered entities). Thus, all claims premised on abuse alleged prior to the enactment of the ACA on March 23, 2010 must be dismissed with prejudice.

Likewise, Plaintiffs who allege abuse at non-MSU locations lack standing to pursue ACA claims because they were not "excluded from participation in, [] denied the benefits of, or [] subjected to discrimination under, any health program or activity" that receives Federal financial assistance. 42 U.S.C. § 18116; *see Richards v. Minnesota*, No. 13-3029 (JRT/JSM), 2016 WL 818657, at *13 n.7 (D. Minn. Jan. 15, 2016) (expressing doubt that ACA applies to entities that

are not "clearly involved in the delivery of health-related services as their principal focus" and in fact receiving federal financial assistance), *report and recommendation adopted*, No. 13-3029 (JRT/JSM), 2016 WL 7007487 (D. Minn. Nov. 29, 2016). All ACA claims seeking damages for abuse that occurred at USAG, Twistars, or other non-MSU locations must be dismissed with prejudice. (*See, e.g.*, Ex. 17.)

### B.     Plaintiffs Do Not Adequately Allege ACA Claims for Sex Discrimination

The ACA claims also must be dismissed for the same reasons as Plaintiffs' Title IX claims. Title IX is expressly incorporated into the ACA and defines the relevant standards for liability and relief. *See Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 687 (N.D. Tex. 2016) ("Section 1557 [of the ACA] clearly adopted Title IX's existing legal structure for prohibited sex discrimination"); *see also Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738-39 (N.D. Ill. 2017) (dismissing ACA claims for failure to plead sex discrimination as required by Title IX); *York v. Wellmark*, No. 4:16-cv-00627-RGE-CFB, slip. op. at 35 (S.D. Iowa Sept. 6, 2017) (same). Accordingly, Plaintiffs' ACA claims fail because they have not sufficiently alleged reporting to an "appropriate person" prior to April 2014, or that MSU had actual knowledge of Nassar's misconduct as a result of, or acted with "deliberate indifference" to, the one isolated complaint it received in 2014. *See supra* at 28-34.[25]

---

[25]   Some Plaintiffs appear to bring ACA claims against the MSU Individuals. (*See* Ex. 2.) These claims must be dismissed because there is no individual liability under the statute. *See Soper*, 195 F.3d at 854 (holding student had no private right of action under Title IX for damages against school officials in their individual capacities).

V.      PLAINTIFFS' SECTION 1983 CLAIMS FAIL

A.      Section 1983 Does Not Authorize Suits for Damages Against MSU or the
        MSU Individuals in Their Official Capacities as a Matter of Law

Plaintiffs cannot bring a Section 1983 claim for damages against MSU or the MSU

Individuals in their official capacities. Section 1983 provides a cause of action against "any

person" who, while acting "under color of" state law, subjects or causes the plaintiff to be

subjected to a violation of federal constitutional or statutory rights. 42 U.S.C. § 1983. "[N]either

a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v.

Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (affirming *Smith v. Dep't of Pub. Health*,

410 N.W.2d 749 (1987)); *see also Heike v. Guevara*, 654 F. Supp. 2d 658, 672 (E.D. Mich.

2009) (state employees sued in their official capacities "are not 'persons' within the meaning of

§ 1983"), *aff'd*, 519 F. App'x 911 (6th Cir. 2013). Likewise, "Michigan State University is an

arm of the state of Michigan, and it is therefore not considered a 'person' for purposes of

§ 1983." *Gardner v. Mich. State Univ. Bd. of Trs.*, No. 1:12-CV-1018, 2014 WL 558818, at *5

(W.D. Mich. Feb. 11, 2014) (holding plaintiff could not maintain Section 1983 claim against

MSU); *see also Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich.

2001) ("[A]s a state entity, MSU is not a 'person' subject to suit for damages under § 1983.").

Sixty-seven Plaintiffs purport to state Section 1983 claims against MSU (including the

Board of Trustees and the Sports Medicine Clinic) or the MSU Individuals in their official

capacities. (Ex. 2.) These claims are not cognizable, and should be dismissed with prejudice.

B.      Section 1983 Claims Against the MSU Individuals in Their Individual
        Capacities Fail

1.      The MSU Individuals Are Immune from Section 1983 Claims

To the extent Plaintiffs seek to bring claims against the MSU Individuals in their

individual capacities, such claims are barred by qualified immunity. "The doctrine of qualified

37

immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clemente v. Vaslo*, 679 F.3d 482, 489 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Once the defendant raises the defense of qualified immunity, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). To determine whether qualified immunity applies, a court must perform a two-step inquiry: (1) determine whether the facts show that the official's conduct violated a constitutional right, and (2) determine whether the right was clearly established. *Clemente*, 679 F.3d at 489.

Here, Plaintiffs fail to allege that any MSU Individual violated a constitutional right. The Due Process Clause of the Fourteenth Amendment unquestionably "protects the right of a child to be free from sexual abuse inflicted by a public school [employee]." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002). But the only person alleged to have violated this constitutional right is Nassar. Plaintiffs do not allege physical abuse by any of the MSU Individuals. Rather, Plaintiffs contend that the MSU Individuals violated their constitutional

rights when they allegedly failed to investigate, report, or prevent the abuse by Nassar.[26] (*See,*

*e.g.*, 18-831, PageID.194.)

A "failure to act" does not violate a constitutional right unless there is a corresponding

"duty" to carry out that action. *Doe*, 103 F.3d at 511; *see also Stiles*, 819 F.3d at 855 (explaining

that "[f]ailing to punish [the perpetrator], failing to enforce the law, failing to enforce school

policy, and failing to refer assaults to [police chief] are plainly omissions rather than affirmative

acts"). As recognized by the Supreme Court, the Due Process Clause does not create an

affirmative right to governmental aid. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489

U.S. 189, 197 (1989). Because the Due Process Clause "does not require the State to provide its

citizens with particular protective services, it follows that the State cannot be held liable under

the [Due Process] Clause for injuries that could have been averted had it chosen to provide

---

[26] Although unclear, Plaintiffs also may attempt to allege a violation of the Equal Protection
Clause (*see, e.g.*, 18-1038, PageID.81); however, their allegations are woefully deficient. To
state an Equal Protection claim, Plaintiffs must allege that an MSU Individual treated them
"disparately as compared to similarly situated individuals and that such treatment either
burdened a fundamental right, targeted a suspect class, or has no rational basis." *Gordon v.
Traverse City Area Pub. Sch.*, 182 F. Supp. 3d 715, 726-27 (W.D. Mich. 2016) (Quist, J.),
*aff'd*, 686 F. App'x 315 (6th Cir. 2017). Plaintiffs have not alleged any facts to show that the
MSU Individuals either failed or refused to respond to allegations of abuse because they were
female, or that similar complaints by male students were treated differently. *See Doe v.
Miami Univ.*, 882 F. 3d 579, 597 (6th Cir. 2018) (requiring plaintiffs to allege "purposeful or
intentional" gender discrimination). Moreover, whether grounded in Equal Protection or Due
Process, Plaintiffs still fail to allege active unconstitutional behavior by the MSU Individuals.
*See, e.g.*, *Campbell*, 2015 WL 4040743, at *10 (no supervisory liability for Section 1983
Equal Protection claims where "plaintiffs have alleged no active unconstitutional behavior"
by superintendent or athletic director); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (no
supervisory liability for Section 1983 Equal Protection claims where plaintiff "has not
averred that any of the supervisory officials who are defendants in this case actively
participated in or authorized any harassment").

them." *Id*. at 196-97. Thus, as a general rule, state actors do not have an affirmative obligation to protect the general public from harm caused by others.[27] *Id*.

For similar reasons, the Sixth Circuit repeatedly has recognized that schools do not have an affirmative constitutional duty to protect students from sexual abuse by a school employee. *Stiles*, 819 F.3d 834 (collecting cases); *Doe*, 103 F.3d at 510. Although schools and their employees have a duty to create and maintain a safe environment for students as a matter of common law, that does not elevate a "common law obligation to the rank of a *constitutional* duty." *Id*. Nor is there a constitutional duty for a government official to investigate allegations of sexual assault, or to reach a particular conclusion at the end of any sexual assault investigation. *See Simpson v. Corizon Health, Inc.*, No. 1:15-cv-357, 2015 WL 5225057, at *9 (W.D. Mich. Sept. 8, 2015) (no "constitutional right to have government officials conduct a criminal investigation" of sexual assault allegations); *Poe*, 853 F.2d at 427 (no "constitutional or statutory right to a specific outcome following an investigation of [a] complaint of sexual harassment").

Although Plaintiffs allege that MSU required employees to report sexual abuse, the "alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation." *Taylor v. Goodson*, No. 1:10-CV-37, 2010 WL 1544365, at *3 (W.D. Mich. Apr. 19, 2010) (Quist, J.) (collecting cases); *see also Davis v. Scherer*, 468 U.S. 183, 194 (1984). MSU may have held its employees to a higher standard for reporting sexual abuse than

---

[27]   Two exceptions to this rule exist, neither of which applies here: (1) the custody exception and (2) the state-created danger exception. *DeShaney*, 489 U.S. at 196. The "custody exception" does not apply because Plaintiffs were never taken into custody by the state and held against their will. *See id.* at 199-200; *Jackson v. Schultz*, 429 F.3d 586, 590 (holding unconscious shooting victim was not in custody, so as to give rise to substantive due process right to competent medical care, where no allegations that individual was not free to leave or be removed from ambulance). With respect to the state-created danger exception, Plaintiffs do not allege an affirmative act by the MSU Individuals that created or increased a risk of danger to them. *See infra* at 50-52; *Stiles*, 819 F. 3d at 854-55 (collecting cases).

what is required by the Constitution. (*See, e.g.*, 18-987, PageID.310 (alleging MSU policy required employees to report sexual misconduct that occurred at MSU or involved MSU staff).) But under Section 1983, the question is whether the MSU Individuals violated the Constitution, not whether they failed to follow MSU policies. *See Smith v. Freland*, 954 F.2d 343, 348 (6th Cir. 1992) (explaining that to impose Section 1983 liability based on internal policies "would encourage all governments to adopt the least restrictive policies possible"). Ultimately, Plaintiffs had a constitutional right to be free from sexual abuse at the hands of a state official, but they "did not have a constitutional right to be free from negligence in the supervision of the [person] who is alleged to have actually abused [them]." *Doe*, 296 F.3d at 441.

Thus, to state a Section 1983 claim in this case, Plaintiffs must plead a claim against the MSU Individuals for the constitutional injury caused by Nassar. The MSU Individuals cannot be held liable for the harm caused by Nassar simply because they allegedly worked with or supervised him. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 727 (6th Cir. 1996); *Moore v. Smith*, No. 1:13-CV-881, 2017 WL 1159805, at *2 (W.D. Mich. Mar. 28, 2017) (Quist, J.) ("It is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*."). Each government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Accordingly, the Plaintiffs must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *see also Iqbal*, 556 U.S. at 676. Because Plaintiffs fail to meet this burden, the Section 1983 claims against each MSU Individual must be dismissed.

41

## 2.    Plaintiffs Fail to Allege Supervisory Liability

To impose Section 1983 liability on a supervisor[28] for the unconstitutional acts of a subordinate, there must be "active unconstitutional behavior" by that supervisor. *Doe*, 103 F.3d at 511. "In the Sixth Circuit, supervisory liability cannot be imposed unless it is shown that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Van Domelen v. Menominee Cty*., 935 F. Supp. 918, 924 (W.D. Mich. 1996) (Quist, J.) (quoting *Lillard*, 76 F.3d at 727). Mere knowledge of the alleged harassment, a failure to act, or tacit approval does not support a finding of supervisory liability. *Id*.; *Lillard*, 76 F.3d at 728; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Negligent, sloppy, or even reckless supervision also will not support liability. *Doe*, 296 F.3d at 439. Instead, at a minimum, Plaintiffs must plead facts plausibly suggesting that a supervisor "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Doe*, 103 F.3d at 511.

---

[28]  Plaintiffs do not allege that Moore (an I3 investigator) and Hadden (an athletic trainer) were Nassar's supervisors. (*See* Exs. 21, 25.) In the absence of supervisory responsibility, Moore and Hadden cannot be subject to supervisory liability as a matter of law. Plaintiffs also fail to plausibly allege that Klages (a gymnastics coach), Teachnor-Hauk (an athletic trainer), and Stollak (a psychology professor) supervised Nassar. Nassar was a physician who worked in MSU's Sports Medicine Clinic. Klages, Teachnor-Hauk, Stollak are not alleged to have had any responsibilities with respect to the Clinic and the bald assertion that these individuals had "supervisory authority" over Nassar (*see, e.g.*, 18-1018, PageID.98) defies common sense and does not pass muster under federal pleading standards. *Twombly*, 550 U.S. at 557 (requiring complaint to include facts giving rise to plausible entitlement to relief); *see also Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (rejecting unsupported allegations of supervisory liability). Likewise, the bare assertion in several Complaints that Lemmen (Nassar's colleague) supervised Nassar (*e.g.*, 18-1038, PageID.80) is insufficient because it is not supported by any allegations of fact and contradicts the items in the record (*see* PageID.9961). For purposes of this motion to dismiss, however, the MSU Defendants have accepted these allegations as true and addressed the other reasons why purported supervisory liability claims against Klages, Lemmen, Stollak, and Teachnor-Hauk fail.

Plaintiffs fail to allege that any of the MSU Individuals encouraged, authorized, approved, or otherwise knowingly acquiesced in Nassar's misconduct for several reasons. First, mere alleged awareness of isolated allegations of sexual misconduct does not establish supervisory liability. Plaintiffs have not alleged that any of the MSU Individuals were "confronted with conduct that was obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Doe*, 296 F.3d at 440-41. At most, Plaintiffs allege that Dietzel, Kovan, Lemmen, Moore, Strampel, and Teachnor-Hauk knew of the complaint made by Amanda Thomashow in 2014, which was investigated by MSU and resulted in a determination of no wrongdoing. (*See* Exs. 20-29 (compiling all specific allegations against the MSU Individuals).) Plaintiffs also allege that Klages, Hadden, Stollak, and Teachnor-Hauk each received isolated complaints from 1997-2004. (*See id.*) "In the Sixth Circuit, however, mere knowledge of the alleged [sexual] harassment does not support a finding of supervisory liability under Section 1983." *Van Domelen*, 935 F. Supp. at 924.

As a matter of law, the limited information allegedly available to each MSU Individual at the time did not reveal a "widespread pattern of constitutional violations" by Nassar such that their action or inaction could amount to tacit authorization or deliberate indifference to sexual abuse. *See supra* at 31-34; *see also Doe*, 103 F.3d at 503, 513 (no widespread pattern of constitutional violations where DHS investigated allegations of sexual abuse of students, determined certain allegations were "unfounded," and appeared to exonerate teacher of other charges); *Lillard*, 76 F.3d at 728 (no supervisory liability where "only information any of these defendants had was of isolated and apparently unrelated incidents" that teacher sexually harassed students). Indeed, "the Sixth Circuit has never issued an opinion in which it found a pattern of abuse to be so 'obvious, flagrant, rampant, and of continued duration' that a supervisor's mere

43

awareness of it was, by itself, sufficient to create supervisory liability." *Colson v. City of Alcoa*, No. 3:16-CV-377, 2017 WL 4019596, at *6 (E.D. Tenn. Sept. 11, 2017) (collecting cases).

Plaintiffs attempt to blur the lines between what each MSU Individual supposedly knew and did, contending that their collective failure to respond to isolated alleged complaints over a span of two decades caused Plaintiffs to be abused by Nassar. But the allegations against each MSU Individual must be analyzed separately, and the Plaintiffs "cannot ascribe the acts of all [MSU] Individual Defendants to each [MSU] Individual Defendant." *Heyne*, 655 F.3d at 564. Plaintiffs must "point to some actual conduct by [each individual defendant] that directly contributed to their injury." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013). Viewed from that perspective, focusing on the specific allegations of what each MSU Individual is alleged to have known and done (or not done), it is clear that no single MSU Individual was confronted with a widespread pattern of constitutional violations by Nassar. (*See* Exs. 20-29.)

Second, it is not enough to allege that a supervisor "merely failed to act against misconduct of which he was aware." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). At bottom, Plaintiffs allege that the MSU Individuals failed to take various steps to investigate, report, or prevent abuse by Nassar. (*See, e.g.*, 18-1038, PageID.87-88.) But allegations that a supervisor was "aware of alleged [sexual] harassment, but did not take appropriate action" are insufficient to impose liability under Section 1983. *Poe*, 853 F.2d at 429; *see also Doe*, 296 F.3d at 434 (no supervisory liability where principal did not report multiple complaints of improper touching by teacher and "[o]ne of these girls testified that [the principal] had questioned each of them and told them . . . [not] to talk about it to anyone, not to tell [their] parents and if [they] continued to talk about it, then [the teacher] would get in a lot of trouble, go to jail and die there"); *Simpson*, 2015 WL 5225057, at *9 (dismissing Section 1983 claim premised on

44

"official's failure to conduct an investigation into a claim of [sexual] misconduct"); *K.S. v. Detroit Pub. Sch.*, No. 14-12214, 2015 WL 4459340, at \*12 (E.D. Mich. July 21, 2015) (no supervisory liability where "plaintiff has alleged, at most, that the individual defendants knew about the alleged incidents [of sexual harassment] and did nothing").

Similarly, the "failure to train" claims do not establish liability against the MSU Individuals. (*See, e.g.*, 18-1038, PageID.88 (alleging failure to train Nassar regarding inappropriate touching, informed consent, and chaperone practices).) As the Supreme Court and Sixth Circuit have recognized, claims against a supervisor in an individual capacity "require a higher culpability standard of personal involvement." *Essex*, 518 F. App'x at 355-56 (distinguishing claims against official policymakers, which may be premised on a failure to act, from individual capacity claims, which require active personal involvement); *see also Iqbal*, 556 U.S. at 677. An "individual defendant may be liable only upon a showing of personal involvement," not a mere failure to act. *Id.* (allegations that supervisor "inadequately trained road patrol deputies and failed to supervise [the deputy who sexually assaulted inmates] despite knowing that sexual assaults on inmates were occurring in other jurisdictions" were insufficient to establish individual supervisory liability). Here, Plaintiffs have not pointed to some actual, affirmative conduct by the MSU Individuals that directly contributed to Plaintiffs' injuries.

Third, the Plaintiffs' own allegations lay bare the fact that the MSU Individuals did not encourage Nassar's misconduct. Kovan, Strampel, and Moore clearly did not encourage or acquiesce in Nassar's misconduct when Kovan reported Thomashow's complaint to I3 (*see* 18-829, PageID.6), Strampel removed Nassar from practice during the investigation (*see, e.g.*, 18-1038, PageID.24), and Moore recommended remedial measures at the conclusion of the investigation (*see id.*, PageID.25-26). Further, those who allegedly knew of the complaint in

45

2014, but were not tasked with investigating Nassar's misconduct (i.e., Dietzel, Kovan, Lemmen, Strampel, and Teachnor-Hauk) appropriately relied on the I3 office to investigate the allegations. *See also Doe*, 103 F.3d at 508-09, 513 (no supervisory liability where allegations of child abuse were reported to authorities, teacher was removed from student contact during investigation, and teacher returned to school after it appeared that he had been exonerated); *Lynn v. City of Detroit,* 98 F. App'x 381, 386 (6th Cir. 2004) (supervisors did not acquiesce in misconduct of police officers where they reported complaints to Internal Affairs and "were entitled to rely on Internal Affairs to perform its assigned function").

The supervisory liability claims against all MSU Individuals must be dismissed. Plaintiffs have failed to allege that any individual directly participated in or encouraged Nassar's misconduct. *See Doe*, 103 F.3d at 513 (affirming dismissal of supervisory liability claims because "[t]he steps they did take, and even those they failed to take and arguably should have taken" did not show individuals directly participated in misconduct). Further, Plaintiffs have not alleged unconstitutional conduct by any other employee supervised by the MSU Individuals. (*See, e.g.*, 18-1038, PageID.87 (alleging failure to train employees to perceive and report inappropriate sexual conduct).) In the absence of any unconstitutional conduct by other subordinate employees, the supervisory liability claims must fail. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006).

### 3. Intra-Corporate Conspiracy Claims Fail as a Matter of Law

Plaintiffs cannot plead a conspiracy between or amongst MSU employees as a matter of law. (*See, e.g.*, 18-831, PageID.194-195, 247 (alleging various MSU Individuals conspired with Nassar).) "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy." *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 632 (W.D. Mich. 2015). "The intra-corporate conspiracy doctrine provides that where all of the defendants are members

46

of the same collective entity, there are not two separate 'people' to form a conspiracy." *Id*. at

631. Thus, the MSU Individuals could not conspire solely with one another or with Nassar. *See*

*Id.* (dismissing Section 1983 conspiracy claim premised on agreements between two employees

of city); *McBride v. Vill. of Michiana*, No. 4:92-CV-155, 1998 WL 276139, at *13 (W.D. Mich.

Apr. 2, 1998) (Quist, J.) (holding intra-corporate conspiracy doctrine required dismissal of

Section 1983 conspiracy claim).

**4. Plaintiffs Fail to Allege a Close Causal Connection Between Their Claimed Injuries and Any Act by the MSU Individuals**

Plaintiffs also fail to allege Section 1983 claims against any MSU Individual because

they do not—and cannot—plead a causal link between each MSU Individual's alleged "failure to

act" and the corresponding harm to each Plaintiff. As the Supreme Court has emphasized, "it is

perfectly clear that not every injury in which a state official has played some part is actionable

under [Section 1983]." *Martinez v. California*, 444 U.S. 277, 285 (1980). There must be a "close

causal connection" between the conduct of each individual defendant and the constitutional

violation. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994); *see also White v. Bell*,

656 F. App'x 745, 747 (6th Cir. 2016) (requiring causation to be established "with respect to

each defendant that the plaintiff seeks to hold liable").

Where the harm to a particular individual is "too remote" a consequence from the action

of a particular defendant, the Section 1983 claim must be dismissed. *E.g.*, *Gazette*, 41 F.3d at

1066 (citing *Martinez*, 444 U.S. at 285 (parole board was not proximate cause of murder by

parolee that occurred five months after release where board was not aware of any danger to

murder victim as distinguished from public at large)). Similarly, where there are sufficient

intervening lapses of time, or intervening actions of another person, "it cannot be said that any

act or commission of [the defendant] proximately caused or contributed to" the plaintiff's injury.

47

*Hayes v. Vessey*, 777 F.2d 1149, 1153 (6th Cir. 1985) (rejecting argument that rape "would have been less likely" if defendant acted).

Here, Plaintiffs fail to articulate a "close causal connection" between the actions or inactions of any MSU Individual and their alleged injuries. Plaintiffs speculate that the reporting of, or investigation into, an alleged complaint at MSU would have prevented the abuse of other Plaintiffs. For example, Jane C. Doe contends that MSU's "failure to properly address" a 2014 complaint led to her "being victimized, sexually assaulted, abused and molested" by Nassar at USAG events between 2011 and 2013—years *before* the alleged failure to address the 2014 complaint. (*See* 18-1018, PageID.53, 95.) Similarly, nearly all Plaintiffs name Strampel as a defendant premised on his alleged failure to enforce the July 2014 instructions to Nassar. (*E.g.*, 18-1038, PageID.26-27; *see also* Ex. 28.) However, at most, only 33 Plaintiffs even allege abuse post-July 2014. (*See* Exs. 4, 19.) Such illogical, speculative, and attenuated allegations cannot form the basis of a Section 1983 claim. *See Poe*, 853 F.2d at 427 (rejecting argument that if supervisor had "adequately investigated her complaint, her allegations of sexual harassment would have been conclusively proven" and prompted particular disciplinary action).

Moreover, the substantial intervening time period—in many instances more than 20 years (*see, e.g.*, 18-1169, PageID.30, 52)—between the alleged failure to act and Plaintiffs' injuries negates a finding of proximate cause as a matter of law. *See Martinez*, 444 U.S. at 285 (no proximate cause where five months passed between decision to release parolee and murder); *Hayes*, 777 F.2d at 1153 (no proximate cause where hours passed between defendant's failure to act and rape). Plaintiffs also have not alleged that any of the MSU Individuals were aware that a particular individual, "as distinguished from the public at large, faced any special danger." *Martinez*, 444 U.S. at 285. Thus, the MSU Individuals alleged to have received early reports of

48

abuse cannot be liable to unrelated Plaintiffs who claim to have been abused months, years, or decades after—much less before—the alleged report.

These failures are particularly stark to the extent Plaintiffs' claims are based on a purported failure to supervise Nassar at non-MSU locations or his personal residence. The MSU Individuals cannot be liable where they "had no individual supervisory responsibilities." *Doe*, 103 F.3d 495 at 511 ("Liability for a failure to act necessarily implies a 'duty' to carry out the action the person is accused of derogating."); *Hayden v. Wells*, 125 F.3d 855, 856 (6th Cir. 1997) (no supervisory liability where individual defendants had not "attempted to exercise any supervisory power to direct others to do anything that was done" to the plaintiff in another unit). Plaintiffs do not allege that any of the MSU Individuals acted as supervisors of Nassar's work at USAG, Twistars, or any other non-MSU location. "Allegations of supervisory liability by themselves, moreover, will not do the trick." *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014). In the absence of supervisory responsibilities at USAG, Twistars, or other non-MSU locations, the MSU Individuals cannot be subject to supervisory liability as a matter of law.

Furthermore, Nassar was not a "state actor" when he saw Plaintiffs in his home or volunteered his time to serve as the team physician for USAG, Twistars, and other non-MSU organizations. "In determining whether a doctor acted under color of state law, the primary factor is the physician's function within the state system, not the precise terms of his employment." *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009). For this reason, the Sixth Circuit held that a doctor employed by the University of Michigan, a public university, was not a state actor when she treated patients at a non-state hospital that she had been *assigned to* by the University of Michigan. *Id*. The doctor was not "exercising any power possessed by virtue of state law." *Id*. The Sixth Circuit explained that the doctor was able to treat patients because she had medical

staff privileges at the hospital, not because she was "clothed with the authority of state law." *Id*. The employment by a state university did not "vest her with any additional authority that other physicians who treated at [that hospital] did not enjoy." *Id*.

Here, even if Nassar had the alleged contractual obligation to spend time engaged in outreach or public services (*e.g.*, 18-1038, PageID.16), that still does not establish that Nassar acted under the color of law while doing so. Plaintiffs do not contend that Nassar's employment with MSU vested him with additional authority that other physicians working at USAG, Twistars, or other organizations did not enjoy. Nor do they allege that MSU "had any influence, direction, or control over the care and treatment of any patient" at non-MSU locations. *Id*. At bottom, Nassar's authority stemmed from his status as a physician, not because he was "clothed with the authority of state law." *Id.*

Because Plaintiffs have not pointed to an affirmative act by the MSU Individuals that directly contributed to their injuries, their Section 1983 claims must be dismissed.

### C.      Plaintiffs Fail to Allege a State-Created Danger

All of the state-created danger claims fail as a matter of law. The moniker "state-created danger" is somewhat misleading because, while the state may be liable under the Due Process Clause for its own actions, the state has no affirmative obligation to protect the general public from harm caused by others. *See supra* at 39-40. To show a state-created danger, a plaintiff must allege: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the actions of the state placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *Cartwright v. City of Marine City*, 336 F.3d 487,

493 (6th Cir. 2003). Plaintiffs' state-created danger allegations against the MSU Individuals here

fail on all three fronts.

First, the complained-of conduct—failure to supervise, train, or report—is an alleged

failure to act, and the "failure to act is not an affirmative act under the state-created danger

theory." *Cartwright*, 336 F.3d at 493 (citing *Gazette*, 41 F.3d at 1065 (failing to rescue

kidnapping victim and lying about investigation to victim's family were not affirmative acts));

*see also Langdon v. Skelding*, 524 F. App'x 172, 176 (6th Cir. 2013) (allegations that defendants

"did not do enough to investigate the complaints of abuse" were mere failure to act); *Stiles*, 819

F.3d at 854-55 (collecting cases). Plaintiffs also have not alleged that MSU did anything to

create or increase the danger, other than allowing Nassar continued contact with patients and

opportunities for abuse. (*See, e.g.*, 18-1038, PageID.86-87.) But "[e]ven affirmatively returning a

victim to a preexisting situation of danger does not create or increase the victim's risk of harm."

*Stiles*, 819 F.3d at 855. Thus, allegations that the state failed to act and left children in the same

perilous position they had always been in—no more or no less vulnerable than they had always

been—still do not establish a state-created danger. *See Langdon*, 524 F. App'x at 176

(concluding state did not increase danger to child through inadequate investigations).

Second, Plaintiffs cannot both claim that Nassar was a state actor for purposes of

imposing Section 1983 liability and contend that his abusive acts were those of a third party. The

state-created danger theory applies only "when the actions of private third parties harm the

plaintiffs." *Doe ex rel. Doe v. Livonia Pub. Sch.*, No. 13-CV-11687, 2018 WL 4953086, at *8

(E.D. Mich. Oct. 12, 2018), *appeal dismissed sub. nom.* 2019 WL 2056683 (6th Cir. Apr. 3,

2019); *see also Mays*, 916 N.W.2d at 270 (collecting cases and concluding "the harm necessary

to sustain a constitutional tort claim of state-created danger must spring from a source other than

a state actor"). Quite simply, Nassar cannot be the "private third party" needed for the state-created danger theory. *Doe*, 2018 WL 4953086, at *8 (no state-created danger for harm caused by state actor).

And finally, Plaintiffs do not allege facts establishing special danger to a particular Plaintiff, as opposed to the public at large, or that the MSU Individuals' actions put that Plaintiff at a greater risk than the public at large. *See Guy v. Lexington-Fayette Urban Cty. Gov't*, 624 F. App'x 924, 933 (6th Cir. 2015) (no state-created danger where victims abused by youth program director failed to allege "danger that is sufficiently 'special' as the doctrine means it—affecting a few potential victims, not a few hundred").

## VI.     PLAINTIFFS' SEX TRAFFICKING CLAIMS FAIL

Thirty-two Plaintiffs assert claims against MSU and/or the MSU Individuals under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591, 1595. (Ex. 15.) These claims must be dismissed because (A) MSU is immune from suit under the TVPA; (B) 15 Plaintiffs' claims entirely pre-date the December 23, 2008 enactment of the TVPA's private right of action against non-perpetrators; and (C) Plaintiffs' allegations are insufficient to state a viable claim.

### A.     Sovereign Immunity Bars TVPA Claims Against MSU

Sovereign immunity wholly precludes all TVPA claims against MSU. States, as sovereigns, are immune from suits for damages. *Coleman v. Ct. of App.*, 566 U.S. 30, 35 (2012). Congress may abrogate state sovereign immunity only when it makes its intention to do so "unmistakably clear in the language of the statute" and acts pursuant to a valid grant of constitutional authority. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). The TVPA does not meet either of these conditions.

First, Congress did not unequivocally express an intent to abrogate state sovereign immunity in the TVPA. The civil remedy section of the TVPA generally authorizes suit against

only the "perpetrator" or "whoever" violates the TVPA. 18 U.S.C. § 1595(a). Neither of these

terms are defined and, standing alone, are insufficient to abrogate sovereign immunity.

*Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Okla.*, 841 F.3d 1129, 1132 (10th Cir.

2016); *see also, e.g.*, *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382 (6th Cir. 1993)

(general authorizations to sue are insufficient to abrogate sovereign immunity); 1 U.S.C. § 1

("whoever" does not include sovereign entities).

Second, Congress enacted and authorized the TVPA pursuant to its authority under the

Commerce Clause. *See, e.g.*, 18 U.S.C. § 1591(a)(1) (criminalizing activity "affecting interstate

or foreign commerce"); H.R. Rep. No. 108-264(I), at 14 (2003), *reprinted in* 2004 U.S.C.C.A.N.

2408, 2413 (finding authority for TVPA in Article I, section 8 of the Constitution); *see also*

*Mojsilovic*, 841 F.3d at 1133. It is well-established that Congress lacks the authority to abrogate

state sovereign immunity under Article I of the Constitution. *Seminole Tribe of Fla. v. Florida*,

517 U.S. 44, 72-73 (1996); *Kimel*, 528 U.S. at 78-79 (collecting cases); *Mich. Corrs. Org. v.*

*Mich. Dep't of Corrs.*, 774 F.3d 895, 900 (6th Cir. 2014).

For these reasons, this Court and others correctly have concluded that states are immune

from suit under Section 1595. *Adams v. Cty. of Calhoun*, No. 1:16-CV-678, 2017 WL 1100845,

at *1 (W.D. Mich. Mar. 24, 2017); *see also Mojsilovic*, 841 F.3d at 1134 (10th Cir. 2016);

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. SACV101172AGMLGX, 2011 WL

13153190, at *11-12 (C.D. Cal. May 12, 2011). Because MSU has sovereign immunity,

Plaintiffs' TVPA claims against it must be dismissed with prejudice.

### B. Plaintiffs Lack Standing to Pursue Claims that Arose Prior to the 2008 Enactment of the TVPA's Private Right of Action Against Non-Perpetrators

The TVPA claims of 15 Plaintiffs must also be dismissed because they are premised

entirely on conduct that occurred prior to the December 23, 2008 TVPA amendment authorizing

civil suits against non-perpetrators. Prior to that time, the TVPA provided a private right of action *only* for claims against the perpetrator. Pub. L. No. 108-193, § 4(a)(4)(A). Although Congress amended the TVPA in late 2008 to allow civil suits against non-perpetrators who knowingly benefitted from participation in a sex trafficking venture, Pub. L. No. 110-457, Title II § 221(2), that amendment does not have retroactive effect. *Owino v. CoreCivic*, Inc., No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *13 (S.D. Cal. May 14, 2018) (holding 2008 amendment to 18 U.S.C. § 1595 allowing private suits against non-perpetrators does not apply retroactively); *see also Landgraf*, 511 U.S. at 280. Here, Plaintiffs allege that only Nassar caused them to engage in commercial sex acts in violation of the TVPA. (*E.g.*, 18-913, PageID.29; 18-968, PageID.56; 18-995, PageID.89; 18-1038, PageID.92.) Plaintiffs do not allege—nor could they—that the MSU Defendants perpetrated such crimes. *See infra* at 54-55. Thus, Plaintiffs alleging assaults prior to December 23, 2008, do not have standing to pursue TVPA claims against the MSU Defendants.[29] (*See* Ex. 15.)

## C.    Plaintiffs Fail to Plead TVPA Claims Against the MSU Defendants

Plaintiffs' TVPA claims also fail because they do not—and cannot—allege that the MSU Defendants participated in a sex trafficking venture. Liability attaches to non-perpetrators under the TVPA only when they "engaged in some aspect of the sex trafficking" or "associated for the purpose of sex trafficking." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). It is not enough for Plaintiffs to allege that the MSU Defendants were associated with Nassar through

---

[29]   Plaintiffs whose claims arose prior to December 19, 2003, lack standing to pursue TVPA claims against anyone because the Act did not provide for *any* private civil remedies until that time. Pub. L. No. 108-193, § 4(a)(4)(A) (noting the private right of action is a "new section"). This amendment was not retroactive. *See, e.g.*, *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012); *Ditullio v. Boehm*, 662 F.3d 1091, 1102 (9th Cir. 2011); *Doe v. Siddig*, 810 F. Supp. 2d 127, 136 (D.D.C. 2011).

his MSU employment or even that they acquiesced to Nassar's misconduct; rather, Plaintiffs

must plead that the MSU Defendants "actually participated in a *sex-trafficking venture*." *Id.*

(finding evidence of other association irrelevant); *see also Noble v. Weinstein*, 335 F. Supp. 3d

504, 524 (S.D.N.Y. 2018) (rejecting TVPA claim against non-perpetrator where plaintiff failed

to "allege specific conduct that furthered the sex trafficking venture" as opposed to business

relationship).

Plaintiffs fall far short of pleading a TVPA violation against the MSU Defendants.

Plaintiffs do not allege that MSU or any MSU Individual engaged in sex trafficking or associated

with Nassar for the purpose of sex trafficking.[30] Indeed, Plaintiffs effectively admit that MSU did

not violate the TVPA by alleging only vicarious liability for Nassar's misconduct. (*See, e.g.*, 18-

1038, PageID.93.) As to the MSU Individuals, Plaintiffs assert only that they received and failed

to escalate complaints about Nassar or that they worked with or supervised Nassar while he was

an MSU employee. (*E.g.*, 18-995, Page ID.90; 18-1038, PageID.94; 19-178, PageID.49; 19-440,

PageID.51.) This is woefully insufficient to state a claim.

## VII.   PLAINTIFFS LACK STANDING TO PURSUE CIVIL RICO CLAIMS

Seventeen Plaintiffs assert claims against the MSU Defendants under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. (Ex. 2.) These claims

fail because Plaintiffs lack standing. To maintain a RICO action, Plaintiffs must allege that they

have been "injured in [their] business or property." 18 U.S.C. § 1964(c); *Kramer v. Bachan*

---

[30]   Plaintiffs' TVPA claims against the MSU Individuals also fail because they do not allege that
the MSU Individuals "benefit[ted]"—financially or otherwise—from the supposed sex
trafficking. 18 U.S.C. §§ 1591(a)(2), 1595(a); *see also Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019). Here, Plaintiffs allege only that MSU received
payments from Clinic patients, including some Plaintiffs (*e.g.*, 18-1038, PageID.18, 92), but
make no allegation the MSU Individuals received any benefit at all.

*Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990). Courts have "uniformly recognized that the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564 (6th Cir. 2013) (no recovery for physical injury or mental suffering under RICO). Here, Plaintiffs exclusively allege personal injuries. (*E.g.*, 18-831, PageID.247; 18-982, PageID.268-269; 18-1057, PageID.95.) Because they allege no injury to "business or property," Plaintiffs' RICO claims must be dismissed.[31]

## VIII. PLAINTIFFS' ELLIOTT-LARSEN CIVIL RIGHTS ACT CLAIMS FAIL

Fifty-three Plaintiffs assert claims against MSU and/or the MSU Individuals under the Elliott-Larsen Civil Rights Act ("CRA"), MCL 37.2302, 37.2402.[32] (Ex. 16.) In addition to the governmental notice and statute of limitations defenses asserted *supra* and *infra*, these claims also must be dismissed because (A) all but four Plaintiffs lack standing to sue for educational discrimination because they fail to allege they were MSU students; (B) all Plaintiffs' allegations are insufficient to state a claim for public accommodation discrimination; (C) Plaintiffs fail to plead *respondeat superior* liability against MSU; and (D) Plaintiffs' allegations against the MSU Individuals are woefully deficient.

---

[31] RICO claims against MSU are also barred by sovereign immunity. *See, e.g.*, *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1232 (E.D. Cal. 2009); *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 941 (N.D. Ill. 2006); *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995).

[32] Nine Plaintiffs fail to specify the section(s) of the CRA under which they purport to proceed, merely referring generally to the CRA, MCL 37.2101, *et seq.* (18-831, PageID.248; 18-944, PageID.117-118; 18-1010, PageID.103; 18-1042, PageID.82.)

### A.    Non-Students Lack Standing to Sue for Educational Discrimination

The CRA prohibits an "educational institution" from "discriminat[ing] against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2402(a). Although "[d]iscrimination because of sex includes sexual harassment," sexual harassment is narrowly defined to include only certain misconduct. MCL 37.2103(i). Thus, for MCL 37.2402 to apply, Plaintiffs must allege that Nassar's conduct had the effect of substantially interfering with their *education* or created an intimidating, hostile, or offensive *educational* environment. *See id.*; *see also K.S.*, 2015 WL 4459340, at *16 ("students" are a protected group under MCL 37.2402(a)).

"The plain language of [MCL 37.2402(a)] clearly shows that it applies to conduct between a school and its students or prospective students." *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 537 (Mich. Ct. App. 2005) (granting motion for directed verdict where MCL 37.2402 did not apply to discrimination claim by non-student); *see also Garvin v. Detroit Bd. of Educ.*, No. 298838, 2013 WL 951118, at *5 (Mich. Ct. App. Feb. 26, 2013) (recognizing the CRA is "triggered" by the "educational facility-student relationship").

Only four Plaintiffs asserting CRA claims allege that they were MSU students at the time of the alleged assaults. (Ex. 16.) The remaining non-student Plaintiffs do not allege—nor could they—that Nassar's conduct interfered with their MSU education or created a hostile educational environment at MSU. This is fatal to their educational discrimination claims.

### B.    Plaintiffs Were Not Denied Access to a Public Accommodation

Plaintiffs alternatively assert discrimination claims under MCL 37.2302, which "prohibits unlawful discrimination against any individual's full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." *Haynes v. Neshewat*, 729 N.W.2d 488, 495 (Mich. 2007); MCL 37.2302(a). To invoke this

section against the MSU Defendants, Plaintiffs must be able to demonstrate that Nassar's

misconduct had the purpose or effect of substantially interfering with their receipt of services

from MSU.[33] MCL 37.2103(i)(*iii*); *see also Diamond v. Witherspoon*, 696 N.W.2d 770, 778

(Mich. Ct. App. 2005). Allegations of sexual assault alone are insufficient; Plaintiffs must allege

that they were effectively denied access to MSU or its services. *Kassab v. Mich. Basic Prop. Ins.

Ass'n*, 491 N.W.2d 545, 546 (Mich. 1992) (explaining that MCL 37.2302(a) hinges on a "*denial

of access*"), *overruled on other grounds*, *Haynes*, 729 N.W.2d 488; *Diamond*, 696 N.W.2d at 778

(same). In other words, each Plaintiff must allege that submitting to assault was "linked" to her

ability to receive services at MSU such that, if she did not submit, she would have been denied

access to services. *See Dockweiler v. Wentzell*, 425 N.W.2d 468, 470-71 (Mich. Ct. App. 1988).

In *Dockweiler*, the Michigan Court of Appeals rejected a public accommodation

discrimination claim against a health care facility under circumstances nearly identical to those

alleged here. The plaintiff alleged that her psychologist repeatedly sexually assaulted her during

appointments over several months. *Id.* at 469. Affirming dismissal of the claim on the pleadings,

the court explained: "That plaintiff was sexually abused by her assigned staff psychologist

during her treatment does not necessarily suggest that she was also denied the public services

provided by [the health care facility] due to prejudices and biases against her because of her

sex." *Id.* at 470 (noting plaintiff could have "walk[ed] away, request[ed] a new therapist, or

take[n] her concerns to a higher authority").

This Court followed the same reasoning to hold that a doctor's sexual assault of a patient

did not amount to a denial of public services by the defendant. *Sparks v. Bellin Health Sys.*, No.

---

[33]   At least five Plaintiffs with CRA claims allege to have been abused solely at USAG locations
outside of Michigan. (*See* Exs. 16-17.) These Plaintiffs cannot plausibly allege that the MSU
Defendants denied them access to a public accommodation.

2:09-CV-14, 2010 WL 2349467, at *15 (W.D. Mich. June 7, 2010) (finding defendant did not "den[y]" or "threaten[] to deny" plaintiff services because submission to sexual assault was not made "a condition of her receipt of medical services"); *see also Wilson v. City of Detroit*, No. 219777, 2001 WL 760020, at *3 (Mich. Ct. App. Jan. 30, 2001) (affirming dismissal of public accommodation claim where allegations of harassment by bus driver did not allow for the inference that city denied plaintiff access to public bus services).

Here, Plaintiffs allege only that they were victims of Nassar's sexual assault. They do not claim—nor could they—that they were prohibited from treating with other MSU physicians or that their receipt of MSU services was linked to or conditioned upon submitting to sexual assault. Their claims under MCL 37.2302 should be dismissed.

### C.      Plaintiffs Do Not Adequately Allege *Respondeat Superior*

Plaintiffs' CRA claims against MSU fail for an additional, independent reason: they do not plead *respondeat superior*, which is an essential element of their claims. *See, e.g.*, *Henderson*, 469 F.3d at 489; *Hamed v. Wayne Cty.*, 803 N.W.2d 237, 244 (Mich. 2011). "*Respondeat superior* liability can be imposed on an employer . . . only if the employer had reasonable notice of the harassment and failed to take appropriate corrective action." *Henderson*, 469 F.3d at 491 (internal quotes omitted). Thus, a plaintiff who did not report the harassment must plead that the harassment was "so pervasive as to warrant an inference that the employer had actual knowledge or to charge the employer with constructive knowledge." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012).

Here, 52 Plaintiffs with CRA claims admittedly did not report Nassar's misconduct to MSU. These Plaintiffs allege only that *other* individuals raised concerns regarding Nassar's conduct to lower-level MSU employees and, on one occasion, to MSU's administration in 2014. These allegations are insufficient for two reasons. First, alleged complaints about Nassar's

conduct toward *others* are insufficient to have put MSU on notice that Plaintiffs themselves were subjected to sexual harassment. *Henderson*, 469 F.3d at 491 (knowledge of incident between coach and another student did not establish that school should have known that the plaintiff-student was also being harassed); *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005) (complaints of other employees insufficient to put defendant on constructive notice of harassment towards plaintiff); *Sheridan v. Forest Hills Pub. Sch.*, 637 N.W.2d 536, 545 (Mich. Ct. App. 2001) (knowledge of "prior substantiated complaint of sexual harassment" was not sufficient to provide constructive notice of hostile environment with respect to plaintiff).

Second, only the knowledge of "higher management" employees may be imputed to MSU, i.e., "someone in [MSU's] chain of command who possesse[d] the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining [Nassar]." *Sheridan*, 637 N.W.2d at 543. Knowledge of lower-level employees, including the coaches, trainers, and psychologist who are alleged to have received, but not elevated, complaints, is insufficient as a matter of law to put MSU on notice. And, the 2014 Thomashow complaint did not put MSU on notice because Nassar was cleared of wrongdoing at the time. *See Dixon v. City of Detroit*, No. 333554, 2018 WL 1545499, at *5 (Mich. Ct. App. Mar. 29, 2018) (sexual assault not foreseeable when employer received prior similar complaint that was recanted); *cf. Hamed*, 803 N.W.2d at 246 (employers generally may assume employees will obey the law).

Because Plaintiffs fail to plead *respondeat superior*, dismissal of their CRA claims against MSU under both MCL 37.2402 and 37.2302 is required.

### D.  Plaintiffs Fail to Plead Civil Rights Act Claims Against the MSU Individuals

Forty-eight Plaintiffs purport to assert CRA claims against the MSU Individuals; however, the allegations are woefully deficient to state a claim. Indeed, Plaintiffs largely fail to

make any specific CRA allegations against the MSU Individuals,[34] and when they do, they merely recycle allegations that the MSU Individuals purportedly received and failed to elevate complaints made by other people—not the Plaintiffs here—or negligently supervised Nassar. No inference can be drawn from these allegations that the MSU Individuals intentionally discriminated against anyone on the basis of sex, much less the specific Plaintiffs here. Therefore, the Complaints fail to state a "plausible" claim under the CRA. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679.

Relying on MCL 37.2701(b), 24 Plaintiffs allege that the MSU Individuals are liable for educational discrimination because they purportedly "conspired to aid, abet, incite, compel and/or coerce Plaintiffs to submit to Nassar's acts of sexual assault." (*E.g.*, 18-1038, PageID.98). Under the intra-corporate conspiracy doctrine, the MSU Individuals could not conspire with one another as a matter of law. *See supra* at 46-47. And, at any rate, Plaintiffs fail to allege that the MSU Individuals possessed "discriminatory animus or intent." *See Wrobbel v. Int'l Bhd. of Elec. Workers, Local 17*, 638 F. Supp. 2d 780, 794 (E.D. Mich. 2009) (citing *DeBrow v. Century 21 Great Lakes Inc.*, No. 161048, 1996 WL 33360653 (Mich. Ct. App. Aug. 13, 1996)).[35] For these additional reasons, Plaintiffs' CRA claims against the MSU Individuals should be dismissed.

---

[34] (*See*, *e.g.*, Exs. 20-29.)

[35] Plaintiffs' claim of aiding and abetting also fails because they do not allege that the MSU Individuals "knowingly and substantially assisted" Nassar's alleged discrimination *against Plaintiffs*. *Simplicean v. SSI (US), Inc.*, No. 18-CV-11297, 2018 WL 6499476, at *5 (E.D. Mich. Dec. 11, 2018). Because the allegations against the MSU Individuals are unrelated to, and temporally and situationally removed from, Plaintiffs, no plausible inference could be drawn that the MSU Individuals aided and abetted Nassar's crimes against Plaintiffs.

## IX.     PLAINTIFFS' CHILD PROTECTION LAW CLAIMS FAIL

Seventy-nine Plaintiffs assert claims against one or more of the MSU Defendants for violating Michigan's Child Protection Law ("CPL"), MCL 722.621, *et seq.*, which mandates that certain individuals report suspected child abuse or neglect. (*See* Ex. 2.) These claims are, at the outset, barred by sovereign and individual immunity. *See supra* at 10-25. Even if Plaintiffs could overcome immunity, their CPL claims fail because: (A) all Plaintiffs lack standing to assert CPL claims; and (B) the statute does not apply to Plaintiffs' allegations.

Plaintiffs lack standing to pursue CPL claims because "Michigan's child abuse reporting statute creates a private right of action *only* in an identified abused child [about whom no report was made]." *Murdock v. Higgins*, 559 N.W.2d 639, 646 (Mich. 1997) (quoting *Marcelletti v. Bathani*, 500 N.W.2d 124 (Mich. Ct. App. 1993)); *see also Brent v. Wenk*, 555 F. App'x 519, 538 (6th Cir. 2014). None of the Plaintiffs allege that they reported Nassar's abuse to the MSU Defendants while they were a minor, or that any of the MSU Defendants failed to report suspected abuse of that minor Plaintiff. Indeed, there is no indication that any MSU Individual had contact with any minor Plaintiff, or even knew they were patients of Nassar prior to these proceedings. The sole basis for Plaintiffs' CPL claims is that MSU Individuals allegedly failed to report complaints of Nassar's abuse of other people, some of whom were adults.[36] Plaintiffs lack standing, however, to assert claims for failure to report child abuse on behalf of another abused child. *Boman v. Catholic Diocese*, No. 338458, 2018 WL 3129703, at *5 (Mich. Ct. App. June 26, 2018).

---

[36] For example, Strampel is alleged to have been made aware only of the 2014 report by Thomashow, an adult. (*See, e.g.*, 18-1012, PageID.32, 64; 18-1038, PageID.20, 24-25; 18-1058, PageID.15-16, 42.) This is irrelevant under the CPL.

Even if Plaintiffs had standing, the CPL is not applicable to their allegations as a matter of law. There is no obligation under the CPL to report suspected abuse of an adult, *see* MCL 722.622(f); therefore, Plaintiffs who were adults at the time of alleged abuse have no CPL claims. Further, Plaintiffs admit that Klages was a gymnastics coach (*e.g.*, 18-1038, PageID.5) and therefore not a mandated reporter under the CPL. *See* MCL 722.623(1)(a). Civil liability cannot extend to Klages as a matter of law. MCL 722.633(1) (CPL covers only individuals "required by this act to report"); *see also Gohl v. Turbiak*, No. 335389, 2018 WL 2067796, at *10 (Mich. Ct. App. May 3, 2018) (holding that non-mandated reporters are entitled to dismissal of CPL claims).

Moreover, setting aside that the allegations do not suggest that the MSU Defendants were on notice that any Plaintiff here was being abused while a minor, Nassar's conduct could not have created an obligation to report in any event because it does not fall into the statutory definition of child abuse or neglect. *See* MCL 722.622(g) ("child abuse" includes only harm "by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy"); MCL 722.622(k) ("child neglect" includes only harm "by a parent, legal guardian, or any other person responsible for the child's health or welfare"); *see also Doe v. Doe*, 809 N.W.2d 163, 166 (Mich. Ct. App. 2010) ("[T]he imposition of a duty to report suspected child abuse is based . . . on the type of relationship the alleged perpetrator has with the minor child.").

Some Plaintiffs assert the bare legal conclusion that Nassar meets the statutory definition of a "person responsible" for Plaintiffs' health or welfare because he was a "non-parent adult," as defined by the CPL. (*E.g.*, 18-982, PageID.262; 18-1018, PageID.110; 18-1258, PageID.95.) However, the Court need not accept this conclusion as true, *see Kaminski*, 865 F.3d at 344,

especially where Plaintiffs' own allegations undermine it. Although a "person responsible" includes a "non-parent adult," MCL 722.622(x), "non-parent adult" is narrowly defined to include only a non-related adult who has "substantial and regular contact with the child" *and* "a close personal relationship" with the child's parent or guardian. MCL 722.622(v). Plaintiffs do not make any such allegations. Indeed, many Plaintiffs allege seeing Nassar only once or a handful of times, undermining the notion that he had "substantial and regular contact" with them or a close relationship with their parents. (*See, e.g.*, 18-1010, PageID.28; 18-1038, PageID.43.)

At bottom, the CPL's purpose is limited to "protecting children in situations where abuse and neglect frequently go unreported, *i.e.*, when perpetrated by family members or others with control over the child." *People v. Beardsley*, 688 N.W.2d 304, 307 (Mich. Ct. App. 2004). Because, by definition, Nassar was not "a person responsible" for Plaintiffs' health or welfare under the statute, Plaintiffs' CPL claims fail as a matter of law. *See McCarrick v. Lapeer Cmty. Sch.*, No. 12-11654, 2012 WL 3600377, at *4 (E.D. Mich. Aug. 21, 2012) ("[T]here is no duty to report . . . unless the suspected perpetrator is a person specifically enumerated in the CPL."); *see also, e.g.*, *Doe*, 809 N.W.2d at 166-67 (holding emergency medical technician was not a person responsible for child's health or welfare under CPL). Plaintiffs' CPL claims must be dismissed.

## X. PLAINTIFFS' CLAIMS ARE TIME-BARRED

Statutes of limitations provide an additional defense to Plaintiffs' claims. Specifically, at least 95 Plaintiffs' claims fall completely or partially outside of the applicable limitations

periods.[37] (Ex. 19.) Plaintiffs' attempts to shoehorn their state law claims against the MSU

Defendants into a recently enacted statute of limitations reviver are unavailing because that

statute covers only certain claims against Nassar, and does not apply to claims against the state in

any event. Moreover, Plaintiffs fail to allege that fraudulent concealment tolling applies to their

claims against the MSU Defendants.

### A.    The Statutes of Limitations Began to Run at the Time of Alleged Assault

In these cases, Plaintiffs assert numerous causes of action against the MSU Defendants,

each of which is premised on sexual abuse that is alleged to have occurred, variably, between

1986 and 2016. (Exs. 4, 19.) Plaintiffs' Michigan law claims accrued and the statutes of

limitations began running at the time of alleged assault. *See* MCL 600.5827 (a "claim accrues at

the time the wrong upon which the claim is based was done regardless of the time when damage

results"); *Lemmerman*, 534 N.W.2d at 698 (holding claims premised on sexual abuse accrued at

time of abuse); *Doe*, 692 N.W.2d at 403 (same). No extra-statutory tolling applies to these

claims. *See Chandler v. Wackenhut Corp.*, 465 F. App'x 425, 430 (6th Cir. 2012) (finding

neither equitable tolling nor common law discovery rule applies under Michigan law); *Trentadue*

---

[37]  Because Michigan does not recognize the continuing wrongs doctrine, Plaintiffs' state law claims are partially time-barred to the extent they are based on abuse that occurred outside of the limitations period. *See Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 658 (Mich. 2005) (abrogating the continuing wrongs doctrine). With respect to the federal claims, "the Sixth Circuit has never before applied the continuing violations doctrine to Title IX claims," *Dibbern v. Univ. of Mich.*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich., May 18, 2016), "and rarely extends it to § 1983 actions," *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). In any event, the Supreme Court has precluded "the invocation of the continuing violation doctrine to 'allow recovery for [discrete] acts which occurred outside the filing period.'" *Phifer v. City of Grand Rapids, Mich.*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) (Quist, J.) (quoting *Sharpe*, 319 F.3d at 267 (citing *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). In this case, the continuing violations doctrine cannot apply to the sexual assaults, which constitute separate, actionable events. *See Sharpe*, 319 F.3d at 267; *Phifer*, 657 F. Supp. 2d at 873.

*v. Gorton*, 738 N.W.2d 664, 672 (Mich. 2007) (rejecting discovery rule and finding claims accrued at time of rape/murder even though plaintiff could not have learned of identity of perpetrator until years later); *Guerra v. Garratt*, 564 N.W.2d 121, 125 (Mich. Ct. App. 1997) (no tolling of limitations period for "repressed memory" of sexual abuse); *Bromley v. Mallison*, No. 312901, 2014 WL 667799, at *1, 4 (Mich. Ct. App. Feb. 18, 2014) (same).

Likewise, Plaintiffs' federal claims accrued at the time of the alleged abuse. *See, e.g.*, *Bowling v. Holt Pub. Sch.*, No. 1:16-cv-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (Quist, J.) (Title IX and § 1983 claims untimely where complaint was filed more than three years after last sexual assault); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (Title IX Claims accrued at time of abuse, not when plaintiffs "discovered" claims through news article), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).

## B.    Plaintiffs Did Not File Within the Limitations Periods

As is apparent from the face of the Complaints, at least 95 Plaintiffs allege abuse outside the three-year or shorter limitations period that applies to all Michigan law, Title IX, ACA, and Section 1983 claims. (*See* Ex. 19.) The statute of limitations in place when the claim accrued governs Plaintiffs' claims. MCL 600.5869 ("All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or rights of entry."). From 1986 to 2016, when Plaintiffs' claims accrued, the applicable Michigan statute of limitations for personal injury claims was three years. MCL 600.5805, 2012 Mich. PA 582 (three-year limitations period for personal injury claims prior to amendment in June 2018); *see also* MCL 600.5805(3) (two-year limitations period for assault

and battery).[38] An overriding three-year statute of limitations also applied—and still applies—to all claims against the state. MCL 600.6452(1); *see Ramsey v. Bd. of Regents of the Univ. of Mich.*, No. 303794, 2012 WL 1320103, at *2 (Mich. Ct. App. Apr. 17, 2012) (three-year limitations period or any shorter applicable statute of limitations governs claims against the state) (citing *Gleason v. Dep't of Transp.*, 662 N.W.2d 822 (Mich. Ct. App. 2003)). Additionally, Michigan employed minor tolling only through a plaintiff's nineteenth birthday. MCL 600.5851(1).

In Title IX and Section 1983 actions, federal courts apply the state limitations period applicable to personal injury claims. *See Lillard*, 76 F.3d at 729. Because the ACA incorporates Title IX standards, the same three-year limitations period applies. *See Smith v. Highland Hosp. of Rochester*, No. 17-CV-6781-CJS, 2018 WL 4748187, at *3 (W.D.N.Y. Oct. 2, 2018) (applying state personal injury statute of limitations to ACA claim). *But see Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 91 (D.D.C. 2018) (applying "catch-all" four-year statute of limitations set forth in 28 U.S.C. § 1658(a) to ACA claim).

In June 2018, the Michigan Legislature expanded to ten years the statute of limitations for actions seeking damages for criminal sexual misconduct. MCL 600.5805(6). The Legislature also provided for enhanced minor tolling of such claims, giving minor victims of criminal sexual misconduct until the age of 28 or three years after discovery, whichever is later, to file claims for damages. MCL 600.5851b(1). These amendments do not apply to Plaintiffs' claims for two reasons. First, the expanded limitations periods do *not* apply retroactively. "Statutes are presumed to apply prospectively unless the Legislature clearly manifests the intent for retroactive

---

[38]   Although fraud claims against the MSU Individuals generally would be subject to a six-year statute of limitations, MCL 600.5812, this period is shortened to three years in actions for personal injury. *See Smith v. Gilles*, 184 N.W.2d 271, 273 (Mich. Ct. App. 1970).

application. This is especially true when giving a statute retroactive operation will . . . create a new liability in connection with a past transaction, or invalidate a defense which was good when the statute was passed." *Johnson v. Pastoriza*, 818 N.W.2d 279, 285 (Mich. 2012) (internal citations omitted). Here, the Legislature made its intent clear: although the Michigan Senate initially proposed that both statutes would have retroactive effect, S.B. 872 (2018) (as introduced), the Legislature affirmatively removed this language from the bills as passed, *see* MCL 600.5805(6), 600.5851b(1).

Second, in a similar fashion, the Michigan Legislature specifically considered but declined to expand the three-year limitations period applicable to all claims against the state. *Compare* S.B. 876 (2018) (as passed), *with* MCL 600.6452(1) ("Every claim against the state, cognizable by the court of claims, shall be forever barred unless the claim is filed . . . within 3 years after the claim first accrues."). Because statutes cannot be held to authorize what the Legislature expressly rejected, *Bush*, 772 N.W.2d at 282, the three-year limitations period in place at the time Plaintiffs' claims accrued, rather than any expanded limitations period, applies to all state law claims against the MSU Defendants.

### C.    The Minor Savings Provision Applies Only to Claims Against Nassar

Instead of expanding the limitations period retroactively, the Michigan Legislature provided a 90-day window for particular individuals who allege abuse after December 31, 1996, and while minors to file otherwise time-barred claims against Nassar. MCL 600.5851b(3). This savings provision does not set a new accrual date or create a new cause of action. *See Rubenstein v. Doe No. 1*, 400 P.3d 372, 377 (Cal. 2017) (holding revival window for childhood sexual abuse neither delayed the accrual of claims, nor caused the claims to re-accrue); *Quarry v. Doe I*, 272 P.3d 977, 999 (Cal. 2012) (rejecting argument that statute of limitations for childhood sexual abuse created a newly accruing cause of action). Instead, it merely created a window—from June

12, 2018, through September 10, 2018—for certain plaintiffs with lapsed claims to bring suit against Nassar.[39]

The savings clause temporarily revives claims only if "*the person* alleged to have committed the criminal sexual conduct was convicted of criminal sexual conduct" and "*the defendant* admitted" that he used authority as the victim's physician to coerce the victim, or otherwise "engaged in purported medical treatment or examination of the victim in a manner that is, or for purposes that are, unethical or unacceptable." MCL 600.5851b(3) (emphases added). This unambiguous language must be applied as written. *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000). "The Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause." *Id.* at 317; *see also In re AJR¸* 834 N.W.2d 904, 907 (Mich. Ct. App. 2013) (explaining that "if the Legislature wants to refer to something particular, not general, it uses the word 'the,' rather than 'a' or 'an'"). Thus, where, as here, the Legislature used "the defendant," that phrase cannot be construed to mean "a defendant" or "one of the defendants." *Massey v. Mandell*, 614 N.W.2d 70, 72 n.5 (Mich. 2000).

Although MSU and the MSU Individuals are defendants in these cases, they are not *the* defendant to whom the savings provision applies. Here, "the person" convicted of criminal sexual conduct is Nassar. Likewise, the only "defendant" who "admitted" to using authority to coerce victims or engaged in purported medical treatment for an unacceptable purpose is Nassar. Plaintiffs cannot rely on Nassar's admission to invoke the savings provision and pursue otherwise time-barred claims against the MSU Defendants. This interpretation squares with

---

[39]   At least 17 plaintiffs cannot avail themselves of the savings provision in any event because they allege abuse solely prior to December 31, 1996; were adults at the time of alleged abuse; or did not file their claims within the 90-day window. (*See* Ex. 19; *see also, e.g.*, 18-987, PageID.294 (age 19); 18-1038, PageID.68 (age 18-23); 19-440, PageID.29 (age 20-23).)

decisions in other jurisdictions finding that similarly-worded statutes of limitations for minor victims of sexual assault apply only to perpetrators of the abuse. *See Walker v. Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011) (statute of limitations referencing "the defendant" and enumerating applicable offenses did not apply to non-perpetrator); *Bernie v. Blue Cloud Abbey*, 821 N.W.2d 224, 228 (S.D. 2012) (statute of limitations referring to criminal sexual offenses of "the defendant" did not apply to non-perpetrators); *Roman Catholic Bishop of Louisville v. Burden*, 168 S.W.3d 414, 417-18 (Ky. Ct. App. 2004) (statute of limitations was "directed at perpetrators and not third parties since it sets forth sexual offenses which a third party, such as a church or school, would be incapable of committing").

This result also comports with the Michigan Legislature's decision to retain intact MSU's immunity and governmental notice defenses, as well as the limitations period "forever barr[ing]" claims against the state that are not filed within three years. MCL 600.6452(1); *see also supra* at 12-13, 18, 68. The minor savings provision cannot create an end-run around these statutes. *See Robinson*, 613 N.W.2d at 318 ("Michigan strictly construes statutes imposing liability on the state in derogation of the common-law rule of sovereign immunity.").

### D.    Plaintiffs Fail to Allege That Fraudulent Concealment Tolls the Limitations Periods

Fraudulent concealment does not save any lapsed claims against the MSU Defendants because Plaintiffs fail to plead with particularity (1) any affirmative, fraudulent statements or acts directed toward any Plaintiff and on which such Plaintiff relied; or (2) any fiduciary or

special relationship creating a duty of disclosure.[40] To invoke the fraudulent concealment exception, the "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Doe*, 692 N.W.2d at 405; *see also Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 394 (6th Cir. 2015). The alleged fraud must be "manifested by an affirmative act or misrepresentation" by the defendant; absent a fiduciary relationship, mere silence is not enough. *Doe*, 692 N.W.2d at 405; *see also Chandler*, 465 F. App'x at 427; *Brownell v. Garber*, 503 N.W.2d 81, 85 (Mich. Ct. App. 1993).

Courts must "strictly construe and narrowly apply" the fraudulent concealment exception. *Riverside*, 2004 WL 2106638, at *5 (Quist, J.). Further, Plaintiffs' fraudulent concealment allegations must comply with Rule 9(b), which requires them to plead the "who, what, when, where, and how" of the alleged fraud. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). Here, as an initial matter, Plaintiffs fail to identify any specific fraudulent statements made to (or acts taken toward) *each of them individually* and on which *each of them individually* relied. (*See* Ex. 10.) Instead, Plaintiffs plead generalities regarding implied representations supposedly made to the public at large, or alleged statements made to third-parties, which Plaintiffs here recently learned of through publicly-filed complaints and news articles. (*See id.*) For example, Plaintiffs allege generally that the MSU Defendants failed to prevent or disclose Nassar's wrongdoing, which supposedly "continued to perpetuate" his

---

[40] As previously discussed, a Plaintiff "cannot state a meritorious claim for fraudulent concealment [if] she knew or should have known of her causes of action . . . ." *Doe v. Bishop Foley High Sch.*, No. 336975, 2018 WL 2024589, at *8 (Mich. Ct. App. May 1, 2018). At least some Plaintiffs allege that they knew or should have known of their claims contemporaneously. *Supra* at 20-21. Likewise, no Plaintiff pleads her own diligence, much less with particularity. *Krygoski Constr. Co.*, 2002 WL 1492204, at *4.

image "as a world-renowned and highly respected sports physician." (19-178, PageID.29.) Such allegations are impermissibly vague.

Looking past the pleading deficiencies, the allegations fail to establish fraudulent concealment as a matter of law. Michigan's fraudulent concealment rule provides for tolling only if the "person who is or may be liable for any claim fraudulently conceals the existence of the claim . . . from the knowledge of the person entitled to sue on the claim." MCL 600.5855. Accordingly, fraudulent concealment tolling "cannot be extended to concealments made by persons other than [the defendant] sought to be charged in the action." *Chandler*, 465 F. App'x at 428. Importantly, employers are not charged with the fraudulent concealment of employees acting outside the scope of their employment to conceal a crime. *Id.* (fraudulent concealment not imputed to employer because employees concealing murder were acting outside of scope of employment). In practice, this means that Nassar's statements and actions designed to conceal his misconduct will not work to extend the limitations periods against anyone but Nassar himself. *See id.*; *see also, e.g.*, *Techner v. Greenberg*, No. 11-14722, 2012 WL 1753008, at *4 (E.D. Mich. May 16, 2012) ("[T]he fraudulent concealment exception is enforced against only the person(s) who committed the acts to conceal the action.").

Likewise, Plaintiffs cannot rely on statements that were never directed to them, and that they never received, to establish that they were defrauded; each Plaintiff must demonstrate *individual reliance* on affirmative misstatements or acts designed to conceal *her own* claim. *Doe*, 692 N.W.2d at 406-07 (concealing priest's sexual abuse of other individuals did not prevent plaintiff from knowing of own claim against church); *see also* MCL 600.5855 (requiring affirmative concealment "from the knowledge of the person entitled to sue").

### 1.     Plaintiffs Fail to Plead Affirmative Statements on Which They Relied

Plaintiffs do not adequately allege that the MSU Defendants, as opposed to Nassar,

engaged in fraudulent concealment. (*See* Ex. 10.) To the extent pled, Nassar's actions and

statements to conceal his crimes do not toll the claims against the MSU Defendants. *E.g.*,

*Chandler*, 465 F. App'x at 428. Plaintiffs claim the MSU Defendants failed to detect Nassar's

wrongdoing or disclose it to the public, but at most that amounts to "mere silence," and thus not

fraudulent concealment. *See Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (no

fraudulent concealment where school did not report sexual abuse claim to government after

conducting investigation); *Doe*, 692 N.W.2d at 406-07; *Chandler*, 465 F. App'x at 427.

Likewise, statements supposedly made by some unidentified person to the public at large or

implied by virtue of Nassar's employment do not constitute fraudulent concealment. *See Doe*,

692 N.W.2d at 406-07 (no fraudulent concealment where church represented abuser to be a "fit

priest"); *Bromley v. Mallison,* No. 312901, 2014 WL 667799, at *5 (Mich. Ct. App. Feb. 18,

2014) (no fraudulent concealment in telling child she "must have been dreaming" in response to

allegations of sexual assault); *Estate of Abdullah*, 601 F. App'x at 395 (no fraudulent

concealment in "vague denial of wrongdoing"). Finally, statements that the MSU Individuals

allegedly made to settled first-wave plaintiffs (*e.g.*, 18-1018, PageID.28-31; Ex. 10) do not toll

the claims of Plaintiffs here, none of whom received or relied on such statements.

### 2.     Plaintiffs Fail to Allege a Fiduciary Relationship

Because no Plaintiff can allege that any MSU Defendant made an affirmative

misrepresentation to her, each resorts to alleging fraudulent omission, claiming the MSU

Defendants owed her a duty of disclosure. (*E.g.*, 18-1018, PageID.69; 18-1038, PageID.39-40.)

Although a duty to disclose may arise "where the parties are in a fiduciary relationship,"

*Brownell*, 503 N.W.2d at 85, Plaintiffs fall far short of alleging such a relationship here.

Some Plaintiffs contend that they "were in a special relationship with the MSU Defendants in which they paid or were billed for medical treatment." (*E.g.*, 18-1018, PageID.69.) Others claim that the MSU Defendants "were in a special relationship with Plaintiffs through the provision of training and treatment by Nassar under their aegis," and stood *in loco parentis* because Plaintiffs' "parents/guardians were obligated to entrust Plaintiff[s] to the [MSU] Defendants' care for medical treatment and training." (*E.g.*, 18-1038, PageID.39.)

As a matter of law, such allegations fail to establish a claim of fraudulent concealment by omission. "Michigan law does not recognize a *per se* fiduciary duty that [medical facilities] owe patients." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 723 (E.D. Mich. 2005); *see also Ellsworth v. Battle Creek Health Care Sys.*, No. 194752, 1997 WL 33344742, at *3 (Mich. Ct. App. June 27, 1997) (recognizing no fiduciary relationship exists between patient and medical facility such that there is duty to disclosure). "There is [also] no authority for the proposition that a fiduciary relationship exists between a [medical facility] and a patient" related to billing practices. *Burton*, 373 F. Supp. 2d at 723 (rejecting attempt to stretch fiduciary relationship that exists between doctor and patient to encompass hospital's billing practices). Standing alone, a commercial relationship—like the relationship certain Plaintiffs shared with the MSU Sports Medicine Clinic—does not create a fiduciary duty. *See, e.g.*, *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998) ("Michigan courts do not impose a fiduciary duty . . . arising from ongoing business relations."); *Ulrich v. Fed. Land Bank*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991) (attempt to solicit business from public at large did not create fiduciary relationship). Thus, even if Nassar had a fiduciary relationship with a particular patient, it does not follow that the MSU Defendants did as well.

74

Similarly, Michigan law also has not recognized a *per se* fiduciary relationship between students and schools, school officials, teachers, or coaches. *Doe*, 2018 WL 2024589, at *8 (declining to consider plaintiff's request that court "find for the first time in Michigan" that fiduciary relationship existed between student and schools, school officials, or teachers). And the duty to act *in loco parentis* has not been extended to medical facilities, schools, school administrators, or coaches. *See Boman*, 2018 WL 3129703, at *4. Thus, Plaintiffs' allegations of fraudulent concealment by omission do not pass muster.

## XI.   PLAINTIFFS FAIL TO PLEAD COMMON LAW CLAIMS

As set forth above, all of Plaintiffs' common law claims must be dismissed as barred by immunity, deficient governmental notice, and statutes of limitations. These claims additionally fail because Plaintiffs fail to state a claim for which relief may be granted.

### A.   Plaintiffs Fail to Allege a Legal Duty for Negligence-Based Claims

Many of Plaintiffs' negligence-based claims fail because the MSU Defendants did not have any interaction with—much less owe a legal duty to—the Plaintiffs who advance them. Under Michigan law, there is no duty to protect someone from the criminal acts of another. *Graves v. Warner Bros.*, 656 N.W.2d 195, 200 (Mich. Ct. App. 2002); *Doe 1 v. Young*, No. 335089, 2018 WL 521832, at *3 (Mich. Ct. App. Jan. 23, 2018) ("There is no duty that obligates one person to aid or protect another."). To give rise to a duty to protect, a special relationship must exist "either between the defendant and the victim, or the defendant and the third party who caused the injury." *Murdock*, 559 N.W.2d at 643. And the special relationship "must be sufficiently strong to require a defendant to take action to benefit the injured party." *Id*.

If there is a special relationship, there is a duty to protect only "those persons readily identifiable as foreseeably endangered." *Id*. at 645. Put differently, there is no duty to protect if either the harm or the victim were not foreseeable. *Id*. Further, "individuals are generally entitled

to assume that third parties will not commit intentional criminal acts." *James v. Meow Media, Inc.*, 300 F.3d 683, 693 (6th Cir. 2002). Thus, in the absence of an "an unmistakable particularized" threat to a specific person, a defendant cannot be held liable for failing to prevent the unforeseen harm to unknown individuals. *Brown v. Brown*, 739 N.W.2d 313, 317 (Mich. 2007) (no duty to prevent rape that was not foreseeable based on very crude, lewd, and offensive sexual remarks previously made by perpetrator to victim); *see also Doe 1*, 2018 WL 521832 at *4 (assaultive behavior by doctor was not foreseeable where "[n]one of the plaintiffs complained to the clinic staff or to [the defendant] about the inappropriate touching" and "most of them did not know at the time that [the doctor's] treatment was medically unnecessary or his conduct inappropriate").

Here, many of the Plaintiffs have not sufficiently alleged a relationship—or any connection whatsoever—with the MSU Defendants. To the extent Plaintiffs allege a special relationship premised on Nassar's employment at MSU, that relationship does not extend to Nassar's conduct at his home or while volunteering at USAG, Twistars, or other non-MSU locations. *See Murdock*, 559 N.W.2d at 643 (holding supervisor did not have special relationship with employee who transferred to another department and sexually assaulted a child because supervision of employee concluded when employee left supervisor's department). Similarly, Plaintiffs who had no interaction with, and were not even known to, the MSU Individuals have not—and indeed cannot—allege a special relationship that obligated the MSU Individuals to protect them from abuse. *See Marcelletti*, 500 N.W.2d at 129 (concluding physician had no duty to warn unidentified potential victims of concerns that babysitter abused a child); *Jackson v. New Ctr. Cmty. Mental Health Servs.*, 404 N.W.2d 688, 693 (Mich. Ct. App. 1998) (holding mental health hospital and psychiatrist, who may have known of patient's violent behavior, owed no

76

duty to unidentifiable "victims of random shooting spree"); *Moore v. St. Joseph Nursing Home, Inc.*, 459 N.W.2d 100, 103 (Mich. Ct. App. 1990) (concluding no duty to disclose where no identifiable and foreseeable victim of "random violent behavior" of former employee).

**B.      Plaintiffs Fail to Plead Intentional Infliction of Emotional Distress**

Seventy-five Plaintiffs assert claims for intentional infliction of emotional distress. (Ex. 2.) These claims fail because Plaintiffs do not allege intentional conduct by the MSU Defendants, much less the type of outrageous conduct required for such a claim. (*See, e.g.*, 18-982, PageID.257-258; 18-1018, PageID.116-117; 18-1038, PageID.103-104.) "In order to state a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. St. John's Evangelical Lutheran Church*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999). "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 823-24. Although Plaintiffs allege intentional and outrageous conduct by Nassar, they do not allege that any of the MSU Defendants intentionally engaged in conduct that "reasonably may be regarded as so extreme and outrageous as to permit recovery" against them. *Id.* at 824.

**C.      Plaintiffs Fail to Plead Negligent Infliction of Emotional Distress**

Twenty-two Plaintiffs allege negligent infliction of emotional distress claims. (18-987, PageID.324-325.) These claims must be dismissed with prejudice as inapplicable to the facts pled. Under Michigan law, negligent infliction of emotional distress applies only in a "situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993); *see also Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 634 (W.D. Mich. 2015) (dismissing

negligent infliction of emotional distress claims because plaintiffs alleged only direct injury to themselves). Here, Plaintiffs do not allege any mental disturbance caused by witnessing negligent harm to another person; they allege direct injuries to themselves.

### D.   Plaintiffs Fail to Plead Fraud and Misrepresentation

Fifty-five Plaintiffs assert fraud claims, relying on the same generalized allegations that form the basis of their claims of fraudulent concealment. (Ex. 2.) For example, Plaintiffs allege that "[f]rom approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician." (*E.g.*, 18-831, PageID.216; 18-987, PageID.325-326; 18-1018, PageID.107.) For the same reasons articulated *supra* at 70-75, Plaintiffs' fraud claims fail because they: do not plead with particularity; allege no affirmative misstatement by any MSU Defendant that any individual Plaintiff received or relied upon; and allege no fiduciary relationship that could create a duty to disclose.

### E.   Plaintiffs Fail to Plead Invasion of Privacy

Six Plaintiffs assert claims against the MSU Defendants for invasion of privacy. (18-1046, PageID.133-135; 18-1047, PageID.139-140.) They allege that Nassar intruded upon their seclusion by sexually assaulting them without consent and contend that the MSU Defendants are liable. (*See id.*) These claims must be dismissed because Plaintiffs do not and cannot plead the essential elements against the MSU Defendants. To assert such a claim, Plaintiffs must allege "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the [defendant's] obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Mills*, 536 N.W.2d 824, 832 (Mich. Ct. App. 1995). Here, Plaintiffs cannot allege that the MSU Defendants—as opposed to Nassar—obtained *any* information about them, much less that the

MSU Defendants obtained information through objectionable methods. *Doe v. Peterson*, 784 F. Supp. 2d 831, 842 (E.D. Mich. 2011) (rejecting invasion of privacy claim where defendants did not wrongfully obtain information); *Doe*, 536 N.W.2d at 833 (same); *Montgomery v. Shelby & Belle, LLC*, No. 255278, 2005 WL 2323946, at *5 (Mich. Ct. App. Sept. 22, 2005) (rejecting invasion of privacy claim where defendants did not obtain any information about plaintiffs).

### F.    Vicarious Liability and Agency Theories Fail as a Matter of Law

Fifty-nine Plaintiffs assert claims for vicarious liability and express/implied agency, alleging that the MSU Defendants bear liability for Nassar's intentional misconduct.[41] (Ex. 2.) Vicarious liability claims fail because "an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 223 (Mich. 2006); *Brown v. Brown*, 739 N.W.2d 313, 318 (Mich. 2007) ("[A]n employer can assume that its employees will obey our criminal laws."). Here, "there is no question that [Nassar's] sexual assault of plaintiff was beyond the scope of his employment" as a doctor at MSU. *See Hamed*, 803 N.W.2d at 244. Further, Michigan has rejected the "aided by agency" theory of liability, and expressly declined to make employers liable "when the employee is aided in accomplishing the tort by the existence of the agency [or employment] relationship." *Zsigo*, 716 N.W.2d at 229.

### G.    Concert of Action and Gross Negligence Are Not Viable Causes of Action

Plaintiffs' claims for concert of action and gross negligence must be dismissed with prejudice because they are not cognizable under Michigan law. Concert of action is "no longer a viable cause of action in Michigan." *Mueller v. Brannigan Bros. Rests. & Taverns, LLC*, 918

---

[41]    Some Plaintiffs name the MSU Defendants on counts for assault and battery. (*See* Ex. 2.) Because Plaintiffs do not claim that anyone but Nassar assaulted them, these are assumed to be claims for vicarious liability.

N.W.2d 545, 555 (Mich. Ct. App. 2018); *see also Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811, 820 (W.D. Mich. 2005) (holding concert of action incompatible with Michigan's tort reform legislation). Similarly, "Michigan's immunity statute does not . . . provide an independent cause of action for 'gross negligence.'" *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 700 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1551 (2019).[42]

## **CONCLUSION**

Although Nassar's actions were repugnant and merit the heavy criminal penalties imposed upon him, the law does not support Plaintiffs' attempts to hold the MSU Defendants liable for his wrongs. For the reasons set forth above, the MSU Defendants respectfully request that the Court dismiss Plaintiffs' Complaints in their entirety with prejudice.

Dated: August 26, 2019

---

[42] Some Plaintiffs also allege common law conspiracy claims against the MSU Defendants. (*See* Ex. 2.) Such claims fail as a matter of law under the intra-corporate conspiracy doctrine because the MSU Defendants are not alleged to have conspired with any third party. *See supra* at 46-47.

Respectfully submitted,

 /s/ *Amy L. Van Gelder*
Amy L. Van Gelder
Albert L. Hogan
Jessica A. Frogge
Skadden Arps Slate Meagher & Flom LLP
155 N Wacker Dr., Ste. 2700
Chicago, IL 60606-1720
(312) 407-0700

 /s/ *Scott R. Eldridge* (with permission)
Scott R. Eldridge (P66452)
Miller Canfield Paddock & Stone PLC
One Michigan Ave., Ste. 900
Lansing, MI 48933
(517) 487-2070

*Attorneys for Defendants Michigan State University,*
*Michigan State University Board of Trustees, and*
*Michigan State University Sports Medicine Clinic*

 /s/ *Steven F. Stapleton* (with permission)
Steven F. Stapleton (P51571)
Clark Hill PLC (Grand Rapids)
200 Ottawa Ave., NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1145

*Attorneys for Defendant William Strampel*

 /s/ *Lee T. Silver* (with permission)
Lee T. Silver (P36905)
Silver & Van Essen P.C.
300 Ottawa Ave NW Ste. 620,
Grand Rapids, MI 49503
(616) 988-5600

*Attorneys for Defendants Lou Anna K. Simon and*
*Lianna Hadden*

81

 /s/ *Scott L. Feuer* (with permission)
Scott L. Feuer (P38185)
Law Offices of Scott L. Feuer PC
888 W Big Beaver Rd., Ste. 850
Troy, MI 48084
(248) 723-7828

*Attorneys for Defendant Gary Stollak*

 /s/ *Bryan R. Walters* (with permission)
Bryan R. Walters (P58050)
Varnum Riddering Schmidt & Howlett LLP
Bridgewater Place
333 Bridge St., NW
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6865

*Attorneys for Defendant Kristine Moore*

 /s/ *Patrick F. Hickey* (with permission)
Patrick F. Hickey (P36648)
Hickey Hauck Bishoff & Jeffers, PLLC
One Woodward Ave., Ste. 2000
Detroit, MI 48226
(313) 964-8600

*Attorneys for Defendants Kathie Klages, Douglas Dietzel and Destiny Teachnor-Hauk*

 /s/ *Fred K. Herrmann* (with permission)
Fred K. Herrmann (P49519)
Kerr Russell & Weber PLC
500 Woodward Ave., Ste. 2500
Detroit, MI 48226-3427
(313) 961-0200

*Attorneys for Defendants Brooke Lemmen and Jeffrey Kovan*

## <u>Certificate of Service</u>

I hereby certify that on August 26, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Amy L. Van Gelder*
Amy L. Van Gelder